**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| GRIDDY ENERGY LLC,[1] | ) ) ) | Case No. 21-30923 (MI) |
| Debtor. | ) ) | (Emergency Hearing Requested) |

**DEBTOR'S <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) CONTINUE
OPERATING ITS CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN
PREPETITION OBLIGATIONS, (C) MAINTAIN EXISTING BANK
ACCOUNTS AND BUSINESS FORMS, AND (D) CONTINUE CERTAIN
<u>INTERCOMPANY TRANSACTIONS; AND (II) GRANTING RELATED RELIEF</u>**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON MARCH 16, 2021 AT 11:00 AM (CT) IN COURTROOM 404, 4TH FLOOR, 515 RUSK ST., HOUSTON, TX 77002. IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**
>
> **YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR." UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE." SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN MARCH 16, 2021.**

---

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

The debtor and debtor in possession in the above-captioned case (the "Debtor") hereby moves (the "Motion") this Court for entry of an interim order (the "Interim Order") and final order (the "Final Order") substantially in the forms attached hereto as Exhibits A and B, respectively, pursuant to sections 105(a), 345, 363, 364 and 503 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), Rule 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Case Procedures"), authorizing the Debtor to: (a) (i) continue operating its Cash Management System (defined below); (ii) honor certain prepetition obligations; (iii) maintain existing Bank Accounts (defined below) and Business Forms (defined below); and (iv) continue to pay certain Intercompany Transactions (defined below); and (b) granting related relief. In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Michael Fallquist in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"),[2] filed with the Court concurrently herewith, and respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This Court has constitutional authority to enter final orders with respect to the

---

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the First Day Declaration.

2

relief requested herein. The Debtor further confirms its consent to this Court's entry of final orders or judgments on this Motion if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

3. The predicates for the requested relief herein are Bankruptcy Code sections 105(a), 345, 363, 364 and 503, Bankruptcy Rules 6003 and 6004, Bankruptcy Local Rule 9013-1(i), and the Complex Case Procedures.

## BACKGROUND

4. On the date hereof (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtor intends to continue in a debtor in possession of and manage its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in the Debtor's chapter 11 case. No date has been set for a meeting pursuant to section 341 of the Bankruptcy Code.

6. The events leading to the filing of this chapter 11 case and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

## THE DEBTOR'S CASH MANAGEMENT SYSTEM

### A. Bank Accounts

7. In furtherance of its chapter 11 objectives and to facilitate an efficient and orderly winddown of its affairs that limits costs to creditors, the Debtor respectfully submits that it will be necessary for its existing cash management system (the "Cash Management System") to remain in place. Prior to the events that precipitated this case, the Debtor used its Cash Management System to process customer payments, manage its collateral obligations to

Macquarie under its secured credit and other agreements with the Debtor, and fund its operations. While its operations are now more limited, the Debtor continues to require that the Cash Management System remain intact in its current form, so that it can continue to efficiently collect any applicable legacy receivables and prevent the additional costs that would stem from altering the Cash Management System.

8. The Cash Management System includes three Debtor bank accounts (collectively, the "Bank Accounts") at JPMorgan Chase Bank, N.A. (the "Chase Bank"), an approved depository in the Southern District of Texas. A list (the "Account List") of the Debtor's Bank Accounts is attached hereto as Exhibit C. A brief description of each Bank Account, the last for digits of each account number and the role that each Bank Account plays in the Debtor's Cash Management System is set forth below.

   a. **Segregated Account (0675)**. Prior to the Petition Date, pursuant to the terms of the debtor's secured credit agreements, customer prepayments ("Customer Prepayments") and payments for services rendered by the Debtor ("Customer Earned Payments") were deposited into a segregated account (the "Segregated Account") at Chase Bank. The Customer Earned Payments were then subsequently swept into the Revenue Account (defined below). To satisfy applicable regulatory requirements, Customer Prepayments remained in the Segregated Account.

   b. **Revenue Account (2375)**. The Debtor maintains a revenue account ("Revenue Account") at Chase Bank. Prior to the Petition Date, Customer Earned Payments in the Segregated Account were swept into the Revenue Account, and then certain amounts were swept into the Operating Account pursuant to the terms of the Debtor's secured credit agreements.

   c. **Operating Account (0139)**. The Debtor maintains an operating account (the "Operating Account") at Chase Bank. The Operating Account is used to pay all of the Debtor's operating expenses including, but not limited to, payroll, contractors and vendors.

9. Pursuant to prepetition secured credit agreements, each of the Bank Accounts is subject to a deposit account control agreement in place with Chase Bank. The Revenue Account

4

is a blocked account. As of the Petition Date, each of the Segregated Account and Operating Account are subject to the Debtor's secured lender's control.

### B. Business Forms

10.     In the ordinary course of business, all of the Debtor's payments are made through electronic means and any business forms, including, without limitation, electronic checks, business letter head, purchase orders, invoices and other correspondence are electronically generated (collectively, the "Business Forms"). The Debtor pays certain of its vendors through a third-party service provider bill.com.

### C. The Bank Accounts Comply with the U.S. Trustee Guidelines and Comply with the Deposit Guidelines of Section 345 (b) of the Bankruptcy Code

11.     The Cash Management System complies with the deposit guidelines set forth in section 345 of the Bankruptcy Code. Section 345(a) of the Bankruptcy Code authorizes deposit or investment of money of estates, such as cash, as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." For deposits that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of a corporate security, "unless the court for cause orders otherwise." Additionally, the Region 7 Guidelines for Debtors-in-Possession, dated January 1, 2020 ("U.S. Trustee Guidelines") generally require chapter 11 debtors to, among other things, deposit all estate funds in an account with an authorized depository that agrees to comply with the U.S. Trustee's requirements.

12.     Here, all the Debtor's Bank Accounts are held with Chase Bank, which is

designated as an authorized depository by the United States Trustee for Region 7 (the "U.S. Trustee") pursuant to the U.S. Trustee Guidelines. Accordingly, the requirements of section 345 of the Bankruptcy Code have been satisfied.

### D. Intercompany Transactions

13. Historically, the Debtor's non-Debtor affiliate Griddy Technologies LLC ("Griddy Tech") in the ordinary course of business paid for certain services that were provided by third-parties to the Debtor (the "Intercompany Transactions"). The Debtor does not anticipate that any such Intercompany Transactions will continue during the course of this chapter 11 case. However, out of the abundance of caution, the Debtor seeks authority to continue the Intercompany Transactions postpetition. Because the Debtor engaged in the Intercompany Transactions on a regular basis prepetition, the Debtor believes that it may continue the Intercompany Transactions in the ordinary course, as contemplated by section 363(c)(1) of the Bankruptcy Code, without court approval. Nonetheless, out of an abundance of caution, the Debtor seeks authority to continue engaging in the Intercompany Transactions as necessary during the course of the case.

### RELIEF REQUESTED

14. The Debtor is requesting authority from the Court to: (i) maintain its existing Cash Management System by continuing to operate its existing Bank Accounts; (ii) continue to use its existing Business Forms (iii) pay, on an ongoing basis, any prepetition obligations related thereto, including, bank fees, as they come due; and (iv) continue to honor the Intercompany Transactions, as necessary. The Debtor respectfully requests this authority on an interim basis and requests a final hearing within approximately 21 days of the Petition Date to consider this Motion on a final basis.

**BASIS FOR RELIEF**

**A.    The Court Should Authorize the Continued Use of the Existing Cash Management System and Related Bank Accounts in the Ordinary Course of Business.**

15.    Allowing the Debtor to use its existing Cash Management System is consistent with applicable provisions of the Bankruptcy Code. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtor in possession with the flexibility to engage in ordinary course transactions required to operate its business, without unneeded oversight by the debtor's creditors or having to obtain court approval. *See, e.g., In re Lavigne*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992).

16.    The Debtor's ability to continue using the Cash Management System and engaging in related "routine transactions" falls within the parameters of section 363(c) of the Bankruptcy Code. *See, e.g., Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (holding that a debtor's request for authority to continue using its existing cash management system is consistent with section 363(c)(1) of the Bankruptcy Code).

17.    To the extent that use of the existing Cash Management System is beyond the ordinary course of the Debtor's business, such use is permitted by sections 363(b)(1) and 105(a) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code further provides that the Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

18. Where there is a valid business justification for using property outside the ordinary course of business, the law presumes that, "in making a business decision the directors of a corporation acted on an informed basis, in good faith[,] and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

19. Courts have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." S*ee, e.g., In re Southmark Corp*., 49 F.3d 1111, 1114 (5th Cir. 1995) (stating that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets"); *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part, rev'd in part*, 1992 U.S. Dist. LEXIS 9460 (D. Del. July 6, 1992), *aff'd in part, rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), c*ert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994).

20. The Debtor's ability to continue to use its Cash Management System in the ordinary course will prevent further disruption to the Debtor's operations and allow for it to continue to collect receivables and efficiently winddown its operations. The Cash Management System affords the Debtor significant benefits, including the ability to: (a) control corporate funds centrally; (b) ensure the availability of funds when necessary; and (c) minimize administrative expenses by facilitating a more efficient movement of funds and monitoring of balance and presentment information. It would be unduly difficult and expensive for the Debtor to establish a new cash management system and impose a serious administrative burden on the Debtor, which will ultimately lead to a reduced recovery to the Debtor's creditors. The Debtor

therefore requests permission to use its existing Cash Management System on an interim basis until a final hearing to consider the Motion and, ultimately, on a final basis.

21. Further, bankruptcy courts routinely permit chapter 11 debtors to maintain their existing cash management systems, generally treating requests for such relief as a relatively "simple matter." *In re Columbia Gas Sys.*, 997 F.2d 1039, 1061 (3d Cir. 1993) (recognizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient"); *In re Charter Co.*, 778 F.2d at 621 (holding that allowing the debtors to use their prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code).

**B.     The Court Should Authorize Continued Use of the Bank Accounts and the Business Forms.**

22. The U.S. Trustee Guidelines, among other restrictions and requirements, prohibit disbursements other than by numbered checks, which must include the debtor's case name and case number, a "debtor in possession" designation, and an indication of the account type. Rigid adherence to the U.S. Trustee Guidelines would require, among other things, closure of prepetition bank accounts, the opening of new accounts, and the immediate printing of new checks with a "Debtor in Possession" designation on them. Enforcement of the U.S. Trustee Guidelines in the chapter 11 case would disrupt the Debtor's operations and impose burdensome expenses on the estate. *See In re Gaylord Container Corp.*, No. 92-3654, 1993 WL 188671, at *3, 13 (E.D. La. May 24, 1993) (finding that the banking requirements of the U.S. Trustee were "a substantial burden on any debtor and . . . resulted in the incurrence of extraordinary unquantifiable costs to the debtor . . .").

23. In the ordinary course of business, all of the Debtor's payments are made through electronic means by the use of a number of Business Forms. As noted above, the Debtor pays

9

certain of its vendors through a third-party service provider bill.com. As promptly as practicable after the Petition Date, the Debtor will ensure that the electronic Business Forms in its control are labeled "Debtor in Possession" or "DIP" and include its chapter 11 case number. However, the Debtor believes that bill.com may not be able to include such notations on its payments. The Debtor requests that it be permitted a reasonable period of time to work with bill.com to see if there is a commercially reasonable solution. If bill.com is unable to add such notations, the Debtor requests that it be excused from including such notations on payments made on behalf of the Debtor by bill.com only.

24. Authorizing continued use of both the Bank Accounts and the Business Forms will make the Debtor's transition into chapter 11 smoother, less costly and more orderly. Accordingly, the Debtor requests that the Court exercise its equitable powers under section 105(a) of the Bankruptcy Code to waive compliance with the U.S. Trustee Guidelines and authorize the Debtor to continue using its existing Bank Accounts and existing Business Forms in the ordinary course of business.

25. Authority to continue the use of bank accounts and business forms has been granted in numerous other chapter 11 cases in this district. *See, e.g., In re Fieldwood Energy LLC*, No. 18-30648 (DRJ) (Bankr. S.D. Tex. Feb. 16, 2018); *In re Mem'l Prod. Partners, LP*, No. 17-30262 (MI) (Bankr. S.D. Tex. Feb. 8, 2017); *In re Azure Midstream Partners, LP*, No. 17- 30461 (DRJ) (Bankr. S.D. Tex. Feb. 2, 2017); *In re Ultra Petrol. Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. June 28, 2016); *In re Midstates Petroleum Co.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016); *In re Sherwin Alumina Co.*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016).

**C.     The Court Should Authorize the Debtor to Honor Certain Prepetition Obligations Related to the Cash Management System.**

26.     Contemporaneously with the filing of this Motion, the Debtor has filed various motions for authorization to pay certain prepetition obligations.  With respect to some of these obligations, prior to the Petition Date, the Debtor may have issued checks that have yet to clear the banking system.  With respect to other obligations, once authorized by the Court, the Debtor intends to issue checks postpetition on account of the applicable prepetition debt.

27.     In addition, in connection with the Cash Management System, the Debtor incurs fees and other charges in connection with Bank services, dishonored or returned checks and other obligations (collectively, the fees and charges, the "Bank Account Claims").  Over the past four (4) months, Bank Account Claims have averaged approximately $5,000.00 per month.

28.     As with the Cash Management System, payment of the Bank Account Claims will minimize disruption to the Debtor's operations and is therefore in the best interests of the estate. Absent payment of the Bank Account Claims, the Bank might assert offset rights against the funds in the Bank Accounts on account of the Bank Account Claims, freeze the Bank Accounts and/or refuse to provide services to the Debtor.  The payment of Bank Account Claims will not prejudice unsecured creditors given that, as noted above, the Bank may have setoff rights with respect to the Bank Account Claims.

29.     Accordingly, under sections 105(a) and 363(b) of the Bankruptcy Code, the Debtor seeks authority, in its sole discretion, to pay and/or reimburse the Bank in the ordinary course of business for any Bank Account Claims arising prior to or after the Petition Date.  The Debtor further requests that the postpetition Bank Account Claims be granted administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

**D.    The Court Should Authorize the Debtor to Continue to Engage in Certain Intercompany Transactions in the Ordinary Course of Business.**

30.     Section 363(b)(1) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate other than in the ordinary course of business, after notice and a hearing. Courts have held that there must be some articulated business justification for using, selling, or leasing property out of the ordinary course of business under section 363(b). *See, e.g., Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate . . . . courts require the debtor to show that a sound business purpose justifies such actions.").

31.     Prior to the Petition Date, the Debtor from time to time engaged in certain Intercompany Transactions. The Debtor does not believe that any such Intercompany Transactions will continue postpetition, but out of an abundance of caution seeks authority to enter into such Intercompany Transactions if such transactions are necessary for the prosecution of these chapter 11 cases postpetition in the ordinary course of business. If the Debtor is permitted to continue entering into the Intercompany Transactions in the ordinary course, the Debtor will continue to maintain records of the Intercompany Transactions, including records of intercompany accounts receivable and accounts payable.

32.     As noted above, pursuant to section 363(b)(1) of the Bankruptcy Code, debtors in possession are authorized to use property of the estate other than in the ordinary course of business after notice and a hearing. The Intercompany Transactions permit the Debtor to receive certain services that are paid by Griddy Tech and the continuation of such services is necessary to facilitate the orderly winddown of the Debtor in chapter 11. Relief under section 363(b)(1) of

the Bankruptcy Code is appropriate as the Debtor's continuation of entering into Intercompany Transactions on a postpetition basis is well within its sound business judgment.

33. Additionally, the Debtor requests that the Court authorize the Debtor, in its sole business judgment, to continue the Intercompany Transactions to preserve and enhance the value of the Debtor's estate. The Debtor, as debtor in possession with fiduciary duties towards its stakeholders, are under an obligation to "protect and preserve the estate." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). In some instances, the Debtor may fulfill its fiduciary duties "by the preplan satisfaction of a prepetition claim," if the payment "is the only means to effect a substantial enhancement of the estate." *Id*.

34. Finally, to ensure that the Debtor will not, at the expense of creditors, fund the operation of an affiliated entity, the Debtor respectfully requests that the Court, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, authorize the Debtor to treat all Intercompany Transactions arising after the Petition Date in the ordinary course of business as priority administrative expenses. If the Court authorizes the Debtors to treat Intercompany Transactions as administrative expenses, then each entity utilizing funds flowing through the Cash Management System and receiving services through intercompany arrangements should continue to bear ultimate repayment responsibility for such ordinary course transactions and its related share of the cost of services provided.

35. This treatment is consistent with section 364(a) of the Bankruptcy Code, which provides that, unless the Court orders otherwise, the Debtor is authorized to incur unsecured debt in the ordinary course of business allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. 11 U.S.C. § 364(a). The requested relief is also an appropriate exercise of this Court's equitable powers under section 105(a) of the Bankruptcy

Code and is further appropriate under section 363 of the Bankruptcy Code. *See, e.g., In re Gen. Growth Props.*, 412 B.R. 609, 610 (Bankr. S.D.N.Y. 2009) (holding that debtors were authorized to continue prepetition cash management practices, including intercompany transactions, under sections 105(a) and 363(c) of the Bankruptcy Code).

36. Courts frequently have authorized debtors to continue their prepetition intercompany practices after commencement of chapter 11 cases. *See, e.g., In re EMAS Chiyoda Subsea Ltd.*, No. 17-31146 (MI) (Bankr. S.D. Tex. Feb. 28, 2017); *In re Stone Energy Corp.*, No. 16-36390 (MI) (Bankr. S.D. Tex. Jan. 10, 2017); *In re Sandridge Energy, Inc.*, No. 16-32488 (DRJ) (Bankr. S.D. Tex. May 18, 2016); *In re Midstates Petroleum Co.*, No. 16-32237 (DRJ) (Bankr. S.D. Tex. May 2, 2016); *In re Southcross Holdings LP*, No. 16-20111 (MI) (Bankr. S.D. Tex. Mar. 29, 2016); *In re Sherwin Alumina Co., LLC*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016).

37. In addition, courts have granted administrative expense status to postpetition intercompany claims in other large chapter 11 cases. *See, e.g., In re Energy XXI, Ltd.*, No. 16-31928 (DRJ) (Bankr. S.D. Tex. May 19, 2016); *In re Ultra Petroleum Corp.*, No. 16-32202 (MI) (Bankr. S.D. Tex. May 3, 2016); *In re Sherwin Alumina Co., LLC*, No. 16-20012 (DRJ) (Bankr. S.D. Tex. Jan. 13, 2016).

38. The relief requested herein is in the best interests of the Debtor and its estate, creditors and stakeholders, and other parties in interest, and therefore should be granted. Accordingly, the Debtor respectfully requests that the Court grant this Motion on an interim basis and schedule a final hearing within approximately 21 days of the Petition Date.

## EMERGENCY CONSIDERATION; WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

39. Pursuant to Bankruptcy Local Rule 9013-1 and Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," the Debtor requests emergency consideration of this motion.  The Motion requests relief from procedural rules and requirements that pertain to matters of immediate significance or which involve deadlines sooner than 21 days after the Petition Date.  The relief will save costs and avoid undue administrative burden and confusion only if granted before the applicable deadlines.  The Debtor respectfully submits it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and requests that the Court approve the relief requested in this Motion on an emergency basis.

40. To implement the foregoing successfully, the Debtor requests that the Court waive the notice requirements of Bankruptcy Rule 6004(a) and the stay imposed by Bankruptcy Rule 6004(h).  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Bankruptcy Rule 6004(h).  As described above, the relief that the Debtor seeks in this Motion is necessary to preserve value for the Debtor and its estate.  Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

41. Nothing contained in this Motion is or should be construed as:  (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute

15

any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (e) otherwise affect the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Motion. All payments made pursuant to the final order approving this Motion shall be consistent with the terms of any interim or final orders approving the Debtor's use of cash collateral and the budget approved pursuant thereto.

## NOTICE

42. Notice of this Motion will be given to: (a) the United States Trustee for Region 7; (b) counsel to Macquarie Energy LLC and Macquarie Investments US Inc., in their respective capacities as secured parties and/or collateral agent under the Debtor's prepetition agreements with such parties; (c) the Office of the Attorney General of the State of Texas; (d) the thirty (30) largest unsecured creditors for the Debtor, including the Electric Reliability Council of Texas; (e) the Public Utilities Commission of Texas; (f) the Internal Revenue Service; (g) Chase Bank; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor respectfully submits that, under the circumstances, such notice is sufficient and that no other or further notice of this Motion is required.

*[The Remainder of this Page is Intentionally Blank.]*

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final orders, substantially in the forms attached hereto, granting the relief requested in the Motion and such other and further relief as may be just and equitable.

Dated: March 15, 2021
Houston, Texas

        Respectfully submitted,

        **BAKER BOTTS L.L.P.**

        By: */s/ David R. Eastlake*
        David R. Eastlake
        Texas Bar No. 24074165
        *David.Eastlake@bakerbotts.com*
        910 Louisiana Street
        Houston, Texas 77002-4995
        Telephone: (713) 229-1234
        Facsimile: (713) 229-1522

        – and –

        Robin Spigel (*pro hac vice* admission pending)
        *Robin.Spigel@bakerbotts.com*
        Chris Newcomb (*pro hac vice* admission pending)
        *Chris.Newcomb@bakerbotts.com*
        30 Rockefeller Plaza
        New York, New York 10012-4498
        Telephone: (212) 408-2500
        Facsimile: (212) 259-2501

        **PROPOSED COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION**

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-12(i).

*/s/ David R. Eastlake*
David R. Eastlake

**Certificate of Service**

I certify that on March 15, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ David R. Eastlake*
David R. Eastlake