**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GRIDDY ENERGY LLC,[1] | ) Case No. 21-30923 (MI) |
| | ) |
| Debtor. | ) (Emergency Hearing Requested) |
| | ) |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO (A) PAY
PREPETITION EMPLOYEE OBLIGATIONS AND (B) CONTINUE CERTAIN
EMPLOYEE BENEFIT PROGRAMS; AND (II) GRANTING RELATED RELIEF**

EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON MARCH 16, 2021 AT 11:00 AM (CT) IN COURTROOM 404, 4TH FLOOR, 515 RUSK ST., HOUSTON, TX 77002. IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.

YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR." UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE." SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

RELIEF IS REQUESTED NOT LATER THAN MARCH 16, 2021.

---

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

The debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor") hereby submits this motion (the "Motion") for entry of an order pursuant to sections 105(a), 363(b) and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9013-1(i) of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas (the "Complex Case Procedures"): (i) authorizing, but not directing, the Debtor to (a) pay, among other things, prepetition wages, salaries, employee benefits and reimbursable expenses and (b) continue the postpetition maintenance of any or all employee benefit programs, policies and procedures in the ordinary course in accordance with prepetition practices; and (ii) granting related relief.  In support of the Motion, the Debtor relies upon and incorporates by reference the *Declaration of Michael Fallquist in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration"),[2] filed with the Court concurrently herewith and respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of this chapter 11 case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This Court has constitutional authority to enter final orders with respect to the relief requested herein.  The Debtor further confirms its consent to this Court's entry of final orders or

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

judgments on this Motion if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

3. The predicates for the relief requested herein are sections 105(a), 363(b) and 507(a) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, Bankruptcy Local Rule 9013-1(i) and the Complex Case Procedures.

## BACKGROUND

4. On the date hereof (the "Petition Date"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. The Debtor intends to continue in the possession of and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner or official committee has been appointed in the Debtor's chapter 11 case. No date has been set yet for a meeting pursuant to section 341 of the Bankruptcy Code.

6. The events leading to the filing of these chapter 11 case and the facts and circumstances supporting the relief requested herein are set forth in the First Day Declaration.

## RELIEF REQUESTED

7. By this Motion, the Debtor seeks entry of an order authorizing, but not directing, the Debtor to: (a) pay and/or otherwise honor or perform, as applicable, prepetition obligations to the Debtor's employees (the "Employees"), including accrued and unpaid prepetition wages and salaries and certain other compensation described herein (the "Unpaid Compensation"); (b)(i) honor and continue in the ordinary course of business until further notice various benefit plans, programs, practices, policies and procedures (the "Employee Benefit Programs") (but not assume under section 365(a) of the Bankruptcy Code any of the plans, programs, practices, policies, procedures or any related employment or service agreement) and (ii) make prepetition

3

contributions and pay any prepetition amounts associated with the Employee Benefit Programs, the most significant of which are described below, and to pay all fees and costs in connection therewith (collectively, the "Benefit Obligations"); (c) pay over to the appropriate party all prepetition withholdings, deductions and payroll-related taxes from the Employee associated with the Unpaid Compensation and the Benefit Obligations (collectively, the "Employee Withholdings" and, together with the Unpaid Compensation and the Employee Benefit Programs, the "Prepetition Employee Obligations"); and (d) granting related relief.

8. As set forth more fully in the First Day Declaration, as a result of ERCOT's forced transitioning of the Debtor's customers prior to the Petition Date, the Debtor's operations were halted and it was forced to begin a reduction in force and file this case. As of the Petition Date, the Debtor had 16 full-time Employees remaining.[3] The Debtor's successful chapter 11 liquidation is dependent upon its limited remaining Employees, whose knowledge of the Debtor's business is fundamental to efficiently and effectively winding down and administering this case and preserving value for the Debtor's creditors.

9. The filing of a chapter 11 petition is a stressful and uncertain time for a debtor's employees – especially here, where the Debtor is winding down. Honoring the Prepetition Employee Obligations will ensure the Debtor's smooth transition into chapter 11 and minimize the hardship the Employees may otherwise endure if payroll and other Prepetition Employee Obligations are unpaid or otherwise interrupted. Honoring such obligations will also prevent a rapid loss of the remaining Employees, which the Debtor anticipates would otherwise occur if the Prepetition Employee Obligations are not timely paid. The Debtor respectfully submits that the

---

[3] The Debtor has four employees that reside in Canada. The remaining employees reside in the United States.

Motion should be approved to provide the Employees with certainty that they will continue to be paid in the ordinary course during this time.

10. The Debtor paid prepetition wages and salaries on March 15, 2021 for the period from March 1 through March 15, 2021. Although the Debtor believes it paid all accrued wages and salaries and amounts owed on account of Employee Benefit Programs and Employee Withholdings through the Petition Date, out of an abundance of caution, the Debtor is requesting the ability to pay any unpaid Prepetition Employee Obligations not paid prior to the Petition Date.

11. In addition, the Debtor requests entry of an order authorizing, but not directing, the applicable banks and other financial institutions (collectively, the "Banks") to receive, process and pay any and all checks drawn on the Debtor's payroll and general disbursement accounts and other forms of payment, including fund transfers and electronic payment requests, to the extent they relate to any of the foregoing and to rely on the Debtor's direction to pay amounts authorized under this Motion provided that sufficient funds are available in the applicable accounts to make such payments.

**A. The Debtor Seeks Authorization, but not Direction, to Pay the Unpaid Compensation.**

12. By this Motion, the Debtor seeks an order authorizing, but not directing, the Debtor to pay any Unpaid Compensation. In the ordinary course of business, the Debtor contracts with TriNet Group, Inc. ("TriNet") for the provision of certain services related to the Prepetition Employee Obligations, most notably payroll services and administration of the Employees Benefit Plans. TriNet is a Professional Employer Organization ("PEO") that provides company benefits and benefit administration. For costs associated with the services provided by TriNet, including payroll, Employee Withholdings and insurance premiums required to maintain the various benefit plans offered to the Employees, the Debtor advances funds to TriNet approximately 2-3 days prior

to the Debtor's regularly scheduled payroll and TriNet, on behalf of the Debtor, makes payments to: (i) the Employees in connection with wages and salaries; (ii) the appropriate tax authorities in connection with the Employee Withholdings; and (iii) the providers of the Employee Benefit Programs.

13. TriNet charges the Debtor a fee, paid in arrears each pay period, which is based on the Debtor's number of Employees and the services provided to the Debtor and its Employees (the "TriNet Fees"). Over the past six months, monthly fees to TriNet have averaged $3,472. The Debtor believes it has paid all TriNet Fees that accrued prior to the Petition Date. Payment of the TriNet Fees is essential to the Debtor's seamless entry into chapter 11 as it will ensure that there is no disruption in payment of the Prepetition Employee Obligations, including wages and the administration of the Employee Benefit Plans. By this Motion, the Debtor requests the authority to continue paying the TriNet Fees in the ordinary course of business, including with respect to any prepetition amounts owed, if any.

      i.    **Wages and Salary Claims**

14. **Employee Wage and Salary Claims**. In the ordinary course of business, the Debtor pays employees semi-monthly in arrears on the fifteenth (15th) and the last day of each month or, if such day is a weekend or holiday, the business day prior. The Debtor funds its payroll to TriNet two to three business days prior to each pay day. For the payroll cycle that ended on March 15, 2021, the Debtor paid approximately $130,112 in aggregate wages and salaries. The Debtor believes that all prepetition Unpaid Compensation for the Employees has been paid as of the Petition Date but, out of abundance of caution, requests authority to pay any such amount that remains outstanding.

    **ii.**  **Other Compensation and Expenses**

15. **Reimbursable and Corporate Card Expenses**. The Debtor routinely reimburses Employees for certain expenses incurred within the scope of their employment, such as travel, food and cell phones (the "Reimbursable Expenses"). There is a lag time between the time expenses are incurred and the time an expense is processed and reimbursed. Consequently, it is difficult for the Debtor to determine with precision the actual amount of incurred, but not reported, reimbursable expenses as of any particular time. The Debtor requests the authority to pay the Reimbursable Expenses in the ordinary course of business whether arising prepetition or postpetition.

16. Additionally, four employees of the Debtor have corporate American Express credit cards which are used to charge business expenditures. Charges incurred on these cards (the "Corporate Card Expenses") are paid fully each month directly by the Debtor upon receipt of and review of a statement from American Express. The Debtor requests the authority to continue to pay the Corporate Card Expenses in the ordinary course of business whether arising prepetition or postpetition.

17. **Sections 507(a)(4) and (a)(5) Cap**. The aggregate payments to any individual Employee authorized by the final order approving this Motion shall not exceed the $13,650 cap in sections 507(a)(4) and (a)(5) of the Bankruptcy Code.

**B.** **The Debtor Seeks Authorization, but not Direction, to Pay Prepetition Benefit Obligations and Continuation of Employee Benefit Programs.**

18. In the ordinary course of business, the Debtor offers various customary benefits to the Employees. The benefits offered by the Debtor includes healthcare benefits and life insurance and disability benefits (each as discussed below) (collectively, the "Employee Benefit Programs").

7

19. The Debtor pays all or some portion of the costs of the Employee Benefit Programs to TriNet each month and TriNet directly deducts specified amounts from Employees' wages and salaries in connection with certain of the Employee Benefit Programs. For the payroll cycle that ended on March 15, 2021, the Debtor paid approximately $7,142 in aggregate amounts on account of the Employee Benefit Programs. The Debtor believes that all prepetition Benefit Obligations have been paid as of the Petition Date but, out of abundance of caution, requests authority to pay any such amount that remains outstanding.

20. By this Motion, the Debtor seeks an order authorizing, but not directing, the Debtor to pay the prepetition Benefit Obligations. In addition, although the Debtor believes that the Benefit Obligations constitute ordinary course of business expenses authorized under the Bankruptcy Code and applicable law, out of an abundance of caution, the Debtor seeks authority, but not direction, to continue the Employee Benefit Programs and pay any related Benefit Obligations during the pendency of the chapter 11 case.

      **i.    The Health Plans.**

21. The Debtor's healthcare plans, which include medical, dental and vision benefits, are an important component of the Employee Benefit Programs offered by the Debtor (the "Health Plans"). All of the Health Plans are arranged for and provided to Employees through TriNet. The Debtor is requesting authority to continue each of the Health Plans in the ordinary course of business.

    (a)    **Medical Plans**: TriNet partners with numerous insurers to provide medical insurance to eligible Employees and their families (the "Medical Plans"). Premiums vary for each Employee depending on the insurer and type of plan chosen as well as the number of dependent the Employees seeks to have covered.

(b) **Dental Plan**: TriNet partners with numerous insurers to provide dental insurance to eligible Employees and their families (the "Dental Plans"). Premiums vary for each Employee depending on the insurer and type of plan chosen as well as the number of dependent the Employee seeks to have covered.

(c) **Vision Plan**: TriNet partners with various insurers to provide a vision plan (the "Vision Plan") to eligible Employees through TriNet.

(d) **COBRA Policy**: The Debtor provides their Employees coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), which provides Employees who lose their health coverage the right to continue benefits for a limited period of time (the "COBRA Policy"). The Debtor reimburses each Employee after the Employee pays the cost of their COBRA coverage directly to the appropriate governmental authority each month. Currently one former Employee participates in the COBRA Policy. The Debtor seeks authority to (x) pay any unpaid prepetition amounts in respect of its reimbursement obligations under the COBRA Policy and (y) continue the COBRA Policy in the ordinary course of business.

    ii.    **Other Employee Benefit Programs.**

22. The Debtor maintains other benefit programs for Employees, including HSAs, FSAs, HRAs, a Life Insurance, AD&D Coverage, LTD Benefits and Elective Supplemental Coverages (each as defined below, and collectively, the "Other Employee Benefits").[4] The Debtor is seeking authority to pay amounts associated with the Other Employee Benefits.

(a) **Health Savings Accounts and Flexible Spending Accounts**: The Debtor offers full-time Employees the opportunity to contribute to a health savings account (the

---

[4] The Debtor does not hold any Employee funds that are not property of the estate.

"HSA") or to a healthcare flexible spending account (the "FSA") to use pre-tax dollars toward the payment of medical or dependent care expenses. At the beginning of each calendar year, the HSA and FSA participants commit a set amount of funds for the HSA or FSA, and TriNet collects a pro-rated amount at each payroll period. Employees submit claims to TriNet and TriNet reimburses the Employee for the eligible claimed amounts (up to the pre-committed amount) from the applicable HAS or FSA.

(b) **Life Insurance and Disability Benefits**: The Debtor provides its Employees life insurance and accidental death and dismemberment coverage (the "Life Insurance," and "AD&D Coverage," respectively) through TriNet. The Debtor also provides its Employees short term and long-term disability benefits (collectively, "Disability Benefits,") through TriNet.

(c) **Elective Supplemental Coverage**. Full-time Employees may opt into supplementary protection to cover disability insurance, accidents, cancer insurance, hospital confinement insurance, critical illness insurance, term life insurance and universal insurance ("Elective Supplemental Coverage"). These coverages are available through TriNet.

(d) **Workers Compensation Coverage**. The Debtor, through TriNet, maintains workers' compensation coverage for its Employees in applicable jurisdictions, as required by state laws (collectively, the "Workers' Compensation Program"). The Debtor believes it is current on all obligations related to its Workers' Compensation Program.

23. The Debtor believes that performing its obligations under the above-described Employee Benefit Programs is important for preserving the value of the Debtor's estate. Any

disruption in the benefits under such programs will call into question the Debtor's commitment to its Employees, who are essential to the Debtor's successful wind down.

**C.      The Debtor Seeks Authorization to Pay Employee Withholdings for Payroll Taxes and Non-Tax Related Deductions.**

24.     In connection with paying the Unpaid Compensation and the Benefit Obligations, TriNet, on the Debtor's behalf, routinely deducts and/or withholds from the Employees' paychecks amounts that the Debtor is required to transmit to third parties.  For example, the TriNet may deduct from the Employees' earnings, among other things, (i) payroll taxes related to federal, state, and local income taxes, FICA, Social Security and Medicare taxes for remittance to the appropriate federal, state, or local taxing authority; (ii) employee contributions for health benefits; (iii) employee contributions to employee life insurance, long-term disability insurance, and personal accident insurance; and (iv) other legally ordered deductions, such as child support and garnishments (collectively, the "Employee Withholdings").  TriNet then pays the appropriate third-party recipients on the Debtor's behalf.  For the payroll period ended March 15, TriNet deducted approximately $10,135 in Employee Withholdings.

25.     Generally, these funds are deducted from an Employee's earnings, but due to the commencement of this chapter 11 case, may not have been paid to the appropriate third-party recipients.  By this Motion, the Debtor seeks authority, in its discretion, to forward, or cause TriNet to forward, any Employee Withholdings to the appropriate parties.

**D.      Authorization for the Banks**

26.     In addition, the Debtor requests entry of an order (i) authorizing the Banks, when requested by the Debtor, to receive, process, honor and pay any and all checks, drafts, and other forms of payment, including fund transfers, on account of the Prepetition Employee Obligations to the extent the Debtor has sufficient funds standing to their credit with the Banks, whether such

11

checks or other requests were submitted before, on or after the Petition Date; (ii) authorizing the Banks to rely on the representations of the Debtor as to which checks are subject to this Motion, provided that any such Bank shall not have any liability to any party for relying on such direction and representations by the Debtor or for inadvertently honoring or dishonoring any check or fund transfer; and (iii) authorizing the Debtor to issue new postpetition checks or effect new postpetition fund transfers to replace any checks, drafts, and other forms of payment which may be inadvertently dishonored or rejected.

### BASIS FOR RELIEF

27. The payment of the Prepetition Employee Obligations is warranted under sections 105(a), 363(b) and 507(a) of the Bankruptcy Code, and the "necessity of payment" doctrine. Here, this Court should follow the precedent in this District and authorize, but not direct, the Debtor to pay the Prepetition Employee Obligations.

28. Failing to honor these obligations would have adverse consequences for the Debtor's ability to efficiently winddown in chapter 11. It would also inflict severe harm on the Employees who depend on the Debtor to support themselves and their families. Maintaining a focused and motivated group of Employees that is able to use its expertise to efficiently wrap up the Debtor's affairs will accrue to the benefit of all stakeholders. Authority to pay the Prepetition Employee Obligations is, therefore, necessary to maximize the value of the Debtor's estate for all creditors and stakeholders.

**A.  Payments of Prepetition Employee Obligations is Warranted Under Section 363 of the Bankruptcy Code.**

29. Courts have authorized payment of prepetition obligations under section 363 of the Bankruptcy Code where a sound business purpose exists for doing so. Specifically, under section 363 of the Bankruptcy Code, a bankruptcy court is empowered to authorize a chapter 11 debtor to

expend funds in the bankruptcy court's discretion outside the ordinary course of business. *See* 11 U.S.C. § 363. To obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use. *See Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."). To the extent the payment of prepetition wage, salary, and benefit claims were deemed to be outside the ordinary course of business, the preservation and protection of a debtor's remaining value through the retention of a debtor's employees and the maintenance of positive employee morale provide a sufficient business justification for such payment. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

30. Payment of the Prepetition Employee Obligations to retain its currently working employees and maintain positive employee morale is critical to the Debtor's ability to efficiently winddown in chapter 11. The Debtor's respectfully submit that this is a sufficient business justification for such authorization.

**B.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code Authorize Payment of Prepetition Employee Obligations.**

31. Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code require that certain claims for prepetition wages, salaries, commissions, vacation and employee benefit related contributions be accorded priority in payment in an amount not to exceed $13,650 for each individual Employee (to the extent such amounts accrued within 180 days of the Petition Date). The Debtor believes that all of the relief requested herein is within the statutory priority caps of sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code. As priority claims, the Debtor is required to pay such claims

in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B). Thus, granting the relief sought herein would affect only the timing, and not the amount of payment of the Prepetition Employee Obligations to the extent they constitute priority claims, and would not have any material negative impact on recoveries for general unsecured creditors.

C. **Applicable Law Requires Payment of the Employee Withholdings and Payment of Certain of the Prepetition Employee Obligations.**

32. The Employee Withholdings constitute funds held in trust for payment to third parties. The payment of these obligations to the appropriate authority will not prejudice the Debtor's estate because such withholdings are held in trust for the benefit of the related payees and, thus, do not constitute property of the Debtor's estate under section 541 of the Bankruptcy Code. *See* 11 U.S.C. § 541(b)(1), (d); *Begier v. IRS*, 496 U.S. 53 (1990) (concluding that withholding taxes are property held by a debtor in trust for another and are therefore not property of the debtor's estate). Further, federal and state laws require the Debtor to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing authority. 26 U.S.C. §§ 6672 & 7501(a).

33. Similarly, state laws require the Debtor to maintain the Workers' Compensation Program.

D. **Section 105 of the Bankruptcy Code and the Doctrine of Necessity Support Payment of the Prepetition Employee Obligations.**

34. Even if a particular claim is not entitled to priority, payment is nonetheless justified under section 105(a) of the Bankruptcy Code and the well-established "necessity of payment doctrine." This Court's power to use the doctrine of necessity in this chapter 11 case derives from this Court's inherent equity powers and its statutory authority to "issue any order, process, or

14

judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

35. The doctrine of necessity "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *In re Ionosphere Clubs*, 98 B.R. at 176; *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("[T]he court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a pre-petition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the chapter 11 process.").

36. The Debtor's ability to maximize value depends, in large part, upon the motivation of the Employees whose efforts will be critical to the Debtor's ability to efficiently wind down its affairs. The Employees will be required to commit much of their time and energy to efforts to wind down the Debtor's business, including closing out transactions and collecting appropriate receivables. Any disruption from Employee resignations or lack of morale could hinder the Debtor's ability to meet these objectives and increase administrative costs by forcing the Debtor's to retain independent contractors that are not familiar with the Debtor's operations. Most of the Employees (and their families) are dependent upon the wages, salaries, reimbursements, and other benefits they receive from the Debtor.

37. If amounts owed are not received or other benefits delayed, the Employees may suffer extensive personal hardship and, in some cases, will be unable to meet their "basic living" needs, causing harm to them and their families and potentially making it difficult or impossible for them to continue working for the Debtor. The Debtor believes that to maintain Employee morale

and avoid an exodus of crucial personnel, it is critical that they be authorized to pay each of their Employees all compensation amounts that have been earned under the Debtor's prepetition contractual obligations or practices, subject to the limitations described herein.

38.    Courts in this District have routinely approved the payment of prepetition claims of employee wages, salaries, expenses, and benefits in various chapter 11 cases. *See, e.g.*, *In re Frontera Holdings LLC*, No. 21-30354 (MI) (Bankr. S.D. Tex. Feb. 4, 2021) (authorizing the debtors to continue the employee compensation and benefits programs on a post-petition basis); *In re Bristow Group Inc.*, No. 19-32713 (Bankr. S.D. Tex. May 15, 2019); *In re Jones Energy, Inc.*, No. 19- 32112 (DRJ) (Bankr. S.D. Tex. Apr. 15, 2019); *In re Vanguard Natural Resources, LLC*, No. 19-31786 (DRJ) (Bankr. S.D. Tex. Apr. 2, 2019) (same); *In re Geokinetics Inc.*, No. 18-33410 (DRJ), Docket No. 56 (Bankr. S.D. Tex. June 26, 2018) (same).

39.    For the reasons set forth above, the Debtor submits that the relief requested herein is in the best interest of the Debtor, its estate, its creditors, its stakeholders and other parties in interest, and therefore, should be granted.

40.    The proposed order provides that the relief granted therein shall not constitute or be deemed an assumption under section 365 of the Bankruptcy Code of any of the employment and service agreements to which the Debtor is a party or that relate to any of the Employee Benefit Programs.

### EMERGENCY CONSIDERATION; WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

41.    Pursuant to Bankruptcy Local Rule 9013-1 and Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm," the Debtor requests emergency consideration of this Motion. The Motion requests relief from procedural

rules and requirements that pertain to matters of immediate significance or which involve deadlines sooner than 21 days after the Petition Date.  The relief will save costs and avoid undue administrative burden and confusion only if granted before the applicable deadlines.  The Debtor submits it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and requests that the Court approve the relief requested in this motion on an emergency basis.

42. To implement the foregoing successfully, the Debtor requests that the Court waive the notice requirements of Bankruptcy Rule 6004(a) and the stay imposed by Bankruptcy Rule 6004(h).  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Bankruptcy Rule 6004(h).  As described above, the relief that the Debtor seeks in this Motion is necessary to preserve value for the Debtor and its estate. Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

43. Nothing contained in this Motion is or should be construed as: (i) an admission as to the validity of any claim against the Debtor; (ii) a waiver of the Debtor's rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (v) otherwise affect the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Motion.

## **NOTICE**

44. Notice of this Motion will be given to: (i) the United States Trustee for Region 7; (ii) counsel to Macquarie Energy LLC and Macquarie Investments US Inc., in their respective capacities as secured parties and/or collateral agent under the Debtor's prepetition agreements with such parties; (iii) the Office of the Attorney General of the State of Texas; (iv) the thirty (30) largest unsecured creditors for the Debtor, including the Electric Reliability Council of Texas; (v) the Public Utilities Commission of Texas; (vi) the Internal Revenue Service; (vii) all applicable state and local taxing authorities; (viii) TriNet; (ix) the Banks; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor respectfully submits that, under the circumstances, such notice is sufficient and that no other or further notice of this Motion is required.

*[The Remainder of this Page is Intentionally Blank]*

## CONCLUSION

45. The Debtor respectfully requests that the Court a final order, substantially in the form attached hereto, granting the relief requested in this Motion and such other and further relief as may be just and equitable.

Dated: March 15, 2021
      Houston, Texas

Respectfully submitted,

**BAKER BOTTS L.L.P.**

By: */s/ David R. Eastlake*
David R. Eastlake
Texas Bar No. 24074165
*David.Eastlake@bakerbotts.com*
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

– and –

Robin Spigel (*pro hac vice* admission pending)
*Robin.Spigel@bakerbotts.com*
Chris Newcomb (*pro hac vice* admission pending)
*Chris.Newcomb@bakerbotts.com*
30 Rockefeller Plaza
New York, New York 10012-4498
Telephone: (212) 408-2500
Facsimile: (212) 259-2501

**PROPOSED COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION**

**Certificate of Accuracy**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-12(i).

*/s/ David R. Eastlake*
David R. Eastlake

**Certificate of Service**

I certify that on March 15, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ David R. Eastlake*
David R. Eastlake