## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GRIDDY ENERGY LLC,[1] | ) | Case No. 21-30923 (MI) |
|  | ) |  |
| Debtor. | ) | (Emergency Hearing Requested) |
|  | ) |  |

### DEBTOR'S <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION (III) SCHEDULING A <u>FINAL HEARING, AND (IV) GRANTING RELATED RELIEF</u>

**EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON MARCH 16, 2021 AT 11:00 AM (CT) IN COURTROOM 404, 4TH FLOOR, 515 RUSK ST., HOUSTON, TX 77002. IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**

**YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR. UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE." SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**RELIEF IS REQUESTED NOT LATER THAN MARCH 16, 2021.**

---

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

Griddy Energy LLC, as debtor and debtor in possession (the "Debtor"), in the above-captioned case (the "Chapter 11 Case"), hereby moves (the "Motion")[2] the United States Bankruptcy Court for the Southern District of Texas (the "Court") pursuant to sections 105(a), 361, 362, 363 and 507 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 4001-1 and 4002-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the Procedures for Complex Cases in the Southern District of Texas (the "Complex Case Procedures") for entry of an interim and final orders: (i) authorizing the use of Cash Collateral, (ii) granting adequate protection, (iii) scheduling a final hearing, and (iv) granting related relief.  In support of the Motion, the Debtor relies on and incorporates by reference the Declaration of Roop Bhullar in support of the Motion (the "Bhullar Declaration") filed contemporaneously herewith.  In further support of the Motion, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Debtor requires the use of its cash on hand to fund an efficient and orderly wind down of its business and the Chapter 11 Case.  The Prepetition Secured Creditors (defined below) have a first-priority security interest in all the Debtor's cash, which is perfected through an account control agreement on each of the Debtor's bank accounts.  The amount of cash in the Debtor's bank accounts exceeds the balance of the Debtor's obligations to the Prepetition Secured Creditors under the Prepetition Credit Facility (defined below).

2.      To avoid a potentially costly dispute with the Prepetition Secured Creditors over

---

[2]   Capitalized terms not otherwise defined herein shall have the same meanings as ascribed to them in the Interim Order or the *Declaration of Michael Fallquist in Support of Chapter 11 Petition and First Day Pleadings* (the "Fallquist Declaration"), as applicable.

the use of Cash Collateral and preserve the estate's resources, the Debtor negotiated in good faith with the Prepetition Secured Creditors for the consensual use of cash collateral during the Chapter 11 Case. As a result of those negotiations, the Prepetition Secured Creditors have agreed to allow the Debtor to use cash collateral subject only to modest terms and conditions, as set forth herein and the Orders (as defined below). Absent the use of cash collateral, the Debtor will suffer immediate and irreparable harm to the detriment of the Debtor, its estate and its creditors. The Debtor does not have enough working capital and financing to conduct an orderly wind down of its business without the use of cash collateral.

3.     Accordingly, for the reasons set forth herein, the Debtor respectfully requests that the Court grant the relief requested in the Motion.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.     This Court has constitutional authority to enter final orders with respect to the relief requested herein. The Debtor consents to this Court's entry of final orders or judgments on this Motion if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

6.     The predicates for the relief requested herein are sections 105(a), 361, 362, 363 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, Bankruptcy Local Rules 4001-1 and 4002-1, and the Complex Case Procedures.

**RELIEF REQUESTED**

7.    By this Motion, the Debtor seeks entry of the interim order, substantially in the form of interim order attached here to as <u>Exhibit A</u> (the "<u>Interim Order</u>"), and a final order, substantially in the form of final order attached hereto as <u>Exhibit B</u> (the "<u>Final Order</u>," and together with the Interim Order, the "<u>Orders</u>"): (i) authorizing the use of Cash Collateral, (ii) granting adequate protection, (iii) scheduling a final hearing, and (iv) granting related relief.

**RELEVANT BACKGROUND**

**A.  The Chapter 11 Case**

8.    On the date hereof (the "<u>Petition Date</u>"), the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

9.    The Debtor intends to continue in the possession of and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner or official committee has been appointed in the Debtor's Chapter 11 Case.  No date has been set yet for a meeting pursuant to section 341 of the Bankruptcy Code.

10.    A detailed description of the facts and circumstances of this Chapter 11 Case is set forth in the Fallquist Declaration filed contemporaneously with this Motion and is incorporated by reference herein.

**B.  The Prepetition Credit Facility**

11.    The Debtor and Macquarie Investments US Inc. ("<u>MIUS</u>") are parties to that certain Borrowing Base Facility Agreement, dated as of December 4, 2020 (as otherwise amended, restated, supplemented or modified through the Petition Date, the "<u>Prepetition Credit Agreement</u>" and, together with each of the Transaction Documents (as defined in the Prepetition Credit Agreement), the "<u>Prepetition Transaction Documents</u>"), pursuant to which MIUS (together with

4

the Macquarie Energy LLC, the "Prepetition Secured Creditors") provided certain Credit Extensions (as defined in the Prepetition Credit Agreement) to the Debtor (collectively, the "Prepetition Credit Facility").

12.     As of the Petition Date, the Debtor's Obligations (as defined in the Prepetition Credit Agreement) totaled not less than $1,448,937.58, *plus* the obligation to provide to Macquarie cash or credit support in the form of letters of credit acceptable to Macquarie in its sole discretion in an amount not less than $307,500.00 as collateralization for 102.5% of the full undrawn amount of all outstanding Letters of Credit (as defined in the Prepetition Credit Agreement), *plus* accrued and unpaid interest with respect to the foregoing, and any additional fees, costs, expenses (including attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Prepetition Credit Agreement) owing under or in connection with the Prepetition Transaction Documents (the "Prepetition Secured Obligations").

13.     In connection with the Prepetition Credit Facility, the Debtor entered into that certain Pledge and Security Agreement, dated as of December 4, 2020 (as amended, supplemented or otherwise modified from time to time, the "Security Agreement"), by and among the Debtor, Griddy Holdings LLC, as Pledgor, Griddy Technologies LLC and Griddy Pro LLC, as Grantors, and Macquarie Energy, as Collateral Agent (the "Collateral Agent").

14.     Pursuant to the Security Agreement and the other Prepetition Transaction Documents, the Prepetition Secured Obligations are secured by valid, binding, perfected first-priority security interests in and liens (the "Prepetition Liens") on the Collateral (as defined in the Security Agreement and referred to herein as the "Prepetition Collateral"), including substantially

all of the assets of the Debtor, including cash (the "<u>Cash Collateral</u>").

15. The Debtor holds cash in three accounts with JPMorgan Chase Bank: (i) an operating account ending in 0139 (the "<u>Operating Account</u>"), (ii) a segregated account ending in 0675 (the "<u>Segregated Account</u>"), and (iii) a revenue account ending in 2375 (the "<u>Revenue Account</u>"). All the Debtor's cash as of the Petition Date constitutes Cash Collateral of the Prepetition Secured Creditors.

**CONCISE STATEMENT PURSUANT TO BANKRUPTCY
RULE 4001 AND THE COMPLEX CASE PROCEDURES**

16. The below chart contains a summary of the material terms of the Debtor's proposed use of Cash Collateral, together with references to the applicable sections of the relevant source documents, as required by Bankruptcy Rule 4001(b) and the Complex Case Procedures.[3]

| Summary of Material Terms | | Source |
|---|---|---|
| **Parties with an Interest in Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(i) | The Prepetition Secured Creditors are the only parties that have an interest in the Cash Collateral. | Interim Order ¶ B.6; Final Order ¶ B.6. |
| **Purposes for Use of Cash Collateral and Budget**<br><br>Bankruptcy Rule 4001(b)(1)(B)(i) | The Debtor does not have enough sources of working capital and financing to conduct an orderly wind down of its business without the use of Cash Collateral. Accordingly, the Debtor seeks to use Cash Collateral pursuant to the Interim Order to fund disbursements reflected in the Initial Budget, attached hereto as <u>Exhibit C</u> and respectfully submits that authorizing the Debtor to use Cash Collateral pursuant to the terms of the Orders is in the best interests of the Debtor, its estate and its creditors. | Interim Order ¶ C; Final Order ¶ C; Motion at Ex. C. |

---

[3] Any summary of the terms and conditions of the Interim Order and the Final Order contained in this Motion is qualified in its entirety by reference to the provisions of the Interim Order and the Final Order, as applicable. The Interim Order and the Final Order will control in the event of any inconsistency between this Motion and the Interim Order and the Final Order, as applicable.

| Summary of Material Terms | | Source |
|---|---|---|
| **Restrictions Use of Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii) | The Debtor may use Cash Collateral for the Specified Period; however, the Debtor is not authorized to use Cash Collateral in the Revenue Account. | Interim Order ¶ 2; Final Order ¶ 2. |
| **Adequate Protection**<br><br>Bankruptcy Rule 4001(b)(1)(B)(vi) | The Orders provide the Prepetition Secured Creditors with the following adequate protections: (i) replacement liens, (ii) superpriority administrative claim, (iii) and periodic interest payments.  In addition, the Debtor will pay the reasonable and documented fees and expenses of counsel to the Prepetition Secured Creditors, subject to notice and an opportunity for the U.S. Trustee and any official committee to object. | Interim Order ¶ 3; Final Order ¶ 3. |
| **Additional Perfection Measures**<br><br>Bankruptcy Rule 4001(b)(1)(B)(vi) | The Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date. | Interim Order ¶ 3(a); Final Order ¶ 3(a). |
| **Collateral Rights**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii) & (iv) | Upon the occurrence and during the continuance of any Termination Event and pursuant to the procedures set forth in the Orders, the automatic stay is modified, without prior notice to or authorization of the Court, to permit the Prepetition Secured Creditors to declare a termination, reduction or restriction on the ability of the Debtor to use Cash Collateral. | Interim Order ¶ 10; Final Order ¶ 10. |
| **Carve Out**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii) | Subject to the terms and conditions contained in this paragraph, the Adequate Protection Liens and the Adequate Protection Superpriority Claim shall be subordinate to:<br><br>• all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate;<br><br>• allowed fees and expenses of estate professionals; and | Interim Order ¶ 8; Final Order ¶ 8. |

| Summary of Material Terms | | Source |
|---|---|---|
| | • following the Termination Declaration Date, estate professionals' allowed fees and expenses in an aggregate amount not to exceed $250,000. | |
| **Modification of Automatic Stay**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii) | The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all the terms and provisions of the Orders to:<br><br>• permit the Debtor to grant the Adequate Protection Obligations;<br><br>• permit the Debtor to perform such acts as the Prepetition Secured Creditors may request in their reasonable discretion to assure the perfection and priority of the liens granted in the Orders;<br><br>• permit the Debtor to incur all liabilities and obligations to the Prepetition Secured Creditors under the Orders; and<br><br>• authorize the Debtor to pay, and the Prepetition Secured Creditors to retain and apply, payments made in accordance with the terms of the Orders. | Interim Order ¶ 10; Final Order ¶ 10. |
| **Stipulations of the Debtor**<br><br>Complex Case Procedures, Ex. B | The Debtor makes certain stipulations in the Orders regarding the Prepetition Transaction Documents, including without limitation, the amount and nature of the Prepetition Secured Obligations owing thereunder and the Prepetition Liens on substantially all assets of the Debtor, including Cash Collateral. | Interim Order ¶ B; Final Order ¶ B. |
| **Binding Effect of the Debtor's Stipulations on Third Parties**<br>Bankruptcy Rule 4001(b)(1)(B)(iii); Complex Case Procedures, Ex. B. | The provisions of the Orders are binding upon and inure to the benefit of the Debtor, the Prepetition Secured Creditors, and the respective successors and assigns of each of the foregoing, including any chapter 7 or chapter 11 trustee or other fiduciary appointed or elected for the estate of the Debtor or with respect to the property of the estate of the Debtor in the Chapter 11 Case, any Successor Cases, or upon dismissal of the Chapter 11 Case or any Successor Case. | Interim Order ¶ 13; Final Order ¶ 13 |

## STATEMENT REGARDING SIGNIFICANT PROVISIONS

17.     The terms of the proposed Orders contain certain provisions (the "Significant Provisions") identified in the Complex Case Procedures as provisions to highlight in any motion to approve the use of cash collateral.  The Orders contain the following significant provisions:

a.  ***Default provisions***. The Orders set forth the following Termination Events: (i) the Debtor's failure to obtain entry of a Final Order reasonably acceptable to Macquarie within thirty (30) days of the Petition Date; (ii) the Court authorizing the Debtor's use of Cash Collateral in the Revenue Account without the Prepetition Secured Creditors' consent; (iii) the Debtor incurring an obligation *pari passu* or senior to the Adequate Protection Obligations; (iv) the Revenue account at any time being insufficient to fully secure the Prepetition Secured Obligations within three (3) business days after receipt by the Debtor of written notice of such insufficiency from the Prepetition Secured Creditors; (v) reversal, amendment, supplement, vacatur, or modification (without prior written consent of the Prepetition Secured Creditors) of the Orders; (vi) dismissal of the Chapter 11 Case, conversion of the Chapter 11 Case to a case under chapter 7, or the appointed of a trustee or other fiduciary; and (vii) failure of the Debtor to perform its obligations under the Orders and not remedying any failure for more than five (5) business days after receiving written notice thereof from the prepetition Secured Creditors.  *See* Interim Order ¶ 6; Final Order ¶ 6.

b.  ***Remedies***. Upon the occurrence and during the continuance of any Termination Event, following three-business days' prior written notice, any automatic stay otherwise applicable to the Prepetition Secured Parties is automatically modified without requiring prior notice to or authorization of the Court to the extent necessary to permit the Prepetition Secured Creditors to declare a termination, reduction or restriction on the ability of the Debtor to use any Cash Collateral. *See* Interim Order ¶ 7; Final Order ¶ 7.  Importantly, the automatic stay is not automatically modified to permit the Prepetition Secured Creditors to exercise their rights and remedies, including foreclosing on the Collateral.

c.  ***Limitations on use other than Carve-Out***.  The Debtor is not authorized to use Cash Collateral in the Revenue Account. *See* Interim Order ¶ 2; Final Order ¶ 2.

18.     In accordance with Paragraph 26 of the Complex Case Procedure, the Debtor respectfully submits that inclusion of the Significant Provisions is necessary to obtain consensual use of Cash Collateral during the Chapter 11 Case.  This will provide the Debtor with the liquidity

it needs to conduct an efficient and orderly wind down of its business and affairs and permits the Debtor to focus on more pressing issues relating to the administration of the Chapter 11 Case. Accordingly, the Significant Provisions should be approved.

## BASIS FOR RELIEF

### I.    The Use of Cash Collateral Is Warranted and Should Be Approved.

19.    The Debtor's use of property of its estate, including the Cash Collateral, is governed by section 363 of the Bankruptcy Code,[4] which provides in relevant part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

20.    Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

21.    The Debtor's ability to use Cash Collateral is essential to the success of the Chapter 11 Case to prevent disruption to the Debtor's ability to wind down its operations efficiently, minimize administrative costs and maximize amounts distributable to creditors.  Absent the use of

---

[4] Section 363(a) of the Bankruptcy Code defines "cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property . . . subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

Cash Collateral, the Debtor may not have sufficient resources to, among other things, (a) make the payments contemplated under the first day motions filed contemporaneously herewith; (b) make ordinary course payments to employees and service providers necessary to conducting an orderly wind down of its affairs; and (c) fund the administrative costs of the Chapter 11 Case. The Prepetition Secured Creditors are the only other parties that have an interest in the Cash Collateral, and they have consented to the Debtor's use of their Cash Collateral pursuant to the terms set forth in the Orders.  Accordingly, the Debtor respectfully submits that it has satisfied the standards of section 363(c)(2) of the Bankruptcy Code, the use of Cash Collateral is in the best interests of the Debtor's estate and its creditors, and the Motion should be granted.

**II.      The Debtor's Proposed Grant of Adequate Protection to Use Cash Collateral Is Appropriate.**

22.     Section 363(c)(2) of the Bankruptcy Code provides that, absent consent, a debtor may use cash collateral where "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2)(A)–(B).  Section 363(e) of the Bankruptcy Code requires that the debtor adequately protect secured creditors' interest in property to be used by a debtor against any diminution in value of such interest resulting from the debtor's use of the property during the chapter 11 proceeding.

23.     Generally, what constitutes sufficient adequate protection is decided on a case-by-case basis. *See In re Columbia Gas Sys., Inc.,* 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *In re Sw. Assocs.,* 140 B.R. 360 (Bankr. S.D.N.Y. 1992).  By granting adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in its collateral during the period of use.  *See In re Hubbard Power & Light,* 202 B.R. 680 (Bankr. E.D.N.Y. 1996); *In re 495 Cent. Park Ave. Corp*., 136 B.R. 626, 631 (Bankr.

S.D.N.Y. 1992); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Adequate

protection can come in various forms, including making periodic cash payments and granting of

additional or replacement liens. *See* 11 U.S.C. § 361.

24.     In exchange for the Prepetition Secured Creditors consenting to the Debtor's use of

Cash Collateral and to avoid unnecessary litigation and the incurrence of administrative costs

associated therewith, the Debtor has agreed to provide the Prepetition Secured Creditors with the

following modest adequate protections:  (a) granting of replacement liens on the Collateral, solely

to the extent of any diminution in the value, to the same extent, validity and priority of the liens

and security interests pursuant to the Prepetition Transaction Documents, including the Security

Agreement; (b) granting an allowed superiority administrative expense claim, as and to the extent

provided by section 503(b) and 507(b) of the Bankruptcy Code, to the extent the replacement liens

do not adequately protect against the diminution in value of the Collateral; and (c) continuing to

make monthly interest payments at the per annum rate equal to the non-default contract interest

rate under the Prepetition Credit Agreement. *See* Interim Order ¶¶ 3, 5; Final Order ¶¶ 3, 5.  In

addition, the Debtor will pay all reasonable and documented fees and expenses of counsel for the

Prepetition Secured Creditors, subject to prior notice to certain parties and an opportunity to object.

The Debtor submits that the proposed adequate protection is (a) fair and reasonable, (b) necessary

to satisfy the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and (c) in the

best interests of the Debtor and its estate.

**III.     The Scope of the Carve-Out Is Appropriate.**

25.     The proposed adequate protection is subject to the Carve-Out.  Without the Carve-

Out, the Debtor and other parties in interest may be deprived of certain rights and powers because

the services for which professionals may be paid in the Chapter 11 Case would be restricted. *See*

*In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts insist

on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). The Carve-Out does not directly or indirectly deprive the Debtor's estate or other parties in interest of possible rights and powers. Additionally, the Carve Out protects against administrative insolvency during the Chapter 11 Case by ensuring that assets remain available to satisfy fees and expenses payable to the Clerk of the Court, the U.S. Trustee, and estate professionals.

### IV.    The Automatic Stay Should Be Modified on a Limited Basis.

26.    The Orders provide that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified to permit the Debtor to grant the Adequate Protection Liens and incur the Adequate Protection Superpriority Claim, and to perform such acts as may be needed to assure the perfection and priority of such liens. The Order further provide that the automatic stay is modified to the extent necessary to allow the Debtor to pay, and the Prepetition Secured Creditors to retain and apply, any payments made in accordance with the terms of the Orders.

27.    The Orders also permits the Prepetition Secured Creditors, upon occurrence of the Termination Declaration Date, to terminate the use of Cash Collateral in accordance with the Orders. Importantly, however, the automatic stay would <u>not</u> be automatically modified to allow the Prepetition Secured Creditors to exercise their rights and remedies, including foreclosing on the Collateral. Rather, the Prepetition Secured Creditors would need to seek Court approval before exercising any rights and remedies. The Debtor has determined in its business judgment that such stay modification is appropriate under the circumstances in the context of a negotiated, consensual cash collateral order. Further, stay modifications of this kind are ordinary and are reasonable and fair under the circumstances of the Chapter 11 Case. Courts in this district have granted similar relief in other recent chapter 11 cases. *See, e.g.*, *In re Epic Companies, LLC*, No. 19-34752 (DRJ) (Bankr. S.D. Tex. Aug. 27, 2019); *In re PetroQuest Energy, Inc.*, No. 18-36322 (MI) (Bankr. S.D.

Tex. Dec. 3, 2018); *In re Fieldwood Energy, LLC*, No. 18-30648 (DRJ) (Bankr. S.D. Tex. Mar. 13, 2018); *In re Seadrill Limited*, No. 17-60079 (DRJ) (Bankr. S.D. Tex. Sept. 13, 2017).

## V. Failure to Obtain Approval for the Use of Cash Collateral Would Cause Immediate and Irreparable Harm.

28.     Bankruptcy Rule 4001(b) and (c) provide that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after service of such motion. The Court, however, is authorized to conduct an expedited hearing prior to the expiration of such 14-day period and to authorize the use of cash collateral where, as here, such relief is necessary to avoid immediate and irreparable harm to the debtor's estate. *See* FED. R. BANKR. P. 4001(b)(2). Section 363(c)(3) of the Bankruptcy Code authorizes the Court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3). Furthermore, the Complex Case Procedures provide that "a hearing will routinely be conducted as a first day hearing to consider either cash collateral use and/or interim debtor-in-possession financing." Complex Case Procedures, ¶ 23.

29.     Pending the final hearing, the Debtor requires immediate access to and use of Cash Collateral in order to provide the Debtor with the liquidity it needs to immediately take all affirmative steps necessary to conduct an orderly and efficient wind down of its business and affairs.

30.     In light of the foregoing, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 4001(b) and (c) to support immediate access to Cash Collateral and the pending the entry of the Final Order, and respectfully request that the Court grant the relief requested herein and authorize the immediate use of the Cash Collateral pursuant to the terms and

conditions set forth in the Interim Order.

**VI.    Final Hearing**

31.     The Debtor further respectfully requests that the Court set a date and time for a final

hearing on the Debtor's use of Cash Collateral no later than 21 days after entry of the Interim Order

or as soon thereafter as the Court's schedule permits.

**EMERGENCY CONSIDERATION;
WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)**

32.     Pursuant to Bankruptcy Local Rule 9013-1 and Bankruptcy Rule 6003, which

empowers a court to grant relief within the first 21 days after the commencement of a chapter 11

case "to the extent that relief is necessary to avoid immediate and irreparable harm," the Debtor

requests emergency consideration of this Motion.  The Motion requests relief from procedural

rules and requirements that pertain to matters of immediate significance or which involve deadlines

sooner than 21 days after the Petition Date.  The relief will save costs and avoid undue

administrative burden and confusion only if granted before the applicable deadlines.  The Debtor

submits it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003

and requests that the Court approve the relief requested in this motion on an emergency basis.

33.     To implement the foregoing successfully, the Debtor respectfully requests that the

Court waive the notice requirements of Bankruptcy Rule 6004(a) and the stay imposed by

Bankruptcy Rule 6004(h).  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use,

sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after

entry of the order, unless the court orders otherwise."  Bankruptcy Rule 6004(h).  As described

above, the relief that the Debtor seeks in this Motion is necessary to preserve value for the Debtor

and its estate.  Accordingly, the Debtor respectfully requests that the Court waive the fourteen-day

stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

34.     Nothing contained in this Motion is or should be construed as:  (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (e) otherwise affect the Debtor's rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Motion.

## NOTICE

35.     Notice of this Motion will be given to: (a) the United States Trustee for Region 7; (b) counsel to Macquarie Energy LLC and Macquarie Investments US Inc., in their respective capacities as secured parties and/or collateral agent under the Debtor's prepetition agreements with such parties; (c) the Office of the Attorney General of the State of Texas; (d) the thirty (30) largest unsecured creditors for the Debtor, including the Electric Reliability Council of Texas; (e) the Public Utilities Commission of Texas; (f) the Internal Revenue Service; (g) the Taxing Authorities and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtor respectfully submits that such notice is sufficient under the circumstances and that no other or further notice of this Motion need be given.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court approve the relief sought in this Motion and grant further relief as may be just and equitable.

Dated: March 15, 2021
       Houston, Texas

                    Respectfully submitted,

                    **BAKER BOTTS L.L.P.**

                    By: */s/ David Eastlake*
                    David R. Eastlake
                    Texas Bar No. 24074165
                    *David.Eastlake@bakerbotts.com*
                    910 Louisiana Street
                    Houston, Texas 77002-4995
                    Telephone: (713) 229-1234
                    Facsimile: (713) 229-1522

                    – and –

                    Robin Spigel (*pro hac vice* admission pending)
                    *Robin.Spigel@bakerbotts.com*
                    Chris Newcomb (*pro hac vice* admission pending)
                    *Chris.Newcomb@bakerbotts.com*
                    30 Rockefeller Plaza
                    New York, New York 10012-4498
                    Telephone: (212) 408-2500
                    Facsimile: (212) 259-2501

                    **PROPOSED COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION**

## CERTIFICATE OF ACCURACY

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

By: */s/ David Eastlake*

David R. Eastlake


## CERTIFICATE OF SERVICE

I certify that on March 15, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

By: */s/ David Eastlake*

David R. Eastlake