IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |   |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| GRIDDY ENERGY LLC,[1] | ) ) | Case No. 21-30923 (MI) |
| Debtor. | ) ) ) |   |

### DECLARATION OF ROOP BHULLAR IN SUPPORT OF THE DEBTOR'S EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF

I, Roop Bhullar, hereby declare under penalty of perjury:

1. I am authorized to make this declaration (the "Declaration") in my capacity as the Chief Financial Officer of Griddy Energy LLC, the above-captioned debtor and debtor in possession (the "Debtor"). I have served in my current role since December 4, 2020. I am familiar with the prepetition operations of the Debtor and, based on my discussions with the Debtor's professionals, the steps that are needed to be taken to efficiently and orderly wind down the Debtor's business and affairs in order to best situate the Debtor to maximize value for all of its creditors.

2. I am competent in all respects to make this Declaration, which I submit for all permissible purposes under the Federal Rules of Bankruptcy Procedure and the Federal Rules of Evidence in support of the Debtor's *Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a*

---

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

*Final Hearing, and (IV) Granting Related Relief* (the "Motion").[2]  Except as otherwise stated herein, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

3. The statements in this Declaration are, except as otherwise indicated, based on my personal knowledge or views, on information that I have obtained from the Debtor's advisors, the Debtor's books and records, and employees of the Debtor working directly with me and under my supervision.

## EDUCATIONAL BACKGROUND AND QUALIFICATIONS

4. Prior to my appointment as Chief Financial Officer of the Debtor, I was the Chief Financial Officer of Crius Energy Trust, a publicly-listed retail energy provider, and served in that role for over nine years until the business was acquired in July 2019. I have held various accounting and finance positions over the last 20 years, including at two other retail energy businesses as well as at a Big Four public accounting firm. I hold a Bachelor of Management Studies and Bachelor of Laws from the University of Waikato, New Zealand and a Master of Business Administration degree from University of California, Los Angeles.

## PREPETITION CREDIT FACILITY

5. The Debtor and Macquarie Investments US Inc. ("MIUS") are parties to that certain Borrowing Base Facility Agreement, dated as of December 4, 2020 (as otherwise amended, restated, supplemented or modified through the Petition Date, the "Prepetition Credit Agreement" and, together with each of the Transaction Documents (as defined in the Prepetition Credit Agreement), the "Prepetition Transaction Documents"), pursuant to which MIUS (together with the Macquarie Energy LLC, the "Prepetition Secured Creditors") provided certain Credit

---

[2] Capitalized terms not otherwise defined herein shall have the same meanings as ascribed to them in the Motion.

2

Extensions (as defined in the Prepetition Credit Agreement) to the Debtor (collectively, the "Prepetition Credit Facility").

6. As of the Petition Date, the Debtor's Obligations (as defined in the Prepetition Credit Agreement) totaled not less than $1,448,937.58, *plus* the obligation to provide to Macquarie cash or credit support in the form of letters of credit acceptable to Macquarie in its sole discretion in an amount not less than $307,500.00 as collateralization for 102.5% of the full undrawn amount of all outstanding Letters of Credit (as defined in the Prepetition Credit Agreement), *plus* accrued and unpaid interest with respect to the foregoing, and any additional fees, costs, expenses (including attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Prepetition Credit Agreement) owing under or in connection with the Prepetition Transaction Documents (the "Prepetition Secured Obligations").

7. In connection with the Prepetition Credit Facility, the Debtor entered into that certain Pledge and Security Agreement, dated as of December 4, 2020 (as amended, supplemented or otherwise modified from time to time, the "Security Agreement"), by and among the Debtor, Griddy Holdings LLC, as Pledgor, Griddy Technologies LLC and Griddy Pro LLC, as Grantors, and Macquarie Energy, as Collateral Agent (the "Collateral Agent").

8. I understand that pursuant to the Security Agreement and the other Prepetition Transaction Documents, the Prepetition Secured Obligations are secured by valid, binding, perfected first-priority security interests in and liens on the Collateral (as defined in the Security Agreement). It is also my understanding that these liens extend to substantially all the Debtor's assets, including cash collateral.

9.  The Debtor holds cash in three accounts with JPMorgan Chase Bank: (i) an operating account ending in 0139 (the "Operating Account"), (ii) a segregated account ending in 0675 (the "Segregated Account"), and (iii) a revenue account ending in 2375 (the "Revenue Account"). All the Debtor's cash as of the Petition Date constitutes cash collateral of the Prepetition Secured Creditors.

## DEBTOR'S NEED FOR AUTHORIZATION TO USE CASH COLLATERAL

10.  It is my belief that the Debtor requires the use of Cash Collateral to fund the orderly wind down of its business and affairs as well as the Chapter 11 Case, absent which immediate and irreparable harm would result to the Debtor, its estate and its creditors. Absent the use of Cash Collateral, it would be impossible for the Debtor to orderly wind down its operations in a manner that preserves—to the greatest extent possible—the value of the Debtor's assets for the benefit of creditors. The Debtor does not have enough sources of working capital and financing to conduct an orderly and efficient wind down of its business and affairs, nor to fund this Chapter 11 Case, without the use of Cash Collateral.

11.  I believe the Debtor's ability to use Cash Collateral is essential to the success of the Chapter 11 Case to prevent any disruption to the Debtor's ability to wind down its operations efficiently, minimize administrative costs and maximize amounts distributable to creditors. Absent the use of Cash Collateral, the Debtor may not have sufficient resources to, among other things, (a) make the payments contemplated under the first day motions filed contemporaneously herewith; (b) make ordinary course payments to employees and service providers necessary to conducting an orderly wind down of its affairs; and (c) fund the administrative costs of the Chapter 11 Case. The Prepetition Secured Creditors are the only other parties that have an interest in the Cash Collateral, and they have consented to the Debtor's use of their Cash Collateral on the terms

and conditions set forth in the Motion and the Orders. Accordingly, I believe authorizing the Debtor to use Cash Collateral is in the best interests of the Debtor's estate and its creditors, and that the Motion should be granted.

12. As stated herein and pending the final hearing, the Debtor requires immediate access to and use of Cash Collateral in order to provide the Debtor with the liquidity it needs to immediately take all affirmative steps necessary to conduct an orderly and efficient wind down of its business and affairs that preserves value for all stakeholders.

## CONCLUSION

13. In summation, based on my experience in general and my involvement with the Debtor as its Chief Financial Officer, it is my view that consensual use of cash collateral, on the terms and conditions set forth in the Motion and the Order, is necessary for conducting an orderly and efficient wind down of the Debtor's business and affairs in a manner aimed at preserving value and maximizing distributions to creditors. It is also my view that the proposed adequate protection being granted to the Prepetition Secured Creditors in connection with granting of the Motion is reasonable under the circumstances. Finally, I believe that the negotiation process for the consensual use of cash collateral was conducted in good faith and at arms' length.

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: March 15, 2021

    /s/ *Roop Bhullar*
Roop Bhullar
Chief Financial Officer
Griddy Energy LLC