**Nothing contained herein shall constitute an offer, acceptance or a legally binding obligation of Griddy Energy LLC or any other party in interest.  The Plan is subject to approval of the Bankruptcy Court and other customary conditions.  The Plan is not an offer with respect to any securities.  This is not a solicitation of acceptances or rejections of the Plan.  Acceptances or rejections with respect to the Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the Southern District of Texas.  Such a solicitation will only be made in compliance with applicable law.  YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE APPROVAL OF THE PLAN BY THE BANKRUPTCY COURT**.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GRIDDY ENERGY LLC,[1] | ) | Case No. 21-30923 (MI) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**PLAN OF LIQUIDATION FOR GRIDDY ENERGY LLC**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

David Eastlake, Texas Bar No. 24074165
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229.1234
Facsimile: (713) 229.1522
Email:  *david.eastlake@bakerbotts.com*

Robin Spigel (*pro hac vice* admission pending)
Chris Newcomb (*pro hac vice* admission pending)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York   10112-4498
Telephone:  (212) 408-2500
Facsimile:  (212) 408-2501
Email:  *robin.spigel@bakerbotts.com*
          *chris.newcomb@bakerbotts.com*

Dated: March 15, 2021

---

[1]    The last four digits of the Debtor's federal tax identification number are 1396.  The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

## Table of Contents

**Page**

ARTICLE I DEFINITIONS AND CONSTRUCTION OF TERMS .............................................1

   A.   Definitions...............................................................................................................1
   B.   Interpretation; Application of Definitions and Rules of Construction..................11
   C.   Appendices and Plan Documents...........................................................................12

ARTICLE II ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, U.S. TRUSTEE
FEES AND PRIORITY TAX CLAIMS .......................................................................................12

   2.01   Administrative Expense Claims............................................................................13
   2.02   Time for Filing Administrative Expense Claims ..................................................13
   2.03   Fee Claims ............................................................................................................14
   2.04   U.S. Trustee Fees ..................................................................................................14
   2.05   Priority Tax Claims...............................................................................................14

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS .........................................15

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS .................................................15

   4.01   CLASS 1 – PREPETITION LENDER CLAIMS ...............................................15
   4.02   CLASS 2 – OTHER SECURED CLAIMS .........................................................16
   4.03   CLASS 3 –PRIORITY NON-TAX CLAIMS .....................................................16
   4.04   CLASS 4 – OTHER GENERAL UNSECURED CLAIMS .................................17
   4.05   CLASS 5 – CUSTOMER CLAIMS ...................................................................17
   4.06   CLASS 6 – INTERCOMPANY CLAIMS .........................................................18
   4.07   CLASS 7 – EXISTING HOLDCO INTERESTS ...............................................18

ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS .........................18

   5.01   Class Acceptance Requirement..............................................................................18
   5.02   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or
            "Cramdown" ..........................................................................................................18
   5.03   Elimination of Vacant Classes ..............................................................................18
   5.04   Voting Classes; Deemed Acceptance by Non-Voting Classes ..............................19

ARTICLE VI IMPLEMENTATION OF THE PLAN ..................................................................19

   6.01   The Liquidating Debtor..........................................................................................19
   6.02   Officers, Managing Member..................................................................................19
   6.03   Operating Agreement Amendments ......................................................................19
   6.04   Plan Funding ..........................................................................................................19
   6.05   Cancellation of Existing Securities and Agreements.............................................20
   6.06   Cancellation of Existing Security Interests...........................................................20
   6.07   Approval of Plan Documents.................................................................................20
   6.08   Comprehensive Settlement of Claims and Controversies......................................20
   6.09   Wind Down of the Estate and Distribution of Proceeds .......................................20
   6.10   Intercompany Claims ............................................................................................21

ARTICLE VII PLAN ADMINISTRATOR....................................................................................21

   7.01   General ...................................................................................................................21

i

7.02    Qualifications; Plan Administrator Agreement ....................................................21
7.03    Powers and Duties.............................................................................................22
7.04    Resignation, Death or Removal of Plan Administrator ......................................23
7.05    Liquidation of the Debtor..................................................................................23
7.06    Termination of the Plan Administrator...............................................................23
ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ..........23

8.01    Disbursing Agent..............................................................................................23
8.02    Distributions of Cash .......................................................................................24
8.03    Timing of Distributions.....................................................................................24
8.04    Holders as of the Distribution Record Date ......................................................24
8.05    Distributions to Address of Record....................................................................24
8.06    No Postpetition Interest on Claims; No More than Payment in Full ...................24
8.07    Minimum Distributions......................................................................................25
8.08    Withholding Taxes ............................................................................................25
8.09    Time Bar to Cash Payments by Check ..............................................................25
8.10    No Payments of Fractional Dollars....................................................................25
8.11    Setoff and Recoupment.....................................................................................26
8.12    Unclaimed Distributions ...................................................................................26
ARTICLE IX PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND
UNLIQUIDATED CLAIMS OR EQUITY INTERESTS..............................................................26

9.01    Objections to Claims .........................................................................................26
9.02    Amendments to Claims ......................................................................................26
9.03    Estimation of Claims;  Certain Reserves ...........................................................27
9.04    Disputed Claims................................................................................................27
9.05    Plan Distributions to Holders of Subsequently Allowed Claims.........................28
9.06    Insurance Preservation and Proceeds................................................................28
9.07    Allocation of Plan Distributions Between Principal and Interest .......................29
9.08    No Recourse ......................................................................................................29
9.09    Satisfaction of Claims and Interests..................................................................29
ARTICLE X EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................29

10.01   Rejection or Assumption and Retention or Assignment......................................29
10.02   Cure of Defaults ...............................................................................................30
10.03   Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
        Unexpired Leases Rejected Pursuant to the Plan................................................31
10.04   Indemnification of Directors, Officers and Employees ......................................31
ARTICLE XI CONDITIONS PRECEDENT.................................................................................32

11.01   Conditions to Confirmation ..............................................................................32
11.02   Conditions Precedent to the Effective Date .......................................................32
11.03   Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic
        Stay ..................................................................................................................33
ARTICLE XII EXCULPATION, INJUNCTION AND RELATED PROVISIONS
EFFECT OF CONFIRMATION....................................................................................................33

12.01   Binding Effect ...................................................................................................33
12.02   Vesting of Assets ...............................................................................................33
12.03   *Release of Claims Against and Interests in the Debtor* .......................................33

12.04   Term of Pre-Confirmation Injunctions or Stays ..................................................34
12.05   Injunction Against Interference With Plan .......................................................34
12.06   Injunction ........................................................................................................34
12.07   Releases.............................................................................................................35
12.08   Exculpation and Limitation of Liability ..........................................................36
12.09   Injunction Related to Releases and Exculpation...............................................36
12.10   Agreement by Holders of Participating Customers; Release of Certain
        Customer Collections .......................................................................................37
12.11   Termination of Subordination Rights and Settlement of Related Claims............37
12.12   Retention of Causes of Action/Reservation of Rights ......................................38
12.13   Releases of Liens ..............................................................................................38
ARTICLE XIII RETENTION OF JURISDICTION ....................................................................38

13.01   Scope of Bankruptcy Court Jurisdiction ...........................................................38
ARTICLE XIV MISCELLANEOUS PROVISIONS ....................................................................39

14.01   Effectuating Documents and Further Transactions...........................................39
14.02   Corporate Action ..............................................................................................40
14.03   Exemption from Transfer Taxes........................................................................40
14.04   Payment of Statutory Fees; Post Confirmation Reporting.................................40
14.05   Disallowance of Existing Securities Law Claims..............................................40
14.06   Post-Effective Date Fees and Expenses ...........................................................40
14.07   Amendment or Modification of this Plan ..........................................................40
14.08   Revocation or Withdrawal of this Plan .............................................................41
14.09   Termination of Professionals ............................................................................41
14.10   Dissolution of any Committee ..........................................................................41
14.11   Confirmation Order ...........................................................................................41
14.12   Severability .......................................................................................................41
14.13   Inconsistency.....................................................................................................42
14.14   Governing Law ..................................................................................................42
14.15   Binding Effect ...................................................................................................42
14.16   Exhibits/Schedules............................................................................................42
14.17   Filing of Additional Documents .......................................................................42
14.18   Notices ..............................................................................................................42
14.19   Reservation of Rights........................................................................................43

Griddy Energy LLC, as debtor and debtor in possession, proposes the following liquidating plan under section 1121(a) of title 11 of the United States Code:

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

A.    <u>Definitions</u>.  As used herein, the following terms have the respective meanings specified below (such meanings to be equally applicable to both the singular and plural):

1.01    <u>Administrative Bar Date</u> has the meaning set forth in Section 2.02 of this Plan.

1.02    <u>Administrative Expense Claim</u> means any right to payment constituting a cost or expense of administration of the Chapter 11 Case of the kind specified in section 503(b) of the Bankruptcy Code, and entitled to priority pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code (other than a Fee Claim or U.S. Trustee Fees) for the period from the Petition Date to the Effective Date, including, without limitation: (a) any actual and necessary costs and expenses of preserving the Estate, any actual and necessary costs and expenses of winding down the Debtor's business, and (b) any indebtedness or obligations incurred or assumed by the Debtor during the Chapter 11 Case.

1.03    <u>Allowed</u> means any Claim (or portion thereof) (a) either (i) proof of which has been timely filed with the Bankruptcy Court or has been deemed timely filed by a Final Order; or (ii) if not so filed, scheduled by the Debtor (as the Schedules have been or may be amended from time to time in accordance with Bankruptcy Rule 1009) other than as disputed, contingent or unliquidated; and (b) allowed by a Final Order, by this Plan or because no party in interest timely has filed an objection, including an Omnibus Claims Objection, filed a motion to equitably subordinate, or otherwise sought to limit recovery or alter priority on such Claim; <u>provided</u>, <u>however</u>, that any Claim listed on the Schedules that has been paid by the Debtor (x) after the Petition Date pursuant to order of the Bankruptcy Court, (y) before the Petition Date and was inadvertently listed in the Schedules, shall not be considered an Allowed Claim. Notwithstanding anything herein to the contrary, Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under this Plan, include interest on such Administrative Expense Claim or Claim from and after the Petition Date.

1.04    <u>Allowed [Class Designation/Type] Claim/Interest</u> means a Claim or Interest, as applicable, that is Allowed in a specified class or of a specified type.

1.05    <u>Allowed Secured Claim</u> means an Allowed Prepetition Lender Claim and/or an Allowed Other Secured Claim, as the context requires, in each case, to the extent such Claim is secured by Collateral.

1.06    <u>Available Cash</u> means (a) all Cash of the Debtor less (b) the amount of Cash (i) necessary to pay holders of Allowed Prepetition Lender Claims, Other Secured Claims Administrative Expense Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims to

1

the extent provided in, and in accordance with, this Plan, and (ii) estimated and reserved by the Debtor to (x) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan on and after the Effective Date, including the fees and expenses of the Liquidating Debtor (including Plan Administrator Expenses) and all other Wind Down Costs in accordance with the Wind Down Budget, (y) pay all U.S. Trustee Fees, and (z) fund and maintain any postpetition reserve requirements in connection with any agreements or otherwise. Unless the Debtor determines in its reasonable discretion that the following is required to fund the amounts set forth in this Section 1.06(b), Available Cash shall include the applicable portions of (1) excess amounts retained for Disputed Claims that become available in accordance with Section 9.04]of this Plan and (2) amounts represented by undeliverable Distributions in accordance with Section 8.12 of the Plan.

1.07    Avoidance Actions means any avoidance, equitable subordination or recovery actions or proceedings under chapter 5 of the Bankruptcy Code (e.g., 502(d), 510, 542 through 551, and 553) or applicable state law.

1.08    Ballot means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject this Plan, on which is to be indicated acceptance or rejection of this Plan.

1.09    Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

1.10    Bankruptcy Court means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, having jurisdiction over the Chapter 11 Case.

1.11    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and the Local Rules of the Bankruptcy Court.

1.12    Bar Date means the applicable deadline for filing proofs of Claim, including, without limitation, Claims arising prior to the Petition Date (including 503(b)(9) Claims) and Administrative Expense Claims, as established by an order of the Bankruptcy Court or under this Plan.

1.13    Bar Date Order means the order of the Court, dated [_____], 2021, that, among other things, sets the general and governmental unit Bar Date in respect of Claims arising prior to the Petition Date.

1.14    Business Day means any day other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.15    Cash means legal tender of the United States of America and equivalents thereof.

1.16    Causes of Action means, without limitation, any and all actions, causes of action, Avoidance Actions, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever owned by the Debtor, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or

undisputed, secured or unsecured, whether assertable directly, indirectly, derivatively or in any representative or other capacity, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, failure to act, error, omission, transaction, occurrence or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

1.17    Chapter 11 Case means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor, which is under case caption Griddy Energy LLC, Chapter 11, Case No. 21-30923 and is currently pending before the Bankruptcy Court.

1.18    Claim means any "claim" (as defined in section 101(5) of the Bankruptcy Code) against the Debtor, including, without limitation, any Claim arising after the Petition Date.

1.19    Claims Agent means Bankruptcy Management Solutions, Inc. d/b/a Stretto, or any other entity approved by the Bankruptcy Court to act as the Debtor's claims and noticing agent pursuant to 28 U.S.C. § 156(c).

1.20    Class means each category of Claims or Interests established under Article III of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.21    Class 4 Distribution means, as of any given Distribution Date, (a) the aggregate amount of Available Cash and (b) any Net Recovery Proceeds.

1.22    Collateral means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

1.23    Collateral Agent means Macquarie Energy LLC, in its capacity as collateral agent for the Prepetition Secured Lenders.

1.24    Committee means any statutory committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, as the same may be reconstituted from time to time.

1.25    Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.26    Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

1.27    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129, which shall be in form and substance acceptable to the Debtor and the Collateral Agent.

1.28    Cure Amounts has the meaning set forth in Section 10.02 of this Plan.

1.29    Cure Dispute has the meaning set forth in Section 10.02 of this Plan.

1.30    <u>Cure Schedule</u> has the meaning set forth in Section 10.02 of this Plan.

1.31    <u>Customer Claim</u> means any unsecured nonpriority claim of a former customer of the Debtor against the Debtor; <u>provided</u> that the foregoing shall not include:  (a) a Prepetition Lender Claim, (b) an Other Secured Claim, (c) an Administrative Expense Claim, (d) a Fee Claim, (e) a Priority Claim, (f) a Priority Non-Tax Claim, (g) an Other General Unsecured Claim, (h) an Intercompany Claim, (i) an Existing Securities Law Claim, and (j) U.S. Trustee Fees, and shall not include Claims that are not Allowed or are released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of the Plan or otherwise; <u>provided</u> that, notwithstanding the foregoing exclusions, (x) the Customer Claim of a Non-Participating Customer shall be classified and treated as an Other General Unsecured Claim solely if such Non-Participating Customer properly and timely filed an unsecured nonpriority claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order, and (y) if the Bankruptcy Court does not approve the Customer Releases pursuant to Bankruptcy Rule 9019 through this Plan or otherwise, than each Participating Customer will not have an Allowed Class 5 Claim and, solely if such Participating Customer properly and timely filed an unsecured nonpriority claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order, such Customer Claim shall be classified and treated as an Other General Unsecured Claim.

1.32    <u>Customer Releases</u> means the mutual releases by and among the Participating Customers, on the one hand, and the Released Parties, on the other hand, whereby (i) the Debtor and each other Released Party releases and waives all Claims against each Participating Customer, solely in its capacity as such, including, for unpaid amounts owed by such Participating Customer to the Debtor for the electricity and related fees, taxes, expenses and other costs charged to such customers for the period February 15, 2021 through and including February 19, 2021 when the Public Utilities Commission of Texas imposed the $9,000 per MWh price for wholesale power; and (ii) each Participating Customer releases and waives all Claims against each of the Released Parties relating to the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator, the Chapter 11 Case, the Plan or the Disclosure Statement, including, any claims for any loss a Participating Customer may suffer, have suffered or be alleged to suffer as a result of or relating to the Participating Customer's agreements with the Debtor as well as the electricity and related fees, taxes and costs charged to such customers for any period while they were a customer of the Debtor, including, the period February 15, 2021 through and including February 19, 2021 when the Public Utilities Commission of Texas imposed the $9,000 per MWh price for wholesale power.

1.33    <u>Debtor(s)</u> means Griddy Energy LLC, prior to the Effective Date, and the Liquidating Debtor from and after the Effective Date, as the context requires.

1.34    <u>Disallowed</u> means a finding of the Bankruptcy Court in a Final Order, which may include one or more orders granting one or more Omnibus Claims Objections, or provision in the Plan providing that a Disputed Claim shall not be an Allowed Claim.

1.35    <u>Disbursing Agent</u> means, for purposes of making distributions under the Plan, the Debtor or a designee thereof (including the Plan Administrator).

1.36    <u>Disclosure Statement</u> means the disclosure statement relating to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time (including, without limitation, all exhibits and schedules thereto).

1.37    <u>Disputed</u> means, as of any relevant date, any Claim or Interest, or any portion thereof: (a) that is not an Allowed Claim, Allowed Interest, Disallowed Claim or Disallowed Interest as of the relevant date; or (b) for which a proof of Claim or Interest has been filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtor or any party in interest has interposed a timely objection, including an Omnibus Claims Objection, or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the relevant date.

1.38    <u>Disputed Claims Reserves</u> means, collectively, the Disputed Other General Unsecured Claims Reserve and the Disputed Priority Claims Reserve.

1.39    <u>Disputed Other General Unsecured Claims Reserve</u> has the meaning set forth in Section 9.04(c) of this Plan.

1.40    <u>Disputed Priority Claims Reserve</u> has the meaning set forth in Section 9.04(b) of this Plan.

1.41    <u>Distribution</u> means a distribution of Cash or other property pursuant to this Plan.

1.42    <u>Distribution Date</u> means any date that is: (a) the Effective Date; (b) the Initial Distribution Date; (c) any Interim Distribution Date; or (d) the Final Distribution Date, as the context requires.

1.43    <u>Distribution Record Date</u> means the Confirmation Date, or such other later date as shall be established by the Bankruptcy Court in the Confirmation Order.

1.44    <u>Effective Date</u> means the first Business Day as soon as reasonably practicable after all conditions to the occurrence of the Effective Date set forth in Section 11.02 hereof have been satisfied or waived, and no stay of the Confirmation Order is in effect.

1.45    <u>Estate</u> means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.46    <u>Estimation Order</u> means an order or orders of the Bankruptcy Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim.  The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

1.47    <u>Existing HoldCo Interests</u> means the Interests in the Debtor outstanding immediately prior to the Effective Date.

1.48    <u>Existing Securities Law Claim</u> means any Claim, whether or not the subject of an existing lawsuit: (a) arising from rescission of a purchase or sale of any securities of the Debtor

or an affiliate of the Debtor; (b) for damages arising from the purchase or sale of any such security; (c) for violations of the securities laws, misrepresentations, or any similar Claims, including, to the extent related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims; or (d) except as otherwise provided for in this Plan, including Section 10.04 hereof, for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of any such Claim.

1.49    Fee Claim means a Claim by a Professional Person for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Chapter 11 Case, including, without limitation, in connection with the final fee applications of such Professional Person.

1.50    Final Distribution means the distribution to be made by the Disbursing Agent after the Debtor's assets have been reduced to Cash, abandoned or otherwise disposed of, and the Debtor has resolved all Disputed Claims and paid all Fee Claims approved by the Bankruptcy Court by Final Order.

1.51    Final Distribution Date means the date upon which the Final Distribution occurs.

1.52    Final Order means an order or judgment, as entered on the docket of the applicable court, that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely-filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought;  provided, however, that the possibility that a motion under Rule 50 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Civil Procedure or Bankruptcy Rules, may be filed relating to such order, ruling or judgment shall not cause such order, ruling or judgment not to be a Final Order; provided, further, that no order or judgment shall fail to be a Final Order solely because of the susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code.

1.53    HoldCo means Griddy Holdings LLC, the direct parent company of the Debtor.

1.54    Initial Distribution Date means, except as set forth in this Plan, the first Business Day 20 days after the Effective Date, or such longer or shorter period as may be reasonably determined by the Debtor, to make initial Distributions under this Plan.

1.55    Intercompany Claim means a Claim, Cause of Action or remedy held or asserted by or against the Debtor by a non-Debtor affiliate of the Debtor.

1.56    Intercreditor Agreement means the Macquarie Intercreditor Agreement, dated as of December 4, 2020, among the Prepetition Secured Lenders, the Collateral Agent, HoldCo, the Debtor and certain non-Debtor affiliates of the Debtor.

1.57    Interest means the interest (whether legal, equitable, contractual or other rights) of any holders of any class of equity securities of the Debtor represented by membership interests

or other instruments evidencing an ownership interest in the Debtor, whether or not certificated, transferable, voting or denominated "unit" or a similar security, and any Claim or Cause of Action related to or arising from the foregoing, or any option, warrant or right, contractual or otherwise, to acquire any such interest.

1.58     <u>Interim Distribution Date</u> means any date, other than the Final Distribution Date, after the Initial Distribution Date on which the Debtor determines that an interim distribution should be made to holders of Allowed Claims in light of, inter alia, resolutions of Disputed Claims and the administrative costs of such a distribution.

1.59     <u>Lien</u> shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

1.60     <u>Liquidating Debtor</u> means the Debtor and its respective Estate from and after the Effective Date.

1.61     <u>Net Recovery Proceeds</u> means the Cash or other amounts received by the Debtor, if any, from the pursuit of any Cause of Action (formally or informally) not released under this Plan, net of all costs and expenses deducted therefrom, to be distributed (Pro Rata) to holders of Allowed Other General Unsecured Claims, subject to all Claims of a higher priority being paid in full or adequate reserves being set aside in accordance with this Plan.

1.62     <u>Non-Debtor Affiliates</u> means the Debtor's non-debtor affiliates, including, HoldCo, Griddy Technologies LLC, Griddy Pro LLC, Griddy VI Holdings LLC and Griddy VI Series A Holdings LLC.

1.63     <u>Non-Participating Customer</u> means any holder of a Customer Claim in Class 5 that votes to reject the Plan.

1.64     <u>Omnibus Claims Objection</u> means one or more omnibus objections to Claims pursuant to Bankruptcy Rule 3007 or other applicable law objecting to or otherwise reconciling Claims filed against the Debtor.

1.65     <u>Other General Unsecured Claim</u> means any unsecured nonpriority claim against the Debtor, other than: (a) a Prepetition Lender Claim, (b) an Other Secured Claim, (c) an Administrative Expense Claim, (d) a Fee Claim, (e) a Priority Claim, (f) a Priority Non-Tax Claim, (g) a Customer Claim, (h) an Intercompany Claim, (i) an Existing Securities Law Claim, and (j) U.S. Trustee Fees, and shall not include Claims that are not Allowed or are released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of the Plan or otherwise; <u>provided</u> that, notwithstanding the foregoing exclusions, (x) the Customer Claim of a Non-Participating Customer shall be classified and treated as an Other General Unsecured Claim solely if such Non-Participating Customer properly and timely filed an unsecured nonpriority claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order, and (y) if the Bankruptcy Court does not approve the Customer Releases pursuant to Bankruptcy Rule 9019 through this Plan or otherwise, than each Participating Customer will not have an Allowed Class 5 Claim and, solely if such Participating Customer properly and timely filed an unsecured nonpriority claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order, such Customer Claim shall be classified and treated as an Other General Unsecured Claim.

1.66    Other Secured Claims means any Secured Claim against the Debtor other than a Prepetition Lender Claim.

1.67    Outstanding LC means the irrevocable standby letter of credit (ending 120) issued pursuant to the Prepetition Lender BBFA in favor of EDF Trading North America, LLC by order and for the account of the Debtor in the aggregate amount of $300,000, which letter of credit expires on September 25, 2021.

1.68    Participating Customer means any holder of a Customer Claim that votes to accept the Plan or abstains from voting.

1.69    Person means any individual, corporation, partnership, association, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, Interest holder, or any other entity or organization of whatever nature.

1.70    Petition Date means March 15, 2021.

1.71    Plan means this chapter 11 liquidating plan, including the Plan Supplement and all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended, or modified from time to time.

1.72    Plan Administrator means the responsible officer, acting in his or her capacity as such, designated by the Debtor (or any Bankruptcy Court approved successor) to serve as the sole officer of the Debtor who shall, among other things, implement this Plan pursuant to its terms and the terms of the Confirmation Order.

1.73    Plan Administrator Agreement means the agreement governing, among other things, the retention and duties of the Plan Administrator, as described in Section 7.03 of the Plan, which shall be in form and substance as contained in the Plan Supplement.

1.74    Plan Administrator Expenses means all actual and necessary costs and expenses incurred on and after the Effective Date in connection with the wind down of the Debtor and the administration of the Plan, including, but not limited to, the Debtor's costs, expenses and legal fees incurred related to: (a) filing and prosecuting objections to Claims; (b) if necessary, investigating, litigating, settling, negotiating, pursuing or otherwise associated with Causes of Action not released under the terms of the Plan, including, but not limited to, attorneys' fees, accounting fees, expert witness fees, and all costs relating to obtaining and distributing recoveries from such causes of action; (c) performing the duties set forth in Article VII of the Plan and the Plan Administrator Agreement; and (d) all U.S. Trustee Fees.

1.75    Plan Documents means those documents contained in the Plan Supplement necessary to effectuate this Plan following entry of the Confirmation Order, including the Plan Administrator Agreement, a form of amended operating agreement for the Liquidating Debtor and any Cure Schedule, which shall be subject to revision and modification prior to the Effective Date.

1.76    <u>Plan Supplement</u> means the supplemental appendix to this Plan, to be filed no later than five (5) Business Days prior to the deadline for Ballots to be received in connection with voting to accept or reject the Plan, which will contain, among other things, draft forms, signed copies, or summaries of material terms, as the case may be, of the Plan Documents, each of which shall be subject to revision and modification prior to the Effective Date.

1.77    <u>Prepetition ISDA Master Agreement</u> means the ISDA 2002 Master Agreement, dated as of December 4, 2020, between Macquarie Energy LLC and the Debtor, including all schedules thereto, confirmations thereunder and agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

1.78    <u>Prepetition Lender BBFA</u> means the Borrowing Base Facility Agreement among the Debtor, as Counterparty, Griddy Holdings LLC, Griddy Technologies LLC and Griddy Pro LLC, as Guarantors and Macquarie Investments US Inc., dated as of December 4, 2020, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

1.79    <u>Prepetition Lender Claim</u> means any unpaid Claim as of the Effective Date arising under, related to or in connection with any and all of the Prepetition Secured Agreements, which shall be Allowed on the Effective Date in the aggregate principal amount of $1,500,000, plus (a) Cash in an amount sufficient to cash collateralize the Outstanding LC; (b) with respect to the Prepetition Lender BBFA, accrued and unpaid interest  at the non-default contract rate from the Petition Date to the Effective Date; and (c) the Prepetition Lender Fee Claim.

1.80    <u>Prepetition Lender Distribution</u> means the following to be made by the Debtor to the Collateral Agent: (a) $900,000 (representing sixty percent (60%) of the remaining principal amount due and owing to Macquarie Investments US Inc. by the Debtor under the Prepetition Lender BBFA), (b) Cash in an amount sufficient to fully cash collateralize the Outstanding LC, (c) accrued and unpaid fees and interest due and owing under the Prepetition Lender BBFA at the non-default contract rate through Effective Date, and (d) the Prepetition Lender Fee Claim; <u>provided</u> that, notwithstanding anything contained in this Plan to the contrary, if the Outstanding LC remains undrawn or partially drawn by the beneficiary thereof after September 25, 2021, the Prepetition Secured Lenders shall, on or prior to September 30, 2021, refund in full in Cash to the Debtor all such undrawn amounts; <u>provided</u> <u>further</u> that if, prior to or on September 25, 2021, the Outstanding LC is canceled, within four (4) Business Days, the Prepetition Secured Lenders shall refund in full in Cash to the Debtor all unused amounts.  Any and all such refunded Cash shall be used by the Debtor in accordance with the terms of the Plan.

1.81    <u>Prepetition Lender Fee Claim</u> means any unpaid reasonable and documented out-of-pocket fees and expenses incurred by the Prepetition Secured Lenders under the Prepetition Secured Agreements to the extent provided thereunder, which Claims shall be Allowed on the Effective Date.

1.82    <u>Prepetition Secured Agreements</u> means (a) the Prepetition Lender BBFA; and (b) the Prepetition ISDA Master Agreement.

1.83    <u>Prepetition Secured Lenders</u> means (a) Macquarie Investments US Inc. (and its respective successors and assigns), solely in its capacity as set forth in the Prepetition Lender BBFA,  (b) Macquarie Energy LLC (and its respective successors and assigns), solely in its capacity as counterparty under the Prepetition ISDA Master Agreement.

1.84    <u>Priority Non-Tax Claim</u> means any Claim, other than an Administrative Expense Claim, a Fee Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.85    <u>Priority Tax Claim</u> means any Claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind specified in Bankruptcy Code sections 502(i) and 507(a)(8).

1.86    <u>Professional Expense Escrow</u> means the segregated account maintained by the Debtor for payment of Fee Claims by Professional Persons.

1.87    <u>Professional Persons</u> means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Case, pursuant to sections 327, 328, 330 or 1103 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to order of the Bankruptcy Court.

1.88    <u>Pro Rata</u> means proportionate, so that, for example, the ratio of (a) the amount of all consideration distributed on account of an Allowed Claim to (b) the amount of such Allowed Claim is the same as the ratio of (i) the amount of all consideration distributed on account of all Allowed Claims in the Class in which such Claim is classified to (ii) the amount of all Allowed Claims in such Class.

1.89    <u>Released Parties</u> means, collectively, and each solely in its capacity as such: (a) the Debtor, (b) the Committee and its members, (c) the Prepetition Secured Lenders and the Collateral Agent, and (d) each of such parties' respective predecessors, successors, assigns, subsidiaries, affiliates, including the Non-Debtor Affiliates, owners, and each of their respective current and former officers, directors, employees, managers, members, principals, shareholders, agents, advisors and professionals (including any attorneys, consultants, financial advisors, investment bankers and other professionals retained by such Persons) or other representatives, each in their capacities as such, together with their successors and assigns; <u>provided</u>, <u>however</u>, that such attorneys and professional advisors shall only include those that provided services related to the Chapter 11 Case and the transactions contemplated by the Plan; <u>provided</u>, <u>further</u>, that no Person shall be a Released Party if it elects to opt out of the releases provided for in Article XII of the Plan in its Ballot.

1.90    <u>Schedules</u> means the schedules of assets and liabilities, the lists of holders of Interests, and the statements of financial affairs filed by the Debtor pursuant to Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto filed with the Bankruptcy Court through and including the Confirmation Date.

1.91    <u>Secured Claim</u> means a Claim, either as set forth in this Plan, as agreed to by the holder of such Claim and the Debtor or as determined by a Final Order in accordance with sections 506(a) or 1111(b) of the Bankruptcy Code: (a) that is secured by a valid, perfected and

enforceable Lien on Collateral that is not subject to avoidance under bankruptcy or nonbankruptcy law, to the extent of the value of the Claim holder's interest in such Collateral as of the relevant date or (b) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

1.92    Supplemental Cure Schedule has the meaning set forth in Section 10.02 of this Plan.

1.93    U.S. Trustee means the United States Trustee for Region 7.

1.94    U.S. Trustee Fees means fees arising under 28 U.S.C. § 1930(a)(6), and accrued interest thereon arising under 31 U.S.C. § 3717, if any.

1.95    Wind Down Costs includes the fees and expenses incurred by the Debtor following the Effective Date (including reasonable fees and costs of attorneys and other professionals) for the purpose of: (a) resolving Disputed Claims, if any, and effectuating distributions to holders of Allowed Claims; (b) otherwise implementing the Plan, the wind down of the Debtor and the closing of the Chapter 11 Case; and (c) undertaking such other matters relating to implementation of the Plan as are deemed necessary and appropriate by the Debtors.

1.96    Wind Down Budget means a budget to be prepared by the Debtor to be filed with the Court no later than five (5) Business Days prior to the Confirmation Hearing and which may be amended from time to time after entry of the Confirmation Order, and shall estimate the funds necessary to administer the Plan, continue the Debtor's wind down, and otherwise unwind the Debtor's affairs, including the costs of holding and liquidating the Estate's remaining property, if any, objecting to Claims, making the Distributions required by the Plan, prosecuting Claims and Causes of Action, if any, that may be held by the Estate against third parties that are not released, waived or transferred pursuant to the Plan (including pursuant to Article XII) or otherwise, paying taxes, filing tax returns, paying the Plan Administrator's Professional fees, funding payroll and other employee costs, if any, providing for the purchase of errors and omissions insurance and/or other forms of indemnification for the Plan Administrator, and creating appropriate reserves for all such items and other costs of administering the Plan, the Estate and the Debtor.

B.    Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The word "including" as used in this Plan means "including, without limitation" regardless of whether so specified. Any reference in this Plan to a contract, instrument, release, credit agreement or other agreement or

documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, amended and restated, modified, or supplemented from time to time.  Subject to the provisions of any contract, limited liability company agreements, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules.  The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns.

        C.      <u>Appendices and Plan Documents</u>.

All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein.  The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Holders of Claims and Interests may inspect copies of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or via the Claims Agent's website at https://cases.stretto.com/Griddy, or obtain a copy of the Plan Documents by a written request sent to the Claims Agent at the following address:

Griddy Energy LLC
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

Copies may also be obtained by contacting Stretto via telephone at (855) 478-2725 (toll free U.S.)  or for international calls at (949) 471-0997.

**ARTICLE II**

**<u>ADMINISTRATIVE EXPENSE CLAIMS,</u>**
**<u>FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS</u>**

All Claims and Interests, except Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims are placed in the Classes set forth in Article III below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims of the Debtor have not been classified, and the holders thereof are not entitled to vote on this Plan.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A Claim or Interest also is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a Claim or Interest is placed in a particular Class for the purpose of

12

receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

2.01 <u>Administrative Expense Claims</u>.  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Expense Claim becomes an Allowed Claim, the holder of such Allowed Administrative Expense Claim shall receive from the Debtor Cash in an amount equal to such Allowed Claim; <u>provided</u>, <u>however</u>, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as debtor in possession, shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such liabilities.

2.02 <u>Time for Filing Administrative Expense Claims</u>.  The holder of an Administrative Expense Claim, other than:

        (a)     a Fee Claim;

        (b)     an Administrative Expense Claim that has been Allowed on or before the Effective Date;

        (c)     an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtor pursuant to an order of the Bankruptcy Court;

        (d)     an Administrative Expense Claim held by an officer, manager, member or employee of the Debtor employed as of the Petition Date for indemnification, contribution, or advancement of expenses pursuant to: (i) the Debtor's operating agreement or similar organizational document, or (ii) any indemnification or contribution agreement approved by the Bankruptcy Court;

        (e)     an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by the Debtor of an individual from and after the Petition Date, but only to the extent that such Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses; or

        (f)     an Intercompany Claim,

must file with the Bankruptcy Court and serve on the Debtor, the Claims Agent, and the United States Trustee, **notice of such Administrative Expense Claim so as to be received by 5:00 p.m. prevailing Eastern time on the date that is thirty (30) days after service of notice of occurrence of the Effective Date (the "<u>Administrative Bar Date</u>").**  Such notice must include at a minimum: (i) the name of the Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative

Expense Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND RELEASED**.

2.03    Fee Claims.  All Professional Persons seeking allowance by the Bankruptcy Court of a Fee Claim shall: (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is forty-five (45) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court; and (ii) if granted such an award by the Bankruptcy Court, be paid in full in Cash such amount as awarded by the Bankruptcy Court (A) no later than five (5) Business Days after the date an order is entered with respect to such award or (B) upon such other terms as may be mutually agreed upon between such holder of a Fee Claim and the Debtor. On the Effective Date, to the extent known, the Debtor or the Plan Administrator shall reserve and hold in the Professional Expense Escrow Cash in an amount equal to accrued but unpaid Fee Claims as of the Effective Date, which Cash shall be used, until all Allowed Fee Claims have been paid in full, solely for the payment of Allowed Fee Claims.  Objections to Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than sixty-five (65) days after the Effective Date.  To the extent the Cash in the Professional Expense Escrow exceeds the amount of the Allowed Fee Claims, such excess Cash shall be used by the Debtor in accordance with the terms of this Plan.

2.04    U.S. Trustee Fees.  The Debtor shall pay all outstanding U.S. Trustee Fees of the Debtor, together with interest pursuant to 31 U.S.C. § 3717, if any, on an ongoing basis on the later of (i) the Effective Date and (ii) the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the Chapter 11 Case or the Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

2.05    Priority Tax Claims.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtor either: (i) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Claim, or (ii) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code); provided, however, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due.

# ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

Claims, other than Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Prepetition Lender Claims | Impaired | Yes (entitled to vote) |
| Class 2 | Other Secured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 3 | Priority Non-Tax Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 4 | Other General Unsecured Claims | Impaired | Yes (entitled to vote) |
| Class 5 | Customer Claims | Impaired | Yes (entitled to vote) |
| Class 6 | Intercompany Claims | Impaired | No (conclusively presumed to reject) |
| Class 7 | Existing HoldCo Interests | Impaired | No (conclusively presumed to reject) |

# ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS

4.01    CLASS 1 – PREPETITION LENDER CLAIMS.

(a)    Impairment and Voting.  Class 1 is impaired by the Plan.  Each holder of a Prepetition Lender Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Except to the extent that a holder of an Allowed Prepetition Lender Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment with respect to such holder's Claim, on the Effective Date, or as soon as practicable thereafter, the Collateral Agent shall receive (for the benefit of itself and the Prepetition Secured Lenders) the Prepetition Lender Distribution, to be distributed in accordance with the applicable Prepetition Secured Agreements, including the Intercreditor Agreement.  The Prepetition Lender Claims are Allowed Claims under the Plan.  Notwithstanding anything herein to the contrary, upon the full payment or other satisfaction or release of such obligations, the Liens securing such Allowed Prepetition Lender Claim shall be deemed released, terminated and extinguished against all parties, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.  All Cash held by the Prepetition Secured Lenders on the Effective Date that is in

excess of the amount of the Prepetition Lender Distribution shall be promptly returned to the Debtor and utilized by the Debtor in accordance with the terms of this Plan.

4.02    CLASS 2 – OTHER SECURED CLAIMS.

(a)    Impairment and Voting. Class 2 is unimpaired by the Plan. Each holder of an Other Secured Claim is not entitled to vote to accept or reject the Plan because it is unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)    Treatment. Except to the extent that a holder of an Allowed Other Secured Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other Secured Claim shall receive at the election of the Debtor on or before, the later of the Effective Date and thirty (30) days after the date on which a Class 2 Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter: (i) Cash in an amount equal to such Allowed Other Secured Claim; (ii) title to the property securing such Allowed Class 2 Claim to the holder of such Claim; or (iii) such other treatment that leaves such Allowed Other Secured Claim unimpaired pursuant to section 1124(2) of the Bankruptcy Code. Notwithstanding anything herein to the contrary, upon the full payment or other satisfaction of such obligations, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(c)    Deficiency Claims. To the extent that the value of the Collateral securing each Other Secured Claim is less than the Allowed amount of such Other Secured Claim, the undersecured portion of such Allowed Claim shall be treated for all purposes under this Plan as an Allowed Other General Unsecured Claim and shall be classified as an Other General Unsecured Claim.

(d)    Separate Classification of Secured Claims. Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of voting on the Plan and receiving Distributions.

4.03    CLASS 3 –PRIORITY NON-TAX CLAIMS.

(a)    Impairment and Voting. Class 3 is unimpaired by the Plan. Each holder of an Allowed Priority Non-Tax Claim is not entitled to vote to accept or reject the Plan because it is unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)    Treatment. The legal, equitable and contractual rights of the holders of Priority Non-Tax Claims are unaltered by this Plan. Except to the extent that a holder of an Allowed Priority Non-Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective

16

Date and the date such Allowed Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable.

4.04    CLASS 4 – OTHER GENERAL UNSECURED CLAIMS.

(a)    Impairment and Voting.  Class 4 is impaired by the Plan.  Each holder of an Other General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Except to the extent that a holder of an Allowed Other General Unsecured Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other General Unsecured Claim shall receive in full satisfaction, settlement, and release of, and in exchange for such Allowed Other General Unsecured Claim, its Pro Rata share of the Class 4 Distribution.

4.05    CLASS 5 – CUSTOMER CLAIMS.

(a)    Impairment and Voting.  Class 5 is impaired by the Plan.  Each holder of a Customer Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Except to the extent that a holder of an Allowed Customer Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment,

(i)    in full satisfaction, settlement, and release of, and in exchange for its Customer Claim, each Participating Customer will grant and receive the Customer Releases as set forth in Section 12.10 of this Plan; or

(ii)    if a Customer Claim is held by a Non-Participating Customer, such holder will not give or receive the Customer Releases and: (a) solely if the Non-Participating Customer timely and properly filed an unsecured nonpriority proof of claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order, such Customer Claim will not be an Allowed Class 5 Claim and, instead, shall be classified as an Other General Unsecured Claim and treated for all purposes under this Plan as an Other General Unsecured Claim; or (b) solely if the Non-Participating Customer did not timely and properly file an unsecured nonpriority proof of claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order, such Customer Claim shall not be treated as either a Class 5 Claim or a Class 4 Claim.

(c)    If Class 5 Approves the Plan; Treatment Subject to Bankruptcy Court Approval.  On the Effective Date, all Participating Customers shall be deemed to have Allowed Class 5 Claims; provided, that if the Bankruptcy Court does not approve the Customer Releases pursuant to Bankruptcy Rule 9019 or otherwise, than each Participating Customer will not have an Allowed Class 5 Claim and, solely if such Participating Customer timely and properly filed an unsecured nonpriority proof of claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order, such Customer Claim shall be classified as an Other General Unsecured Claim and treated for all purposes under this Plan as an Other General Unsecured Claim.

4.06    CLASS 6 – INTERCOMPANY CLAIMS.

(a)    _Impairment and Voting_.  Class 6 is impaired by the Plan.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of Intercompany Claims are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

(b)    _Treatment_.  Any and all Intercompany Claims, shall, at the option of the Debtor, either be extinguished and/or cancelled on, or as soon as reasonably practicable after, the Effective Date.

4.07    CLASS 7 – EXISTING HOLDCO INTERESTS.

(a)    _Impairment and Voting_.  Class 7 is impaired by the Plan.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of Existing HoldCo Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing HoldCo Interests.

(b)    _Treatment_.  Existing HoldCo Interests shall be extinguished, cancelled and released on the Effective Date, and holders thereof shall not receive any Distribution on any account of such Existing HoldCo Interests.

**ARTICLE V**

**ACCEPTANCE OR REJECTION OF
THE PLAN; EFFECT OF REJECTION BY ONE
OR MORE CLASSES OF CLAIMS OR INTERESTS**

5.01    _Class Acceptance Requirement_.  A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount of the Allowed Claims in such Class and more than one-half (1/2) in number of holders of such Claims that have voted on the Plan.

5.02    _Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown"_.  Because certain classes are deemed to have rejected this Plan, the Debtor will request confirmation of the Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes.  Subject to Section 14.07 of this Plan, the Debtor reserves the right to alter, amend, modify, revoke or withdraw this Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

5.03    _Elimination of Vacant Classes_.  Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

5.04     Voting Classes; Deemed Acceptance by Non-Voting Classes.  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims or Interests in such Class.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

6.01     The Liquidating Debtor.  The Debtor shall continue to exist as the Liquidating Debtor on and after the Effective Date, with all of the powers of a limited liability company under applicable law solely for the purposes of satisfying the Debtor's obligations under the Plan, including making distributions as required under the Plan and effectuating the wind down of the Debtor.  The operating agreement of the Liquidating Debtor shall, inter alia, prohibit the issuance of nonvoting stock to the extent required by section 1123(a)(6) of the Bankruptcy Code. On the Effective Date, the Liquidating Debtor shall issue one membership interest to the Plan Administrator in exchange for payment of one dollar ($1.00).  On the Effective Date, except as provided in this Plan, all property of the Debtor shall vest in the Liquidating Debtor, free and clear of all Claims, Interests, liens, charges or other encumbrances.

6.02     Officers, Managing Member.

(a)     On the Effective Date, the authority, power and incumbency of the persons then acting as officers, as managing member or board of the Debtor shall be deemed to have resigned without the necessity of any act on the part of such parties.

(b)     From and after the Effective Date, the Debtor shall be managed and administered through the Plan Administrator, who shall be appointed the sole officer of the Debtor and shall have full authority to administer the provisions of the Plan.  The Plan Administrator may employ one or more Persons to assist it with performing its duties under the Plan.  If the Plan Administrator in its discretion decides not to sell any non-Cash property or if such property cannot, in the Plan Administrator's judgment, be sold in a commercially reasonable manner prior to the Final Distribution Date, the Debtor shall have the right to abandon or otherwise dispose of such property in it business judgment.  Absent willful misconduct or fraud in connection therewith, no party in interest shall have a cause of action against the Plan Administrator, the Debtor or the Liquidating Debtor, or each of their respective managers, officers, employees, consultants, trustees, or similar persons, or professionals arising from or related to the disposition of non-Cash property in accordance with this Section 6.02 of the Plan.

6.03     Operating Agreement Amendments.  The operating agreement and/or other constituent documents and agreements of the Debtor shall be revised as necessary and appropriate to comport with the terms of the Plan.

6.04     Plan Funding.  The Distributions to be made in Cash under the terms of this Plan shall be funded from the Debtor's Cash on hand as of and after the Effective Date and any Net Recovery Proceeds, consistent with the terms of this Plan.

6.05    <u>Cancellation of Existing Securities and Agreements</u>.  Except for the purpose of evidencing a right to distribution under this Plan, on the Effective Date, any document, agreement, or instrument evidencing any Claim or Interest shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtor under such documents, agreements, or instruments evidencing such Claims and Interests, as the case may be, shall be deemed extinguished.  The holders of or parties to such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.  Notwithstanding anything to the contrary herein, the Prepetition Lender Secured BBFA shall continue in effect solely to the extent necessary to allow the Prepetition Secured Lenders to hold Cash for any reimbursement obligations under the Outstanding LCs.

6.06    <u>Cancellation of Existing Security Interests</u>.  Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, the holder of such Allowed Secured Claim shall deliver to the Debtor any Collateral or other property of the Debtor held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

6.07    <u>Approval of Plan Documents</u>.  The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder.  Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions.   On the Effective Date, the Debtor shall be authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further corporate, board or shareholder action.

6.08    <u>Comprehensive Settlement of Claims and Controversies</u>.  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim, including Allowed Participating Customer Claims, or any distribution to be made pursuant to this Plan on account of any Allowed Claim.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies, including the settlement and the Customer Releases set forth in Section 12.10 of this Plan, and the Bankruptcy Court's finding that all such compromises or settlements are: (a) in the best interest of the Debtor and its Estate and property, and of holders of Claims or Interests; and (b) fair, equitable and reasonable.  If the Effective Date does not occur, the settlements set forth herein shall be deemed to have been withdrawn without prejudice to the respective positions of the parties.

6.09    <u>Wind Down of the Estate and Distribution of Proceeds</u>.  After the Effective Date, all non-Cash assets of the Estate not previously released, disposed of or transferred shall be sold or otherwise liquidated or abandoned.

6.10    Intercompany Claims.  The Debtor may take such steps as necessary or required to cancel, release and extinguish Intercompany Claims including, in connection therewith, taking such steps as necessary or required to facilitate the cancellation, release and extinguishment of intercompany claims between or among one or more Debtor and HoldCo as well as any other non-Debtor affiliates of the Debtor.

## ARTICLE VII

## PLAN ADMINISTRATOR

7.01    General.  Not less than ten (10) days prior to the commencement of the Confirmation Hearing and subject to Bankruptcy Court approval in connection with confirmation of the Plan, the Debtor shall designate the person who initially will serve as the Plan Administrator; provided, however, that: (a) the Debtor shall have the right at any time prior to the Effective Date to remove the Plan Administrator without cause; and (b) the Plan Administrator shall be subject to removal by the Bankruptcy Court for cause shown at any time. On or after the Confirmation Date but prior to the Effective Date, the Plan Administrator shall assume all of its obligations, powers and authority under the Plan to: (i) establish bank accounts as may be required to fulfill the Debtor's obligations under this Plan, including, to the extent not previously established by the Debtor, to establish and fund the Disputed Claims Reserves in accordance with the terms hereof; and (ii) exercise such other power and authority as may be set forth in the Confirmation Order (collectively, the "Pre-Effective Date PA Duties").  On the Effective Date, the Plan Administrator shall assume all of its other obligations, powers and authority under the Plan and shall comply with all applicable provisions of the Plan.  All other property of the Estate, including any Causes of Action not released by the Plan, shall be managed by the Plan Administrator and shall be held in the name of the Debtor free and clear of all Claims against the Debtor and Interests, except for the rights to such Distribution afforded to the holders of Allowed Claims under the Plan.  The Plan Administrator shall make the remaining Distributions required under the Plan in accordance with the Plan's terms.  After the Effective Date, the Plan Administrator shall have no liability to holders of Claims or Interests other than as provided for in the Plan.  The Plan will be administered, and actions will be taken in the name of the Debtor through the Plan Administrator irrespective of whether the Debtor has been dissolved.

7.02    Qualifications; Plan Administrator Agreement.

(a)    Plan Administrator as Fiduciary.  The Plan Administrator shall act for the Debtor in a fiduciary capacity, shall have such qualifications and experience as are sufficient to enable the Plan Administrator to perform its obligations under this Plan and under the Plan Administrator Agreement, and shall be compensated and reimbursed for expenses as set forth in, and in accordance with, the Plan Administrator Agreement.  To the extent necessary, following the Effective Date, the Plan Administrator shall be deemed to be a judicial substitute for the Debtor as the party-in-interest in the Chapter 11 Case, under the Plan or in any judicial proceeding or appeal to which the Debtor is a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.  The Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers unless it is ultimately and finally determined by a court of competent jurisdiction that such action or inaction was the result of fraud, gross negligence or willful misconduct.

(b)   Provisions of Agreement and Order.  The Plan Administrator Agreement and the Confirmation Order shall provide that:  (i) the Plan Administrator (x) prior to the Effective Date, shall be independent of the Debtor; and (y) shall be a fiduciary of the Estate; (ii) neither the Debtor (except as expressly set forth in the Plan Administrator Agreement) nor its managing member, officers, employees, if any, and professionals shall have any liability for any action taken or omitted to be taken by the Plan Administrator in performing the Pre-Effective Date PA Duties and all Persons are enjoined from pursuing any Claims against the foregoing pursuant to this Plan on account of any such action taken or omitted to be taken; (iii) any determinations made by the Plan Administrator with respect to the establishment of reserves under this Plan shall not be binding on any party if the Effective Date fails to occur; and (iv) if the Plan is withdrawn or otherwise abandoned prior to the occurrence of the Effective Date, the Plan Administrator position shall thereafter be dissolved automatically.

7.03   Powers and Duties.

(a)   General Powers and Duties.  From and after the Effective Date, pursuant to the terms and provisions of this Plan and the Plan Administrator Agreement, the Plan Administrator shall be empowered and directed to:  (i) take all steps and execute all instruments and documents necessary to make Distributions to holders of Allowed Claims and to perform the duties assigned to the Plan Administrator under this Plan and/or the Plan Administrator Agreement; (ii) comply with this Plan and the obligations hereunder; (iii) employ, retain, or replace professionals to represent it with respect to his or her responsibilities; (iv) object to Claims as provided in this Plan, and prosecute such objections; (v) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim; (vi) establish, replenish or release reserves as provided in this Plan, as applicable; (vii) seek a determination of tax liability under section 505 of the Bankruptcy Code, file tax returns and pay taxes, if any, related to the Debtor; (viii) abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of his or her choice, any assets of the Debtor if he or she concludes that they are of no benefit to the Estate or the Debtor; (ix) purchase or create and carry all insurance policies and paying all insurance premiums and costs he or she deems necessary or advisable; (x) seek entry of a final decree in the Chapter 11 Case at the appropriate time; and (xi) exercise such other powers as may be vested in the Plan Administrator pursuant to the Plan, the Plan Administrator Agreement or any other Plan Documents or order of the Bankruptcy Court or otherwise act on behalf of and for the Debtor from and after the Effective Date in a manner consistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan.  The Debtor shall pay the Plan Administrator Expenses and the reasonable fees and expenses of the professional persons employed by the Plan Administrator in connection with his or her duties and responsibilities as set forth in this Plan.

(b)   Distributions.  Pursuant to the terms and provisions of the Plan, the Plan Administrator shall make the required Distributions specified under the Plan, on the Initial Distribution Date, Interim Distribution Date, or Final Distribution Date, as the case may be, under the Plan.

(c)   Compromise of Claims.  On and after the Effective Date, the Plan Administrator may, in the name of the Debtor, take such action and settle and compromise

Claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.

7.04    Resignation, Death or Removal of Plan Administrator.  The Plan Administrator may resign at any time upon application to the Bankruptcy Court.  In the event of any such resignation, or the removal, death or incapacity of the Plan Administrator, the Bankruptcy Court may, upon motion of a party in interest or other request, appoint a new Plan Administrator.  No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors.  Every successor Plan Administrator appointed pursuant hereto shall execute, acknowledge and file with the Bankruptcy Court, and deliver to the holders of Other General Unsecured Claims (at the addresses as provided in Section 8.05) an instrument in writing accepting such appointment hereunder, and thereupon such successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.  Any resigning or removed Plan Administrator (or the executor or other representative of any deceased or incapacitated Plan Administrator) shall transfer, in exchange for consideration of one dollar ($1.00), the membership interest of the Debtor owned by such Plan Administrator to the successor Plan Administrator.

7.05    Liquidation of the Debtor.  As soon as reasonably practicable after the Distributions have been made to holders of Allowed Claims in accordance with the terms of the Plan, the Debtor shall:  (a) file its certificate of dissolution, together with all other necessary corporate documents, to effect its dissolution under the applicable Delaware state law; and (b) complete and file its final federal, state and local tax returns, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of the Debtor or its Estate for any tax incurred during the administration of the Chapter 11 Case, as determined under applicable tax laws.  The filing by the Debtor of its certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the equity holders or the board of managers of the Debtor and expressly without the need to pay any franchise or similar taxes in order to effectuate such dissolution.

7.06    Termination of the Plan Administrator.  After the Chapter 11 Case is closed and the Plan Administrator has completed all tasks necessary in order to fully and completely wind down and dissolve the Debtor and otherwise to comply with its obligations under the terms of the Plan and the Plan Administrator Agreement, the Plan Administrator shall be deemed to have fully completed his or her duties hereunder and thereunder and shall be fully released and discharged of its duties and obligations to carry out the terms of this Plan.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

8.01    Disbursing Agent.  Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise

ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor.  Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

8.02    <u>Distributions of Cash</u>.  Any payment of Cash made by the Disbursing Agent pursuant to the Plan shall, at the Disbursing Agent's option, be made by check drawn on a domestic bank or wire transfer.

8.03    <u>Timing of Distributions</u>.  In the event that any payment, distribution, or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  Any requirement under the Plan that the Debtor or Disbursing Agent make a payment or Distribution on a date shall mean that such party is required to commence the process of making a payment or Distribution on such date.

8.04    <u>Holders as of the Distribution Record Date</u>.  As of the close of business on the Distribution Record Date: (a) the claims register maintained in the Debtor's Chapter 11 Case shall be closed and (b) any transfer of any Claim or any Interest therein shall not be recognized by the Debtor.  The Debtor shall have no obligation to recognize any transfer of any Claim occurring after 4:00 p.m. (Houston time) on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under this Plan with only those holders of record as of 4:00 p.m. (Houston time) on the Distribution Record Date.

8.05    <u>Distributions to Address of Record</u>.  Subject to Bankruptcy Rule 9010, and except as set forth in this Section 8.05 of the Plan, all Distributions under the Plan to holders of Allowed Claims shall be made to the holder of each Allowed Claim at the address of such holder as listed on the Schedules as of the Distribution Record Date, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such holder different from the address reflected on the Schedules.  In the event that any Distribution to any such holder is returned as undeliverable, no distribution to such holder shall be made unless and until the appropriate Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution shall be made to such holder without interest; <u>provided</u>, <u>however</u>, that, at the later of the expiration of sixty (60) days after: (a) the Effective Date and (b) the first Distribution Date after a Claim becomes an Allowed Claim, such Distributions shall be deemed unclaimed property and shall revest in the Debtor and be distributed to other holders of Allowed Other General Unsecured Claims, in accordance with the Plan or as otherwise ordered by the Bankruptcy Court, as set forth in Section 8.12 of the Plan.

8.06    <u>No Postpetition Interest on Claims; No More than Payment in Full</u>.

(a)    Unless otherwise specifically provided for in the Plan, Confirmation Order or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy

law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

(b)     No holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (excluding postpetition interest), and such Claims will be administered and treated in the manner provided in this Plan.

8.07    <u>Minimum Distributions</u>.  No payment of Cash of less than 100 dollars ($100) shall be made by the Debtor to any holder of an Allowed Claim unless a request therefor is made in writing to the Debtor.  If no request is made as provided in the preceding sentence within sixty (60) days of the later of: (a) the Effective Date and (b) the first Distribution Date such Claim is Allowed, all such distributions shall be distributed to other holders of Allowed Other General Unsecured Claims in accordance with the Plan or as otherwise ordered by the Bankruptcy Court. Notwithstanding anything contained herein to the contrary, if, on any Distribution Date there remains $10,000 or less available for distribution to holders of Allowed Other General Unsecured Claims, in lieu of making any further Distributions to the holders of such Claims, the Debtor may distribute such Cash to the charity of the Debtor's choice.

8.08    <u>Withholding Taxes</u>.  Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any Distributions hereunder, and any property so withheld will then be paid by the Debtor to the appropriate authority.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.  The Debtor may, if necessary or appropriate to comply with applicable withholding requirements imposed on them, withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Debtor to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within sixty (60) days from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as unclaimed property in accordance with Section 8.12 herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

8.09    <u>Time Bar to Cash Payments by Check</u>.  Checks issued by the Debtor on account of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  After that date, all Claims in respect of void checks shall be released and forever barred and the proceeds of those checks shall be deemed unclaimed property in accordance with section 347(b) of the Bankruptcy Code and be distributed as provided in Section 8.12 herein.

8.10    <u>No Payments of Fractional Dollars</u>.  Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

8.11    Setoff and Recoupment.  The Debtor may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that the Debtor or its Estate may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or their respective Estate of any right of setoff, recoupment claims, or other rights or Causes of Action that the Debtor or their respective Estate or any of their respective successors may possess against such holder.

8.12    Unclaimed Distributions.  All distributions to holders of Allowed Claims under the Plan that are unclaimed for a period of sixty (60) days after distribution thereof shall be deemed unclaimed property under Bankruptcy Code section 347(b), and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred.  All such unclaimed property shall revest in the Debtor and, subject to Section 8.07, be distributed to other holders of Allowed Claims in accordance with the Plan or as otherwise ordered by the Bankruptcy Court.

**ARTICLE IX**

**PROCEDURES FOR RESOLVING DISPUTED,
CONTINGENT AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS**

9.01    Objections to Claims.  Other than with respect to Fee Claims, only the Debtor shall be entitled to object to Claims after the Effective Date.  Any objections to Claims (other than Fee Claims), which Claims have been filed on or before the later of the Confirmation Date and the applicable Bar Date, if any, shall be served and filed on or before the later of:  (a) one-hundred and twenty days (120) after the Effective Date (or such applicable Bar Date if such applicable Bar Date is after the Effective Date); or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) of this Section. Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtor unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Debtor effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (c) by (i) first class mail, postage prepaid, or (ii) if available, electronic mail, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case (so long as such appearance has not been subsequently withdrawn).  From and after the Effective Date, the Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  After the Effective Date, the Debtor shall be entitled to determine, in its reasonable discretion, that the cost and expense of pursuing claims objections outweighs the benefits to be advanced by filing one or more objections.

9.02    Amendments to Claims.  After the Confirmation Date, a proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the

Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Debtor, unless the holder of the Claim has obtained prior Bankruptcy Court authorization to file the amendment.

9.03    Estimation of Claims;  Certain Reserves.  For purposes of calculating and making Distributions under the Plan, the Debtor shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Debtor also shall be entitled to seek one or more Estimation Orders from the Bankruptcy Court for such purposes, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim for purposes of determining the Allowed amount of such Claim at any time.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Appropriate Disputed Claims reserves shall be established for each category of Claims as to which estimates are utilized or sought.  Unless otherwise expressly set forth herein, the Debtor shall not be obligated to physically segregate and maintain separate accounts for reserves.  Accordingly, reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, as appropriate.  Unless otherwise ordered by the Bankruptcy Court, no reserves shall be required to be established or maintained with respect to Claims filed after the applicable Bar Date.

9.04    Disputed Claims.

(a)    No Distributions Pending Allowance.  Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be required to be made on account of such Claim unless and until such Disputed Claim becomes Allowed in its entirety.

(b)    Establishment of Disputed Priority Claims Reserve.  Subject to Section 9.03, on the Effective Date or as soon thereafter as is reasonably practicable, the Debtor shall reserve from Cash on hand for the benefit of each holder of a Disputed Administrative Expense Claim, Disputed Priority Tax Claim and Disputed Priority Non-Tax Claim, Cash in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order; (ii) if no Estimation Order has been entered with respect to such Claim, the amount in which such Disputed Claim is proposed to be allowed in any pending objection filed by the Debtor; or (iii) if no Estimation Order has been entered with respect to such Claim and no objection to such Claim is pending on the Effective Date, (A) the amount listed in the Schedules or (B) if a timely filed proof of claim or application for payment has been filed with the Bankruptcy Court or Claims Agent, as applicable, the amount set forth in such timely filed proof of claim or application for payment, as applicable.  The Debtor, in its reasonable discretion, may increase the amount reserved as to any such particular Disputed Claim.  Such reserved amounts, collectively, shall constitute the "Disputed Priority Claims Reserve".

27

(c)     Establishment of Disputed Other General Unsecured Claims Reserve. Subject to Section 9.03, on the Effective Date or as soon thereafter as is reasonably practicable, the Debtor shall reserve from the Cash on hand, for the benefit of each holder of a Disputed Other General Unsecured Claim, Cash in an amount equal to the Pro Rata Distribution to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim, in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order; (ii) if no Estimation Order has been entered with respect to such Claim, the amount in which such Disputed Claim is proposed to be allowed in any pending objection filed by the Debtor; or (iii) if no Estimation Order has been entered with respect to such Claim and no objection to such Claim is pending, (A) the amount listed in the Schedules or (B) if a timely filed proof of claim or application for payment has been filed with the Bankruptcy Court or Claims Agent, as applicable, the amount set forth in such timely filed proof of claim or application for payment, as applicable.  If and to the extent that a Disputed Claim becomes an Allowed Claim, on the first Distribution Date that is at least thirty (30) Business Days after such allowance, the Debtor shall distribute to the holder thereof the amount of Cash to which such holder is entitled under the provisions of this Plan.  If a Disputed Claim is Disallowed, in whole or in part, pursuant to a Final Order, on the first Distribution Date that is at least thirty (30) Business Days after such disallowance, the Debtor shall: (a) first, reallocate Cash that had been reserved on account of such Disallowed Disputed Other General Unsecured Claim to the holders of then Allowed and Disputed Claims in such Class; and (b) second, distribute to each holder of an Allowed Claim in such Class and allocate to the reserves established for remaining Disputed Claims in such Class, Pro Rata, the Cash that has been so reallocated to such Class in accordance with clause (a) of this section.  The Debtor, in its reasonable discretion, may increase the amount reserved as to any particular Disputed Claim.  Such reserved amounts, collectively, shall constitute the "Disputed Other General Unsecured Claims Reserve".

9.05     Plan Distributions to Holders of Subsequently Allowed Claims.  On each Distribution Date (or such earlier date as determined by the Debtor in its sole discretion), the Disbursing Agent will make distributions or payments from the applicable Disputed Claims reserve on account of any Disputed Claim that has become an Allowed Claim since the occurrence of the previous Distribution Date.  The Disbursing Agent shall distribute in respect of such newly Allowed Claims the Pro Rata Distributions to which holders of such Claims would have been entitled under this Plan if such newly Allowed Claims were fully or partially Allowed, as the case may be, on the Effective Date, less direct and actual expenses, fees or other direct costs.

9.06     Insurance Preservation and Proceeds.  Except with regard to Claims against the Released Parties that are released hereunder, nothing in the Plan shall diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor or any related Person.  Notwithstanding anything to the contrary contained herein, to the extent the Debtor has insurance with respect to an Allowed Claim, such Allowed Claim shall (a) be paid from the proceeds of insurance to the extent that the Claim is insured, and (b) receive the treatment provided for herein to the extent the applicable insurance policy does not provide coverage with respect to any portion of the Allowed Claim.  Holders of Claims which are eligible to be satisfied, in whole or in part, through any such policy shall be obligated, as a condition to receiving any Distributions under the Plan, to seek recovery (or, if applicable, assist the Debtor in seeking recovery) under such policies with regard to such Claims.

9.07    Allocation of Plan Distributions Between Principal and Interest.  To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

9.08    No Recourse.  Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which, after application of the payment priorities established by this Plan, there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator or any of their respective professionals, consultants, officers, directors, employees or members or their successors or assigns, or any of their respective property.  **THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.**

9.09    Satisfaction of Claims and Interests.  Unless otherwise provided in the Plan or the Confirmation Order, any Distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete settlement and satisfaction of such Allowed Claims.

## ARTICLE X

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.01    Rejection or Assumption and Retention or Assignment.

(a)    Assumption or Rejection of Executory Contracts and Unexpired Leases. Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code:

(i)    all executory contracts and unexpired leases of the Debtor shall be deemed to be rejected by the Debtor as of the Effective Date, except for any executory contract or unexpired lease: (x) that previously has been assumed and/or assigned pursuant to an order of the Bankruptcy Court entered prior to the Effective Date; (y) as to which a motion for approval of the assumption and/or assignment of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date; or (z) that is specifically designated as a contract or lease to be assumed and/or assigned by the Debtor.  Any order entered after the Confirmation Date by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered prior to the Confirmation Date.  All Claims arising from the rejection of executory contracts or unexpired leases, if any, will be treated as Other General Unsecured Claims. Notwithstanding anything herein to the contrary, all compensation and benefits programs shall continue in effect until there are no employees of the Debtor, at which time all compensation and benefit programs shall be deemed terminated.

(ii)      notwithstanding anything otherwise herein to the contrary, the Debtor reserves the right, on or prior to the Effective Date, to amend the Cure Schedule, if any, to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be, as applicable, rejected, assumed and/or assigned or retained.  The Debtor shall provide notice of any amendments to any Cure Schedule to the parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on any Cure Schedule shall not constitute an admission by the Debtor that such document is an executory contract or an unexpired lease or that the Debtor have any liability thereunder.

(b)      Approval of Assumptions and Rejections by Confirmation Order.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumption and assignments, and rejections contemplated by this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code.  Notwithstanding anything herein to the contrary, any agreement, obligation, security interest, transaction or similar undertaking that the Debtor believes is not executory or a lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under section 365 of the Bankruptcy Code, shall be subject to assumption or rejection within thirty (30) days of any such determination or such longer period as may be authorized by the Bankruptcy Court.

10.02   Cure of Defaults.

(a)      Generally.  Except as may otherwise be agreed to by the Debtor and the non-Debtor party to the contract or lease, the Debtor shall cure any and all undisputed monetary defaults under each executory contract or unexpired lease assumed by the Debtor pursuant to the Plan, in accordance with Bankruptcy Code section 365(b) (the "Cure Amount").  Subject to the last sentence of Section 10.02(b) of the Plan, all disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

(b)      Cure Schedule.  With respect to all executory contracts and unexpired leases to which the Debtor is a party, no later than five (5) Business Days prior to the deadline for Ballots to be received in connection with voting to accept or reject the Plan, the Debtors shall file a schedule (the "Cure Schedule"), which may be the Schedule of Assumed Contracts and Leases, setting forth the Cure Amount, if any, for each executory contract and unexpired lease to be assumed or assumed and assigned pursuant to Section 10.01 of this Plan, and serve such Cure Schedule on each applicable counterparty.  Any party to an executory contract or unexpired lease to which a Debtor is a counterparty that fails to object to the applicable Cure Amount listed on the Cure Schedule within fourteen (14) calendar days of the filing thereof, shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any Claim against the pre-Effective Date Debtor, the Liquidating Debtor and the Plan Administrator arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule.  If, prior to the Confirmation Date, the Debtor identifies additional executory contracts and unexpired leases to which the Debtor is a counterparty that might be assumed or assumed and assigned by the Debtor, the Debtor will promptly file a supplemental Cure Schedule ("Supplemental Cure Schedule") and

serve such Supplemental Cure Schedule on each applicable counterparty and each applicable counterparty shall have fourteen (14) calendar days of the filing thereof to object to the applicable Cure Amount set forth on the Supplemental Cure Schedule.

        (c)    Objections to Proposed Cure Amount.  The non-Debtor parties to such contracts and leases shall have until fourteen (14) calendar days following service of the Cure Schedule (or individualized notice of the Cure Amount) to object (a "Cure Dispute") in writing regarding:  (i) the Cure Amount; (ii) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to assumption.  The cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the Cure Dispute and approving the assumption.  If the Cure Dispute relates solely to the Cure Amount, the Debtor may assume and/or assume and assign the subject contract prior to resolution of such dispute provided that the Debtor reserves Cash in an amount sufficient to pay the full amount asserted by the non-Debtor party to the subject contract (or such other amount as may be fixed or estimated by the Bankruptcy Court).  In the event that no objection is timely filed, the applicable party shall be deemed to have consented to the cure proposed by the Debtor (including amounts of compensation for actual pecuniary loss) and shall be forever enjoined and barred from seeking from the Debtor any additional amount on account of the Debtor's cure obligations under section 365 of the Bankruptcy Code.  If an objection is timely filed with respect to the Cure Amount proposed by the Debtor for an executory contract or unexpired lease, the Bankruptcy Court shall hold a hearing to determine the amount of any Cure Dispute.  Notwithstanding anything otherwise to the contrary, at all times through the date that is thirty (30) days after the entry of a Final Order resolving and fixing the amount of a Cure Dispute, whether such date is before or after the Effective Date, the Debtor shall be authorized to reject such executory contract or unexpired lease by notice to the non-debtor party to such executory contract or unexpired lease.  **Any party that fails to object to the applicable Cure Amount listed on the Cure Schedule within fourteen (14) calendar days following service of the Cure Schedule (or individualized notice of the Cure Amount), shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any claim against the Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule.**

        10.03  **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 10.01 of the Plan must be filed with the Bankruptcy Court and served upon the Debtor no later than thirty (30) days after the later of: (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease; and (ii) notice of occurrence of the Effective Date.  All such Claims not filed within such time will be forever barred from assertion against the Debtor and its Estate.**

        10.04  Indemnification of Directors, Officers and Employees.  For purposes of the Plan, the obligation of the Debtor to indemnify and reimburse any Person or entity serving at any time on or after the Petition Date as one of its directors, member, officers or employees by reason of such Person's or entity's service in such capacity, or as a director, member, officer or employee

of the Debtor or any other company or legal entity, to the extent provided in such Debtor's constituent documents, a written agreement with the Debtor(s), in accordance with any applicable law, or any combination of the foregoing, shall survive confirmation of the Plan and the Effective Date, remain unaffected thereby, become an obligation of the Liquidating Debtor solely to the extent of available insurance, and not be released, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Petition Date.  For the avoidance of doubt, nothing herein shall be construed as the Debtor assuming any obligation with respect to any self-insured retention for which the applicable insurer has the ability to assert a prepetition Claim against the applicable Debtor in accordance with the order setting the Bar Date or other order of the Court.  On and after the Effective Date, the coverage under any directors' and officers' insurance policies in effect on the Petition Date shall not be terminated or otherwise reduced by or on behalf of the Debtor, and all directors and officers of the Debtor at any time shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

## ARTICLE XI

## CONDITIONS PRECEDENT

11.01   Conditions to Confirmation.  The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with Section 11.03 of this Plan:

(a)   the Bankruptcy Court shall have approved the Disclosure Statement, which approval may be on a conditional basis, with respect to the Plan in an order in form and substance acceptable to the Debtor and the Collateral Agent;

(b)   the Debtor shall have sufficient Cash on hand to pay in full, or reserve for, the projected Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims; and

(c)   the Bankruptcy Court shall have entered the Confirmation Order.

11.02   Conditions Precedent to the Effective Date.  The occurrence of the Effective Date is subject to:

(a)   the Confirmation Order having become a Final Order;

(b)   the operating agreement of the Debtor having been amended or amended and restated as provided in the Plan; and

(c)   the Plan Documents having been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith.

11.03    Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay.

(a)     The Debtor, with the consent of the Committee, if any, (which shall not be unreasonably withheld, delayed or conditioned), shall have the right to waive one or more of the conditions precedent set forth in Sections 11.01 and 11.02 of the Plan at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with consummation of the Plan. For the avoidance of doubt, if all conditions precedent of the Plan are satisfied or waived in accordance the immediately preceding sentence, the Effective Date of the Plan as to the Debtor may occur. If any condition precedent to the Effective Date is waived pursuant to this Section 11.03 and the Effective Date occurs, the waiver of such condition shall benefit from the "mootness doctrine," and the act of consummation of the Plan shall foreclose any ability to challenge the Plan in any court. Unless otherwise provided herein, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

(b)     Pursuant to Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective upon its entry and shall not be subject to the stay provided in Bankruptcy Rule 3020(e).

## ARTICLE XII

## EXCULPATION, INJUNCTION AND
## RELATED PROVISIONS EFFECT OF CONFIRMATION

12.01    Binding Effect. This Plan shall be binding and inure to the benefit of the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator, each of the Released Parties, all present and former holders of Claims and Interests, and their respective successors and assigns.

12.02    Vesting of Assets. On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Estate shall vest in the Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise provided herein or in the Confirmation Order, including with respect to the rights to receive any Distribution hereunder. On and after the Effective Date, the Debtor may effectuate the wind down of the Estate, including payment of all Wind Down Costs in accordance with the Wind Down Budget, and may use, acquire and dispose of property and prosecute, compromise or settle any Claims (including any Administrative Expense Claims) and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.

12.03    ***Release of Claims Against and Interests in the Debtor*. *Upon the Effective Date and in consideration of the Distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived and released the Debtor of and from any and all Claims, Interests, rights, and***

*liabilities that arose prior to the Effective Date.  Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and Interests and their affiliates shall be forever precluded and enjoined from prosecuting or asserting any such waived and released Claim against or terminated Interest in the Debtor.  Nothing in this Section shall preclude any holder of an Allowed Claim or Interest from receiving the applicable Distribution provided for under the Plan.*

12.04   Term of Pre-Confirmation Injunctions or Stays.  Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

12.05   Injunction Against Interference With Plan.  Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, managers, members or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

12.06   ***Injunction.***

(a)   ***Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtor or its Estate are, with respect to any such Claims or Interests, permanently enjoined from:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the pre-Effective Date Debtor, the Liquidating Debtor, the Estate, the Plan Administrator, the Released Parties, or any of their respective property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the pre-Effective Date Debtor, the Liquidating Debtor, the Estate, the Plan Administrator, the Released Parties or any of their respective property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the pre-Effective Date Debtor, the Liquidating Debtor, the Estate, the Plan Administrator, the Released Parties; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan.***

(b)   ***Each holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth herein.***

12.07  *__Releases.__*

(a)  *__Releases by the Debtor.__*  **Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, the Debtor, as debtor in possession, and any person seeking to exercise the rights of the Debtor's Estate, including without limitation, any successor to the Debtor, including the Liquidating Debtor, the Plan Administrator or any representative of the Debtor's Estate appointed or selected pursuant to sections 1103, 1104, or 1123(b)(3) of the Bankruptcy Code or under chapter 7 of the Bankruptcy Code, shall be deemed to forever release and waive all claims (as such term "claim" is defined in section 101(5) of the Bankruptcy Code), obligations, suits, judgments, damages, demands, debts, rights, causes of action (including, but not limited to, the Causes of Action) and liabilities (other than the rights of the Debtor to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder) against any Released Party, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtor or its Estate, whether directly, indirectly, derivatively or in any representative or any other capacity; _provided_, _however_, that in no event shall anything in this Section 12.07(a) be construed as a release of any Person's gross negligence or willful misconduct, as determined by a Final Order, for matters with respect to the Debtor and/or their affiliates.**

(b)  *__Releases by Holders of Claims__*.  **Except as otherwise provided in the Plan or the Confirmation Order, including Section 12.10 as to Participating Customers, on the Effective Date, (i) each holder of a Claim in a Class entitled to vote on the Plan and (ii) each Released Party (other than the pre-Effective Date Debtor, the Liquidating Debtor and the Plan Administrator), to the fullest extent permissible under applicable law as such law may be extended or interpreted subsequent to the Effective Date, all holders of Claims, in consideration for the obligations of the Debtor under the Plan, the Distributions under the Plan and other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, will be deemed to have consented to the Plan and the restructuring embodied herein for all purposes and deemed to forever release and waive all claims (as such term is defined in section 101(5) of the Bankruptcy Code) against any and all Released Parties, including but not limited to any claim sounding in law or equity or asserting a tort, breach of any duty or contract, violations of the common law, any federal or state statute, any federal or state securities laws or otherwise, demands, debts, rights, causes of action (including without limitation, the Causes of Action) or liabilities (other than the right to enforce the obligations of any party under the Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with the Plan), including but not limited any claims for any such loss such holder may suffer, have suffered or be alleged to suffer as a result of the Debtor commencing the Chapter 11 Case or as a result of the Plan being consummated, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator, the Chapter 11**

*Case, the Plan or the Disclosure Statement; __provided__, __however__, that the foregoing releases shall not apply to any holder of a Claim if such holder "opts out" of the releases provided in this Section 12.07(b) in a timely and properly submitted Ballot; __provided__, __further__, that in no event shall anything in this Section 12.07(b) be construed as a release of any Person's gross negligence or willful misconduct, as determined by a Final Order, for matters with respect to the Debtor.  For the avoidance of doubt, the only parties that are bound by the releases set forth in this Section 12.07(b) are (a) the Released Parties and (b) holders of Claims in a Class entitled to vote on the Plan that do not "opt out" of the releases provided in Section 12.07(b) of the Plan in a timely and properly submitted Ballot.*

*(c)    Notwithstanding anything to the contrary contained herein: (i) except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, the releases provided for in this Section 12.07 of the Plan shall not release any non-Debtor entity from any liability arising under (x) the Internal Revenue Code or any state, city or municipal tax code or (y) any criminal laws of the United States or any state, city or municipality; (ii) the releases set forth in this Section 12.07 shall not release any (x) any claims against any Person to the extent such Person asserts a crossclaim, counterclaim and/or claim for setoff which seeks affirmative relief against the Debtor or any of its officers, directors, or representatives, and (y) claims against any Person arising from or relating to such Person's gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Courts.*

*12.08   __Exculpation and Limitation of Liability__.  None of the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator nor the other Released Parties shall have or incur any liability to any holder of any Claim or Interest for any postpetition act or omission in connection with, or arising out of the Debtor's restructuring, including without limitation the negotiation and execution of the Plan, the Chapter 11 Case, the Disclosure Statement, the Disclosure Statement Supplement, the solicitation of votes for and the pursuit of the Plan (including that solicitation of acceptances of the Plan was not conducted in good faith nor in compliance with the applicable provisions of the Bankruptcy Code), the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of the Plan except gross negligence or willful misconduct as determined by a Final Order of the Bankruptcy Court.  For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute gross negligence or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation.  The Debtor and the Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities with respect to the Chapter 11 Case, the Plan and the administration thereof.*

*12.09   __Injunction Related to Releases and Exculpation__.  The Confirmation Order shall permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to the Plan, including*

36

*but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Article XII of the Plan.*

12.10    *Agreement by Holders of Participating Customers; Release of Certain Customer Collections.  Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, (i) each Participating Customer will be deemed to have consented to the Plan and the restructuring embodied herein for all purposes and deemed to accept the Customer Releases as they pertain to such Participating Customer and the Released Parties and (ii) each Released Party will be deemed to accept the Customer Releases as they pertain to such Released Party and the Participating Customers; <u>provided that, notwithstanding the foregoing, if the Bankruptcy Court does not approve the Customer Releases pursuant to Bankruptcy Rule 9019 through this Plan or otherwise, than each Participating Customer will not have an Allowed Class 5 Claim, the Customer Releases shall not become effective and, solely if such Participating Customer timely and properly filed an unsecured nonpriority proof of claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order, such Customer Claim shall be classified as an Other General Unsecured Claim and treated for all purposes under this Plan as an Other General Unsecured Claim</u>.  For the avoidance of doubt, if the Customer Releases become effective, each Participating Customer releases and waives all Claims against each of the Released Parties, including, any claim sounding in law or equity or asserting a tort, breach of any duty or contract, violations of the common law, any federal or state statute, any federal or state securities laws, fraud or otherwise, demands, debts, rights, causes of action (including without limitation, the Causes of Action) or liabilities (other than the right to enforce the obligations of any party under the Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with the Plan), including but not limited any Claims for any such loss such Participating Customer may suffer, have suffered or be alleged to suffer as a result of the Debtor selling electricity to such Participating Customer prior to the Petition Date, the Debtor commencing the Chapter 11 Case or as a result of the Plan being consummated, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator, the Chapter 11 Case, the Plan or the Disclosure Statement.*

12.11    <u>Termination of Subordination Rights and Settlement of Related Claims</u>.  Except as expressly provided herein, the classification and manner of satisfying all Claims and Interests and the respective distributions, treatments and other provisions under the Plan take into account or conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 510(a) and 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan.  The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons and entities from enforcing or attempting to enforce any such contractual, legal and equitable rights satisfied, compromised and settled pursuant to the Plan. Any disagreement with the priorities or distributions set forth in the Plan or any right to assert contractual subordination shall be raised on or prior to the deadline to object to the Plan, and decided at or prior to the Confirmation Hearing, and all issues with respect to contractual

subordination not raised or resolved at the Confirmation Hearing shall be governed pursuant to the Plan or, if the decision of the Bankruptcy Court at the Confirmation Hearing differs from the Plan, then such decision shall govern.

12.12   <u>Retention of Causes of Action/Reservation of Rights</u>.  Except with respect to the Released Parties or any other beneficiary of the releases, injunctions, and exculpations contained in this Article XII, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims or Causes of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Effective Date, on behalf of the Estate or of itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law.  The Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or other legal or equitable defenses which the Debtor had immediately prior to the Petition Date as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and/or equitable rights respecting any Claim may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.  Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Debtor shall have the exclusive right to institute, prosecute, abandon, settle, or compromise all Causes of Action (excluding those Causes of Action released pursuant to this <u>Article XII</u>), in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

12.13   <u>Releases of Liens</u>.  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, in consideration for the Distributions granted hereunder, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of any of the Estate shall be fully released and deemed satisfied and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtor.  On the Effective Date, the holder of each such mortgage, deed of trust, lien, pledge or other security interest against property of the Estate shall be deemed to have appointed the Debtor as agent to such holder for the purpose of filing and recording all releases with respect to each such mortgage, deed of trust, lien, pledge or other security interest held against property of the Estate.

## ARTICLE XIII

## RETENTION OF JURISDICTION

13.01   <u>Scope of Bankruptcy Court Jurisdiction</u>.  On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, pursuant to 28 U.S.C. §§ 1334 and 157, over all matters arising in, arising under, or related to the Chapter 11 Case for, among other things, the following purposes:

(a)     To hear and determine pending applications for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of Cure Amounts, if any, and Claims resulting therefrom or from the assumption, assumption and assignment or rejection of executory contracts or unexpired leases pursuant to this Plan;

(b)     To hear and determine any and all adversary proceedings, applications, and contested matters, and to order appropriate relief in connection therewith (including issuance and/or enforcement of releases)

(c)     To consider and resolve any Claims or Interests, or the allowance, classification, priority, compromise, estimation, or payment of any Claim or Interest;

(d)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)     To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(f)     To consider any amendments to, or modifications of, the Plan and the Plan Supplement, and any dispute or controversy relating to execution, delivery or compliance with any document included in the Plan Supplement, and to cure any defect or omission, or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(g)     To hear and determine all Fee Claims;

(h)     To resolve disputes concerning any reserves, including with respect to Disputed Claims, cure disputes, if any, or the administration thereof;

(i)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(j)     To recover all assets and property of the Debtor, wherever located;

(k)     To hear and determine matters concerning state, local, and federal taxes, including as provided by sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

(m)     To hear any other matter not inconsistent with the Bankruptcy Code; and

(n)     To a final decree closing the Chapter 11 Case.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

14.01   <u>Effectuating Documents and Further Transactions</u>.  The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other

agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to this Plan.

14.02   <u>Corporate Action</u>.  On the Effective Date, all matters provided for under this Plan that would otherwise require approval of the equity security holders, directors, members, managing members or managers of the Debtor, including (a) the effectiveness of the certificates of incorporation and operating agreement of the Debtor and (b) the election or appointment, as the case may be, of directors, managers and/or officers of the Debtor, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to Section 303 of the Delaware General Corporation Law, without any requirement of further action by the equity holders, directors, members, managing members or managers of the Debtor.  On the Effective Date, or as soon thereafter as is practicable, the Debtor shall, if required, file its certificate of incorporation with the Secretary of State of Delaware, in accordance with the applicable general corporation law of such state.

14.03   <u>Exemption from Transfer Taxes</u>.  To the fullest extent permitted by applicable law, any transfer or encumbrance of assets or any portion(s) of assets pursuant to, or in furtherance of, or in connection with the Plan shall constitute a "transfer under a plan" within the purview of section 1146(a) of the Bankruptcy Code and shall not be subject to transfer, stamp or similar taxes.

14.04   <u>Payment of Statutory Fees; Post Confirmation Reporting</u>.

(a)   Payment of Statutory Fees. On the Effective Date, and thereafter as may be required, the Debtor shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code, together with interest pursuant to section 31 U.S.C. 3717, if any, through the entry of a final decree closing and/or dismissing its Chapter 11 Case, or an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

(b)   Post-Confirmation Reporting.  After the Effective Date, in accordance with the Guidelines established by the United States Trustee, the Debtor will file quarterly operating reports with Bankruptcy Court until entry of a final decree in the Chapter 11 Case.

14.05   <u>Disallowance of Existing Securities Law Claims</u>.  On the Effective Date, any and all Existing Securities Law Claims shall be deemed Disallowed and expunged in their entirety under and pursuant to this Plan without further order of the Bankruptcy Court or any action being required on the part of the Debtor.

14.06   <u>Post-Effective Date Fees and Expenses</u>.  From and after the Effective Date, the Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional Persons thereafter incurred by the Debtor, including those fees and expenses incurred in connection with the implementation and consummation of this Plan and the Plan Administrator Expenses.

14.07   <u>Amendment or Modification of this Plan</u>.  Alterations, amendments, or modifications of or to the Plan (including to provide for treatment different than that set forth herein with respect to any class of Claim or Interest, including establishment of subclasses of

Classes of Claims or Interests to the extent required if so elected by the Debtor, the unimpairment of Classes that are impaired hereunder, and the impairment of Classes that are unimpaired hereunder) may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, provided that this Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications.  A holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

14.08   <u>Revocation or Withdrawal of this Plan</u>.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date in whole or in part.  If the Debtor revokes or withdraws the Plan prior to the Effective Date, then except as set forth in this Section 14.08 of the Plan, the Plan shall be deemed null and void.  In the event of any such waiver or revocation, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

14.09   <u>Termination of Professionals</u>.  On the Effective Date, the engagement of each Professional Person retained by the Debtor or the Committee shall be terminated without further order of the Bankruptcy Court or act of the parties; <u>provided</u>, <u>however</u>, such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims and the Debtor shall be responsible for the fees, costs and expenses associated with such Fee Claims.  Nothing herein shall preclude the Debtor from engaging a Professional Person on and after the Effective Date in the same capacity as such Professional Person was engaged prior to the Effective Date.

14.10   <u>Dissolution of any Committee</u>.  Subject to the proviso in Section 14.09 of this Plan, the functions of any Committee shall terminate on the later of:  (i) the Effective Date; and (ii) the conclusion of any appeals with respect to the Confirmation Order or an Omnibus Claims Objection that any Committee is a party to (but such functions shall relate solely to services performed related to such appeal), and any Committee shall be deemed dissolved as of such date and shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Case.

14.11   <u>Confirmation Order</u>.  The Confirmation Order shall, and is hereby deemed to, ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct, gross negligence, recklessness or fraud.

14.12   <u>Severability</u>.  If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the

Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.13   <u>Inconsistency</u>.  In the event of any inconsistency among or between any of the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.  The Confirmation Order shall govern all of the foregoing.

14.14   <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit or schedule hereto or in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to any contrary result otherwise required under applicable choice or conflict of law rules.

14.15   <u>Binding Effect</u>.  The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Interests, and their respective successors and assigns.

14.16   <u>Exhibits/Schedules</u>.  All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

14.17   <u>Filing of Additional Documents</u>.  On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any such agreements or other documents relating specifically to the terms and conditions of the Plan.

14.18   <u>Notices</u>.  All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**Griddy Energy LLC**
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

-and-

**Baker Botts LLP**
Robin Spigel
Chris Newcomb
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-2500
Facsimile: (212) 408-2501

*Counsel for the Debtor and Debtor in Possession*

14.19   <u>Reservation of Rights</u>.  Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtor with respect to any Claims or Interests prior to the Effective Date.

Dated:  March 15, 2021

Respectfully submitted,

GRIDDY ENERGY LLC

By:  *<u>/s/ Michael Fallquist</u>*
Name:  Michael Fallquist
Title:   Chief Executive Officer