## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GRIDDY ENERGY LLC,[1] | ) | Case No. 21-30923 (MI) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER: (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT; (II) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN; (III) APPROVING THE FORM OF VARIOUS BALLOTS AND NOTICES IN CONNECTION THEREWITH; AND (IV) APPROVING THE SCHEDULING OF <u>CERTAIN DATES IN CONNECTION WITH CONFIRMATION OF THE PLAN</u>

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **A HEARING WILL BE CONDUCTED ON THIS MATTER ON [___], 2021 AT [__] PM (CT) IN COURTROOM 404, 4TH FLOOR, 515 RUSK ST., HOUSTON, TX 77002. IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**
>
> **YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE**

---

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

"JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE.  ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.

HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING.   TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU.  SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR."   UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE."   SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

The debtor and debtor in possession in the above-captioned case (the "Debtor") respectfully states as follows in support of this motion (this "Motion"):[2]

## PRELIMINARY STATEMENT

1.        Griddy is a retail electric provider ("REP") in Texas which provided its customers the ability to purchase wholesale electricity with no mark-up.  Griddy's business model was simple.  For a fixed monthly fee of $9.99, each customer had access to wholesale electricity costs with no mark-up.

2.        Winter Storm Uri brought extreme cold weather to Texas.  Load on the power grid climbed to winter records and a host of other factors led to generation outages and forced the Electric Reliability Council of Texas ("ERCOT") to shed electric load, in the form of rolling blackouts, in order to match the available generation on the grid.

3.        On February 15, 2021, in response to the electric load shedding required to balance a grid experiencing unprecedented outages, the Public Utilities Commission of Texas ("PUCT") adopted an order instructing ERCOT to set the real time settlement point price for

---

[2]  Capitalized terms used but not otherwise defined in this motion shall have the meanings given to them in the *Declaration of Michael Fallquist in Support of Chapter 11 Petition and First Day Pleadings* or in the Plan (defined below) or the Disclosure Statement (defined below), as applicable.

power at the high offer cap of $9,000 per MWh.  This order went into effect immediately and stayed in effect until February 19, 2021, representing a total duration of 87.5 consecutive hours.[3]

4.      Prior to February 2021, Griddy's customers paid an average rate of $0.098 per kilowatt hour ("kWh"),[4] representing significant savings to its customers.  Griddy's business model provided customers with transparency regarding real-time electricity prices, forecasted electricity prices and their energy usage and billings, which allowed its customers to control how much they spent on electricity.

5.      During Winter Storm Uri, Griddy and its customers were subject to the extreme electricity prices resulting from the PUCT order.  Griddy had to procure power for its customers at those elevated rates and pass those costs to its customers.  Over the 87.5 hours while the $9,000 per MWh price was imposed, Griddy incurred significant debt to, among others, ERCOT, for the procurement of power for its customers.  Many of Griddy's customers stopped paying their bills, and, on February 21, 2021, the PUCT issued a press release related to emergency actions to protect Texas electricity customers which "strongly urged" REPs to delay billing and collections for residential and small commercial customers, including invoices with estimated meter reads.[5]

6.      ERCOT, however, continued to send Griddy multi-million dollar invoices for the power procured for the benefit of its customers during the storm and continued to make multi-

---

[3]  Although ERCOT rescinded load shed instructions at 11:55 pm on February 17, 2021, the price cap was not removed by it for another 32 hours.  On March 4, 2021, Potomac Economics, the Independent Market Monitor, reported in a letter to the PUCT that ERCOT's failure to remove the price cap was "inappropriate pricing intervention" that resulted in $16 billion in additional costs.
See https://interchange.puc.texas.gov/Documents/51812_61_1114183.PDF.  As of the Petition Date, no action had been taken by regulators in connection with the foregoing.

[4]  The average rate includes wholesale electricity costs, TDSP charges, ancillary services, the Griddy membership fee and other fees and credits.  This rate excludes taxes.

[5]  See https://www.puc.texas.gov/agency/resources/pubs/news/2021/PUCTX-REL-COLD21-022121-EOM.pdf.

million dollar collateral demands pursuant to ERCOT Protocols.  Griddy earned only a fixed fee of $9.99 per month per customer regardless of whether the wholesale cost of electricity was high or low, and it also had little to no incoming funds at that point to pay these bills.  As a result, ultimately, Griddy was unable to pay ERCOT for the outstanding charges or meet ERCOT's collateral call demands.

7.      Griddy had also purchased physical electricity for the benefit of its customers through its secured lender.  With respect to amounts owed in connection therewith, its secured lender exercised its rights under its secured credit agreement with Griddy and applied amounts from Griddy's bank accounts to satisfy the outstanding amounts due to the lender.  At that point, while the offset greatly reduced the amount under the secured facilities, Griddy's cash on hand was also greatly reduced.

8.      On February 26, 2021, ERCOT notified Griddy that it was in default and forced a mass transition of Griddy's customers to providers of last resort.  As a result, Griddy was left with no customers and little to no incoming payments for outstanding accounts receivable.  To that end, as of the Petition Date, Griddy has outstanding accounts receivable balances from its customers totaling approximately $29 million, and ERCOT has sent Griddy bills in excess of $29 million.  Accordingly, Griddy was left in a position where it had no choice but to file this chapter 11 case and try to maximize value for the benefit of its creditors while balancing the desire to give its former customers relief from the uncertainty of being subject to collection actions as a result of the extreme pricing from the winter storm event.

9.      To that end, in the weeks since the winter storm event, Griddy has created a chapter 11 plan whereby: (i) Macquarie would compromise more than 40% of the remaining amount of money owed to it by Griddy for the benefit of Griddy's other creditors; (ii) Griddy

and certain other parties would give former customers with unpaid bills releases in exchange for such customers' releases of Griddy and such other parties; (iii) other general unsecured creditors would share pro rata in remaining available cash; and (iv) upon emergence, a plan administrator would take over ownership of Griddy and, in his or her discretion, potentially pursue causes of action, whether against ERCOT for potential preference claims, fraudulent transfers or other claims related to the winter storm event, or otherwise. Griddy has filed its proposed chapter 11 plan, disclosure statement and related motions concurrently herewith. Griddy intends to seek confirmation of its proposed chapter 11 plan on as expedited basis as possible.

10. In light of the Debtor's limited resources, the Debtor has filed this Motion concurrently with filing its proposed plan and disclosure statement, and sets forth below its projected timeline for this case. The Debtor is seeking authority to begin solicitation on the proposed timeline set forth below as soon as reasonably practicable after the later of entry by the Court of the Disclosure Statement Order (as defined below) and the non-governmental unit bar date (the "Bar Date") that will be set in this case. On the Petition Date, the Debtor filed a motion seeking, among other things, to set bar dates in this case (the "Bar Date Motion"). If the Court grants the relief requested in the Bar Date Motion shortly after the Petition Date, the Debtor anticipates that the general Bar Date will be during the week of April 19, 2021. Based on this timeframe, the Debtor is also seeking to have a hearing on the approval of the Disclosure Statement on a final basis and confirmation of the Plan during the first week of June.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012 (the "Amended Standing Order"). This is a core

proceeding under 28 U.S.C. § 157(b).  Venue of this case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

12.     This Court has constitutional authority to enter final orders with respect to the relief requested herein.  The Debtor further confirms its consent to this Court's entry of final orders or judgments on this Motion if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

13.     The bases for the relief requested herein are §§ 105(a) and 1125 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 3016, 3017, 3018, 3020 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 2002-1 and 3016-1 of the Bankruptcy Rules for the Southern District of Texas (the "Bankruptcy Local Rules") and Section M of the *Procedures for Complex Chapter 11 Cases In the Southern District of Texas* (the "Complex Case Procedures").

### RELIEF REQUESTED

14.     The Debtor seeks entry of an order, substantially in the form attached hereto as Exhibit A (the "Disclosure Statement Order"):

- *Disclosure Statement.*  Conditionally approving the proposed *Disclosure Statement for Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* (as it may be further amended, modified or supplemented from time to time in accordance with the terms thereof, the "Disclosure Statement");

- *Combined Hearing Notice.*  Approving the Combined Hearing Notice (as defined below), substantially in the form attached as Exhibit 1 to the Disclosure Statement Order;

- *Solicitation Procedures.*  Approving the solicitation and notice procedures with respect to the proposed *Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* (as it may be further amended, modified or supplemented from time to time in accordance with the terms thereof, the "Plan") as set forth in Exhibit 2 to the Disclosure Statement Order (the "Solicitation Procedures");

- *Solicitation Packages.* Finding that the solicitation materials and documents included in the solicitation packages (the "Solicitation Packages") that will be sent to holders of Claims and Interests entitled to vote to accept or reject the Plan are in compliance with Bankruptcy Rules 3017(d) and 2002(b);

- *Ballots.* Approving the forms of various ballots and notices to be distributed in connection therewith, substantially in the forms attached as Exhibits 3(a) – (c) to the Disclosure Statement Order, as applicable (the "Ballots");

- *Other Notices.* Approving the forms of (a) the *Non-Voting Status Notice with Respect to Unimpaired Classes Presumed to Accept the Chapter 11 Plan For Griddy Energy LLC* (the "Non-Voting Status Notice") and (b) the *Notice of (A) Executory Contracts and Unexpired Leases to be Assumed by the Debtor Pursuant to the Plan, (B) Cure Amounts, if any, and (C) Related Procedures in Connection Therewith* (the "Assumption and Cure Notice"), substantially in the forms attached as Exhibits 4 and 5, respectively, to the Disclosure Statement Order.

- *Confirmation Dates.* Establishing certain dates and deadlines with respect to the Plan Confirmation Schedule (defined below) set forth below, subject to modification as necessary.

15.     By this Motion, the Debtor seeks to establish the following dates and deadlines in relation to approval of the Disclosure Statement and confirmation of the Plan (collectively, the "Plan Confirmation Schedule"):[6]

---

[6]     The dates in the below timeline will be adjusted depending the date of entry of the later of the Disclosure Statement Order and the non-governmental unit bar date.

| Event | Deadline | Sample Dates (For Illustrative Purposes only) |
|---|---|---|
| Voting Record Date | The later of the date that the Court enters the Disclosure Statement Order and the date the Court sets as the last date for non-governmental units to file proofs of claims | April 20, 2021 |
| Solicitation Deadline | 3 business days after the Voting Record Date (or as soon as reasonably practicable thereafter) | April 23, 2021 |
| Assumption and Cure Notice Deadline | 5 business days after the Solicitation Deadline | April 30, 2021 |
| Assumption and Cure Objection Deadline | 14 days after service of the Assumption and Cure Notice | May 14, 2021 |
| Plan Supplement Date | 5 business days prior to the Voting Deadline | May 14, 2021 |
| Plan and Disclosure Statement Objection Deadline | The first business day that is thirty-one days from the Voting Record Date at 4:00 p.m. (prevailing Central Time) | May 21, 2021 |
| Voting Deadline | The first business day that is thirty-one days from the Voting Record Date at 4:00 p.m. (prevailing Central Time) | May 21, 2021 |
| Deadline to File Voting Report | Three business days after the Voting Deadline at 4:00 p.m. (prevailing Central Time) | May 27, 2021 |
| Deadline to File Confirmation Brief and/or Omnibus Reply to Any Plan or Disclosure Statement Objection | The first business day that is on or immediately after seven days after the Voting Deadline | May 28, 2021 |
| Combined Hearing on Disclosure Statement and Plan | Approximately 10 days after the Voting Deadline | June 2, 2021 |

## PLAN SUMMARY[7]

16.     The Plan contemplates the liquidation of the Debtor's assets and provides for the

following treatment for the different classes of stakeholders, except to the extent that a holder of

an Allowed Claim or Allowed Interest agrees to less favorable treatment.

| Class | Claim | Summary of Treatment of Claim[8] |
|---|---|---|
| 1 | Prepetition Lender Claims | Pro Rata share of the Prepetition Lender Distribution |
| 2 | Other Secured Claims | (i) Cash in an amount equal to such Allowed Other Secured Claim; (ii) title to the property securing such Allowed Class 2 Claim to the holder of such Claim; or (iii) such other treatment that leaves such Allowed Other Secured Claim unimpaired pursuant to section 1124(2) of the Bankruptcy Code |
| 3 | Priority Non-Tax Claims | Cash in an amount equal to such Allowed Priority Non-Tax Claim |
| 4 | General Unsecured Claims | Pro Rata share of the Class 4 Distribution |
| 5 | Customer Claims | Each Participating Customer will, subject to Bankruptcy Court approval, grant and receive the Customer Releases as set forth in Section 12.10 of the Plan.<br><br>Each Non-Participating Customer will not give or receive the Customer Releases and such Non-Participating Customer's Claim shall be classified and treated for all purposes under the Plan as an Other General Unsecured Claim solely if such Non-Participating Customer properly and timely filed an unsecured nonpriority claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order |
| 6 | Intercompany Claims | Extinguished and/or cancelled in the Debtor's discretion. |
| 7 | Existing HoldCo Interests | Cancelled |

---

[7]  The Bankruptcy Court has not yet approved the Plan.  The discussion below is a summary of the proposed Plan and is subject in all respects to Bankruptcy Court approval.

[8]  This chart is intended only to provide a summary of the proposed distributions under the Plan. To the extent there are any inconsistencies between this chart and the Plan (including any attachments to the Plan), the Plan and Plan Supplement, as applicable, shall govern.

17.     In accordance with the foregoing description of the treatment of holders of Claims and Interests, the Debtor intends to solicit the votes of only those holders of Claims and Interests that are entitled to vote to accept or reject the Plan.  The following chart summarizes the Classes of Claims and Interests under the Plan that are entitled to vote:[9]

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Prepetition Lender Claims | Impaired | Entitled to Vote |
| 2 | Other Secured Claims | Unimpaired | Presumed to Accept |
| 3 | Priority Non-Tax Claims | Unimpaired | Presumed to Accept |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Customer Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Presumed to Reject |
| 7 | Existing HoldCo Interests | Impaired | Presumed to Reject |

18.     Based on the foregoing (and discussed in greater detail herein), the Debtor is proposing to solicit votes to accept or reject the Plan from holders of Claims and Interests in Claims 1, 4 and 5 (each, a "Voting Class," and collectively, the "Voting Classes").  The Debtor is not proposing to solicit votes from holders of Claims and Interests in Classes 2, 3, 6 and 7 (each, a "Non-Voting Class," and collectively, the "Non-Voting Classes").

**BASIS FOR RELIEF**

**A.     It is Appropriate for the Court to Conditionally Approve the Disclosure Statement.**

19.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide holders of impaired claims and interests entitled to vote on the plan "adequate information" regarding that plan.  "Adequate information" means information that is "reasonably practicable" to permit "informed judgment" by impaired creditors and interest holders entitled to vote on the plan.  *See* 11 U.S.C. § 1125(a)(1).  Thus, a disclosure statement

---

[9]  The Debtor reserves the right to alter, amend or modify the Plan in accordance with the terms thereof, including the right to withdraw the Plan at any time before confirmation.

must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders, if applicable, to vote on a plan. *In re Divine Ripe, L.L.C.,* 554 B.R. 395, 401-02 (Bankr. S.D. Tex. 2009) (citing *In re Metrocraft*, 39 B.R. 567 (Bankr. N.D. Ga. 1984)).

20.     The Disclosure Statement provides "adequate information" to allow holders of Claim in the Voting Classes to make informed decisions about whether to vote to accept or reject the Plan.  Specifically, the Disclosure Statement contains a number of categories of information that courts consider "adequate information," including, without limitation, those set forth in the table below.

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Debtor's Business Operations and Capital Structure | An overview of the Debtor's corporate history, business operations and capital structure. | Article IV |
| Events Leading to the Chapter 11 Filings | An overview of the external events that caused the cessation of the Debtor's operations. | Article IV |
| Key Components of the Debtor's Proposed Plan | A summary of the key components of the Debtor's proposed liquidation and wind-down. | Article II |
| Summary of the Plan | A summary of the key terms of the Plan, including treatment of claims under the Plan. | Article II |
| Confirmation of the Plan | Confirmation procedures and statutory requirements for confirmation and consummation of the Plan. | Article VI |
| Voting Instructions | A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan. | Article III |
| Risk Factors | Certain risks associated with the Debtor's liquidation and wind-down strategy, as well as certain risks associated with forward-looking statements and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. | Article VII |

11

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Certain United States Federal Income Tax Consequences of the Plan | A description of certain U.S. federal income tax law consequences of the Plan. | Article VIII |
| Recommendation of the Debtor | A recommendation by the Debtor that holders of Claims in the Voting Classes should vote to accept the Plan. | Article IX |
| Chapter 11 Plan | A copy of the proposed Plan. | Exhibit A |
| Liquidation Analysis | An analysis of the liquidation value of the Debtor. | Exhibit B |

21.     Accordingly, the Debtor respectfully submits that the Disclosure Statement contains more than sufficient information for a hypothetical reasonable investor to make an informed judgment about the Plan and complies with section 1125 of the Bankruptcy Code. *Divine Ripe, L.L.C.,* 554 B.R. at 401-02.   The Debtor respectfully requests that the Court conditionally approve the Disclosure Statement as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code, for solicitation purposes only.   The Debtor also requests that the Court determine (on a final basis) at the Combined Hearing (as defined below) that the Disclosure Statement provides "adequate information" within the meaning of section 1125 of the Bankruptcy Code.   As part of the brief in support of confirmation of the Plan, the Debtor will provide the necessary support for the Court to determine the adequacy of the Disclosure Statement and that the Debtor has met the disclosure requirements of section 1125 of the Bankruptcy Code.

**B.    The Court Should Approve the Setting of Certain Dates and Deadlines Set Forth in the Plan Confirmation Schedule.**

    **1.    The Combined Hearing.**

22.    Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and that "[a] party in interest may object to confirmation of a plan."  11 U.S.C. § 1128; *see also* Bankruptcy Rule 3017(c) ("[o]n or before approval of the disclosure statement, the court . . . may fix a date for the hearing on confirmation.").

23.    Section 105(d)(2)(B)(vi) of the Bankruptcy Code expressly authorizes a court to "issue an order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan" where the court deems a combined hearing to be "appropriate to ensure that the case is handled expeditiously and economically." *See* 11 U.S.C. § 105(d)(2)(B)(vi); *see also In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425 (Bankr. S.D. Tex. 2009) (holding that § 105(d) authorizes the court to hold combined hearings for disclosure statements and plans).

24.    Further, Section M of the Complex Case Procedures authorize a plan proponent to file a motion for conditional approval of a disclosure statement and approval of solicitation procedures and deadlines in connection with solicitation and confirmation of a plan of reorganization.  *See* Complex Case Procedures, § M.

25.    The Debtor requests that the Court grants its request to conduct a combined hearing (the "Combined Hearing") on both the adequacy of the Disclosure Statement and confirmation of the Plan and schedule the Combined Hearing approximately ten days after the Plan and DS Objection Deadline (as defined below).  The Debtor proposes that the Combined Hearing may be continued from time to time by the Court or the Debtor, without further notice

other than by such continuance being announced in open court or by a notice of reset being filed with the Court and served on parties entitled to notice under Bankruptcy Rule 2002 or otherwise and any other parties entitled to notice.

### 2. The Combined Hearing Notice.

26. The Debtor's proposed form of notice for the Combined Hearing (the "Combined Hearing Notice") is attached as Exhibit 1 to the Disclosure Statement Order. Among other things, the Combined Hearing Notice sets forth a summary of the time and place of the Combined Hearing, the procedures associated with objections to the adequacy of the Disclosure Statement, which Classes under the Plan are entitled to vote, the procedures for voting creditors to vote to accept or reject the Plan and options for obtaining and reviewing electronic or paper copies of the Plan, the Disclosure Statement and any other documents contained in the Solicitation Packages (as defined below), for interested parties who have not received full Solicitation Packages.

27. The proposed Combined Hearing Notice also informs holders of Claims and Interests of the procedures for objecting to Confirmation of the Plan and/or requesting modifications to the Plan. Specifically, the Combined Hearing Notice provides that any objection must: (a) be in writing; (b) conform to the Bankruptcy Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest; (d) state with particularity the basis and nature of any objection to the Plan; (e) propose a modification to the Plan that would resolve such objection (if applicable); and (f) be filed, contemporaneously with a proof of service, with the Court, and served so that it is actually received by each of the notice parties identified in the Combined Hearing Notice by the Plan and DS Objection Deadline (as defined below).

28.     The Debtor proposes to post the Combined Hearing Notice on the restructuring website maintained by the Debtor's Solicitation Agent, available at https://cases.stretto.com/Griddy.

29.     The Debtor proposes to provide service of the Combined Hearing Notice to all parties required to be notified under Bankruptcy Rule 2002 and Bankruptcy Local Rule 2002-1 (collectively, the "2002 List") as of the Voting Record Date immediately following entry of the Disclosure Statement Order.  In addition, the Debtor requests that, where the Debtor has confirmed valid email addresses for the above-mentioned service parties, the Court authorize the Debtor to serve any notices for which the Debtor seeks approval in this Motion through such email service and find that such service constitutes adequate notice under the Bankruptcy Rules.

30.     In addition, the Debtor respectfully requests that it be permitted to provide email notice only to holder of Claims in Class 5 (the "Customer Claimants") of the Combined Hearing by email, which prior to the Petition Date, was the Debtor's sole means of communicating with the Customer Claimants.  The Debtor estimates that there could be as many as 57,000 Customer Claimants in Class 5, which if the Debtor were required to send notice of the Combined Hearing by first-class mail to each Customer Claimant, would result in the Debtor incurring significant costs and expense.  Accordingly, the Debtor respectfully request that it only be required to provide notice to Customer Claimants of the Combined Hearing by email.

31.     With respect to addresses from which the Combined Hearing Notice, Solicitation Package and/or any other notices for which the Debtor seeks approval in this Motion are returned as undeliverable, the Debtor respectfully requests that it be excused from redistributing such notices and/or Solicitation Packages to those entities listed at such addresses unless the Debtor is

provided with accurate addresses for such entities at least ten (10) business days prior to the Voting Deadline.

32.     The Debtor respectfully requests that the Court determine that the failure to distribute documents to such entities does not constitute inadequate notice of the Combined Hearing Notice, the Solicitation Package, the Voting Deadline and/or a violation of the Bankruptcy Rules.  Further, if a Holder of a Claim or Interest has changed its mailing address or electronic mail address after the Petition Date, the Debtor respectfully submits that the burden should be on the holder of the Claim or Interest — not the Debtor — to advise the Debtor of the new address.  *See In re Marshall*, 219 B.R. 687 (Bankr. M.D. N.C. 1997) (notice sent to last known address reasonable where sender knew recipient had moved but recipient had not provided new address to sender.

33.      In addition, in relation to Customer Claimants, if an email is returned as undeliverable, the Debtor respectfully requests that the only other step that it be required to take is to send a text message to the person (based on the last known telephone number in the Debtor's books and records)[10] containing the link to Stretto's website and indicating that the Debtor attempted to email the former customer at his or her last known email address with an important document related to the Debtor's chapter 11 case and the customer can access the Combined Hearing Notice, the Solicitation Package and/or any other notices for which the Debtor seeks approval by clicking on: https://cases.stretto.com/Griddy.  The Debtor submits that the proposed methods of service described herein be deemed good and sufficient service.

### 3.       Publication of the Combined Hearing Notice.

34.     A bankruptcy court may order notice by publication "if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Bankruptcy Rule 2002(l).

---

[10] The Debtor has telephone numbers for all but approximately 1,400 of its more than 59,000 customers.

Courts authorize debtors to provide notice by publication where notice by mail is impracticable because a debtor cannot ascertain the identity of potential claimants. *See, e.g.*, *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) (holding that constructive notice is adequate as to a debtor's unknown creditors).

35.     The Debtor proposes to publish once, pursuant to Bankruptcy Rule 2002(l), the Combined Hearing Notice, not later than five business days after the Voting Record Date in *The New York Times* and the *Houston Chronicle* and the *Dallas Morning News*. The Debtor respectfully submits that the proposed form of Combined Hearing Notice, the notice period provided after service of the Combined Hearing Notice and the publication of the Combined Hearing Notice will provide parties in interest with sufficient notice of the Combined Hearing, given the facts and circumstances of these chapter 11 case.

**C.     The Plan Confirmation Schedule.**

**1.       The Voting Record Date.**

36.     Bankruptcy Rule 3017(d) provides that upon approval of a disclosure statement, except to the extent that the Court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders, a debtor shall mail to all creditors and equity security holders and the U.S. Trustee, a copy of the plan, the disclosure statement, notice of the voting deadline and such other information as the court may direct. *See* Bankruptcy Rule 3017(d).

37.     Given the expedited timing set forth herein, the Debtor respectfully requests that the Court establish the later of the date that the Court enters the Disclosure Statement Order and the Bar Date as the voting record date (the "Voting Record Date") for determining (a) which holders of Claims are entitled to vote on the Plan and (b) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as

the Holder of the Claim.  As set forth in greater detail herein, the Debtor respectfully submits

that cause exists under Bankruptcy Rule 3018(a) to establish the Voting Record Date.

      **2.**      **The Voting Deadline.**

      38.      Bankruptcy Rule 3017(c) provides, in relevant part, "[o]n or before approval of

the disclosure statement, the court shall fix a time within which the holders of claims and

interests may accept or reject the plan . . . ."  Bankruptcy Rule 3017(c).  The Debtor requests that

the Court establish the first business day that is thirty-one days from the Voting Record Date at

4:00 p.m. (prevailing Central Time) as the deadline for voting on the Plan (the "<u>Voting</u>

<u>Deadline</u>").  The Debtor anticipates commencing the solicitation period as soon as possible

following the Court's entry of the later of Disclosure Statement Order and the Bar Date, and

completing solicitation by the date that is three business days following the Voting Record Date

(or as soon as reasonably practicable thereafter).  The Debtor proposes that for votes to be

counted, all Ballots must be properly executed, completed and delivered in the manner described

in the Solicitation Procedures so that they are ***actually received no later than the Voting***

***Deadline*** by the Solicitation Agent.  The Combined Hearing Notice will prominently state the

actual date that is the Voting Deadline.

      **3.**      **The Plan and Disclosure Statement Objection Deadline.**

      39.      Pursuant to Bankruptcy Rule 3020(b)(l), objections to confirmation of a plan must

be filed and served "within a time fixed by the Court."  Bankruptcy Rule 3020(b)(1).  The

Debtor respectfully requests that the Court establish the first business day that is thirty-one days

from the Voting Record Date at 4:00 p.m. (prevailing Central Time) as the deadline (the "<u>Plan</u>

<u>and DS Objection Deadline</u>") by which objections to the Plan and Disclosure Statement, if any,

must be filed and served in accordance with the Combined Hearing Notice.  The Debtor believes

that the Plan and DS Objection Deadline will afford the Court and all parties-in-interest

reasonable time to consider the objections and proposed modifications prior to the Combined Hearing.  The Debtor also respectfully requests that it be permitted to file a reply, if any, and brief in support of confirmation of the Plan and adequacy of the Disclosure Statement, in either a single document or multiple documents, by the first business day that is on or immediately after seven days after the Voting Deadline.

### D. The Court Should Approve the Solicitation Procedures and the Solicitation Package.

40.     To efficiently solicit votes in connection with the Plan in a manner consistent with the Bankruptcy Code and the Bankruptcy Rules, the Debtor seeks approval of the Solicitation Procedures described herein and set forth in <u>Exhibit 2</u> to the Disclosure Statement Order.  The Solicitation Procedures are tailored to allow the Debtor to solicit votes to accept or reject the Plan effectively.[11]   Further, the Solicitation Procedures provide all holders of Claims and Interests with adequate notice of the solicitation process and the relevant dates set forth in the Plan Confirmation Schedule.

### E. The Balloting Process.

41.     The Debtor, through the Solicitation Agent, will:  (a) distribute the Solicitation Packages and solicit votes on the Plan; (b) receive, tabulate, and report on Ballots; and (c) respond to inquiries relating to the solicitation and voting process, including all matters related thereto.  Further, the Debtor intends to prepare and file with the Court a voting report (the "<u>Voting Report</u>") by three business days after the Voting Deadline at 4:00 p.m. (prevailing Central Time), which will be no less than seven calendar days before the Combined Hearing.

---

[11]     To the extent that circumstances require further modifications of, or amendments to, the Solicitation Procedures, the Debtor reserves the right to supplement or amend the Solicitation Procedures to further facilitate the solicitation of the Plan.

42.     The Debtor respectfully requests that the Solicitation Agent be authorized (to the extent not already authorized by another order of the Court) to assist the Debtor in (a) distributing the Solicitation Packages; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by holders of Claims; (c) responding to inquiries from holders of Claims or Interests and other parties-in-interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages and all other related documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors and equity holders regarding the Plan.

43.     The Debtor also requests that the Solicitation Agent be authorized to accept Ballots via electronic online transmission through a customized online balloting portal on the Debtor's case website.  The encrypted ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective.

**F.     Contents and Distribution of the Solicitation Package.**

44.     Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests, as applicable, for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a chapter 11 plan.  *See* Bankruptcy Rule 3017(d) (providing that, after approval of a disclosure statement, a debtor must transmit the plan or a court-approved summary of the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the Court may direct to certain holders of claims).  In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity security holders in accordance with Bankruptcy Rule 2002(b) and a form of ballot

conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the chapter 11 plan.

45.     Subject to the Court's approval of the relief requested in this Motion, the Debtor will cause the Solicitation Packages to be distributed on or before the Solicitation Deadline, which will be at least 28 calendar days before the Voting Deadline.  Specifically, the Solicitation Package shall contain copies of the following materials:

a.     the Disclosure Statement, as conditionally approved by the Court (with all exhibits thereto, including the Plan);

b.     the Disclosure Statement Order (without exhibits);

c.     the Solicitation Procedures;

d.     the Combined Hearing Notice;

e.     the applicable form of Ballot for each Voting Class in which such holder holds a Claim, in substantially the forms of the Ballots annexed as Exhibits 3(a)-(c) to the Disclosure Statement Order, as applicable;

f.     a pre-addressed, postage pre-paid reply envelope (except for Class 5); and

g.     any supplemental documents that the Debtor may file with the Court or that the Court orders to be made available.

The distribution of the Solicitation Packages by the Solicitation Deadline will provide all holders of Claims entitled to vote on the Plan with the requisite materials and sufficient time to make an informed decision with respect to the Plan.  *See* Bankruptcy Rule 3017(d) (providing that, after approval of a disclosure statement, a debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the Court may direct to certain holders of Claims).

46.     The Debtor requests that it be authorized to distribute the Plan, the Disclosure Statement and the Disclosure Statement Order (without exhibits) to holders of Claims entitled to vote on the Plan in electronic format (*i.e.*, on a CD-ROM or flash drive).  For Class 1 and Class

21

4, only the Ballots, the Solicitation Procedures and the Combined Hearing Notice will be provided in paper format.  For the reasons stated above in relation to serving the notice of the Combined Hearing on Customer Claimants, the Debtor respectfully requests that it only be required to serve a link to Stretto's website by email where the Customer Claimants can access the Solicitation Package by email.

47.     Distribution in this manner will translate into significant monetary savings for the Debtor's estate by reducing printing and postage costs (the Plan, the Disclosure Statement, and the proposed Disclosure Statement Order collectively total hundreds of pages).  Bankruptcy courts in this district have permitted debtors to transmit solicitation documents in electronic format in other large chapter 11 case in the interest of saving printing and mailing costs.  *See, e.g., In re Vanguard Natural Resources, Inc.*, No. 19-31786 (DRJ) (Bankr. S.D. Tex. June 12, 2019); *In re Parker Drilling Co.*, No. 18-36958 (MI) (Bankr. S.D. Tex. Jan. 22, 2019); *In re Sandridge Energy, Inc.*, No. 16-32488 (MI) (Bankr. S.D. Tex. July 15, 2016).  Further, all documents will be available in print on request to the Solicitation Agent and electronically, free of charge, at the Debtor's restructuring website at https://cases.stretto.com/Griddy.

**G.     The Court Should Approve the Form of the Ballots.**

48.     The Debtor proposes to solicit votes from holders of Claims in the Voting Class.  All votes to accept or reject the Plan must be cast on an appropriate Ballot.  In accordance with Bankruptcy Rule 3018(c), the Debtor has prepared and customized (as applicable) Ballots for holders of Claims in the Voting Classes, substantially in the form attached to the Disclosure Statement Order as Exhibit 3(a)-(c) to tabulate acceptances and rejections of the Plan.

49.     The forms of the Ballots are based on Official Form No. 314 and have been modified to:  (a) address the particular circumstances of the chapter 11 case; and (b) include certain additional information that the Debtor believes to be relevant and appropriate for the

Class of Claims entitled to vote on the Plan.  *See* Bankruptcy Rule 3017(d) (a form of ballot conforming to the appropriate Official Form shall be mailed to creditors and equity security holders entitled to vote on the Plan).  Accordingly, the Debtor submits that the forms of the Ballots comply with Bankruptcy Rule 3018(c), and the Debtor requests authority to distribute the Ballots to holders of Claims entitled to vote on the Plan.

50.      Further, the Disclosure Statement, the Plan, the Combined Hearing Notice and the Ballots provide all parties in interest with sufficient notice regarding the settlement, release, exculpation and injunction provisions contained in the Plan in compliance with Bankruptcy Rule 3016(c).  The Disclosure Statement also describes in detail entities subject to or providing a release under the Plan, the claims and causes of action so released, and the entities entitled to exculpation under the Plan in conspicuous, bold typeface.  In addition, each of the Ballots and the Combined Hearing Notice describes in detail entities subject to or providing a release under the Plan and the claims and causes of action so released in conspicuous, bold typeface.  Each of the Disclosure Statement, Ballots, and Combined Hearing Notice conspicuously state which parties will be subject to the releases and that any of those parties that do not opt out of the releases will be bound by the Plan's release provisions.  Accordingly, the Debtor respectfully submits that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan.

**H.      The Court Should Approve the Form of Notice to Classes Presumed to Accept the Plan.**

51.      In compliance with section 1123(a)(1) of the Bankruptcy Code, and as reflected in Article II of the Plan, Administrative Claims, Fee Claims, Priority Tax Claims and U.S. Trustee Fees have not been classified and will be Unimpaired under the Plan except as otherwise agreed to by the holder of any such Claim (collectively, the "Unclassified Claims").  *See* 11 U.S.C.

§ 1123(a)(1) (providing for classification of claims other than administrative and priority tax claims).  As such, holders of Unclassified Claims are not entitled to vote on the Plan and will not be solicited to vote on the Plan.  Additionally, Class 2 (Other Secured Claims) and Class 3 (Non-Priority Tax Claims) are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan (the "Unimpaired Accepting Classes").  *See* 11 U.S.C. § 1126(f).  As such, holders of Claims in the Unimpaired Accepting Classes are also not entitled to vote on the Plan and will not be solicited to vote on the Plan.

52.     In light of the non-voting status attributed to holders of Claims in the Unimpaired Accepting Classes, the Debtor intends to provide such holders a non-voting status notice substantially in the form of the Non-Voting Status Notice in lieu of the Solicitation Package, and in addition to the Combined Hearing Notice.  The Non-Voting Status Notice will explain to such holders their non-voting status and also provide instructions regarding how to obtain certain materials with respect to the Solicitation Package (excluding Ballots) from the Debtor.  The Debtor respectfully submits that the Non-Voting Status Notice complies with the Bankruptcy Code and, therefore, should be approved.

53.     Additionally, Class 6 (Intercompany Claims) and Class 7 (Existing HoldCo Interests) are Impaired under the Plan, presumed to reject the Plan and therefore not entitled to vote on the Plan.  Because such Claims and Interests are held by affiliates of the Debtor, each such Class shall not be provided with any Solicitation Package or any other type of notice in connection with solicitation.

## I.     The Court Should Approve the Assumption and Cure Notice to Counterparties to Executory Contracts and Unexpired Leases.

54.     Section 10.01(a)(i) of the Plan provides that each of the Debtor's executory contracts and unexpired leases (the "Executory Contracts and Unexpired Leases") will be

deemed rejected by the Debtor as of the Effective Date, unless previously assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.  To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of assumption their Executory Contract or Unexpired Lease (and any corresponding Cure Amount) pursuant to the Plan, the Debtor will mail an Assumption and Cure Notice on or before five business days after the Solicitation Deadline.  The Assumption and Cure Notice will include instructions for objecting to the assumption or assumption and assignment of an Executory Contract of Unexpired Lease, including the deadline for any non-Debtor party to an Executory Contract or Unexpired Lease to object to the proposed Cure Amount set forth on Schedule 1 to the Contract and Lease Notice, which shall be at (a) 4:00 p.m. (prevailing Central Time) fourteen (14) days after service of he Assumption and Cure Notice (the "Cure Objection Deadline"); and (b) seven days after receiving notice of any amendment, modification or supplement to the Cure Notice.

55.     If no objection to the Cure Amount or the proposed assumption and assignment of any Executory Contract or Unexpired Lease is filed by the Cure Objection Deadline, then such party will be deemed to have stipulated that the applicable Cure Amount as determined by the Debtor is correct and such party will be forever barred, estopped and enjoined from asserting any additional cure amount under the proposed assigned Executory Contract or Unexpired Lease or from objecting to the proposed assumption and assignment thereof; *provided* that the foregoing shall not relieve any such counterparty to an Executory Contract or Unexpired Lease of its obligation to file a proof of claim to the extent that its Executory Contract or Unexpired Lease is ultimately rejected pursuant to the Plan.  Further, to ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of the Combined Hearing, the Debtor will serve such parties with the Combined Hearing Notice.  The Debtor respectfully submits that the

Assumption and Cure Notice complies with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules and, therefore, should be approved.

**J.      The Court Should Approve the Voting and General Tabulation Procedures.**

56.      The Debtor respectfully requests that the Court approve the voting and tabulation procedures described in Section IV of the Solicitation Procedures, which are in accordance with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a) (the "Voting and Tabulation Procedures").  Section 1126(c) of the Bankruptcy Code provides:  "A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected the plan."  11 U.S.C. § 1126(c).

57.      In tabulating votes, the Debtor proposes that Section IV.2 of the Solicitation Procedures shall be used to determine the amount of the Claim associated with each Holder's vote.  The amount of the Claim established pursuant to Section IV.2 of the Solicitation Procedures shall control for voting purposes only and shall not constitute the Allowed amount of any Claim for purposes of distribution under the Plan or the amount of any Claim for any other purpose.

58.      In order to provide as many of the Debtor's former customers as possible the opportunity to give and receive the Customer Releases provided for under the Plan, subject to Court approval, the Solicitation Procedures provide that any individual listed in the Debtor's books and records as having been a customer of the Debtor within the four (4) years prior to the Petition Date will be permitted to vote on the Plan as a holder of a Class 5 Customer Claim, irrespective of whether such individual has properly and timely filed an unsecured nonpriority

claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order or is listed in the Schedules as having a claim.  The Debtor requests that each such individual customer be deemed to have a Class 5 Customer Claim in the amount of $1.00 that is temporarily allowed pursuant to Bankruptcy Rule 3018 solely for purposes of voting on the Plan and indicating whether the individual consents to give and receive the benefit of the Customer Releases set forth in section 12.10 of the Plan.  For the avoidance of doubt, such customer shall not have an Allowed Class 5 Claim unless they are a Participating Customer (i.e., votes to accept the Plan or abstains from voting) and the Court approves the Customer Releases.  If an individual customer is a Non-Participating Customer (i.e., votes to reject the Plan), such customer (a) shall not have an Allowed Class 5 Claim, (b) the Customer Releases shall not apply to such customer, and (c) solely if such customer has properly and timely filed an unsecured nonpriority claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order, shall be treated as the holder of Class 4 Other General Unsecured Creditor and be entitled to vote in Class 4.

59.     The Debtor also proposes to use the voting procedures and standard assumptions in tabulating the Ballots set forth in Section IV.3 of the Solicitation Procedures.  Accordingly, the Debtor respectfully submits that the Voting and Tabulation Procedures comply with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules and, therefore, should be approved.

**K.     Non-Substantive or Immaterial Modification.**

60.     The Debtor requests that it be permitted to make non-substantive or immaterial changes to the Disclosure Statement, Plan, Ballots, Combined Hearing Notice, and related documents without further order of the Court, including changes to correct typographical and

grammatical errors and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before their distribution.

**L.      Reservation of Rights**

61.      Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as:  (a) an admission as to the validity of any prepetition claim against any entity; (b) a waiver of any entity's right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of any entity's rights under the Bankruptcy Code or any other applicable law.

[*The remainder of this page is intentionally left blank.*]

WHEREFORE, the Debtor respectfully requests that the Court enter the Disclosure Statement Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: March 15, 2021
      Houston, Texas

Respectfully submitted,

**BAKER BOTTS L.L.P.**

By: */s/ David R. Eastlake*
David R. Eastlake
Texas Bar No. 24074165
*David.Eastlake@bakerbotts.com*
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

– and –

Robin Spigel (*pro hac vice* admission pending)
*Robin.Spigel@bakerbotts.com*
Chris Newcomb (*pro hac vice* admission pending)
*Chris.Newcomb@bakerbotts.com*
30 Rockefeller Plaza
New York, New York 10012-4498
Telephone: (212) 408-2500
Facsimile: (212) 259-2501

**PROPOSED COUNSEL TO THE DEBTOR AND DEBTOR IN POSSESSION**