**Exhibit A**

**Revised Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GRIDDY ENERGY LLC,[1] | ) | Case No. 21-30923 (MI) |
| | ) | |
| Debtor. | ) | **Re. Docket No. 18** |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A
FINAL HEARING, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of Griddy Energy LLC (the "Debtor"), pursuant to sections 105, 361, 362, 363, and 507 of chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 4001-1 and 4002-1 of the Bankruptcy Local Rules for the Southern District of Texas ("Bankruptcy Local Rules"), and the Complex Case Procedures in the Southern District of Texas, for entry of an interim order (the "Interim Order") (i) authorizing the Debtor to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), (ii) granting adequate protection to the Collateral Agent (as defined below), for itself and the Prepetition Secured Creditors (as defined below), (iii) scheduling a final hearing (the "Final Hearing") on the Motion and approving the form and manner of notice thereof, and (iv) granting such other and further relief as the Court deems just and equitable; the Court having reviewed Motion and the (a) Declaration of Roop Bhullar filed in support of the Motion and (b) *Declaration of Michael Fallquist in Support of Chapter 11 Petition and First Day*

---

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

[2] Capitalized term used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*Pleadings* both filed contemporaneously with the Motion, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on March 16, 2021 (the "Interim Hearing"); and the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b); and the Court having found that this matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2), and that the Debtor consents to entry of a final order under Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, the estate, its creditors, and other parties in interest; and it appearing that proper and adequate notice of the Motion has been given under the circumstances, and that no other or further notice of the Motion is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefore:

**IT IS HEREBY FOUND AND CONCLUDED THAT:**[3]

A.   On March 15, 2021 (the "Petition Date"), the Debtor commenced a voluntary case (the "Chapter 11 Case") under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

B.   The Debtor hereby stipulates and agrees that (collectively, the "Debtor Stipulations"):

1.   The Debtor and Macquarie Investments US Inc. ("MIUS") are parties to that certain Borrowing Base Facility Agreement, dated as of December 4, 2020 (as otherwise amended, restated, supplemented or modified through the Petition Date, the "Prepetition Credit

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. Pursuant to Bankruptcy Rule 7052, to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

2

Agreement" and, together with each of the Transaction Documents (as defined in the Prepetition Credit Agreement), the "Prepetition Transaction Documents"), pursuant to which MIUS and Macquarie Energy LLC ("Macquarie Energy," and together with MIUS, "Macquarie") provided certain Credit Extensions (as defined in the Prepetition Credit Agreement) to the Debtor (collectively, the "Prepetition Credit Facility").

2. As of the Petition Date, the Debtor's Obligations (as defined in the Prepetition Credit Agreement) totaled not less than $1,448,937.58, *plus* the obligation to provide to Macquarie cash or credit support in the form of letters of credit acceptable to Macquarie in its sole discretion in an amount not less than $307,500.00 as collateralization for 102.5% of the full undrawn amount of all outstanding Letters of Credit (as defined in the Prepetition Credit Agreement), *plus* accrued and unpaid interest with respect to the foregoing, and any additional fees, costs, expenses (including attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Prepetition Credit Agreement) owing under or in connection with the Prepetition Transaction Documents (the "Prepetition Secured Obligations").

3. In connection with the Prepetition Credit Facility, the Debtor entered into that certain Pledge and Security Agreement, dated as of December 4, 2020 (as amended, supplemented or otherwise modified from time to time, the "Security Agreement"), by and among the Debtor, Griddy Holdings LLC, as Pledgor, Griddy Technologies LLC and Griddy Pro LLC, as Grantors, and Macquarie Energy, as Collateral Agent (the "Collateral Agent," and together with Macquarie, the "Prepetition Secured Creditors").

4. Pursuant to the Security Agreement and the other Prepetition Transaction Documents, the Prepetition Secured Obligations are secured by valid, binding, perfected first-priority security interests in and liens (the "Prepetition Liens") on the Collateral (as defined in the Security Agreement and referred to herein as the "Prepetition Collateral"), including substantially all of the assets of the Debtor, including cash (the "Cash Collateral").

5. The Debtor holds cash in three accounts with JPMorgan Chase Bank: an operating account ending in 0139 (the "Operating Account"), a segregated account ending in 0675 (the "Segregated Account"), and a revenue account ending in 2375 (the "Revenue Account").

6. All the Debtor's cash as of the Petition Date constitutes Cash Collateral of the Prepetition Secured Creditors.

C. The Debtor requires the use of Cash Collateral to fund the orderly wind down of its business and the Chapter 11 Case, absent which immediate and irreparable harm will result to the Debtor, its estate and its creditors. Absent the use of Cash Collateral, it would be impossible for the Debtor to conduct an orderly wind down of its operations in a manner that preserves and maintains—to the greatest extent possible—the value of the Debtor's assets for the benefit of creditors. The Debtor does not have enough sources of working capital and financing to conduct an orderly wind down of its business without the use of Cash Collateral. Accordingly, entry of this Interim Order is in the best interests of the Debtor, its estate and its creditors.

D. The Prepetition Secured Creditors and the Debtor have negotiated at arm's length and in good faith regarding the Debtor's use of Cash Collateral to fund the orderly wind down of its business and the Chapter 11 Case during the Specified Period (as defined below).

E. The Prepetition Secured Creditors do not object to the Debtor's proposed use of Cash Collateral on the terms and conditions set forth in this Interim Order.

4

F.  At the Final Hearing, notice of which will be provided in accordance with this Interim Order, the Debtor will seek final approval of the relief requested in the Motion for the proposed use of Cash Collateral on a final basis pursuant to a final order (the "Final Order").

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.  Objections Overruled.  The Motion is GRANTED, and the Debtor's use of Cash Collateral on an interim basis is hereby authorized, subject to the terms and conditions set forth in this Interim Order.  All objections to the Motion to the extent not withdrawn or resolved are hereby overruled.

2.  Use of Cash Collateral.  The Debtor is authorized to use Cash Collateral in the Operating Account and the Segregated Account for the period (the "Specified Period") from the Petition Date through the Termination Declaration Date (as defined herein); provided, however, that the Specified Period may be extended with the prior written agreement of the Prepetition Secured Creditors.  For the avoidance of doubt, the Debtor is not authorized to use Cash Collateral in the Revenue Account.

3.  Adequate Protection.  As adequate protection, the Collateral Agent, on behalf of itself and for the benefit of the Prepetition Secured Creditors, is hereby granted, solely to the extent of any diminution in value of the Prepetition Secured Creditors' interests in the Prepetition Collateral from and after the Petition Date resulting from, among other things, the use of Cash Collateral, the use, sale, lease, consumption, or disposition of Prepetition Collateral, or the imposition of the automatic stay (collectively, the "Diminution in Value"), the following (such adequate protection as set forth in clauses (a)-(b) below, the "Adequate Protection Obligations"):

    (a)  Adequate Protection Liens.  As adequate protection of the interests of the Prepetition Secured Creditors in the Prepetition Collateral against any Diminution in Value of such interests, pursuant to sections 361 and 363(e) of the Bankruptcy Code, the Collateral Agent is hereby granted, for the benefit of itself and the

        Prepetition Secured Creditors and solely to the extent of any Diminution in Value, continuing valid, binding, enforceable, non-avoidable, and automatically perfected postpetition replacement security interests in and liens (the "<u>Adequate Protection Liens</u>") on, subject only the Carve-Out, all of the Prepetition Collateral and the proceeds and products thereof, whether such property and assets were acquired by the Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located (collectively, together with the Prepetition Collateral and the Cash Collateral, the "<u>Collateral</u>") to the same extent, validity and priority of the liens and security interests pursuant to the Prepetition Transaction Documents, including the Security Agreement. The Adequate Protection Liens shall be enforceable against the Debtor, its estate, and any successors thereto, including, without limitation, any trustee or other estate representative appointed in this Chapter 11 Case, or any case under chapter 7 of the Bankruptcy Code upon the conversion of this Chapter 11 Case, upon the dismissal of this Chapter 11 Case, or in any other proceedings superseding or related to any of the foregoing (collectively, "<u>Successor Cases</u>"). For the avoidance of doubt, the Adequate Protection Liens shall be deemed to be effective and perfected automatically as of the Petition Date and without the necessity of the execution by the Debtor, or the filing of, as applicable, mortgages, security agreements, pledge agreements, financing statements, state or federal notices, recordings (including, without limitation, any recordings with the United States Patent and Trademark or Copyright Office), or other agreements and without the necessity of taking possession or control of any Collateral.

    (b)    <u>Adequate Protection Superpriority Claim</u>. To the extent the Adequate Protection Liens do not adequately protect against the Diminution in Value of the Prepetition Secured Creditors' interest in the Prepetition Collateral, as further adequate protection against any Diminution in Value of the interests of the Prepetition Secured Creditors, the Collateral Agent, for itself and the Prepetition Secured Creditors, is hereby granted as and to the extent provided by section 503(b) and 507(b) of the Bankruptcy Code allowed superpriority administrative expense claims in the Chapter 11 Case (the "<u>Adequate Protection Superpriority Claim</u>"), subject to any Carve-Out, which shall be payable from all Collateral and the proceeds thereof.

    4.    <u>Fees and Expenses</u>. The Debtor is authorized and directed to pay, within ten (10) calendar days of delivery of an invoice (which shall include reasonable supporting detail, which may be redacted to protect privileged or confidential information), all reasonable and documented fees and expenses of counsel for the Prepetition Secured Creditors, whether arising before or after the Petition Date. Payment of all such fees and expenses shall not be subject to allowance by the Court; <u>provided</u>, <u>however</u>, that the Prepetition Secured Creditors shall promptly provide copies of

6

invoices received on account of the fees and expenses set forth above to counsel to the Debtor, the U.S. Trustee and counsel to any committee appointed in the Chapter 11 Case (to the extent such committee is appointed, the "Committee"), and the Court shall have exclusive jurisdiction over any objections raised by the Committee (if appointed) or the U.S. Trustee to the invoiced amount of the fees and expenses proposed to be paid, which objections may only be raised within fourteen (14) calendar days after delivery of an invoice(s) therefor and shall be limited to the issue of the reasonableness of such fees and expenses.  In the event that within fourteen (14) calendar days from delivery of such invoices the U.S. Trustee or counsel to the Committee (if appointed) raises an objection to a particular invoice, and the parties are unable to resolve such objection, the Court shall hear and determine such dispute.  Notwithstanding anything herein to the contrary, the Prepetition Secured Creditors reserve the right to assert claims for the payment of any fees and expenses provided for under the Prepetition Transaction Documents, and for the payment of any other amounts provided for in the Prepetition Transaction Documents.

5. Postpetition Payments.  The Debtor shall pay to the Collateral Agent, for the benefit of itself and the Prepetition Secured Creditors, monthly payments (the "Postpetition Payments"), in an amount resulting from applying a per annum rate equal to the non-default contract interest rate set forth in the Prepetition Credit Agreement to the aggregate outstanding amount of Prepetition Secured Obligations as of the Petition Date in respect of such relevant periods ending after the Petition Date; provided, however, that the Prepetition Secured Creditors reserve the right to assert claims for the payment of additional interest calculated at any other applicable rate of interest, or on any other basis, provided for under the Prepetition Transaction Documents, and for the payment of any other amounts provided for in the Prepetition Transaction Documents. The

7

Postpetition Payments will be calculated on a monthly basis, and be due and payable on the first business day of each month beginning on April 1, 2021.

6. <u>Termination Events</u>. The occurrence and continuance of any of the following events, unless waived in writing by the Prepetition Secured Creditors, shall constitute a termination event (each, a "<u>Termination Event</u>"):

(a) the failure by the Debtor to obtain entry of the Final Order, in form and substance reasonably acceptable to Macquarie, by the date that is thirty (30) days after the Petition Date;

(b) the entry of an order by the Court authorizing the Debtor's use of Cash Collateral in the Revenue Account without the consent of the Prepetition Secured Creditors;

(c) the Debtor shall have (i) filed a motion seeking to create, or (ii) created, incurred or suffered to exist, any postpetition liens or security interests that are *pari passu* with or senior to the Prepetition Liens or the Adequate Protection Liens without the consent of the Prepetition Secured Creditors;

(d) the Debtor shall create, incur or suffer to exist any other claim which is *pari passu* with or senior to the Adequate Protection Superpriority Claim without the consent of the Prepetition Secured Creditors;

(e) the Debtor shall support, commence, or join as an adverse party in any suit or other proceeding against the Prepetition Secured Creditors relating to the Prepetition Secured Obligations or Prepetition Collateral;

(f) the amount in the Revenue Account shall at any time be insufficient to fully secure the Prepetition Secured Obligations, unless the Debtor transfers funds into the Revenue Account sufficient to fully secure the Prepetition Secured Obligations within three (3) business days after receipt by the Debtor of written notice of such insufficiency from the Prepetition Secured Creditors;

(g) reversal, amendment, supplement, vacatur, or modification (without the express prior written consent of the Prepetition Secured Creditors) of this Interim Order;

(h) dismissal of this Chapter 11 Case or conversion of this Chapter 11 Case to a chapter 7 case, or appointment of a trustee, receiver, interim receiver or manager, or appointment of a responsible officer or examiner with enlarged powers in this Chapter 11 Case (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4)); and

(i) the failure by the Debtor to perform, in any respect, any of the terms, provisions, conditions, or obligations under this Interim Order and such failure shall remain

unremedied for more than five (5) business days after receipt by the Debtor of written notice thereof from the Prepetition Secured Creditors.

7. <u>Rights and Remedies Upon Termination Event</u>. Upon the occurrence and during the continuance of any Termination Event and following the giving of not less than three (3) business days' prior written notice (the "<u>Termination Notice Period</u>") to the respective counsel to the Debtor, any Committee and the U.S. Trustee, any automatic stay otherwise applicable to the Prepetition Secured Creditors is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the Prepetition Secured Creditors to declare a termination, reduction or restriction on the ability of the Debtor to use any Cash Collateral (any such declaration hereunder shall be made in writing to the respective counsel to the Debtor, any Committee and the U.S. Trustee, and shall be referred to herein as a "<u>Termination Declaration</u>" and the date that is the earliest to occur of any such Termination Declaration being herein referred to as the "<u>Termination Declaration Date</u>"); <u>provided</u>, <u>however</u>, that during the Termination Notice Period, (i) the Debtor may continue to use Cash Collateral in the ordinary course of its business in accordance with the terms of this Interim Order; and (ii) the Debtor and any Committee may seek an emergency hearing before the Bankruptcy Court to contest whether a Termination Event has occurred, and must provide prompt notice of such hearing to the Prepetition Secured Creditors and their counsel, and the Prepetition Secured Creditors consent to either (y) an emergency hearing being set within the Termination Notice Period or (z) if the Prepetition Secured Creditors request, a continuance of such hearing until after the expiration of the Termination Notice Period, in which case the Debtor shall be authorized to continue use of Cash Collateral in the ordinary course of its business in accordance with this Interim Order until such hearing is held; <u>provided further</u>, <u>however</u>, that nothing in this paragraph shall be construed as limiting the Debtor's ability to request or the Court's authority to grant use of Cash Collateral pursuant to section 363 of the Bankruptcy

Code. For the avoidance of doubt, the automatic stay is not modified by this Interim Order to permit the Prepetition Secured Creditors to exercise any rights or remedies other than to declare a termination, reduction or restriction on the ability of the Debtor to use any Cash Collateral in accordance with the terms of this Interim Order.

8. <u>Carve-Out</u>. Subject to the terms and conditions contained in this paragraph, the Adequate Protection Liens and the Adequate Protection Superpriority Claim shall be subordinate to the following (collectively, the "<u>Carve-Out</u>"): (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee pursuant to section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate pursuant to 31 U.S.C. § 3717 (without regard to the notice set forth in clause (ii) below); and (ii) to the extent allowed by the Court at any time, whether by interim order, procedural order, final order, or otherwise, all accrued and unpaid fees and expenses incurred by persons or firms retained by the Debtor or the Committee (if appointed) pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code (collectively, the "<u>Professionals</u>") at any time before or on the date of delivery by the Prepetition Secured Creditors of a Termination Declaration, whether allowed by the Court prior to or after delivery of a Termination Declaration; and (iii) after the Termination Declaration Date, allowed fees and expenses of Professionals in an aggregate amount not to exceed $250,000. Any unpaid amounts included in the Carve-Out shall be paid from the Operating Account.

9. <u>Effect of Debtor Stipulations</u>. The Prepetition Secured Obligations and the Prepetition Liens are binding on the Debtor in all circumstances and for all purposes and are not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance by the Debtor. The Debtor is deemed to have irrevocably waived and relinquished any and all disputes, objections or challenges whatsoever regarding the Prepetition Secured

10

Obligations and the Prepetition Liens, including: (a) the validity, enforceability, extent, priority, or perfection of any mortgages, security interests, and liens of the Prepetition Secured Creditors, including the Prepetition Liens; or (b) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition Secured Obligations. The Debtor Stipulations shall be binding upon the Debtor and any successor thereto in all circumstances and for all purposes; provided, however, that the Debtor Stipulations shall not be binding on any chapter 7 or chapter 11 trustee appointed or elected for the Debtor if (i) such trustee commences a contested matter or an adversary proceeding challenging the Prepetition Secured Obligations or Prepetition Liens (a "<u>Challenge</u>") on or before the date that is twenty (20) days after such trustee's appointment, and (ii) there is a final non-appealable order in favor of the trustee sustaining any such Challenge in any such timely filed contested matter or adversary proceeding. The Debtor Stipulations <u>shall not</u> be binding on any other parties in interest, including, without limitation, any Committee appointed or formed in this Chapter 11 Case and any other person or entity acting or seeking to act on behalf of the Debtor's estate.

10.     <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens and the Adequate Protection Superpriority Claim; (b) permit the Debtor to perform such acts as the Prepetition Secured Creditors may request in their reasonable discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtor to incur all liabilities and obligations to the Prepetition Secured Creditors under this Interim Order; and (d) authorize the Debtor to pay, and the Prepetition Secured Creditors to retain and apply, payments made in accordance with the terms of this Interim Order.

11. <u>No Waiver of Prepetition Secured Creditors' Rights; Reservation of Rights</u>. Notwithstanding any provision in this Interim Order to the contrary, this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, any Prepetition Secured Creditors' rights with respect to any person or entity or with respect to any other collateral owned or held by any person or entity. The rights of the Prepetition Secured Creditors are expressly reserved and entry of this Interim Order shall be without prejudice to, and does not constitute a waiver, expressly or implicitly, of: (a) the Prepetition Secured Creditors' rights under any of the Prepetition Transaction Documents; (b) the Prepetition Secured Creditors' rights to seek any other or supplemental relief in respect of the Debtor; (c) the Prepetition Secured Creditors' rights to seek modification of the grant of adequate protection provided under this Interim Order so as to provide different or additional adequate protection at any time; or (d) any other rights, claims, or privileges (whether legal, equitable, or otherwise) of the Prepetition Secured Creditors.

12. <u>No Liability to Third Parties</u>. By reason of permitting the Debtor to use Cash Collateral under the terms set forth herein or in taking any other actions authorized by this Interim Order, the Prepetition Secured Creditors (a) shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtor or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute), and (b) shall not owe any fiduciary duty to the Debtor, its creditors, or its estate, and shall not be party to or be deemed to be party to a joint venture or partnership with the Debtor. Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Creditors

of any liability for any claims arising from the prepetition or postpetition activities of the Debtor or its affiliates (as defined in section 101(2) of the Bankruptcy Code).

13. <u>Binding Effect of Interim Order</u>.  Immediately upon entry by this Court, the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtor, the Prepetition Secured Creditors, and the respective successors and assigns of each of the foregoing, including any chapter 7 or chapter 11 trustee or other fiduciary hereafter appointed or elected for the estate of the Debtor or with respect to the property of the estate of the Debtor in this Chapter 11 Case, any Successor Cases, or upon dismissal of this Chapter 11 Case or any Successor Case.

14. <u>No Modification of Interim Order</u>.  Notwithstanding any reversal, modification, vacation or stay of this Interim Order, any use of Cash Collateral or Adequate Protection Obligations incurred by the Debtor to the applicable Prepetition Secured Creditors prior to the actual receipt of written notice by the Prepetition Secured Creditors of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order.

15. <u>No Third-Party Rights</u>.  Except as explicitly provided for herein, this Interim Order shall not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

16. <u>Final Hearing</u>.  A Final Hearing on the Motion shall be held on _____, 2021, at _____a.m./p.m prevailing Central Time.  Any objections or responses to entry of a Final Order on the Motion shall be filed on or before 4:00 p.m. prevailing Central Time on _____, 2021.  Any responses or objections to the Motion and entry of relief requested in the Motion on a final basis must:  (a) be made in writing; (b) state with

particularity the grounds therefor; (c) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (d) be filed with the United States Bankruptcy Court for the Southern District of Texas; and (e) be served upon (i) the U.S. Trustee, (ii) the Debtor, Attn: Roop Bhullar, P.O. Box 1288, Greens Farms, Connecticut 06838; (iii) proposed counsel to the Debtor: Baker Botts L.L.P., 910 Louisiana Street, Houston, Texas 77002 (Attn.: David R. Eastlake), and 30 Rockefeller Plaza, New York, NY 10112 (Attn. Robin Spigel and Chris Newcomb); and (iv) counsel to Macquarie: Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, Texas 77010 (Attn.: Kelli S. Norfleet).  In the event no objections to entry of the Final Order on the Motion are timely received, the Court may enter a Final Order without a Final Hearing.

17. <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Interim Order.

Dated:  March __, 2021

                                                               United States Bankruptcy Judge