**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GRIDDY ENERGY LLC,[1] | ) | Case No. 21-30923 (MI) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S EMERGENCY MOTION FOR ENTRY OF**
**AN ORDER AUTHORIZING AND APPROVING KEY**
**EMPLOYEE RETENTION PLAN FOR NON-INSIDER EMPLOYEES**

> **EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON APRIL 6, 2021 AT 1:30 PM (CT) IN COURTROOM 404, 4TH FLOOR, 515 RUSK ST., HOUSTON, TX 77002. IT IS ANTICIPATED THAT ALL PERSONS WILL APPEAR TELEPHONICALLY AND ALSO MAY APPEAR VIA VIDEO AT THIS HEARING.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. YOU WILL BE RESPONSIBLE FOR YOUR OWN LONG-DISTANCE CHARGES. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE ISGUR'S CONFERENCE ROOM NUMBER IS 954554.**
>
> **YOU MAY VIEW VIDEO VIA GOTOMEETING. TO USE GOTOMEETING, THE COURT RECOMMENDS THAT YOU DOWNLOAD THE FREE GOTOMEETING APPLICATION. TO CONNECT, YOU SHOULD ENTER THE MEETING CODE "JUDGEISGUR" IN THE GOTOMEETING APP OR CLICK THE LINK ON JUDGE ISGUR'S HOME PAGE ON THE SOUTHERN DISTRICT OF TEXAS WEBSITE. ONCE CONNECTED, CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF THE HEARING. TO MAKE YOUR ELECTRONIC APPEARANCE, GO TO THE SOUTHERN DISTRICT OF TEXAS WEBSITE AND SELECT "BANKRUPTCY COURT" FROM THE TOP MENU. SELECT "JUDGES' PROCEDURES," THEN "VIEW HOME PAGE" FOR JUDGE ISGUR." UNDER "ELECTRONIC APPEARANCE" SELECT "CLICK HERE TO SUBMIT ELECTRONIC APPEARANCE." SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **RELIEF IS REQUESTED NOT LATER THAN APRIL 6, 2021.**

---

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

The debtor and debtor in possession in the above-captioned case (the "Debtor") respectfully states the following in support of this motion (this "Motion"):

## RELIEF REQUESTED

1. The Debtor seeks entry of an order, substantially in the form attached hereto as Exhibit A, approving and authorizing the Debtor's key employee retention plan for non-insider employees (the "KERP") applicable to 12 of the Debtor's remaining employees, providing for an aggregate award pool of $137,851. In support of this Motion, the Debtor relies upon and incorporates by reference the Declaration of Roop Bhullar, the Chief Financial Officer of the Debtor, a copy of which is attached hereto as Exhibit B (the "Bhullar Declaration"), and respectfully represent:

## PRELIMINARY STATEMENT[2]

2. The Debtor is a retail electric a retail electric provider in Texas which provided its customers the ability to purchase wholesale electricity with no mark-up. The Debtor's business model was simple. For a fixed monthly fee of $9.99, each customer had access to wholesale electricity costs with no mark-up.

3. Winter Storm Uri brought extreme cold weather to Texas. Load on the power grid climbed to winter records and a host of other factors led to generation outages and forced the Electric Reliability Council of Texas ("ERCOT") to shed electric load, in the form of rolling blackouts, in order to match the available generation on the grid.

4. As described in greater detail in the First Day Declaration, as a result of the winter conditions that descended on Texas starting February 11 and the spike in electricity prices that came with it, the Debtor's customers, whether by choice with the Debtor's encouragement or

---

[2] Capitalized terms not otherwise defined in this Preliminary Statement have the meanings given them in the remainder of this Motion.

through a mass transition forced by ERCOT transitioned to other providers. As a result, the Debtor has no customers, no source of revenue and large asserted unpaid bills from ERCOT and others.

5. On the Petition Date, the Debtor filed a proposed chapter 11 plan of liquidation (as may be amended, modified or supplemented from time to time). In order to successfully implement the plan and accomplish its goals of balancing its desire to try to maximize value for the benefit of its creditors with its desire to give its former customers relief from the uncertainty of being subject to collection and other actions as a result of the extreme pricing from the winter storm event, the Debtor requires the services of its remaining employees and the development and implementation of an appropriate retention plan was critical to the Debtor.

6. To that end, the payments contemplated to be made to eligible participants are based upon a specified percentage of the participant's salary (with an average payment of 10%) and are dependent upon the applicable individuals remaining in the Debtor's employ until the earlier of (a) June 30, 2021 and (b) an Emergence Event. The individuals eligible to participate in the KERP are non-insider employees of the Debtor and are critical to successfully effectuate the Debtor's liquidation.

## JURISDICTION

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas*, dated May 24, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this chapter 11 case and this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8. This Court has constitutional authority to enter a final order with respect to the relief requested herein. The Debtor further confirms its consent to this Court's entry of final orders or

judgments on this Motion if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

9.  The predicates for the relief requested herein are sections), 363(b) and 503(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## GENERAL BACKGROUND

10.  On March 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is continuing in the possession of and management of its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner or official committee has been appointed in the Debtor's chapter 11 case.

11.  Further background regarding the Debtor and the events leading to the filing of this chapter 11 case is set forth in the *Declaration of Michael Fallquist in Support of Chapter 11 Petition and First Day Pleadings* (the "First Day Declaration").

## THE DEBTOR'S KERP

**A. Development of the Key Employee Retention Plan**

12.  As of the Petition Date, the Debtor has taken steps to reduce its personnel to 16 employees, which includes only those that are essential to winding down the Debtor's operations and facilitating an efficient resolution of this chapter 11 case. As noted above, the Debtor has filed a proposed chapter 11 plan of liquidation. The Debtor is not a position to hire and train new employees to perform the services that are necessary to efficiently winddown the Debtor's affairs and liquidate its remaining assets. Failure to retain the participants in the KERP during this period would harm the Debtor's efforts to efficiently administer this chapter 11 case to the detriment of the estate and all stakeholders. Thus, after reviewing comparable plans in similarly sized cases

4

and consulting with its counsel, the Debtor has determined that the payments that are contemplated to be made to non-insiders pursuant to the KERP will ensure the Debtor's remaining employees, who have indispensable institutional knowledge and skills, are not lost prior to the conclusion of this chapter 11 case.

**B. The Key Employee Retention Plan**

13. The KERP consists of retention payments to be made to 12 of the Debtor's employees (the "<u>KERP Participants</u>").[3] A KERP Participant will earn a KERP award (a "<u>KERP Payment</u>") if the participant remains employed with the Debtor through the earlier of June 30, 2021 or an Emergence Event[4] (the "<u>Vesting Date</u>"). KERP Payments, if earned, will be paid to the respective KERP Participants as soon as practicable following the Vesting Date. The maximum aggregate cost of the KERP is $137,851.

14. The KERP Participants are employees of the Debtor that form various financial, operational and information technology functions that are essential to the Debtor's efficient winddown in chapter 11. Without each of these employees, the Debtor may have to retain outside consultants who are not familiar with the Debtor's operations, which would ultimately lead to an increase in the costs of the administration of the chapter 11 case.

15. As evidenced by the Bhullar Declaration, no KERP Participant is an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code. Specifically, the KERP Participants do not include any employee who: (a) is appointed or hired directly by the

---

[3] For confidentiality reasons, the specific details for each KERP Participant is not included in this filing, but the Debtor will provide this information on a confidential basis to the US Trustee and any official committee upon formation, and can make it available to the Court or file it under seal if requested to do so.

[4] Under the proposed KERP, an "<u>Emergence Event</u>" is defined as (a) the effective date of a plan of liquidation under chapter 11 of the Bankruptcy Code, (b) dismissal of this chapter 11 case, or (c) conversion of the chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

5

Debtor's board of directors; (b) exercises managerial control over, or has responsibility for, the Debtor's operations as a whole; or (c) directs the Debtor's overall corporate policy or governance.

16. The Debtor designed the KERP keeping in mind its goals of efficiently and cost effectively winding down its affairs and maximizing the value for the benefit of all interested parties.

17. An overview of the KERP is as follows:

  a. <u>Cost</u>: The estimated cost of the KERP is $137,851.

  b. <u>Payment Structure</u>: KERP Payments ranges from $1,125 to $22,500 per KERP Participant, which is equivalent to 2.5% to 15% of each KERP Participant's annual salary, with an average of $11,488. The average of the retention bonus for all KERP Participants is 10% of the annual salaries of all KERP Participants.

  c. <u>Number of Proposed KERP Participants</u>: 12.

  d. <u>Vesting Date</u>: The Vesting Date is the earlier of June 30, 2021 or an Emergence Event.

  e. <u>Termination Provisions</u>: If the Debtor terminates a participant's employment without cause prior to the Vesting Date, then such Participant will be entitled to receive the KERP Payments within ten (10) days following such participant's date of termination (or such longer period as may be required by law), subject to entering into the Debtor's standard form separation and release agreement, and allowing such agreement to become effective.

  f. <u>Timing of Payment of</u> KERP Payments: Subject to the provisions of the Plan, a KERP Participant shall earn the KERP Payments, if such KERP Participant remains employed by the Debtor through the Vesting Date. Any KERP Payment required to be made under the KERP shall be paid by the Company within ten (10) days after the Vesting Date. If the case is converted or dismissed, the KERP Payments shall become immediately payable to the applicable KERP Participant.

18. The Debtor believes that, if the KERP is not approved, it would significantly undermine the Debtor's ability to motivate its employees to remain with the Debtor and work productively through the duration of this liquidating chapter 11 case.

### C. Necessity of the Key Employee Retention Plan

19. Because the Debtor is liquidating, the KERP Participants may be motivated to leave the Debtor's employment during the pendency of this chapter 11 case. The Debtor believes that the KERP will increase the likelihood that the KERP Participants remain employed with the Debtor throughout the duration of this chapter 11 case, which will help the Debtor's with its goal of maximizing distributions to creditors while balance the Debtor's desire to give its former customers relief from the uncertainty of being subject to collection and other actions as a result of the extreme pricing from the winter storm event.

20. The Debtor has worked with its advisors to craft the KERP in order to increase the likelihood that the KERP Participants are properly motivated and will remain with the Debtor during the restructuring process, thereby preserving value for the Debtor, its estate, creditors and other parties in interest.

21. The Debtor submits that the KERP Payments are justified under the circumstances of this chapter 11 case.

### BASIS FOR RELIEF

22. The Debtor respectfully requests that the Court grant this Motion. First, the KERP is a reasonable exercise of the Debtor's business judgment and is appropriate under sections 363(b) and 1107 of the Bankruptcy Code. *See, e.g., In re Continental Air Lines, Inc.,* 780 F.2d 1223 (5th Cir. 1986); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F. 2d 1303 (5th Cir. 1985). Second, the KERP is justified by the "facts and circumstances" of these cases and is therefore authorized under section 503(c)(3) of the Bankruptcy Code. *See, e.g., In re Velo Holdings, Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012). Further, the KERP is not subject to section 503(c)(1) of the Bankruptcy Code because no insiders are participants in the program.

**I. Implementing the KERP Is an Exercise of the Debtor's Sound Business Judgment and Is Authorized by Sections 363(b) of the Bankruptcy Code**

23. "The [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Courts in the Fifth Circuit have granted a debtor's request to use property of the estate outside of the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code upon a finding that such use is supported by sound business reasons. *See, e.g., Institutional Creditors of Cona Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *In re Viking Offshore (USA), Inc.*, 08-31219-H3-11, 2008 WL 1930056, at *2 (Bankr. S.D. Tex. Apr. 30, 2008) (debtor's proposed bonus payments were proposed uses outside the ordinary course of business subject to the business judgment rule); *see also In re Crutcher Res. Corp.*, 72 B.R. 628, 631 (Bankr. N.D. Tex. 1987) ("A Bankruptcy Judge has considerable discretion in approving a § 363(b) sale of property of the estate other than in the ordinary course of business, but the movant must articulate some business justification for the sale."); *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 714 (Bankr. W.D. Tex. 1989).

24. The implementation of the KERP is a proper exercise of the Debtor's business judgment and is in the best interests of the Debtor's estate and all stakeholders in this chapter 11 case. The KERP is meant to retain the Debtor's non-insider employees during a time of unprecedented challenges for the Debtor. There is no replacement for these employees. In its current financial condition, the Debtor does not have the resources to search for, hire or train new employees and, in any event, doing so would be an especially difficult exercise in light of the

8

Debtor's liquidation plan and would only serve to increase administrative costs and reduce recoveries for its stakeholders.

25. For these reasons, the Debtor's decision to implement the KERP is a valid exercise of the Debtor's business judgment and should be approved.

## II. The KERP Satisfies the Requirements of Section 503(c) of the Bankruptcy Code

26. The KERP is permissible under section 503(c) of the Bankruptcy Code. Section 503(c)(1) of the Bankruptcy Code restricts payments made to "insiders of the debtor for the purpose of inducing such person to remain with the debtor's business"—*i.e.*, those insider plans that are essentially "pay to stay" plans. *See, e.g., In re Velo Holdings, Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012) (finding that an incentive-based plan alleviated the need for a section 503(c)(1) analysis); *In re Borders Grp., Inc.*, 453 B.R. 459, 471 (Bankr. S.D.N.Y. 2011) (finding that "the Debtors [had] met their burden of establishing that the [compensation program was] incentivizing, thereby alleviating the need for a section 503(c)(1) analysis") (quoting *In re Dana Corp.*, 358 B.R. 567, 584 (Bankr. S.D.N.Y. 2006)).

### a. The Key Employee Retention Plan Is Not Subject to Section 503(c)(1) of the Bankruptcy Code Because No Participant in the Program Is an Insider.

27. Section 503(c)(1) of the Bankruptcy Code does not apply to the KERP because no participant in the program is an insider. Specifically, none of the KERP Participants holds a senior management position or controls the Debtor's corporate policies.

28. In determining who is an insider, courts look to section 101(31) of the Bankruptcy Code, which provides that where a debtor is a corporation, insiders include any "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor . . . or [iv] relative of a . . . director, officer or person in control of the debtor." 11 U.S.C. § 101(31)(B). In determining whether a particular employee is an "insider," courts consider not only an employee's job title but

9

also the employee's role with the debtor on a case-by-case basis. *See In re Foothills Texas, Inc.*, 408 B.R. 573, 583 (Bankr. D. Del. 2009) (noting that "the type of evidence that might support finding a person to be an [insider] may vary from case to case based on the facts and circumstances surrounding the debtor's business"); *see also In re Longview Aluminum, L.L.C.*, 419 B.R. 351, 355 (Bankr. N.D. Ill. 2009) (noting that an individual's title alone as an "officer" or "director" is insufficient to establish that an individual is an insider). The insider analysis focuses on whether the employee at issue has the authority to implement company policy or whether the employee reports directly to a company's board of directors, *see In re Borders Grp., Inc.*, 453 B.R. 459, 469 (Bankr. S.D.N.Y. 2011), such that there is a plausible concern that the employee could have gained "an unfair advantage" by virtue of their position, *see Foothills Texas*, 408 B.R. at 579.

29.  None of the KERP Participants (a) was appointed or elected by the Board; (b) reports directly to the Board; (c) is an officer of the Debtor; (d) has a job title, such as "CEO, president, secretary, or treasurer," *cf. Borders Grp., Inc.*, 453 B.R. at 468; (e) controls the Debtor; (f) participates in management on an "executive level;" (g) has broad responsibilities over a large portion of the Debtor's business; or (h) has any other responsibilities that should reasonably result in their treatment as an "insider" under the Bankruptcy Code. Although the KERP Participants are crucial to the Debtor's efficient liquidation, they do not have the type of broad responsibility or control to make company-wide strategic decisions, approve company policy, or develop employee compensation. *See* Bhullar Decl., ¶ 5. As a result, any concerns that awards under the KERP result from "an unfair advantage" are not justified by the record here. Rather, the employees who are eligible to participate in the KERP are the Debtor's rank-and-file employees that are necessary for the Debtor to efficiently prosecute the chapter 11 case and maximize value for all stakeholders.

      **b.**      **The Key Employee Retention Plan Is Justified by the Facts and Circumstances of these Chapter 11 Cases and Satisfies Section 503(c)(3) of the Bankruptcy Code**

30. The KERP is authorized under section 503(c)(3) of the Bankruptcy Code. Section 503(c)(3) requires that contemplated payments to a debtor's employees outside the ordinary course of business be "justified by the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). This standard is essentially the same as the business judgment standard that is applied under section 363(b) of the Bankruptcy Code. *See Velo Holdings*, 472 B.R. at 212 ("Courts have held that the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b).").

31. As discussed above and in the Bhullar Declaration, attrition of the KERP Participants is a real risk, as some employees have expressed a reluctance to stay given the chapter 11 process, and a loss of KERP Participants will ultimately complicate the Debtor's winddown thereby increasing administrative costs. The KERP is necessary to reduce flight risk of the KERP Participants and is justified by the facts and circumstances of this case.

32. For these reasons, the Debtor respectfully submits that implementing the KERP is a proper exercise of the Debtor's business judgment, is justified by the facts and circumstances of this case, and satisfies the requirements of section 503(c)(3) of the Bankruptcy Code. The KERP will incentivize employees to continue working for the Debtor and result in value maximization that will inure to the ultimate benefit of all parties in interest. Accordingly, the Debtor respectfully requests that the Court issue an order approving and authorizing the Debtor to implement the KERP.

**EMERGENCY CONSIDERATION;**
**WAIVER OF BANKRUPTCY RULES 6004(A) AND (H)**

33. Pursuant to Bankruptcy Local Rule 9013-1(i), the Debtor requests emergency consideration of this Motion. The relief sought in the Motion is important to retaining the Debtor's non-insider employees. Any delay in obtaining the relief sought in the Motion will produce uncertainty and could lead to the loss of important personnel, thereby complicating the Debtor's winddown and increasing administrative costs. Accordingly, the Debtor submits that emergency consideration is warranted and respectfully requests that the Court approve the relief requested in this Motion on an emergency basis.

34. To successfully implement the KERP, the Debtor seeks a waiver of notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h).

**NOTICE**

35. Notice of this Motion will be given to: (a) the United States Trustee for Region 7; (b) counsel to Macquarie Energy LLC and Macquarie Investments US Inc., in their respective capacities as secured parties and/or collateral agent under the Debtor's prepetition agreements with such parties; (c) the Office of the Attorney General of the State of Texas; (d) the thirty (30) largest unsecured creditors for the Debtor, including the Electric Reliability Council of Texas; (e) the Public Utilities Commission of Texas; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; and (h) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtor respectfully submits that, under the circumstances, such notice is sufficient and that no further notice of this Motion is required.

**CONCLUSION**

**WHEREFORE,** the Debtor respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit A, granting the relief requested in this Motion and such other and further relief as may be just and proper.

Dated: March 19, 2021
      Houston, Texas

Respectfully submitted,

*/s/ Chris Newcomb*
David R. Eastlake, State Bar No. 24074165
**BAKER BOTTS LLP**
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-1522
david.eastlake@bakerbotts.com

– and –

Robin Spigel (*pro hac vice* admission pending)
Chris Newcomb (*pro hac vice* admission pending)
**BAKER BOTTS LLP**
30 Rockefeller Plaza
New York, New York 10012-4498
Telephone: (212) 408-2500
Facsimile: (212) 259-2501
robin.spigel@bakerbotts.com
chris.newcomb@bakerbotts.com

*Proposed Counsel to the Debtor and Debtor in Possession*

**Certificate of Accuracy**

 I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Local Rule 9013-12(i).

         */s/ Chris Newcomb*
         Chris Newcomb

**Certificate of Service**

 I certify that on March 19, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

         */s/ Chris Newcomb*
         Chris Newcomb