1                    IN THE UNITED STATES BANKRUPTCY COURT

2                    FOR THE SOUTHERN DISTRICT OF TEXAS

3                             HOUSTON DIVISION

4   IN RE:                        §        CASE NO. 21-30923-11
                                  §        HOUSTON, TEXAS
5   GRIDDY ENERGY, LLC            §        FRIDAY,
                                  §        MARCH 19, 2021
6            DEBTOR.              §        8:00 A.M. TO 8:44 A.M.

7                    STATUS CONFERENCE (VIA ZOOM)

8               BEFORE THE HONORABLE MARVIN ISGUR
                 UNITED STATES BANKRUPTCY JUDGE

9

10

11

12     APPEARANCES:                        SEE NEXT PAGE

13     RECORDED VIA COURTSPEAK; NO LOG NOTES; AUDIO DISTORTED

14

15

16

17

18

19

20                   TRANSCRIPTION SERVICE BY:

21              JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                     935 Eldridge Road, #144
22                   Sugar Land, TX  77478
                         281-277-5325
23                 www.judicialtranscribers.com

24
       Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.

1                    <u>APPEARANCES (VIA ZOOM)</u>:

2

3   FOR THE DEBTOR:                BAKER BOTTS, LLP
                                   Robin Spigel, Esq.
4                                  30 Rockefeller Plaza
                                   New York, NY  10112
5                                  212-408-2545

6

7   FOR PUTATIVE CLASS:            POTTS LAW FIRM
                                   Derek Potts, Esq.
8                                  3737 Buffalo Speedway, #1900
                                   Houston, TX  77098
9                                  888-902-6245

10

11  FOR THE STATE OF TEXAS:        TX ATTORNEY GENERAL'S OFFICE
                                   Rachel Obaldo, Esq.
12                                 300 West 15th St., 8th Fl.
                                   PO Box 12648
13                                 Austin, TX  78711
                                   512-463-2173

14

15  FOR THE US TRUSTEE;            OFFICE OF THE US TRUSTEE
                                   Jana S. Whitworth, Esq.
16                                 515 Rusk Street, Ste. 3516
                                   Houston, TX  77002
17                                 713-718-4650

18

19

20  (Please also see Electronic Appearances.)

21

22

23

24

25

1      HOUSTON, TEXAS; FRIDAY, MARCH 19, 2021; 8:00 A.M.

2      (Conference recording started.)

3           THE COURT:  All right.  Good morning.  We're here

4  in the Griddy Energy case for a status conference.  The case

5  number is 21-30923.

6           We're going to start with the report from Debtor's

7  counsel and then from any other party that wishes to speak,

8  we'll hear from you.

9           So if I could get Debtor's counsel to please press

10  five star one time on your line, please?

11           Yes.  Who do we have here on behalf of the Debtor?

12           MS. SPIGEL:  Good morning, Your Honor.  Robin

13  Spigel, Baker Botts on behalf of Griddy Energy, LLC, the

14  Debtor.

15           THE COURT:  Good morning.

16           MS. SPIGEL:  Thank you, Your Honor, for your time

17  today.  Good morning.

18           Thank you, Your Honor, for the time today.  We

19  appreciate it.

20           At the First Day Hearing, Your Honor, we adjourned

21  two motions, the bar date motion and the motion to redact

22  certain personal identifiable information for individual

23  creditors and authorizing electronic notice for our

24  customers.

25           It wasn't clear whether today we're going to be a

1  hearing or a status conference.  It is a status conference,

2  as Your Honor noted.  So let me give me an update to where

3  we stand right now.

4           After the hearing on Tuesday, we met with

5  Ms. Obaldo from the Attorney General's Office, as well as

6  Mr. Potts and Ms. Schroeder (phonetic), who represent

7  certain Plaintiffs.  We spoke about, you know, the issues

8  related to the motions and we agreed to provide plaintiff's

9  counsel some information in particular, but the company's

10 insurance policies we entered into, you know, a short

11 Confidentiality Agreement and got them the insurance

12 policies later that night.

13          And then we spoke the next day in the afternoon.

14 In addition, I had, you know, several conversations with

15 Ms. Obaldo.  The Debtors and the Attorney General are trying

16 to work together to come up with a proposed solution related

17 to all of these notice agents.  I will say that we're not

18 very close on the notice issues with Plaintiff's counsel;

19 however, that being said, the good news is we were able to

20 agree on one thing, mainly that there's no objection to

21 using electronic notification to former customers, subject

22 to the following, and obviously subject to Your Honor's

23 approval and consent.

24          And I'll note that this is not before Your Honor

25 today, but I just want to preview where we are generally, if

1    that's okay?

2           THE COURT:  Yeah, no, that's what I'd like to

3    know, yeah.

4           MS. SPIGEL:  Okay, thanks.

5           Some concern was expressed at the First Day

6    Hearing about what's proper notice.  So we looked into costs

7    generally to try to figure out, you know, sort of balance

8    the cost because we don't have a lot of money in the estate.

9    We're also providing proper notice.

10          And just to give Your Honor some background, doing

11   a mailing is very expensive, right?  If we do a mailing to

12   50,000 or 29,000 customers and 29 IU's, because that's the

13   February number.  The mailing of a notice at the

14   commencement of the case alone is either 57,000 for 57,000

15   people or 29,000 for 29,000 people.  And for the bar date,

16   for 57,000 people would be about $111,000 for 57,000 people

17   or $57,000 for 29 people.

18          So Ms. Obaldo came up with what I thought was a

19   great suggestion, of sending a postcard as the initial

20   mailing and on that postcard we have not agreed, so this is

21   the Debtor's position and we have to work on the message,

22   which is why this is a status conference in part, but the

23   message would be that Griddy Energy filed for bankruptcy on

24   March 15th.  You know, this is the only mailing you will

25   get.  You will only receive email from griddy@stretto.com,

1  so they know where the emails are coming from.  You should

2  open your emails.  Your rights will be affected.  The bar

3  date is X, 341 Meeting is Y, and give them, you know,

4  Stretto, the Debtor's website, restructuring website, which

5  is the Stretto website address.

6         Again, we haven't agreed with everyone as to what

7  that message is, that's sort of the Debtor's preview of what

8  they believe would be appropriate on the postcard.  And

9  thereafter all customers would be notified by email.  We're

10 working on figuring out, you know, other notice issues with

11 Ms. Obaldo, but another suggestion she made, which the

12 Debtor thinks is a good idea, is that Griddy would post the

13 message on the post card, also on its website, and social

14 media, both in English and in Spanish, so that people have,

15 you know, ways of just being notified.  You know, we can do

16 a push notification from our application, as well.

17        So the other half of the redaction and notice

18 motion is whether the Debtor may redact the address of the

19 employees -- the employees and the customers.  The employees

20 are not being contested.  We have not been able to reach

21 agreement with Plaintiff's counsel on this portion of it,

22 and I don't think, Your Honor, that we will reach agreement.

23 We don't believe that it should be -- we believe that the

24 information should be redacted and not be public, and I

25 think the Plaintiff's counsel, who will obviously advocate

1   for themselves, thinks otherwise.

2           I believe the Attorney General's Office agrees

3   that the information should not be public.

4           With respect to the bar date motion -- oh, I'm

5   sorry.

6           THE COURT:  So -- on that question, let me just

7   probe one area.  Are you saying that it wouldn't be made

8   public and that no notice from putative class counsel would

9   be sent by email, or are you saying that, in fact, it won't

10  be made public, but you would include in the email

11  notification, the communication from putative class counsel?

12          I just want to know what your position is on that.

13  Because one is -- public is public, giving Plaintiff's

14  putative class counsel contact ability.  Even if you do it

15  in your own email is different than public, and I just want

16  to know what your position is on that.

17          MS. SPIGEL:  Well, I think, Your Honor, first of

18  all, the putative -- I mean, we discussed this in the First

19  Day Hearing with putative class counsel.  Right, so I mean,

20  I think that they need to take steps that are appropriate to

21  certify that they're a class before messages would be sent

22  to customers related to whatever their message is to former

23  customers.

24          And I think they have to go through --

25          THE COURT:  So you're -- so the Debtor's position

1   is you won't make it public and -- and this may be perfectly

2   okay, I just want to be sure I've got it -- and putative

3   class counsel would not initially be given the ability to

4   communicate directly or indirectly with those folks?

5          MS. SPIGEL:  Correct.

6          THE COURT:  And what happens in a normal putative

7   case, at what point are putative class counsel allowed to

8   communicate with putative class members?  Is it only after

9   certification, in a typical 23 class action?

10          MS. SPIGEL:  I am -- so it's my understanding, but

11   I'm not an expert in class actions.  It's my understanding

12   that that's correct.  I mean, Mr. Potts or Ms. Schroeder

13   will correct me, but that is my understanding.

14          THE COURT:  And are you also asking that there be

15   a bar date before putative class counsel would be able to

16   communicate with putative class members?  That the bar date

17   would come and go before they could communicate with the

18   putative class members?

19          MS. SPIGEL:  I think that they could take steps to

20   do what they need to in order to obtain the ability to

21   communicate, but if they don't do that, then yes.  They can

22   -- you know, each individual -- we're going to propose that

23   each individual customer receive notice, specific notice

24   related to the bar date and they can assert their claim.

25          I believe that Mr. Potts and Ms. Schroeder intend

1  to file a conditional cross Proof of Claim.  You know, we

2  can -- we don't have to debate whether it's a --

3          THE COURT:  We might have to do that before I make

4  this decision because I'm going to want to understand that.

5  And maybe this also gets resolved if, in fact, there's a

6  Committee.

7          Has a Committee been formed?

8          MS. SPIGEL:  No, not yet.

9          THE COURT:  Okay.  So I didn't mean to interrupt

10  you, but I wanted to be sure I understood what you were

11  saying.

12          Why don't you move ahead, Ms. Spigel?

13          MS. SPIGEL:  Okay.  Thank you, Your Honor.

14          So with respect to the bar date motion, or can I

15  tell you all of those other two motions and then --

16          THE COURT:  Sure.

17          MS. SPIGEL:  -- people will speak, or do you want

18  to just seal that?

19          THE COURT:  Yeah, I wanted you to finish your

20  whole opening, then we'll let whomever wants to speak next.

21          MS. SPIGEL:  Thank you.

22          So we were working closely with the Attorney

23  General's Office on the specific proposal for notice of the

24  bar date to customers.  We're trying to figure out a way

25  that's most commercially reasonable to reach customers in a

1  non-confusing way.

2          And we believe that we'll reach consensus with the

3  Attorney General's Office on the notice and the approach,

4  and you know, with the intent that it be clear to each

5  former customer.  I think Your Honor expressed some concern

6  at the First Day Hearing about the customers understanding

7  their options in particular in light of our proposed plan.

8          From our perspective, the motion -- the bar date

9  motion would be about asserting unsecured claims that the

10 customers would have and that the ballots will give people a

11 choice as to whether they opt into the release, or they have

12 a general unsecured claim, and so we don't think the bar

13 date motion -- I'm sorry, the bar date itself will preclude

14 people from, you know, opting for the releases.  We'll make

15 clear on the notice that, I mean, I don't know whether the

16 customers will understand exactly what's happening with the

17 Plan because it's premature, but we have no intention of

18 cutting off people's rights to participate in the releases,

19 if they don't file a Proof of Claim.  It's not a

20 prerequisite --

21          THE COURT:  But I mean, you may not have that

22 intention, but let's assume somebody doesn't file a Proof of

23 Claim and then you draw a Plan objection that says, "Wait a

24 minute.  You're giving releases to people from having to pay

25 their bills when they have no claim against you because they

1   didn't file a Proof of Claim.  We don't think that maximizes

2   the estate.  They have no right to sue you.  They have no

3   right to claim against you.  We object," says some unsecured

4   creditor, "to your not collecting that receivable."

5           If we don't tell people up front that they've got

6   to file their Proof of Claim if they ever want to

7   participate -- if they want to be sure they can participate

8   in this mutual release, then I'm not sure we don't have to

9   tell them that.  Because I mean, I can just -- if you're an

10  unsecured creditor, you want that -- it's $29 million,

11  right?  And if you only get Proofs of Claim from a third of

12  the people, then you're leaving $19 million on the table,

13  which may be just fine, but leaving it on the table for

14  nothing in return, seems difficult if they didn't file a

15  Proof of Claim.

16          And I can certainly anticipate an objection about

17  that.

18          MS. SPIGEL:  Well, Your Honor, we think that,

19  first of all, the way the Plan is set up is that the

20  customer claims for participating customers are allowed

21  claims.  So we are already -- we're conceding under the Plan

22  that they have allowed claims.

23          As to Your Honor's concern about, you know,

24  somebody objecting, I mean, we'll be fully prepared to

25  defend the Plan treatments.

1          THE COURT:  Sorry, so you're going to schedule --

2    let's say that Mr. Potts owes you $2,000 for electric

3    service during the freeze.  That's what he owes to you

4    according to your accounts receivable records.  What claim

5    are you going to schedule him for?

6          MS. SPIGEL:  We're not planning to schedule the

7    customers as having -- as having claims.  We are just -- we

8    are assuming that all --

9          THE COURT:  No, but for them to have a claim,

10   they've got to file a Proof of Claim, right?

11          I mean, the Code says either you list them as

12   having a claim or they file a Proof of Claim or they have no

13   claim, I think.  So how are you going to move between those?

14          MS. SPIGEL:  Well, we were planning to allow them

15   to have a claim pursuant to the Plan.  So, I mean we could

16   list all of the customers on a Schedule.  I think it would

17   have the same effect, which is that to the extent that there

18   is an unpaid amount or should be, we will agree that in

19   exchange for the releases, they will have an allowed claim,

20   and if they don't want to agree to that, then they have to

21   assert a general unsecured claim, so that there's a

22   presumption that all customers have an allowed claim and

23   class --

24          THE COURT:  I think that is empty of -- all right,

25   this needs more thought.  I want to be sure that if the Plan

1   is to forgive these people's debts, which I have expressed

2   at the earlier hearing, is a pretty impressive approach.

3   This is not to try to get in the way of that approach, but I

4   am really worried that if they don't file claims, that they

5   may not get the release because of other objections that

6   might be filed by other unsecured parties, unless you have a

7   way to pay everybody else in full, maybe you do, so you

8   won't draw an objection.

9           MS. SPIGEL:  No.

10           THE COURT:  If somebody else isn't getting paid in

11  full, I think they could insist that as to somebody that

12  doesn't have a scheduled claim and doesn't file a Proof of

13  Claim, you can't create a claim and then say:  If you give

14  us a release, we'll create a claim for you, right?

15           They may be out of luck and that's why I want this

16  notice to be really carefully thought through.  And I'm not

17  saying what you're doing doesn't work, but right now, it

18  sounds like it may have some holes in it and I want to be

19  sure that we have a good way of implementing this unique

20  plan that you're thinking of.

21           So, I keep interrupting and I guess I intend to

22  interrupt just because I'm trying to learn and comment, but

23  I don't mean to not let you continue, so go ahead, please,

24  Ms. Spigel.

25           MS. SPIGEL:  I guess I understand Your Honor's

1   concern and we've obviously spent a lot of time thinking

2   about the approach here on the Plan.  First of all, we don't

3   know whether or not to cram the Plan down on any, you know,

4   it may be all classes accept, right?  So that's also a

5   possibility.  Or maybe there's no objections, but to the

6   extent there are objections, I mean, we do believe -- and

7   I'll have to think further about what the notice says in

8   terms of these individual creditors, but --

9          THE COURT:  Can I throw something?  Let me just

10  throw this idea back out at you and I haven't thought

11  through this fully, either, but I don't think you're going

12  to wait too long to get your Plan up for a confirmation

13  hearing.  Maybe --

14          MS. SPIGEL:  Correct.

15          THE COURT:  -- knowing that these people might

16  have claims, which you do -- having the releases become

17  effective before the Proof of Claim deadline gives you

18  something to release.  So maybe we ought to think through

19  why you're going to have an early Proof of Claim deadline

20  for customers and maybe we need two Proofs of Claim

21  deadlines, one for everybody other than customers, and a

22  later Proof of Claim deadline for customers?

23          'Cause it sounds like you don't really care if

24  they file a Proof of Claim or not if they're a customer.  So

25  at least give some thought to -- I don't have a problem

1    doing separate -- three different Proofs of Claim deadlines:

2    One for the Government, one for customers, and a third one

3    for everyone else, and that may get you the information you

4    need and leave the claims alive at confirmation.

5              At least give some thought to that, if you don't

6    mind?  I don't think I've ever done that before, but I don't

7    see anything in the rules that doesn't let me set different

8    Proofs of Claim deadlines for different groups of people,

9    especially given the unique approach --

10             MS. SPIGEL:  Yes.

11             THE COURT:  -- you're taking.

12             MS. SPIGEL:  Yeah, we were -- we did look into

13   that since the hearing.  I mean, we haven't found a

14   precedent one way or the other, really, that you -- the

15   different bar dates.

16             THE COURT:  Right.

17             MS. SPIGEL:  I think that -- I think there could

18   be confusion with multiple bar dates, but we could set a bar

19   date for customers, you know, for the period customers, not

20   bifurcating which claims that they have to assert.

21             THE COURT:  Right.

22             MS. SPIGEL:  Then maybe that could clear up the

23   confusion.

24             THE COURT:  Right.

25             MS. SPIGEL:  I think one of the things, though,

1   Your Honor, is that we just want to make sure that somebody

2   who has a large electricity bill has the option that -- they

3   really have the option to opt into the release.  I

4   understand and I hear your concerns and we're obviously

5   prepared to defend the treatment against, you know, somebody

6   who thinks that we're giving a lot of value here in exchange

7   for nothing.  We think that there is value, you know, going

8   both ways.

9        THE COURT:  I do, too, until the Proof of Claim

10  deadline.

11      (Laughter.)

12        MS. SPIGEL:  But you know, our -- I think our big

13  concern would be that somebody doesn't get the opportunity

14  to participate in the release that should.  And so I will --

15  I guess I'll have to further -- I understand Your Honor's

16  concerns and we will think about that further.

17        THE COURT:  Thank you.  Thank you.

18        MS. SPIGEL:  Thank you for that suggestion.

19        Okay.  So in advance -- I mean, assuming we can

20  get to all of the -- address all these things, which I think

21  we can.  I do.  I think that it just takes a little

22  creativity and thinking out of the box.  In advance of the

23  next hearing, we'll file, you know, a revised bar date

24  notice and accompanying notices.  And we'll even share the

25  proposal of what we have with the Plaintiff's counsel.

1          Again, I'm not sure that we're going to come to

2    agreement.  I think that we're going to have, you know, a

3    contested hearing hopefully next week.

4          So all in all, I think we've made progress, but

5    we're not fully baked yet and ready to, you know, present

6    something to Your Honor, and so we'll get to this, but it

7    won't be before the hearing next week because, again, as

8    Your Honor knows from the cash collateral -- or the budget

9    attached to the cash collateral motion, there's just not a

10   lot of money in this estate.  There's less than $3 million.

11   And so time is not on our side.

12         So we do want to try to continue to move quickly,

13   you know, in these cases because I just -- I fear that there

14   -- that part of one of the key features of doing this as a

15   liquidating 11 involves the customers and I fear that we're

16   not going to be able to achieve that if the case goes on too

17   long.

18         THE COURT:  Thank you, Ms. Spigel.

19         MS. SPIGEL:  Thank you.

20         THE COURT:  Who else would like to address matters

21   on a status basis this morning?  You'll need to press five

22   star one time on your line, if you wish to.

23         Mr. Potts, good morning.

24         MR. POTTS:  Hi, Your Honor.  Derek Potts here.

25         THE COURT:  Yes, sir.  Good morning.

1           MR. POTTS:  Good morning.  A couple of things I'd

2    like to just inform you before I begin.  On the call with us

3    today is Mr. Rodney Tow.  Mr. Tow is going to be assisting

4    us as bankruptcy counsel in the case.

5           THE COURT:  His name is Tow.  It's T-O-W, but it's

6    Tow.

7           MR. POTTS:  Tow.

8           THE COURT:  It should be Tow, but his parents

9    didn't know better.

10       (Laughter.)

11          MR. POTTS:  There he is, yes.

12          THE COURT:  All right.

13          MR. POTTS:  Second of all, you asked about the

14   Committee.  Committee notice has gone out.  It went out two

15   days ago, and so I know that's in the process of being

16   formed.  We have until early next week to send in our

17   Committee applications and I know people are doing that now.

18          In addition, as I'm sure you know, the Rule 706

19   conference notice was sent out yesterday for the Lisa Khoury

20   case.  We'll be sending that out today to counsel per the

21   Order to give them notice.  And that notice did change some

22   of our views on a few things because we will be having a

23   conference very quickly with Debtor's counsel, Rule 26

24   conference and getting information now that we were not

25   getting previously, and so we're happy about that.

1         Generally I think what Ms. Sigel said was correct.

2    There are a lot of issues swirling around the notice issue,

3    but we are generally agreeable to electronic notice.  The

4    devil is in the details obviously, how the notice is

5    written, what's on the in re line, et cetera, and I think

6    we'll be a few more days to discuss that with them, but I

7    think we may be able to work that out prior to Wednesday

8    after further -- in terms of discussion that we've had.

9         As to the notice issue, I think the biggest issue

10   between us is the date, not the manner.  And I doubt that

11   the timing of the notice for the customers, that issue will

12   be resolved from what I'm hearing from Debtor's counsel

13   prior to the hearing next week.

14        As you pointed out today, I believe the issue of

15   making sure people are properly informed, when we have a

16   proposal on a customer plan, as well as a class action

17   seeking different relief for the same group of people.  And

18   that's what we're talking about and making sure that the

19   notices are clear and understandable to the customers.  It's

20   hard for us to understand it right now and I worry how an

21   average person out there is going to understand what's going

22   on.

23        And so we have to work really hard together to

24   figure out to give them notice so they understand the two

25   plans.  And let me just say this:  We are in complete

1  support of the proposal to relieve customer's debt --

2  complete support.  We think that's an excellent idea, but at

3  the same time, we want people who actually paid their bills

4  to also be treated fairly.

5           The customer plan being tossed around gives huge

6  relief to people who received bills and didn't pay them, but

7  it gives no relief to people who received bills and actually

8  paid them, and that's what we're concerned about.

9           And the first step for us to get our arms

10  completely around that is to get the information, which we

11  don't have.  And so we're going to ask the Court to whatever

12  notice is given, that we be provided with the complete

13  spreadsheet of all customers, all amounts charged and all

14  amounts paid at the time.  We're entitled to that as class

15  counsel.  I keep pushing to a Rule 26 conference.

16           THE COURT:  Well, let me -- I don't want a

17  situation where you and the Committee are trying to do the

18  same thing.  And one of the reasons why I'm sure you brought

19  in Mr. Tow is figure out whether you can take over the

20  Committee, which may very well occur.  But that would then

21  leave a unified attack.

22           But for you and the Committee to compete on how to

23  represent the same group of people seems duplicative and may

24  dilatate really strongly against class certification if all

25  these people are, in fact, adequately represented by a

1    Committee.

2            This case reminds me somewhat of the *Watson*

3    *Grinding* case.  I'm not sure if you're familiar with that

4    case.

5            MR. POTTS:  Very, you know, we're involved to some

6    degree.

7            THE COURT:  And then you know that in that case,

8    we didn't just have a Committee that was comprised of

9    everybody.  We had a Committee that was comprised of very

10   specific folks, in that case people that were injured on

11   that particular date, either their persons or their

12   property, on the date of the explosion.

13           Maybe what we need here -- and I'm hoping the

14   US Trustee is listening.  Let me just see if they're here.

15   I don't see them, but we can do this in a further hearing.

16           One thing I should consider doing is whether I

17   would order the appointment of a Customer Committee separate

18   from the General Unsecured Creditors Committee.  There may

19   or may not be a General Unsecured Creditors Committee.

20           And then if you have a Customer Committee, I

21   wouldn't have both a statutory committee and a class action

22   group competing over what ought to happen.  I would have

23   them being here as an official group dealing with the

24   Debtor.  I'm going to give some thought to that.

25           But if you think about what you need to prove to

1  get a class certification, and if you think about the fact

2  that there would be a Committee charged with representing

3  the interests of those people in full, you may have a real

4  uphill battle there, Mr. Potts.

5           On the other hand, I want them well represented,

6  and think about that.  I just want everybody to think about

7  how those customers ought to be addressed.

8           I don't know that the notice issue is as severe of

9  an issue if the Proof of Claim deadline is after the Plan.

10 The problem that I was having before is if we have a Proof

11 of Claim deadline that might cut off people's rights before

12 they get to a Plan.  As I said, I don't know why they would

13 be entitled to a release if they already failed to file a

14 Proof of Claim and therefore, they've already released by

15 not filing the Proof of Claim.

16          But if we set a Proof of Claim deadline for those

17 folks, you know, 60 days after Plan Confirmation, then they

18 hold all of their, sort of, inchoate claims.

19          Why don't you go ahead?  I'm trying to give you

20 some hard stuff to think about, Mr. Potts.

21          MR. POTTS:  No, I understand, and another issue --

22 speaking of hard stuff -- is the issue of class -- putative

23 class representatives giving notice on behalf of the class,

24 which I know you're --

25          THE COURT:  Which if you have a Committee, I don't

1   know why I would do anything other than have a Committee and

2   let them worry about it.

3          MR. POTTS:  What I'm referring to, Judge, is your

4   opinion in that *In Re: Vanguard* case from 2017, which as you

5   know, I believe is the law of the District currently.

6          THE COURT:  That was different, though.  This is a

7   claim against the Debtor where they would be a Committee.

8          MR. POTTS:  Okay.

9          THE COURT:  It's a lot different.  That was not a

10  -- as I recall, that was not a claim against the Debtor,

11  right?

12         MR. POTTS:  That's right.

13         THE COURT:  So --

14         MR. POTTS:  It's the closest thing on the class

15  notice issue solely.

16         THE COURT:  Yeah, but I want to find the right way

17  to be sure customers' issues can be properly brought to the

18  Court.  And an Official Committee has fiduciary duties.  It

19  gets to hire counsel.  And it also means -- just from a

20  practical point of view -- there -- all of these

21  interlocutory appeals that you have over everything that the

22  Court does, don't occur if you have a Committee, right?  You

23  try and go for class certification, it takes you two years

24  just to get to a trial court that has authority to do

25  anything -- or a year and a half.

1          It's not the way these customers ought to be

2    treated, but with the Committee there isn't any

3    interlocutory appeal as to whether I can have a Committee.

4    I can have a Committee.  So I'm quite serious that I want

5    you to give hard thought to leaving the comfort of your

6    normal practice and thinking about how that might work.

7          MR. POTTS:  That's why we brought in Mr. Tow, who

8    I --

9          THE COURT:  See, you've already learned to say his

10   name, so we're good.

11         MR. POTTS:  Well, I just learned it and thank you

12   for teaching me, Judge.

13         THE COURT:  All right.  Is there anything else you

14   wanted to add this morning?

15         MR. POTTS:  No, that's it.  Thank you.  Thank you,

16   Your Honor.

17         THE COURT:  Thank you.

18         Ms. Obaldo?

19         MS. OBALDO:  Good morning, Your Honor.  Rachel

20   Obaldo with the Attorney General's Office on behalf of the

21   State of Texas.

22         THE COURT:  Good morning.

23         MS. OBALDO:  Good morning.

24         I just wanted to address a few things that have

25   been raised this morning.  With regards to the concern of

1   former customers whose accounts may have been swept or

2   credit cards charged, that is certainly an issue that we

3   have raised, as well, with Debtor's counsel and is why the

4   Plan as currently drafted is not something that we have

5   supported.  That is also a concern that we have and have

6   raised with Debtor's counsel.  There is no clear answer that

7   we found, but it is something that we continue to ponder and

8   is a concern for us.

9        So I just wanted to raise that.  I'm not offering

10  a solution or option or weighing in on the consideration of

11  a Customer Committee.  And I'd have to go back and look at

12  *Watson Grinding* to see the similarities, but I do think

13  they've got some interesting suggestions, as well as the

14  suggestion of having a later bar date for the customers.

15  That is something that I'd like to think about and discuss

16  with Debtor's counsel, as well.

17       And then just finally I just wanted to affirm what

18  Ms. Spigel had represented and that is, we've been having

19  numerous discussions and our office has made suggestions and

20  comments with regards to notice on the forms, and those

21  appear to be well received.

22       So you've raised some interesting concerns and

23  some things for us to think about, but we will continue to

24  talk to Debtor's counsel in the coming days to see if we can

25  reach an agreement and present those to Your Honor at the

1  next hearing.

2          To the extent that we can't reach an agreement on

3  notice, forms, proposed order, et cetera, then of course

4  we'll be prepared to bring this to the Court attention and

5  ask the Court to weigh in on those.

6          But that's all I wanted to ask for this morning.

7          THE COURT:  Thank you, Ms. Obaldo.

8          So I hadn't seen her before on the line, but we do

9  have Ms. Whitworth on and I'm sure she can enlighten me as

10  to where we are.

11          Ms. Whitworth, Good morning.

12          MS. WHITWORTH:  Good morning, Judge.

13          First of all, I need to apologize for my lack of a

14  camera.  I'm traveling this morning and my WiFi is not

15  cooperating, but as far as the Committee, solicitation

16  packages were sent out a few days ago.

17          THE COURT:  Ms. Whitworth, let me just interrupt

18  you a minute.  Why don't you go ahead and tell everybody

19  your roll in the case, because I don't know that everybody

20  here knows you like I do?

21          MS. WHITWORTH:  Good morning.  I'm Jana Whitworth.

22  I am the attorney representing the United States Trustee's

23  Office in this matter.

24          We -- I want to report to everyone that we have

25  sent out solicitation packages.  As they come in, Kevin

1  Epstein, the US Trustee, will review those and work under

2  the guidelines set out by the Code and case law to form

3  Committees.  And of course, Your Honor will be taking your

4  comments -- can you hear me, Judge?  I just lost my --

5           THE COURT:  No, you're coming through loud and

6  clear.  Thank you.

7           MS. WHITWORTH:  Okay.  And as a consideration,

8  Judge.

9           THE COURT:  So --

10          MS. WHITWORTH:  I just wanted to let you know I've

11 been in contact with Debtor's counsel and to try to get a --

12 you know, mapping out the deadlines for setting 341 and the

13 bar date.

14          THE COURT:  Let me ask you this --

15          MS. WHITWORTH:  So that --

16          THE COURT:  -- are you -- before you create the

17 Committee, do I need to make a decision on whether we're

18 going to have a Special Customer Committee?  Or can you

19 create a Committee and then I make that decision and you

20 would split it into two, or something?  Or what's the

21 practical way we need to approach this if we're going to end

22 up with a Creditors Committee -- or a Committee for

23 customers only?

24          MS. WHITWORTH:  That's a very good question,

25 Judge.  And I don't really have an answer this morning.  You

1  know, we've kicked it up the food chain to try to get some

2  guidance on that, Judge, so I apologize, Your Honor.  I'll

3  have a better answer for you the next time we meet.

4        I really don't -- I really don't have an answer

5  for you this morning.

6        THE COURT:  No, that's fine.

7        When do you think you'll form either the one or

8  two Committees that you're contemplating forming?

9        MS. WHITWORTH:  Well, we put a 7-day deadline or,

10  you know, requesting the information to be returned within

11  seven days, so probably towards the middle of next week,

12  Judge, maybe the end of next week.

13        THE COURT:  Let me ask the parties if it doesn't

14  make more sense -- since I'm probably not going to want to

15  do much without Committee input -- to come back really early

16  the week of the 29th, rather than next week, so that we're

17  not just all doing the same thing and then me saying, yeah,

18  but I want to wait to hear from the Committee.

19        And I'm sensitive to the fact, Ms. Spigel, and I

20  very much appreciate that you're trying to run this case

21  economically, but I think it may actually be cheaper to

22  delay that just a few more days to be sure that we're not

23  just having another status conference where we all kind of

24  talk about it, but we don't really have the Official

25  Committee here.

1          Let me throw out a date and see if it works for

2   the parties for the next session.  I'm just looking at my

3   calendar right now.

4          10:15 on March 29th.  And I've got lots of time

5   that week, but I'm trying to do it very early, but after I

6   get a Committee.

7          Ms. Whitworth, feedback I need from you is if I

8   set it for then, would you at least have your organizational

9   meeting where they have hired counsel by that point?

10         MS. WHITWORTH:  I believe so, Your Honor.

11         THE COURT:  Okay.  Can I ask anybody if they think

12  I'm doing any serious injury to their clients or to the case

13  if I don't hold something next week, but do it on the 29th,

14  early, you know, first thing to start that week with?  We

15  may need to come back again that week, but at least we'll

16  have all the parties here.

17         Ms. Spigel, I want you to take the lead on that.

18  I'm worried about keeping you economic.

19         MS. SPIGEL:  Yeah, I mean, my concern is that will

20  be two weeks from the petition date and won't have -- I

21  guess, every day, as I say, you know, is just another day

22  where we're sort of lingering here in Chapter 11.  I'm

23  concerned about having potentially two Committees and the

24  cost related to that.  I know that there are concerns all

25  around, but we just have a very small estate here, and you

1  know, the Attorney General's Office is actively

2  representing, from my perspective.  I'm not sure there's a

3  legal distinction in Ms. Obaldo's mind, but very actively

4  representing customers, and we're working very quickly with

5  that office in order to try to address concerns of

6  customers.

7          THE COURT:  So can I suggest to you that under

8  328, that Committee counsel could be hired on a hybrid basis

9  where most of the Committee counsel's compensation would be

10 contingent?  Just let parties think about that.  There's no

11 requirement, I don't believe, for Committee counsel to be

12 hourly.  And normally this kind of work would be contingent

13 anyway.

14          And that may save you the money, and I'm -- I got

15 it.  We don't have a lot of money to spend here.

16          Go ahead, please, Ms. Spigel.

17          MS. SPIGEL:  Look, I mean, I would like everything

18 to happen much quicker than it is already, right, but we'd

19 be moving it over a couple of days is not going to

20 materially affect the situation if the Committee is going to

21 be appointed, as long as when the Committee is appointed,

22 I'm not going to be asked for another two weeks because I

23 need to get up-to-speed.  I mean, I know you can't control

24 that, --

25          THE COURT:  Right, right.

1       MS. SPIGEL:  -- but the problem is with the drag

2    on the timeline, but I think at that point, you know,

3    somebody just has to be committed to trying to get up-to-

4    speed here.

5          This actually is a unique case, but it's not all

6    that complicated and you know, when I hear people talking

7    about refunds, it goes back to sort of the First Day, you

8    know, what we talked about and I know the declaration was

9    only admitted for the First Day Hearing, but I'll just

10   reference it generally, which is, you know, the refunds --

11   we are a pass-through.  So I mean, we don't have money to be

12   giving to customers while we're trying to come up with

13   something creative in order to address the concerns of both

14   Mr. Potts and Ms. Obaldo raised on the point, and we've

15   obviously shown an ability to be creative and I think we

16   might be able to do something.

17         It requires the assistance of third parties and

18   money from third parties.  We don't have it, and so, you

19   know, while we can take the time and actually try to come up

20   with solutions on that front, too, which maybe we can move

21   the case along and all of the issues will be resolved

22   consensually by a creative solution in the Plan, honestly.

23         But I just wanted to note that issue for Your

24   Honor, and I definitely think that, you know, contingency

25   counsel for a Creditors Committee would be very appealing to

1  the estate, from the estate's perspective.

2          THE COURT:  Okay.  Does anyone object then?  I'll

3  take that as a slight objection, but I'll overrule it.

4          Does anyone object to a 10:15 a.m., March 29th

5  continued hearing?  We may make substantive decisions.  It

6  may be status on the pending motions, so people should be

7  prepared for substantive decisions on that day, but I got

8  it, a Committee may come in as Ms. Spigel said, and you

9  know, needing a few more days.

10          But they shouldn't need two more weeks.  I agree

11  with you that the kind of issues we're dealing with, you

12  don't need to know the whole case to deal with, and you

13  know, if the Committee counsel wants, you know, two more

14  days, that's one thing.  If they want two more weeks, they

15  probably should be prepared -- be asking for that for these

16  kinds of motions.  You know, get up-to-speed on this before

17  they figure out their substantive relief issues.

18          Anyone object?

19      (No audible response.)

20          THE COURT:  All right.  I just want to thank

21  everybody for continuing to work cooperatively on this case

22  and working cooperatively doesn't mean you reach an

23  agreement on everything, but it sounds like that you-all are

24  talking.  You are figuring out where your differences are

25  and it's very much appreciated so that we can get down to

1   business and try and figure what ought to happen to limited

2   assets that are available, and figure out what rights, if

3   any, the customer have.

4          Any comments I've made, by the way, about customer

5   rights, the rights I'm trying to protect are their rights to

6   come in and seek relief.  I don't know whether they're

7   entitled to any economic compensation.  I appreciate the

8   economic compensation you're offering, but I'm expressing no

9   view on whether they are entitled to that and I don't want

10  anybody misreading my comments.

11         There may be others in the case that would oppose

12  that, so that they can get paid.  And I don't think this is

13  going to be a walk in the park once people get organized.  I

14  want to be sure everybody's rights are preserved.

15         Right now I'm looking to be sure that we preserve

16  the rights of the customers to come in and assert whatever

17  claims or damages they might have so that they can then be

18  litigated or resolved by settlement.

19         So we'll see you-all Monday at 10:15 on May 29th.

20         Thank you-all.  We're in adjournment.

21      (The parties thank the Court.)

22         THE COURT:  Thank you.

23      (Hearing adjourned at 8:44 a.m.)

24

25                        *  *  *  *  *

1          *I certify that the foregoing is a correct*

2  *transcript to the best of my ability due to the condition of*

3  *the electronic sound recording of the ZOOM/telephonic*

4  *proceedings in the above-entitled matter.*

5  */S/ MARY D. HENRY*

6  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

7  *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

8  *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

9  *JTT TRANSCRIPT #63643*

10  *DATE FILED:  MARCH 23, 2021*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25