IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IN RE: | § CASE NO. 21-30923-11 |
| | § HOUSTON, TEXAS |
| GRIDDY ENERGY, LLC, | § MONDAY, |
| | § MARCH 29, 2021 |
| DEBTOR. | § 10:15 A.M. TO 11:20 A.M. |

STATUS CONFERENCE (VIA ZOOM)

BEFORE THE HONORABLE MARVIN ISGUR
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:                              SEE NEXT PAGE

(Recorded via CourtSpeak; No Log Notes)

TRANSCRIPTION SERVICE BY:

JUDICIAL TRANSCRIBERS OF TEXAS, LLC
935 Eldridge Road, #144
Sugar Land, TX 77478
281-277-5325
www.judicialtranscribers.com

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

JUDICIAL TRANSCRIBERS OF TEXAS, LLC

APPEARANCES:

FOR THE DEBTOR:                  BAKER BOTTS, LLP
                                 Robin Spigel, Esq.
                                 30 Rockefeller Plaza
                                 New York, NY  10112
                                 212-408-2545

FOR PUTATIVE CLASS:              POTTS LAW FIRM
                                 Derek Potts, Esq.
                                 3737 Buffalo Speedway, #1900
                                 Houston, TX  77098
                                 888-902-6245

FOR THE STATE OF TEXAS:          TX ATTORNEY GENERAL'S OFFICE
                                 Abigail R. Ryan, Esq.
                                 PO Box 12548
                                 Austin, TX  78711
                                 512-475-4297

FOR THE US TRUSTEE;              OFFICE OF THE US TRUSTEE
                                 Jana S. Whitworth, Esq.
                                 515 Rusk Street, Ste. 3516
                                 Houston, TX  77002
                                 713-718-4650

FOR MULTIPLE INJURED AND
DEATH CASE TORT CLAIMANTS:       JORDAN HOLZER & ORTIZ, PC
                                 Shelby A. Jordan, Esq.
                                 500 N. Shoreline, Ste. 900 N
                                 Corpus Christi, TX  78401
                                 361-884-5678

FOR ERCOT:                       MUNSCH HARDT KOPF & HARR, PC
                                 Kevin M. Lippman, Esq.
                                 500 N. Akard St., Ste. 3800
                                 Dallas, TX  75201
                                 214-855-7553

ALSO PRESENT:                    Angela Tsai from Stretto

                                 Rodney Tow, Esq.


(Please also see Electronic Appearances.)

1        HOUSTON, TEXAS; MONDAY, MARCH 29, 2021; 10:15 A.M.

2        THE COURT:  All right.  We're here in the Griddy

3   Energy case, it's 21-30923.  We have electronic appearances in

4   the case.

5        Let me begin by a report from Debtor's counsel as to

6   where they believe we should be going today, and then we'll

7   hear from others.

8        I do want to indicate one matter, which is a couple

9   of responses that have been filed are asking the Court to

10   select members of the former -- of a former customers'

11   Committee.  The Court has no authority do that, no authority

12   to control that, no real input on what ought to happen about

13   that any more than anyone else does.  So, if there is a

14   Customer Committee, that is a determination, as to the

15   composition of it, that is made by the U.S. Trustee's Office.

16        The U.S. Trustee may not select counsel for that

17   Committee.  And I don't think I'm saying anything that they

18   wouldn't completely agree with.  It is then up to the

19   Committee to select its own counsel.

20        So, to the extent that people think that I can

21   control who is on that, I don't believe I can or should, and

22   I'll make no attempt to do that.  To the extent that folks

23   think that I should control who the counsel is, I definitely

24   can't do that.  I think I can approve the counsel or

25   disapprove, but I can't assist in the selection of it.

1        With that said, if I can get Debtor to make an

2    initial statement.  Ms. Spigel, if that's going to be you,

3    I'll go ahead and activate your line; if it's somebody else,

4    I'll let them press five-star.  Good morning, Ms. Spigel.

5        MS. SPIGEL:  Good morning, Your Honor.  Good

6    morning, Your Honor.  Can you hear me?

7        THE COURT:  I can hear you fine.  Thank you.

8        MS. SPIGEL:  Thank you.  Robin Spigel, Baker Botts,

9    counsel for the Debtor.  My colleague John Lawrence is also on

10   the line, as is Mr. Mike Fallquist, the Debtor's Chief

11   Executive Officer.

12       THE COURT:  Okay.

13       MS. SPIGEL:  On the calendar this morning are two

14   adjourned motions:  One on the bar date and one on the motion

15   for a form of notice of commencement of case, the request to

16   redact personally identifiable information for individual

17   customers, and also to provide electronic notice to former

18   customers.

19       Before I start on the agenda, though, I'd like to

20   just say a few things, if that's okay with Your Honor.

21       First, based on our discussions from the last two

22   hearings, we decided to include on the Debtors' schedules all

23   of the Debtors' 57,000 former customers.  We listed them as

24   contingent, unliquidated, and disputed, and we also listed

25   them in redacted form, which is part of the relief that we're

1    asking for today.

2           I do want to underscore that, at best, we believe

3    that they have contingent, disputed, and unliquidated

4    litigation claims, which we don't think have merit.  But given

5    our situation and our time and the amount of money we have,

6    we're -- and what we're trying to accomplish in this case, we

7    scheduled all of them.  And they will be dealt with through

8    the plan or through the claims process.

9           Second -- and as we'll get to this -- we'll be

10    seeking today to bifurcate the bar date motion and seeking to

11    adjourn that portion of the motion as it pertains to former

12    customers only.  I do want to note for Your Honor, though,

13    that the Debtor will eventually be requesting that the bar

14    date for customers be set as July 19th, which is 126 days from

15    the petition date and 90 days from the 341 meeting that's

16    currently scheduled for April 20th.

17           Third, we have been in discussions with the

18    Attorneys General -- the Attorney General's Office, as well as

19    certain plaintiffs' office, Mr. Potts and Mr. Burnett, pretty

20    regularly, I would say, from our perspective.  We're trying to

21    work cooperatively on the customer portion of people's

22    concerns, which is why we're agreeing -- subject to Your

23    Honor's consent, obviously, to try to bifurcate the bar date

24    motion, so that there's more time for people to continue to

25    talk about the proposed notices that go to customers.

1            Fourth, as to the formation of Committees, I do not

2       believe that any have been formed, but I do defer to

3       Ms. Whitworth about that, and I'm sure she'll weigh in on that

4       point.

5            Fifth, I wanted to just talk about -- Your Honor had

6       mentioned Watson Grinding at the last status conference, and

7       I've been thinking a lot about that situation, compared to the

8       current situation.  And I just wanted to talk about the fact

9       that I think this situation is very different.

10            Griddy, as we discussed at the first-day hearing, is

11       -- was a passthrough, other thank its membership fee.  It

12       didn't cause the high price cap or the sequence of events that

13       caused the high price cap during Winter Storm Uri, and it, in

14       fact, took aggressive efforts to try to get its customers off

15       its platform, and 10,000 did successfully do that.  We also

16       asked ERCOT to mass transition our customers during the storm,

17       and that would have mitigated damages for ERCOT and for

18       customers and, frankly, for other customers in the case.

19            Also, Griddy has, you know, a class action waiver

20       provision in its standard terms and conditions that we believe

21       are enforceable.  And we also believe that the Bankruptcy Code

22       and the Bankruptcy Rules are set up to handle thousands of

23       claims.  That's what the claims process is about.

24            So, while we -- there is a lot of talk about a

25       Customer Committee -- and we don't plan to object to its

1   formation if it does get formed, as long as the advisors are

2   retained on a contingency basis, and that the mission is not

3   about forming a class -- we -- because we don't think that

4   that's the roll of an official Committee.  But we -- I just

5   want it to be clear that we do think that this case is

6   different than a mass tort case.

7          And lastly, I just want to put on the record

8   something that I told Mr. Burnett that I would, who represents

9   several plaintiffs, that the Debtor is not currently

10  collecting amounts from customers and it has not reported any

11  customers to any credit agency or any -- related to the storm,

12  or set any -- or sent amounts due from the storm into

13  collection.

14         THE COURT:  Ms. Spigel, thank you.  And I certainly

15  did not mean to imply that the underlying facts of this and

16  the Watson Grinding case were similar, more that it might make

17  some sense to have an organized Committee for reasons that

18  have some similarities, but not -- I mean, we're dealing with

19  very substantially different causative issues here, and I

20  didn't mean to imply to the contrary.  And it's a good

21  correction that you're making from my comments, so I

22  appreciate that.

23         What I would like to do now is to hear from the

24  United States Trustee with respect Committee issues, whether

25  it makes -- whether the U.S. Trustee is in the process of

1      appointing a Committee and whether the U.S. Trustee has any

2      objection to the Court, *sua sponte*, ordering the appointment

3      of a Customer Committee.  Ms. Whitworth, good morning.

4              MS. WHITWORTH:  Good morning, Judge.  It's Jana

5      Whitworth on behalf of the United States Trustee.

6              Your Honor, we have -- the United States Trustee has

7      been working diligently to form an unsecured creditors'

8      Committee.  We're talking to all stakeholders and we

9      understand the importance of the proceedings to the affected

10     parties, which include many of the former customers of the

11     Debtor.  Today, Your Honor, no creditors, other than the

12     customers, have indicated an interest in serving on the

13     Committee.

14              As you can imagine, the -- these are not standard

15     unsecured creditors, they're individuals we are reaching out

16     to.  And we are still in the process of conducting our due

17     diligence, Your Honor, to determine whether these individuals,

18     the individuals who have expressed in serving on a Committee,

19     are actually creditors.

20              Typically, Judge, normally, customers of a business,

21     while they are interested in a bankruptcy case, obviously, do

22     not -- are not really creditors of the Debtor.  And for

23     example, the customers actually owe money to the business, not

24     the other way around.  In a normal situation, the customer

25     pays the water bill, electric bill, cable bill, and they're

1       not creditors of these entities.

2                    And in fact, the research that we've been conducting

3       over the last week or so, the courts have shown reluctance to

4       find rate-payers to be creditors that are eligible for

5       Committee service.  One of the cases that we've scrutinized

6       was both the 2001 and the 2019 Pacific Gas & Electric cases.

7       And in both of those cases, Judge, the Court held that rate-

8       payers were not creditors who were eligible to serve on an

9       unsecured creditors' Committee.

10                   So the bottom line, Judge, is that the trustee takes

11      his duties very seriously.  And we are diligently working to

12      determine through our investigation and in speaking with these

13      -- the folks who have indicated interest, if they're eligible

14      under the Code to a right to payment, and if they would,

15      therefore, be eligible to participate in a creditors'

16      Committee.  So the trustee anticipates, by the end of this

17      week, making a determination of whether a Committee can be

18      formed and then who would be on that Committee, Judge.

19                   THE COURT:  And do I have the authority -- and I

20      recognize that the customers may not be creditors, but of

21      course, they may be creditors.  They're not creditors because

22      they are rate-payers.  They may be creditors, and certainly

23      are asserting that they are creditors, based on the way that

24      their accounts were handled during the freeze days.  Do I have

25      the authority, similar to Watson Grinding, though, to reach

1       out to people whose claims are unliquidated and unknown and

2       may not exist and may be subject to liability defenses, and

3       order the appointment of a separate Committee for them?

4              It seems really inappropriate that they would serve

5       on a regular -- and it's up to you, and I don't mean it that

6       way.  But I got your nervousness of putting them on the

7       regular creditors' Committee and why you think maybe they

8       don't belong there.  But can there be a special Committee that

9       is formed, so that they have organized representation in the

10      bankruptcy case, or is that inappropriate, in some sense?

11             MS. WHITWORTH:  Your Honor, we would have to

12      determine, if the -- only creditors and equity holders are

13      eligible under the Code to serve on Committees.  So we would

14      have to determine if they were, in fact, creditors.

15             THE COURT:  What if they're disputed creditors?

16             MS. WHITWORTH:  Well, that's the complicated part

17      that's taking so long to determine in reaching out to these

18      customers.  Some of the customers have -- were billed and

19      never paid and have disputed the charges.  So are they

20      creditors, even though they made a claim, but they've never

21      actually had to pay their bill?  And if the Debtor is willing

22      to waive what's owed, would those people qualify as creditors?

23      Are they entitled to payments?  Do they have a claim for

24      payment or are they just seeking to waive an invoice that's

25      owed.  On the other hand, there may be customers who have

1    actually paid the fee, and you know, they're seeking to be

2    repaid, so they do have a claim for payment.

3          So I think, Your Honor, if you -- if the Court is

4    inclined to take it into its own hands, I mean, we would like

5    the opportunity to brief the issue and come to the right

6    conclusion and -- because we're very -- we want to do the

7    right thing, Judge.  And I know it's taking longer than the

8    Debtor would like it to take, but we want to follow the Code

9    and we want to do the right thing to all the parties involved.

10          THE COURT:  All right.  Let me hear from others,

11    really, on any matter that was addressed by Ms. Spigel, or any

12    other matter, in terms of how we ought to be proceeding today.

13    If you wish to address the Court, please press five-star one

14    time on your phone.

15       (Pause in proceedings)

16          THE COURT:  Ms. Ryan, good morning.

17          MS. RYAN:  Good morning, Your Honor.  Can you hear

18    me?

19          THE COURT:  I can.  Thank you.

20          MS. RYAN:  So just to reply to a little bit of what

21    Ms. Spigel has said, and then to address the possible

22    formation of the Customer Committee.

23         First, I believe that, for the sake of orderliness,

24    a Customer Committee that is a contingent Committee would be

25    very beneficial in this case.  There are over 59,000 consumers

1     that could possibly be affected, and just having 1 umbrella

2     that those consumers can stand under, I think would help the

3     orderliness of the case.  And so I am, of course, for the

4     appointment of a consumer Committee or Customer Committee that

5     is a contingent fee Committee.

6               Secondly, I appreciate that Ms. Spigel has adjourned

7     the portion of the bar date notice, so that we have more time

8     to work together.  My client has been reading through the

9     newly filed processes, and we should be able to return a

10    redline to Ms. Spigel that -- at least by end of today, so if

11    not before.  And I think that, you know, by -- I'm going to be

12    conservative -- I would say, by Friday, we should have a final

13    okay because we do have some steps we have to go through here

14    in the Government to get what we think looks good approved by

15    our bosses, if you will.  But I don't think it should take any

16    longer than the rest of this week.

17              And our -- just regarding the government bar date

18    notice, I noticed that it ended on a Saturday, and so I think

19    that date should be, as opposed to 9/11, 9/13 in their motion,

20    just rolling over to that next Monday.  But otherwise, I think

21    that we don't have any issue with the bar date motion, as it's

22    been revised, to let us have more time to negotiate, Your

23    Honor.

24              Do you have any questions for me?

25              THE COURT:  This may seem like an obvious one.  But

1    are you moving for the appointment of a Customer Committee?

2    I'll take an oral motion.  But the way the statute is written,

3    I want to know if I have a motion that I need to deal with.

4         MS. RYAN:  Yes, Your Honor, we are moving for the

5    appointment of a Customer Committee that would be on a

6    contingent fee basis.

7         THE COURT:  Well, again, I can't control the basis

8    on which they hire, but the Debtor doesn't have any money to

9    pay them, so I think what makes sense is probably that.

10        Let me see who else we have.  But thank you for the

11   motion.

12        From 512-710-0851, who do we have on the telephone?

13   512-710-0851?

14        MR. JORDAN:  Judge Isgur, this is Shelby Jordan, if

15   you can hear me.

16        THE COURT:  I can, Mr. Jordan.  Good morning.

17        MR. JORDAN:  Thank you, Judge.  And I apologize for

18   my delay, I'm not used to my Austin number being called.

19        Just a few quick comments that I want to make about

20   the U.S. Trustee's position and Ms. Spigel's position.

21   Ms. Spigel and I have talked one time, and she was very

22   forthcoming of her position, very forthcoming of details; I

23   was also.  And what we discussed, generally, is what I've been

24   trying to talk to the U.S. Trustee about over the past three

25   weeks, but getting through to them has not been practical.  I

14

1    have not been able -- had any returned calls or any returned

2    emails.

3          But here's the position that my clients -- who are

4    the property -- personal property damage claimants, they're

5    customers, personal injury claimants, and wrongful death

6    claimants, all customers.  Those have been completely ignored

7    by the U.S. Trustee's Office, even though my correspondence

8    and emails and phone call messages have been strictly

9    discussing those, as customers and claimants and creditors or

10   this estate.

11         Now, obviously, the personal injury/property damage

12   claims are unliquidated and disputed, I suspect.  But from

13   that perspective, I want to point out two other things:

14         One is there is general liability insurance that I

15   believe this Debtor has.  The Fifth Circuit case in August of

16   2019, the OGA case, made those proceeds property of the

17   estate, not for the sake of the Debtor spending them, but for

18   the sake of marshaling under your supervision, so that those

19   general liability policies would be dedicated to those who

20   have damages or injuries that are covered by the policies.

21   Now I don't know what that is.  I do know that there is some

22   insurance, but I don't think there's much.  But in any event,

23   that's one critical issue that we would like to talk about.

24         My clients, who are basically the law firms who

25   represent several thousand or more customers, will be filing a

1     motion to appoint a tort Committee -- a tort claimants'

2     Committee.  But that might actually be, Judge, what you're

3     thinking about, in the way of a Customer Committee, because

4     the comments of the U.S. Trustee that customers aren't

5     creditors, I tend to agree, in that very, very general

6     context, that they aren't, even though they are rate-payers.

7          But our claims, which we have disclosed to the --

8     and we've even filed proofs of claim and disclosed those to

9     the U.S. Trustee's Office -- those are being completely

10    ignored.  And we are creditors.  I mean, this is not simply a

11    rate-payer having a problem.  It is wrongful death, we've got

12    -- we've filed wrongful death proofs of claim, where people

13    literally froze to death.  We have a number of personal

14    property -- well, thousands of personal property damage

15    claims.  All of those might be available for a Committee

16    participation.  And so I'm not certain, Judge, about your

17    thoughts on what a Customer Committee would be, but our

18    clients are all customers, but they're also injured customers

19    and damage customers.

20         So I would just want to point that out to the Court,

21    that we will be filing this afternoon at some time a motion to

22    appoint a tort Committee -- tort claimants' Committee, just

23    for the heads-up to the Court.  I'm not sure what we would

24    call it, I'm not sure what the proper grouping would be.  I'm

25    listening today, just to be able to make tweaks to my motion,

1    in the event that what the Court was referencing as a

2    "Customer Committee" was something different than a customer

3    who is actually a creditor, and which is -- that's all I

4    represent.  I don't represent any customer who's not a

5    creditor.  Anyway (indiscernible)

6            THE COURT:  So I was not intending to limit the

7    Committee to -- if we appoint one, I had not considering

8    appointing one for people that had a dispute about whether

9    their account was properly drawn and another one for people

10   who had pipes that burst and another one for people who were

11   injured, although those -- the defenses to those things will

12   be vastly different.  The idea would be to have a Committee

13   representing former customers.

14           And just like a normal unsecured creditors'

15   Committee might have both bank lenders and trade vendors and

16   personal injury claimants, all thrown into one, at least the

17   concept that we talked about at earlier hearings and that I

18   think I hear from Ms. Ryan would be a Committee that would

19   deal with former customer issues, as varied as those might be.

20   And it's certainly the case, obviously, that some may have

21   insured claims and some may not, but I think that would also

22   be true in the normal circumstance, if that's response to the

23   question that you were asking, Mr. Jordan.

24           MR. JORDAN:  Judge, it does, that helps clarify your

25   thoughts on that Committee.  I suspect I will still be filing

1     a motion, but I'm also -- once I can create some communication

2     with the U.S. Trustee's Office, I'll be available to work on

3     whatever constituents are properly part of a single Committee;

4     or, if it looks like those that have personal injury type or

5     property damage claims, we may pursue then, through a hearing

6     with the Court, to ask the Court to order the appointment of a

7     special separate Committee, and in the event that doesn't come

8     out after conversation with the U.S. Trustee's Office.  But

9     I'll --

10          THE COURT:  (Indiscernible)

11          MR. JORDAN:  -- (indiscernible)

12          THE COURT:  How much insurance do we think is

13    available for personal injuries or for property injury?  I

14    assume it's going to be the same kind of policy.

15          MR. JORDAN:  Ms. Spigel indicated she was checking

16    on that.  I don't think it's much.  I think that the nature of

17    the Debtor's operation is distinct from some of the other

18    electric utility cases that are direct producers and

19    providers.  But I defer to Ms. Spigel, if she knows what that

20    answer is.

21          THE COURT:  I mean, it's my understanding that there

22    are different distributors, then there are retailers under

23    Texas law.  And I do not know whether a retailer would have

24    liability for a mandatory distributor's failure to deliver

25    electricity.  But that will be an issue for another day.

1          MR. JORDAN:  Right.

2          THE COURT:  Thank you.

3          Mr. Potts, go ahead, please.

4          MR. POTTS:  Hi, Judge.  Derek Potts here for the

5     class action creditors.

6          First of all, we filed a response this morning.  We

7     would echo the Attorney General.  We also support and are

8     moving for the appointment, *sua sponte*, of a Customer

9     Committee.

10          I would highly encourage the U.S. Trustee's Office

11    to look at the Texas DTPA.  There's a lot of information, I

12    think, that will be helpful to them when they're analyzing

13    what they're analyzing.  The claims consist of many.  One

14    class of claims would be people that just received a bill, an

15    exorbitant bill, but did not pay it.  That is clearly a basis

16    for a Texas DTPA claim.  A second class of people would be

17    people that received an exorbitant bill, had some of the money

18    taken by Griddy, but still have a large bill remaining.  We

19    have a lot of clients like that.  And then the third category

20    would be people that received a large bill and paid the entire

21    bill.  All three of those clearly are entitled to compensation

22    under the Texas Deceptive Trade Practices Act, and I think

23    that needs to be made clear.

24          Those clients also have the right to recover for

25    mental anguish damages under the Texas DTPA.  So there is a

1   personal injury component for people who received exorbitant

2   bills during a crisis to recover mental anguish damages.  And

3   so I would highly encourage Ms. Whitworth and her colleagues

4   to look at that act.  I'm happy to answer any questions they

5   may have.

6        I do want to point out one thing in response to

7   Ms. Spigel.  Ms. Spigel raised a class action waiver.  From

8   the information we have received and from talking to them,

9   that class action waiver did not go into effect until December

10   2020.  It was put on their website at that time.  So we

11   believe it's a highly dubious defense to say that there is a

12   class action waiver in this case.

13        Lastly, Your Honor, we receive calls every week from

14   customers around the state.  A lot of them, as I stated

15   earlier, have large bills remaining.  They are all very, very

16   concerned about the creditor agency reporting angle.  I

17   appreciate Ms. Spigel addressing that this morning, that no

18   action will be taken, as I -- that's as I heard it -- by

19   Griddy, with respect to credit agency reporting at this time,

20   until some of these matters are resolved.

21        THE COURT:  So I heard Ms. Spigel say no action had

22   been taken.  I didn't hear that she had committed, one way or

23   the other, about the future.  I may have misheard that.  And I

24   don't want to put words in her mouth, one way or the other.

25   I'll let her address that.

1              I will say, Mr. Potts, that -- and Ms. Spigel, I

2     don't know that the class action thing is of -- the waiver is

3     of great moment.  I mean, a bankruptcy case is a class action

4     filed by the defendant against all of the Debtors -- I mean

5     against all of the creditors.  So we have a class action in

6     the Bankruptcy Court, effectively, where people are going to

7     call come here.

8              As to whether one can then commence a separate, you

9     know, Rule 23 class action within the bankruptcy case, you

10    can, but probably not as important in this particular kind of

11    case as it would be in a different situation, where it would

12    be a limited subset.  And if we do appoint a Committee of

13    that, it might eliminate at least one avenue of substantial

14    legal dispute.

15             Ms. Spigel, let me get you to clarify whether you

16    are making a commitment that there will be no future reporting

17    to a credit reporting agency without some sort of notice, or

18    were you speaking historically?  And I'm not asking for you to

19    go either way.  I just think clarity is probably a good idea,

20    whatever you meant to say, and I may have misheard you.

21             MS. SPIGEL:  Can you hear me?

22             THE COURT:  Yes, ma'am.

23             MS. SPIGEL:  Okay.  Thank you.

24             I think that what I said is that we aren't currently

25    taking any actions with respect to collections.  But we -- if

1    the plan is confirmed, as we proposed it, we don't plan to

2    take any action with respect to collection.  And I think -- I

3    haven't consulted my client, but I actually think that it

4    would be fine, we can put it on notice if we are going to.  I

5    think, if the plan isn't confirmed as is, and there is a plan

6    administrator and there aren't releases, then they're

7    probably, you know, going to take that action.  But I think,

8    during the course of the -- you know, during the bankruptcy,

9    it would certainly not be the intent to go after and, you

10   know, seek any collections from customers.

11            THE COURT:  All right.  Ms. Spigel, I want to try

12   and honor your effort to get all non-former customer bar date

13   notices out for 21 days under the rules, with an April 28th

14   deadline.  And I also want to give people an opportunity to

15   negotiate with you.

16            I'm a little bit inclined -- and this is really a

17   question, not an order.  I don't think I want to wait until

18   Friday because then it's going to really hurt the ability to

19   get the 21 days' notice.  I'm thinking of coming in Thursday

20   morning, the 1st of April, at 10:30, and issuing a bar date

21   notice at that point.  If there is a bar date agreed to at

22   that point for former customers, it could be included in the

23   notice, but if not, we would do the bifurcated -- we would

24   always do a bifurcated bar date, but we might do actual notice

25   the way that you've got it structure, or we might do a notice

1     that would include a bar date, but to come in on the 1st, to

2     give you an opportunity to handle as many comments as you

3     want.  But also, I'm telling you that I want to try and honor

4     the April 28th for the non-customers, and so people ought to

5     be prepared for that, for that date.  Does that work or not

6     work to accomplish what you need?

7           MS. SPIGEL:  Well, if we can keep the 28th, it works

8     for us.  I just -- can I -- I'd just to clarify one point.  I

9     wasn't clear if Ms. Ryan was saying that the current proposed

10    order that stripped out the former customers, that you would

11    have comments to that, or if that's something that we could

12    get entered today.

13          MS. RYAN:  So the only comment that I have to that

14    is regarding the postcard notice.  And if a Committee is

15    appointment, I think having communication ability to reach the

16    Committee would be important, so that people can update their

17    emails or what have you.  Other than that, with the remainder

18    of consumers stripped out, I do not have an issue with the

19    motion as is for the governmental bar date and the non-

20    consumer bar date.

21          THE COURT:  All right.  Thank you.

22          Does -- is there anyone that has a problem with -- I

23    have a couple of very minor comments with the order.  But if

24    you look at the order filed at 91-1, maybe there is no

25    objection to that today; and, if so, I think it would be great

23

1    to try and get it done today.  I don't know if there were

2    people that still wanted to work on that, so I misunderstood.

3              MR. POTTS:  Your Honor, Derek Potts.  I'd like

4    Mr. Tow to address that for us, please.

5              THE COURT:  All right. Mr. Tow, if you could press

6    five-star one time on your phone, please.  Good morning,

7    Mr. Tow.

8              MR. TOW:  Your Honor, can you hear me?

9              THE COURT:  I can, Mr. Taw.

10             MR. TOW:  Okay.  Rodney Tow, T-o-w.

11             I have reviewed the order that Ms. Spigel sent over

12   to me last night, and I just have -- I have one concern, and

13   then just other small matters.  And it was filed at Document

14   81 point -- dash 1.

15             THE COURT:  91-1.

16             MR. TOW:  If the Court could -- oh, you have a 90?

17   Mine says 81.

18             MS. SPIGEL:  I --

19             MR. TOW:  Oh, let me make sure --

20             MS. SPIGEL:  81.

21             MR. TOW:  -- I have the right one.  Give me --

22             THE COURT:  What did someone say?

23             MS. SPIGEL:  80 -- I'm sorry.  It's Robin Spigel.

24   81 was the form of order we filed on Friday; 91 is the one

25   that we filed -- that bifurcated the former customers, it took

1      the former customers out -- last night.

2                    THE COURT:  Right.  So I'm looking at 91-1, right?

3                    MS. SPIGEL:  Yeah.

4                    THE COURT:  Okay.  And I think I've got that shared

5      now on the screen.  Is that right?

6                    MS. SPIGEL:  Yes.

7                    MR. TOW:  I see it.  I had pulled up the wrong one.

8      I have it right now, and I've got my notes to it.

9                    Paragraph 5 is one paragraph that I'm concerned

10     about.  And what it says, in the fourth line, is:

11                   "The holders of the underlying claims shall be

12     barred from asserting such claims against the Debtor."

13                   And my concern is -- I want to stress I'm talking

14     about the 57,000 people that are customers that are former

15     customers that may have a claim.  I am concerned that, if you

16     used the words "barred from asserting such claims against the

17     Debtor," that that could inhibit the ability for those -- some

18     of those creditors to assert a claim in the class action.  And

19     I don't think the Code -- well, the Code doesn't provide for

20     those claims to be barred.  They may be late-filed, they may

21     be -- they may be disallowed from distribution.

22                   She is correct, after that; she says:

23                   "-- and precluded from voting on any Chapter 11 plan

24     and/or" --

25                   THE COURT:  I'm sorry.  What --

1          MR. TOW:  "-- receiving distributions" --

2          THE COURT:  What para -- where are you?  Because I

3    thought you said Paragraph 5, and I've got Paragraph 5 showing

4    up.  Is there another Paragraph 5 somewhere?

5          MR. TOW:  Okay.  Ms. Spigel, what -- this is the one

6    that you sent over to me last night or over the weekend.  I'm

7    sorry.  Let me get up on yours, Your Honor.  I apologize.

8    It's -- can you go back -- let me see if I can figure out

9    where she put it in this.

10          MS. SPIGEL:  It doesn't apply to customers, the

11    current motion -- I mean the current order does not apply to

12    customers.

13          MR. TOW:  I recognize that it doesn't apply -- this

14    doesn't apply to customers, but it -- just keep on scrolling

15    and I'll see if I can -- but it -- I think you're going to

16    want the same language.  And so I don't want to start off with

17    the wrong language in the beginning.  I just want to say that

18    they're going be (indiscernible) filed instead of barred.

19          THE COURT:  Just show me what paragraph you're in.

20          MR. TOW:  Keep on scrolling down.

21      (Pause in proceedings)

22          MR. TOW:  Okay.  Wait.  Can you do a control-F

23    search for the word "barred"?

24          THE COURT:  It's all over this order.

25          MR. TOW:  Okay.  Let me give you the language.  The

1      paragraph I'm referring to was sent -- there we go.

2              THE COURT:  Give me words more than just "bar."

3              MR. TOW:  Try "actually received" --

4              MS. SPIGEL:  Oh, I see it.  It's Paragraph 17.

5              THE COURT:  Okay.

6              MR. TOW:  Okay.  Thank you.  Sorry about that.  I

7      didn't know she filed a different order than what I had, but

8      ... here it is.  This is even more detailed.

9              If they fail to proof of claim timely, then they

10     just don't get to vote and they don't get to -- they may be

11     stopped from a distribution from the estate.  It doesn't mean

12     -- and if you look at the -- where your pointer is -- well,

13     where it says on the fourth line down:

14              "Filing a proof of claim with respect thereto ...

15     and shall be ever enjoined from asserting claims for any and

16     all indebtedness, liability with respect to or arising from

17     such claim."

18              That is not the relief that should be granted in a

19     final order this early in the case.  What we want to do is

20     just tell them they just need to timely file their claim.  If

21     they don't, they may not vote and they may not be able to

22     participate in the distribution, their claim may be disallowed

23     for distribution purposes.  But in the event, once -- my big

24     concern is that some of the class action claims may require

25     Griddy to be listed as a nominal defendant in order to proceed

1      with the class action claim.

2              And so I don't want anything in this order to impede

3      the class action claimants from proceeding.  I may not file a

4      claim -- or a customer may not file a claim in the Griddy

5      bankruptcy, but should still be able to participate in the

6      class action suit.  And so I am concerned -- and I

7      apologize --

8              THE COURT:  Well, but --

9              MR. TOW:  -- that I did not --

10             THE COURT:  Wait, wait, wait.

11             MR. TOW:  -- (indiscernible)

12             THE COURT:  Wait, wait.  If they don't file a proof

13     of claim and they are not otherwise authorized to some

14     putative class members, they can't file a later class action

15     against Griddy, that would be discharged.

16             Now the problem with this language, if it were to

17     apply to those customers, is it can't say they're forever

18     enjoined from asserting the claim if they're forever enjoined

19     from asserting claims against the Debtors.  But they can

20     assert those claims against somebody else.  But they can't

21     come sue the Debtor later.

22             MR. TOW:  Well, and through the plan of

23     reorganization or the plan of liquidation, the -- there isn't

24     a discharge that's going to be granted to Griddy.  But what

25     happens is -- I dealt with it -- what happens is timely filed

1 claims get paid as a timely filed, for example, unsecured

2 creditor.  Late-filed claims are subordinated to all other

3 unsecured creditors and treated --

4    THE COURT:  Okay.  You make a -- you make a good

5 point, you make a good point, if it's a liquidating plan.  I

6 agree.

7    MR. TOW:  And so all --

8    THE COURT:  We'll have to --

9    MR. TOW:  -- I don't want --

10    THE COURT:  Yeah.

11    MR. TOW:  -- to do -- I understand what she's

12 seeking to approve.  I just want to get the right language

13 down that doesn't create a problem later on.

14    MS. SPIGEL:  Your Honor --

15    THE COURT:  All right.

16    MS. SPIGEL:  -- I --

17    THE COURT:  Yes, Ms. Spigel.

18    MS. SPIGEL:  I'll just suggest a fix, so that we can

19 -- I don't want to make a bigger deal out of this than it

20 needs to be.  On 17, instead of using the word "shall" in

21 those two places, we could use the word "may," and just put

22 "asserting claims against the Debtor."  I think that that

23 would take care of the issue.  I think this language is pretty

24 typical, but I don't have a problem.  We'll -- these things

25 will be effectuated through the plan.

1          THE COURT:  Mr. Tow, does that solve the problem?

2          MR. TOW:  Well, I would rather it say they may not

3     be included as a timely filed claim, and leave it at that.

4     And whatever ramification that has is where we -- is what they

5     have.  What the Code provides is what they have, and that's a

6     subordinated claim.  But I just don't want -- I want to be

7     very careful at this early stage because all of this is so

8     new, at not allowing people to assert a claim, even if it's a

9     late-filed claim.

10          MS. SPIGEL:  Your Honor?

11          THE COURT:  Yeah.  Why don't -- Ms. Spigel, I'm

12     going to sort of split it and "may, by future order of the

13     Court, be forever enjoined," so that it's not --

14          MR. TOW:  Very good.

15          THE COURT:  -- implied that it's from this order.

16     And Mr. Tow is going to be okay with that language, I think.

17          Does that work for everybody?

18          MR. TOW:  Yeah, I'm fine with that, Your Honor.

19          MS. SPIGEL:  Yes.  Thank you, Your Honor.

20          THE COURT:  I want to show you a couple of -- I had

21     a couple of very minor comments that need to be worked

22     through.

23          In Paragraph 7, the end of -- I'm sorry.  In

24     Paragraph 8, the end of Paragraph 8 talks about that only

25     adversely affected parties are going to get notice of the new

1          schedules, and then have a new objection deadline.  But the

2          beginning seems to say that, if you file new schedules, that

3          all creditors then get a new bar date.  And that just -- I

4          don't think you mean that.  I think only the last half of 8 is

5          what's meant, or maybe I'm misreading what the first part is

6          for.

7                    You know, let's say that you amend your schedules --

8                    MS. SPIGEL:  Your --

9                    THE COURT:  -- to show some other piece of

10         machinery.  We're not going to reopen the bar date.

11                   MS. SPIGEL:  Agreed, Your Honor, that shouldn't be

12         there.

13                   THE COURT:  Okay.  And then I have one more comment

14         that is similarly minor, but just -- and we're going here.

15         Sorry that you're seeing my sort of notes to myself here, but

16         let's take a look at it.

17             (Pause in proceedings)

18                   THE COURT:  Where is the postcard?  Was it on the

19         other motion?

20                   MS. SPIGEL:  The other motion, the other motion.

21                   THE COURT:  Okay.

22                   MS. SPIGEL:  Yeah.

23                   THE COURT:  Then, on this one, that's all that I

24         had.

25                   I do think it may be helpful, though, if you would,

1     to go ahead and let's define what a "former customer claim"

2     is.  Given the comments that have been made today, it seems to

3     me that we want to put a definition in that a former customer

4     claim is any claim held by any person that arose, and then put

5     in, you know, the date range of the freeze and -- or, you

6     know, that accrued, arose, I'm not sure what dates you want to

7     use, and is held -- of any kind, whether it's tort, contract,

8     TDPA, whatever it is.  If it arose during those dates and is

9     held by a person that was a retail customer, you know, of the

10    Debtors on those dates.

11          So that, you know, if someone has some claim arising

12    from a year ago, they shouldn't be in this category.  But we

13    want to focus on people that are affected by the freeze, I

14    think.  And if you can include that definition, I think, that

15    way, people can get more comfort and know that they're not

16    just dealing -- especially, you know, with the confusion we've

17    had in this hearing -- not just dealing with a refund issue,

18    not just dealing with a you drew a money out of my account,

19    but whatever they got, you know, they're going to be for that

20    later bar date.  Does that work for you, Ms. Spigel, as well?

21          MS. SPIGEL:  That works for me.

22          THE COURT:  All right.  Let me see who else we have

23    here.  Mr. Lippman I know had a comment.  Mr. Lippman, go

24    ahead, please.

25          MR. LIPPMAN:  Your Honor, this is Kevin Lippman.

1     Can you hear me?

2                THE COURT:  I can, Mr. Lippman.  Good morning.

3                MR. LIPPMAN:  Good morning.

4                In light of the Court's changes to Paragraph 17, I

5     suggest the Court may need to make a similar change in

6     Paragraph 9 because it also uses the word "shall."

7          (Pause in proceedings)

8                THE COURT:  I think that's right, "may be barred by

9     a further" -- "by a future court order."  Ms. Spigel, is that

10    okay with you?

11               MS. SPIGEL:  Yes.  Sorry, I just wanted to read it.

12               THE COURT:  All right.

13               MS. RYAN:  Your Honor --

14               THE COURT:  Anyone else have any comments to make?

15               MS. RYAN:  Your Honor, this is Ms. Ryan from the

16    Texas Attorney General's Office.

17               THE COURT:  Go ahead, please.

18               MS. RYAN:  If I could -- if we could get, in

19    Paragraph 6, the September 11th, 2021 date changed to

20    September 13th, which is a Monday, that would be helpful, so

21    that we don't have our governmental bar date landing on a

22    Saturday.

23               MS. SPIGEL:  Your Honor, the reason why I kept it

24    September 11th was because it's the hundred and eightieth day,

25    and the rules provide for the extension of that deadline to

1    the 13th.  I didn't think that I had the ability to change the

2    180 days, so -- because Rule 9000 something flips it to the

3    13th, I had it as the 11th.

4            THE COURT:  Let me just look.  I actually thought it

5    was is no shorter than 180, but let me look.

6        (Pause in proceedings)

7            MR. TOW:  The only thing I'm concerned -- if I'm --

8    am I still on, Your Honor?

9            THE COURT:  I don't -- I didn't hear who was

10   speaking.  Yeah, go ahead, please.

11           MR. TOW:  Okay.  It's Rodney Tow.  I'm sorry.

12           The only thing I'm concerned -- I think bar dates

13   were treated differently than pleading date.  And I just --

14   and Ms. Spigel may be right, Ms. Ryan may be right.  I don't

15   know.  But I think that the issue is, if you have to have it

16   on or before a specific date, then you have to have it on

17   before that date and not necessarily that a holiday will

18   extend it.  And I -- you know, I cannot cite you to the rule,

19   but I just remember that --

20           THE COURT:  Yeah, I -- actually, I think you're

21   wrong.  But if the rules allow it, it's just going to be

22   easier to have it already calculated.  So let me just see.

23       (Pause in proceedings)

24           THE COURT:  Does anyone know where the proof of

25   claim bar date for governmental units is, literally?

1           MR. TOW:  I think it's -- I want to say

2    (indiscernible) 2003.

3           MS. RYAN:  I think it was 3002.  I think 3003

4    applies to 11s, but 3002 sets out the 180 days after the date

5    of the order of relief.  It could be quoted in 3003, as well.

6    Let's see.

7           THE COURT:  I have a motion orally by the Government

8    to extend the hundred-and-eighty-day bar date byt two days,

9    and I'm granting it, as I read the last part of 3002(c)(1).

10   And so I'm granting it and we're setting it on the Monday.

11          MS. RYAN:  Thank you, Your Honor.

12          THE COURT:  Just to make life easy on everybody.

13          What else do we need to accomplish today?  So,

14   Ms. Spigel --

15          MS. SPIGEL:  Your --

16          THE COURT:  -- can you upload that order, hopefully

17   by the end of today?  And I'll have Ms. Do present it to me,

18   and I'll just look for these changes and try and get it out

19   today.

20          MS. SPIGEL:  Yes, Your Honor.  Yes, Your Honor.

21          Also, the other motion that is on for -- before Your

22   Honor is the motion to approve the form of notice of

23   commencement of case and to approve the electronic

24   notification to customers, and to approve the redaction of

25   personally identifiable information for individual customers.

1       That motion attaches to it the proposed postcard that would go

2       to customers.  And I also -- and we would ask that this order

3       be entered because we want to get the notice of commencement

4       of case out to all of the --

5               THE COURT:  Right.

6               MS. SPIGEL:  -- parties-in-interest in this case.

7               I do have Mr. Fallquist, who's the CEO Of the

8       company here, if Your Honor would like us to lay some

9       foundational evidence related to the fact that the company

10      only ever communicated with its customers electronically.  We

11      just wanted to make --

12              THE COURT:  So --

13              MS. SPIGEL:  -- that testimony available.

14              THE COURT:  If you want to put that on, that's fine.

15              I have a very few comments.  One is I don't see any

16      reason to do an interim order on this.  It seems to me we

17      ought to do a final order and save the money --

18              MS. SPIGEL:  Thank you, Your Honor.

19              THE COURT:  -- in having to come back and do a

20      final.

21              Second, there was no provision made in this order if

22      we do redact the information for anyone to be able to come and

23      get a copy of the names and addresses.  And I -- there's got

24      to be some provision in here where someone can, in fact, file

25      a request with you to give them the full customer list, if you

1    -- you know, with unredacted contact information.  If you

2    decline to give it, they ought to have the right to come to

3    court to try and get it.  So I don't have a problem with sort

4    of an initial redaction arrangement.  But it's entirely

5    possible somebody will need it, and I don't want to forever

6    bar it.

7                And then, on the postcard ...

8           (Pause in proceedings)

9                THE COURT:  Does it make sense to come back really

10   quickly and figure out this date?  We can't very well send the

11   postcard with a blank date, and it's a good idea to have the

12   date there.

13               MS. SPIGEL:  Your Honor, we -- on -- yesterday, we

14   filed a proposed revised form of notice on the postcard that

15   removed the bar date because we figured that it was not going

16   to be resolved today.  That's at Docket Number 92-1.

17               If we want to include a bar date, I mean, we are

18   comfortable putting July 19th, which is the 90 days after the

19   341, or as such other date, as may be extended by the Court.

20   I -- you know, I think that that -- we could include that, if

21   that's preferred.

22               MS. RYAN:  Your Honor, this is Mrs. Ryan at the

23   Texas Attorney General's Office.

24               On the note card, I think that one addition that

25   would be important is a place that the consumers could go to

1    change their email address, if there's a wrong email address

2    or a wrong phoen number.  And I don't know if Stretto has the

3    ability to allow consumers to do that.  And since we don't

4    know if we're going to have a Customer Committee or not,

5    obviously, we don't have their contact information to put on

6    there.  But if both the phone number and the email address for

7    the client is incorrect, they would need a way to fix that.

8    So that's the only comment.

9        Whether we put a bar date on there of the July 19th

10    address [sic] or as later as extended by the Court, Your

11    Honor, that's up to you.  But I do feel strongly about having

12    a place consumers can go to change their email address, since

13    this will be the only paper notice that they will get in the

14    case.

15        THE COURT:  So on the proof of claim form is a place

16    for them to include an email address.  And I certainly think

17    we could instruct Stretto that, if someone includes an email

18    address on their proof of claim form, that the email address

19    notification system would need to be updated to do that.  I

20    don't think that we want to have a system where individuals

21    could go into the Stretto system and change it, and then have

22    decent safeguards against being sure that the right person

23    changed it and there's good tracking.

24        So, if we could include a date here, and then

25    include a statement that says, you know, on the proof of claim

1     form, be certain that you include the right email address,

2     then I think that is part of Stretto's charge to be sure that

3     they match proofs of claim.  Am I correct about that,

4     Ms. Spigel, that that's part of what Stretto should be doing?

5               MS. SPIGEL:  Stretto is tracking these particular

6     customers by their email address, so that would be fine.

7               THE COURT:  So, if the proof of claim --

8               MS. RYAN:  Well, I think my --

9               THE COURT:  -- has a different email -- if the proof

10    of claim has a different email address, they would update to

11    be that, right?

12              MS. SPIGEL:  I think Ms. Tsai from Stretto is

13    actually on the line.  Maybe she can weigh in.

14              THE COURT:  Yeah, we probably ought to confirm that

15    before we use that as -- I appreciate the concern that

16    Ms. Ryan has, and if that's the solution, then we ought to

17    know if that works.

18              MS. RYAN:  I think my concern, Your Honor, is a

19    little more basic because -- and correct me if I'm wrong

20    because I absolutely could be.  If this card goes out to our

21    citizenry and it says we're going to email you, but Griddy has

22    the wrong email address, so the clients never get an email

23    from Griddy, they'll never get a claim form in the first

24    place, and so --

25              THE COURT:  No.  So we ought to have a link on here

1       to fill out your proof of claim, and we can do that if we set
2       a bar date, I think.
3              MR. POTTS:  Your Honor --
4              THE COURT:  Let me --
5              MR. POTTS:  Your Honor, this is --
6              THE COURT:  Let's hear from -- hold on a minute.
7       First, I want to hear from Stretto if this is technologically
8       within what they can do.
9              So, yes, who do we have on the phone from Stretto?
10             MS. TSAI:  Hi.  This is Angela Tsai with Stretto,
11      claims agent for the Debtor.
12             So, yes, we can certainly (indiscernible) postcard,
13      which would tell them to contact us by email or phone number,
14      and we can upload their email address in our system
15      accordingly.  You know, we just need someone to physically
16      give us evidence of the request for email changes.
17             Also, on the proposed customer proof of claim form,
18      we will actually have two areas:  One email would be the email
19      you would want us to make a claim with, and we're also adding
20      a field that should say please fill in the address -- the
21      email address you have the account with.  So, this way, we can
22      make sure that we capture both the current email they're
23      using, as well as the email that they already have on file for
24      them, so we can match the customers properly.
25             THE COURT:  And so you could give to Ms. Spigel a

1        link that she could include in the postcard that would do both

2        of those things.

3                MS. TSAI:  For -- the link would be for claim form

4        submission, though.  I'm not sure if that's what we want to

5        include on the postcard right now (indiscernible) certainly.

6                THE COURT:  All right.

7                MS. TSAI:  Otherwise, they could call or email at

8        the address, you know, that's currently on the postcard, and

9        we can make that change ahead of any bar date information

10       going out.

11               THE COURT:  Well, if someone calls you to change

12       their email address, how do you know who's calling you?

13               MS. TSAI:  Well, we'll check their -- that's a great

14       question.  Of course we'll ask for -- we also have their phone

15       number.  So we'll verify their name and phone number are --

16       you know, matches what they -- we have on record for them.

17       And a lot of times, we'll ask them to write an email,

18       actually, so we have recent evidence of the request.

19               THE COURT:  Okay.  So someone else wanted to speak

20       to this issue, and I'm not sure who it was.

21               MR. POTTS:  Your Honor, Derek Potts here.  I'd like

22       to raise --

23               THE COURT:  Mr. Potts.

24               MR. POTTS:  You know, you probably didn't have a

25       chance to read our responses, but I want to remind you that

1    both the Attorney General and the class action creditors are

2    asking the Court to resolve the Committee issue prior to

3    issuing this notice.

4            I mean, for example, the notice in the Watson

5    Grinding case specifically mentions the Committee.  It gives

6    customers the ability to contact a Committee with any

7    questions.  If there's going to be a Committee -- which we

8    believe there should be and I think you have oral motions now

9    in front of you on that -- we think that that should be

10   decided and that should also be included in this notice.

11           THE COURT:  So that's going to delay this notice by

12   two or three weeks.  Why wouldn't we just send out a new email

13   to everybody that would inform them of the Committee, if one

14   is formed?

15           MR. POTTS:  I think it's confusing to the customers.

16   I mean, they're going to get a notice, and then, a couple of

17   weeks later, they're going to be, oh, wait a minute, now we've

18   appointed a Committee.  I think and I believe the Attorney

19   General thinks it should be done at the same time.

20           The trustee has already contacted Mrs. Khoury, she's

21   contacted other people who have -- who are ready to be on the

22   Customer Committee.  I mean, I don't know what else needs to

23   be done.

24           THE COURT:  Well, it takes -- I mean, you know,

25   they've got to appoint one, the Committee has to meet, they

1       have to retain a lawyer, the lawyer has to set up a website.

2       It doesn't happen overnight.

3               I'm going to overrule an objection that we wait on

4       this.  I want to give people notice of the case.  I'm going to

5       take up the Committee motion, if the parties -- if everyone is

6       available to do that, the oral motion on whether to appoint a

7       Committee, on April the 1st.  So I don't intend to delay one

8       for the other.  April the 1st at 10:30, can we take up the

9       oral motions to appoint a Customer Committee?

10              MR. POTTS:  Yes.

11              THE COURT:  All right.

12              MS. RYAN:  Your Honor, this is --

13              MS. SPIGEL:  Your Honor?

14              THE COURT:  Sorry.

15              MS. SPIGEL:  Go ahead.

16              MS. RYAN:  Thank you.  I just wanted, for

17      clarification -- I really appreciate the Stretto

18      representative appearing on the spur of the moment and

19      explaining all of the workings behind the scene to us.  They

20      make it work smoothly, and I appreciate their help in these

21      big cases.

22              So I just want to be clear.  If the citizens who

23      receive the card need to update their email address, they can

24      just call that number or email Stretto.  Is that right, or

25      when they file their proof of claim, they can update it too?

1          MS. TSAI:  Yes, that's exactly right.

2          MS. RYAN:  Okay.  So, if -- could we put in the

3     language, if you have questions or need to update your email

4     address, please contact, and then have the remainder of the

5     email to Stretto and the phone number?

6          MS. SPIGEL:  This is Robin Spigel.  I don't have an

7     objection to that.  Just the message, though, we had filed at

8     92-1, is updated with different -- the email is no longer

9     griddy@stretto.com, it's something that's clearer, that they

10    won't be able to get a reply from that particular email,

11    they'll need to use the griddyinquiries@stretto.com.  So I

12    would like to use the revised form of postcard that we filed

13    yesterday, and we can add the bar date -- I'm not clear on

14    whether we're adding the bar date or not to that message.

15         THE COURT:  Well, we're going to talk about that in

16    just a minute.  But I want to try --

17         MS. SPIGEL:  Okay.

18         THE COURT:  -- and find a way to do that, and I'm

19    not really hearing any objection to the July bar date.  If the

20    Committee gets appointed and if the Committee believes that it

21    is appropriate to have a later bar date, we could always send

22    out a notice that expands it.  But telling people -- a July

23    bar date seems to not have much of a down side to it.

24         Let me hear from Mr. Jordan again.  I guess you got

25    disconnected, and you're back on now, Mr. Jordan.  Go ahead.

1          MR. JORDAN:  Judge, thank you.  Just very -- one

2     quick question, in connection with the April 6th or maybe 5

3     hearing that you were going to hold on the oral motion.  May I

4     put in a local rules notice to creditors -- if I am able to

5     get my motion for the tort Committee on file, may I put it for

6     the same time?

7          THE COURT:  Yes, sir.

8          MR. JORDAN:  All right.  And it should be filed no

9     later than close of business tomorrow.  Thank you, Judge.

10          THE COURT:  But I'm also taking your oral motion to

11     do it and setting your oral motion.  I'm setting both your

12     oral motion and Ms. Ryan's oral motion for that day.  So, if

13     you don't file anything in writing, I'm still taking it up.

14          MR. JORDAN:  Perfect.  Okay.  Thank you, Judge.

15     That's all.

16          (Participants confer)

17          MS. WHITWORTH:  This is Jana Whitworth --

18          MS. SPIGEL:  Your Honor --

19          MS. WHITWORTH:  -- for the trustee.  If I may.

20          With regard to the April 1st hearing, I have a

21     conflict at 10:30, Your Honor, that will probably last through

22     lunchtime.  If the Court has time later that day.

23          THE COURT:  I do.

24          MS. WHITWORTH:  I apologize, Judge.

25          THE COURT:  We'll do it another time.  I want it --

1    you're essential.  Are you available at 2:00 o'clock for that?

2              MS. WHITWORTH:  Yes, Judge, 2:00 o'clock is free.

3              THE COURT:  Is there anyone that has a conflict

4    April 1st at two o'clock for the two oral motions to appoint a

5    Customer Committee?

6         (No verbal response)

7              THE COURT:  All right.  Thank you.  We will set them

8    for then.

9              Ms. Spigel, so you're going to upload both order,

10   hopefully by the end of the day, if no, tomorrow, and you'll

11   contact Ms. Do when they're ready for me to sign.  Is that

12   right?

13             MS. SPIGEL:  Yes, Your Honor.

14             THE COURT:  Is there any objection to the July bar

15   date being in here?

16        (No verbal response)

17             THE COURT:  We'll include the July bar date that

18   you've proposed.

19             MS. RYAN:  Your Honor?

20             THE COURT:  Go ahead --

21             MS. RYAN:  This is Mrs. Ryan --

22             THE COURT:  -- Ms. Ryan.

23             MS. RYAN:  This is Mrs. Ryan with the State of Texas

24   again for the record.

25             So long as it can be extended, if it becomes

1        necessary, we don't have an objection to including it.

2               THE COURT:  Bar dates can be extended by motion and

3        on notice of hearing.

4               MS. RYAN:  Thank you, Your Honor.

5               THE COURT:  I don't want to include that in the

6        postcard only because it's going to confuse people.  I want to

7        give them a bar date, but I'm telling you that, you know, a

8        motion to extend the bar date is a legitimate motion and we'll

9        consider it on the merits at that point.

10              MS. RYAN:  Thank you.

11              THE COURT:  Is that fair enough to you?

12              MS. RYAN:  Absolutely, Your Honor.  Thank you.

13              And I have just a procedural question because this

14       is evidently a different case.  Will the citizenry or

15       customers also be emailed about the notice and get a postcard,

16       or will they just get a postcard?

17              MS. SPIGEL:  They will get both.  I'm sorry.  It's

18       Robin Spigel for the record.  They will get the post card as

19       the initial mailing, but they're also going to get the notice

20       of commencement of case and all -- you know, all documents

21       that all of the creditors get.

22              MS. RYAN:  Thanks, Robin.

23              THE COURT:  And that's going to --

24              MS. RYAN:  I appreciate it.

25              THE COURT:  And that's going to include the link to

1    Stretto, right?

2              MS. SPIGEL:  Correct.

3              MS. RYAN:  That's fine.  Thank you all.

4              THE COURT:  Thank you.

5              All right.  Does anyone have anything else that we

6    ought to deal with today on the Griddy matter?

7         (No verbal response)

8              THE COURT:  Okay.  I appreciate all the work that's

9    gone into the case.  It's moving fast, and I think

10   appropriately fast.  Let's try and -- I want to let -- the

11   reason why I'm overruling the motions to delay until we get a

12   Committee formed, I want to get something out to people and I

13   want to give them something official.  I think that is really

14   helpful to the process, to the public.

15             The Committee will be fully empowered, if we appoint

16   one, to seek extensions, as will the parties who are already

17   here.  So I don't see much downside to doing it now and

18   getting the notice out.  We're going to go ahead and do it

19   that way.

20             Once a Committee is appointed, if one is appointed,

21   and once it retains counsel, presumably, it's then going to

22   send out text and email messages to all of its constituents

23   saying here we are, and here's our information website.  But I

24   don't want to do that until they're up and running and have an

25   information website, somebody to contact because, with 56,000

48

1       customers, somebody better be prepared for an onslaught of

2       requests for information.  And hopefully, the Committee will

3       be able to get up to speed if one is appointed.

4            All right.  We're in adjournment for this morning.

5       Thank you.  We will return at 1:00 o'clock.

6          (The parties thank the Court.)

7            THE COURT:  Thank you.

8          (Proceedings concluded at 11:20 a.m.)

9                   **\* \* \* \* \***

10      *I certify that the foregoing is a correct transcript*

11     *to the best of my ability produced from the electronic sound*

12     *recording of the proceedings in the above-entitled matter.*

13     */S./  MARY D. HENRY*

14     *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

15     *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET\*\*337*

16     *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

17     *JTT TRANSCRIPT #63695*

18     *DATE FILED:  MARCH 30, 2020*

19

20

21

22

23

24

25