**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| GRIDDY ENERGY LLC,[1] | ) Case No. 21-30923 (MI) |
| Debtor. | ) |

**DEBTOR'S (A) OBJECTION TO THE APPOINTMENT OF
AN OFFICIAL COMMITTEE OF DISPUTED TORT
CLAIMANTS AND (B) LIMITED OBJECTION TO THE APPOINTMENT
OF AN OFFICIAL COMMITTEE OF FORMER CUSTOMERS**

Griddy Energy LLC, as debtor and debtor in possession in the above-captioned chapter 11 case (the "Debtor"), submits its (a) objection to the oral motion for the appointment of an official committee of tort claimants ("Disputed Tort Claimants' Committee") comprised of unspecified "multiple injured and death case tort claimants" (the "Disputed Tort Claimants") made on the record of the March 29, 2021 hearing (the "March 29 Hearing") in this case and (b) limited objection to the oral motions for the appointment of an official committee of former customers ("Customers' Committee") of the Debtor also made on the record of the March 29 Hearing (collectively, the "Objections"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Debtor filed this case on March 15, 2021. No official committee of unsecured creditors has been appointed in this case, and it is the Debtor's understanding that no such committee is likely to be appointed. On the record of the March 29 Hearing, two lawyers representing former customers made oral motions to appoint a Customers' Committee and a

---

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

Disputed Tort Claimants' Committee, respectively. The State of Texas, through the Attorney General for the State of Texas, also made an oral motion for the appointment of a Customers' Committee. While the appointment of an official committee of unsecured creditors is a right under the 11 U.S.C. § 1102(a)(1) (the "Bankruptcy Code") if general unsecured creditors are interested in serving on such a committee, the appointment of any other official committee is left to the sound discretion of the Court. *See* 11 U.S.C. § 1102(a)(2).

2. The appointment of two official committees comprised of former customers in this case will have the inevitable result of materially depleting the estate's limited resources, which in turn, will materially deplete the potential recoveries to creditors of the estate and may cause the conversion of this case to a case under chapter 7. Such an outcome would be detrimental to all stakeholders – including the Debtor's former customers for whom official committees are being sought. Putting aside that the Debtor simply cannot afford two official committees, appointment of one additional committee, let alone two committees, requires unique circumstances that simply do not exist in this case.

3. The Debtor listed on its Schedules of Assets and Liabilities (the "Schedules") approximately 29,000 former customers that may have been affected by the extreme electricity pricing that occurred during the winter storm event that occurred in Texas in mid-February.[2] While the Debtor denies any liability to these former customers, whose claims are listed on the Schedules as contingent, unliquidated and disputed and are based on potential litigation claims that they may have, that is beside the point. The Debtor's proposed chapter 11 plan reflects a compromise of claims that would give former customers the opportunity to, among other things, participate in proposed mutual releases and have their unpaid bills for electricity charges, including those

---

[2] *See Schedules of Assets and Liabilities of Debtor Griddy Energy LLC* [Docket No. 71], Schedule F Attachment.

incurred during the extreme electricity pricing that occurred during the mid-February winter storm event, forgiven.[3] Further, the Debtor's proposed solicitation procedures would permit former customers to vote on the confirmation of its proposed chapter 11 plan and have an opportunity to participate in these customer releases.[4] However, if a chapter 11 plan cannot be confirmed because estate assets are depleted before the Debtor has a chance to seek confirmation thereof, then former customers will not have the opportunity to participate in the proposed releases, and those customers would remain subject to collections actions by the Plan Administrator for their uncollected amounts owed. This is the opposite outcome that the Debtor – and presumably the former customers – hope to achieve.

4. For the reasons set forth below, the Debtor (a) objects to the appointment of a Disputed Tort Claimants Committee or, alternatively, the inclusion of any such alleged claimants on any Customers' Committee and (b) objects, on a limited basis, to the appointment of an official committee of former customers ("<u>Customers' Committee</u>").

## OBJECTION

5. Section 1102 of the Bankruptcy Code provides that "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors . . . if necessary to assure adequate representation of creditors." 11 U.S.C. § 1102(a)(2). Appointment of an additional committee under section 1102(a)(2) of the Bankruptcy Code is an extraordinary remedy. *See In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) ("The appointment of an additional

---

[3] The Debtor also is formulating a proposed compromise under the chapter 11 plan to address those customers that paid all or a portion of their bills for electricity consumption during the extreme electricity pricing that occurred as a result of the mid-February winter storm event, and anticipates filing a proposed amended plan in the near term.

[4] Pursuant to the Debtor's proposed Solicitation Procedures [Docket No. 24-1] (the "<u>Solicitation Procedures</u>"), holders of claims scheduled as contingent, unliquidated and disputed claims shall be allowed to vote in the amount of $1.00. *See* Solicitation Procedures Art. IV, ¶¶ 2 (d), 3(q).

3

committee under section 1102(a)(2) is considered 'extraordinary relief.'"); *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 857 (Bankr. M.D. Fla. 2005) ("The appointment of an additional committee is an extraordinary remedy."). The burden of demonstrating that the appointment of an additional committee to assure adequate representation of creditors is on the moving party. *See In re Dana Corp.*, 344 B.R. at 38 ("The movant has the burden of proving that the appointment of an additional committee is necessary to insure 'adequate representation' of the moving party."); *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002) ("The burden is on the moving party to prove that the existing committee does not provide adequate representation.").

6. While courts have discretion to appoint additional official committees, courts are generally hesitant to do so, and the requirement that the moving party show that such a committee is "necessary to assure adequate representation" has been described as ranging from a "high standard" to requiring a showing that an additional committee is "'absolutely required,' 'essential,' or 'indispensable.'" *See In re Eastman Kodak,* No. 12–10202, 2012 WL 2501071, at *2 (Bankr. S.D.N.Y. June 28, 2012) (quoting *In re ShoreBank Corp.,* 467 B.R. 156, 164–65 (Bankr. N.D. Ill. 2011)); *In re Oneida Ltd.,* 351 B.R. 79, 83 (Bankr.S.D.N.Y.2006).

7. The Bankruptcy Code does not define "adequate representation." Instead, courts look to seven factors to determine whether it is necessary to appoint an additional committee to ensure adequate representation:

> (1) the ability of the existing committee to function;
>
> (2) the nature of the case;
>
> (3) the standing and desires of the various constituencies;
>
> (4) the ability of creditors to participate in a case without an additional committee;

4

>   (5) the delay and additional cost that would result if the court grants the motion;
>
>   (6) the tasks which a separate committee is to perform; and
>
>   (7) other factors relevant to the adequate representation issue.

*See In re Residential Capital*, *LLC*, 480 B.R. 550, 558 (Bankr. S.D.N.Y. 2012) (holding that borrowers were adequately represented by the creditor's committee and were not entitled to a separate committee).

### A. No Circumstances Exist Justifying the Appointment of a Disputed Tort Claimant's Committee Or Including any Alleged Tort Claimants on any Customers' Committee

8. There is no basis for the appointment of a Disputed Tort Claimants' Committee in this case or, if no such committee is appointed, for any Disputed Tort Claimants whose claims are based solely on alleged personal injury or property damage to be appointed as members of any Customers' Committee.

9. The Disputed Tort Claimants' oral motion at the March 29 Hearing, coupled with the implausible allegations that a retail energy provider, such as the Debtor, is responsible in any way for alleged personal injury or property damage for the events stemming from Winter Storm Uri, does not satisfy the Disputed Tort Claimants' rigorous burden to prove lack of adequate representation. *See* 11 U.S.C. § 1102(a)(2); *In re Dana Corp.*, 344 B.R. at 38; *In re Enron Corp.*, 279 B.R. at 685.

10. As set forth above, courts look to seven factors to determine whether it is necessary to appoint an additional committee to ensure adequate representation. The first factor, the ability of the existing committee to function, is inapplicable at this time. The remaining factors militate against appointing a committee of Disputed Tort Claimants. Among other things, (a) the Disputed Tort Claimants have retained seasoned counsel to represent their alleged interest in this case and

are able to participate without an additional committee,[5] *see In re Dana Corp.*, 344 B.R. at 39-40 (finding that claimants will be able to continue to participate in a chapter 11 case where they are represented by experienced counsel), and (b) the additional legal fees that would be incurred by appointing a committee of Disputed Tort Claimants are not justified as (i) any such committee would be duplicative of any Customers' Committee, if appointed, since allegedly the Disputed Tort Claimants were former customers of the Debtor (*see id.* at 40 (holding where the committee's roles would be duplicative, the additional costs weigh against appointing an additional committee)), and (ii) estate resources should not be spent on purported claims that have no nexus to this case.

11.     Regarding the fact that the purported claims have no nexus to this case, the Debtor is a retail electric provider that sold a wholesale electricity pass-through product.  *See Declaration of Michael Fallquist in Support of the Debtor's Chapter 11 Petitions and First Day Relief* [Docket No. 21] (the "First Day Declaration") ¶ 7.  In other words, the Debtor provided its customer access to electricity at wholesale prices.  But the Debtor was not involved in the generation, transmission or physical distribution of electricity to its former customers and had no role whatsoever in the failure of the electricity grid to supply power to the people of Texas.  *See generally* First Day Declaration.

12.     Further, forming an official committee with the sole purpose to advance the interest of a seemingly very small number of purported creditors with claims unrelated to this case would be antithetical to the purpose behind the appointment of an additional committee.  If the Disputed Tort Claimants believe they have meritorious claims (which they do not), they will be able assert

---

[5] The Debtor notes that there has been no disclosure on the record or otherwise on whose behalf the oral motion for the appointment of a tort claimants' committee was made at the March 29 Hearing nor the legal basis for such claims against the Debtor.

them and are well represented. *See In re Residential Capital, LLC*, 480 B.R. at 558-59 ("And, forming a Borrowers Committee solely to advance individual borrowers' claims is not appropriate, because acting as *de facto* counsel for borrowers would be an impermissible role for an official committee."); *In re Garden Ridge Corp.,* No. 04–10324, 2005 WL 523129, at *4, (Bankr. D. Del. Mar. 2, 2005) (declining to appoint an official committee for landlords because an official committee "is simply not intended to represent individual creditor interests").

13. Alternatively, if a Customers' Committee is appointed and a Disputed Tort Claimants' Committee is not, the Debtor believes that it would be inappropriate for any Disputed Tort Claimants whose claims are based solely on personal injury or property damage to be appointed to the Customers' Committee. A great number of the Debtor's customers actually owe money to the Debtor and, combined with the fact that the Disputed Tort Claimants have alleged claims that are unrelated to the Debtors' business or the fact that such persons were customers of the Debtor, should preclude their inclusion on any Customers' Committee.

14. Accordingly, the Debtor respectfully submits that any motion to form a Disputed Tort Claimants' Committee should be denied and no Disputed Tort Claimants whose claims are based solely on personal injury or property damage should be appointed as members of any Customers' Committee.

### B. The Debtor's Limited Objection to the Appointment of a Customers' Committee

15. While the Debtor believes that all or the majority of factors listed above for the appointment of a Customers' Committee are not met in this case, in light of the unprecedented circumstances that led the Debtor to file for bankruptcy, the unique nature of the Debtor's proposed chapter 11 plan, and because a Customers' Committee would be a fiduciary for all customers rather than an advocate for any particular individual customer, the Debtor does not object to the

appointment of such a committee;[6] provided that (a) given the nature of the alleged claims of customers (which the Debtor disputes), the fact that tens of thousands of customers actually owe the Debtor money, and the fact that such claimants would typically be represented by contingency counsel, the advisors to any Customers' Committee should be restricted from being paid from the limited resources of the estate. Rather, any Customers' Committee should be limited to hiring advisors on a contingency fee basis only. The Debtor believes that this is consistent with the oral motion made at the March 29 Hearing by the State of Texas, through the Attorney General for the State of Texas. *See March 29, 2021 Hearing Transcript* at p.13, line 6 [Docket No. 111] ("we are moving for the appointment of a Customer Committee that would be on a contingent fee basis.");[7] and (b) the order approving any Customer Committee should be clear that the members of the committee owe fiduciary duties to their customer constituents[8] and must "place the collective interest" of former customers above their own personal stake.[9]

---

[6] To that end, if former customers opt out of the proposed releases in the Debtor's proposed chapter 11 in order to pursue alleged state law causes of action against the Debtor and such customers owe the Debtor money, even if such causes of action were wildly successful (which the Debtor strongly believes they will not be), there is only a very finite amount of funds to be distributed to the Debtor's creditors. Moreover, collection actions by the Plan Administrator would likely be pursued against former customers who do not participate in the proposed releases in order to increase distributions to creditors of the estate. The Debtor hopes that members of any Customers' Committee appointed in this chapter 11 case would be apprised of this risk by their counsel.

[7] The Debtor acknowledges that the Court stated at the March 29 Hearing that it cannot control the basis on which a committee hires its professionals, but any committee advisors' retention will be subject to Court approval and the Debtor believes it is important to set forth its position herein. If a Customers' Committee is appointed and the committee seeks to hire advisors on a basis other than a contingency fee arrangement, the Debtor will object to such fee arrangement as, among other things, an unjustified burden on the estate.

[8] It is well settled that members of a statutory committee owe fiduciary duties to their constituents. *See In re PWS Holding Corp.*, 228 F.3d 224, 246 (2d Cir. 2000) ("Section 1103(c) of the Bankruptcy Code. . . . has been interpreted to imply. . . . a fiduciary duty to committee constituents"); *In re Residential Capital, LLC*, 480 B.R. at 559 (Bankr. S.D.N.Y. 2012) ("It is well settled that statutory unsecured creditors' committees owe a fiduciary duty to the entire class of creditors represented by such committee and are required to place the collective interest of the class they represent above their own personal stake in the bankruptcy case"); *In re Granite Partners, L.P.*, 210 B.R. 508, 516 (Bankr. S.D.N.Y 1997) ("The committee and its members owe a fiduciary duty to *the class* of creditors that the committee represents.") (emphasis in original); *In re First RepublicBank Corp.*, 95 B.R. 58, 61 (Bankr. N.D. Tex. 1998) ("A member of a creditors' committee owes a fiduciary duty to all creditors represented by the committee.").

[9] To the extent that the committee members seek to advance the interest of any particular former customer in

## **RESERVATION OF RIGHTS**

16. The Debtor reserves all rights to supplement or add to the legal and factual arguments raised in this Objection, and to object to any additional motions for the appointment of official committees, on any basis whatsoever at a future date.

[The remainder of this page is intentionally left blank.]

---

contravention of the fiduciary duties owed to former customers represented by the committee, the Debtor reserves its rights to seek to remove such members from the committee or otherwise take appropriate action before this Court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtor respectfully requests that the Court deny the relief requested in the oral motions consistent with the Objections set forth herein.

Dated: March 31, 2021

**BAKER BOTTS L.L.P.**

By: */s/ Robin Spigel*
Robin Spigel (admitted *pro hac vice*)
*Robin.Spigel@bakerbotts.com*
Chris Newcomb (admitted *pro hac vice*)
*Chris.Newcomb@bakerbotts.com*
30 Rockefeller Plaza
New York, New York 10012-4498
Telephone: (212) 408-2500
Facsimile: (212) 259-2501

-and-

David R. Eastlake
Texas Bar No. 24074165
*David.Eastlake@bakerbotts.com*
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

*Proposed Counsel to the Debtor and Debtor in Possession*

### Certificate of Service

I certify that on March 31, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Robin Spigel*