IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| GRIDDY ENERGY LLC, | § | CASE NO. 21-30923 (MI) |
| | § | |
| Debtor. | § | |

**OBJECTION OF ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC. TO (A) THE [PROPOSED] DISCLOSURE STATEMENT FOR AMENDED PLAN OF LIQUIDATION FOR GRIDDY ENERGY LLC UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE, AND (B) DEBTOR'S MOTION FOR AN ORDER: (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE DISCLOSURE STATEMENT; (II) APPROVING THE SOLICITATION AND NOTICE PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN; (III) APPROVING THE FORM OF VARIOUS BALLOTS AND NOTICES IN CONNECTION THEREWITH; AND (IV) APPROVING THE SCHEDULING OF CERTAIN DATES IN CONNECTION WITH CONFIRMATION OF THE PLAN**

TO THE HONORABLE MARVIN ISGUR, U.S. BANKRUPTCY JUDGE:

Electric Reliability Council of Texas, Inc. ("ERCOT") files this *Objection* (the "Objection") to the (a) *Debtor's [Proposed] Disclosure Statement for Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the United States Bankruptcy Code* [Docket No. 176-1] (the "Disclosure Statement"), and (b) *Debtor's Motion for Entry of an Order: (i) Conditionally Approving the Adequacy of the Disclosure Statement; (ii) Approving the Solicitation and Notice Procedures With Respect to Confirmation of the Plan; (iii) Approving the Form of Various Ballots and Notices in Connection Therewith; and (iv) Approving the Scheduling of Certain Dates in Connection With Confirmation of the Plan* [Docket No. 24] (the "Disclosure Statement Motion"), and in support thereof respectfully states as follows:

### I.    PROCEDURAL BACKGROUND

1. On March 15, 2021 (the "Petition Date"), Griddy Energy LLC (the "Debtor") filed its voluntary petition for relief under Chapter 11 of title 11 of the United States Code,

§§ 101, *et seq.* (as amended, the "Bankruptcy Code"), thereby initiating the above-captioned bankruptcy case (collectively, the "Bankruptcy Case").

2. The Debtor is a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3. On the Petition Date, the Debtor filed its *Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* [Docket No. 22] (the "Original Plan"), and a [Proposed] Disclosure Statement [Docket No. 23] (the "Original Disclosure Statement") in support thereof. Also on the Petition Date, the Debtor filed the Disclosure Statement Motion.

4. On March 31, 2021, the United States Trustee formed the Official Committee of Unsecured Creditors in the Bankruptcy Case.

5. On April 19, 2021, the Debtor filed its *Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the United States Bankruptcy Code* [Docket No. 175-1] (the "Plan") and the Disclosure Statement.

6. The hearing to consider the Disclosure Statement Motion and conditional approval of the Disclosure Statement is scheduled for April 29, 2021 at 9:00 a.m. (CT).

## II.    OBJECTION

A.    **The Disclosure Statement Does Not Contain Adequate Information**

7. Section 1125 of the Bankruptcy Code provides that an acceptance or rejection of a plan may not be solicited until after a disclosure statement approved by the bankruptcy court as containing "adequate information" has been prepared and distributed. 11 U.S.C. § 1125.

8. Section 1125 of the Bankruptcy Code defines the term "adequate information" as: "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, . . ., that

would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan. . . ." 11 U.S.C. § 1125(a)(1).

9. "The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan." *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D.Ill. 1987). Some of the factors that courts consider when determining whether a disclosure statement contains adequate information are: (i) "[a] complete description of the available assets and their value;" (ii) "[i]nformation regarding claims against the estate;" (iii) "[i]nformation relevant to the risks being taken by the creditors;" (iv) "[t]he actual or projected value that can be obtained from avoidable transfers;" and (v) "[t]he relationship of the debtor with affiliates." *In re Dakota Rail, Inc.*, 104 B.R. 138, 142-143 (Bankr. D.Minn. 1989).

10. A disclosure statement must contain, at a minimum, "simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible . . . alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Copy Crafters Quickprint, Inc.,* 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988). A disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution." *In re Ferretti,* 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

11. Courts routinely deny approval of disclosure statements if they lack adequate information or contain misleading disclosures and unexplained inconsistencies. *In re Applegate Property, Ltd.*, 133 B.R. 827, 829 (Bankr. W.D. Tex. 1991); *see also In re Cardinal Congregate I*, 121 B.R. 760, 766-67 (Bankr. S.D.Ohio 1990) (denying approval of a disclosure statement where it lacked certain critical information); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 172

**OBJECTION TO DISCLOSURE STATEMENT AND DISCLOSURE STATEMENT MOTION - Page 3**

(Bankr. S.D. Ohio 1988) (denying approval of a disclosure statement because it did not contain sufficient information to permit creditors and shareholders to make an informed judgment about the plan.)

12.     A debtor's opinion or belief that is unsupported by facts does not meet the standards of section 1125. *In re Egan*, 33 B.R. 672, 675 (Bankr. N.D.Ill. 1983); *In re Civitella*, 15 B.R. 206, 208 (Bankr. E.D.Pa. 1981).

### i. The Disclosure Statement does not contain adequate information regarding the proposed Debtor Releases

13.     The Plan provides for the following "Releases by the Debtor" (the "Debtor Releases"):

> Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, the Debtor, as debtor in possession, and any person seeking to exercise the rights of the Debtor's Estate, including without limitation, any successor to the Debtor, including the Liquidating Debtor, the Plan Administrator or any representative of the Debtor's Estate appointed or selected pursuant to sections 1103, 1104, or 1123(b)(3) of the Bankruptcy Code or under chapter 7 of the Bankruptcy Code, shall be deemed to forever release and waive all claims (as such term "claim" is defined in section 101(5) of the Bankruptcy Code), obligations, suits, judgments, damages, demands, debts, rights, causes of action (including, but not limited to, the Causes of Action) and liabilities (other than the rights of the Debtor to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder) against any Released Party, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtor or its Estate, whether directly, indirectly, derivatively or in any representative or any other capacity; provided, however, that in no event shall anything in this Section 12.07(a) be construed as a release of any Person's gross negligence or willful misconduct, as determined by a Final Order, for matters with respect to the Debtor and/or their affiliates.

Plan § 12.07(a).

**OBJECTION TO DISCLOSURE STATEMENT AND DISCLOSURE STATEMENT MOTION - Page 4**

14. The term "Released Parties" is defined in the Plan in pertinent part as:

<u>Released Parties</u>  means, collectively, and each solely in its capacity as such: (a) the Debtor, (b) the Committee and its members, (c) the *Prepetition Secured Lenders* and the *Collateral Agent*, and (d) each of such parties' respective predecessors, successors, assigns, subsidiaries, affiliates, including the Non-Debtor Affiliates, owners, and *each of their respective current and former officers, directors,* employees, *managers, members, principals*, shareholders, agents, advisors and professionals (including any attorneys, consultants, financial advisors, investment bankers and other professionals retained by such Persons) or other representatives, each in their capacities as such, together with their successors and assigns; . . ..

Plan § 1.95 (emphasis added).

15. The Debtor Releases provide for the release of virtually all claims and causes of action the Debtor may have against a wide assortment of Released Parties, including the Debtor's Prepetition Secured Lenders, Collateral Agent, Non-Debtor Affiliates of the Debtor, and current and former officers, directors, managers, members and principals of the Debtor and the Debtor's Non-Debtor Affiliates.[1]

16. The Disclosure Statement does not provide sufficient information as to the existence and value of the claims and causes of action proposed to be released.  For example, the cursory statement, "[t]he Debtor does not believe that it has material claims or causes of action against the Released Parties and believes the Debtor Release is in the best interest of the Debtor's estate and well within the Debtor's business judgment . . .," is insufficient to justify the Debtor Releases.  Disclosure Statement § 11.C.(a).  The Disclosure Statement is also silent with regard to what efforts the Debtor has undertaken to investigate and assess the existence and value of the claims and causes of action proposed to be released.  The Disclosure Statement further fails to identify with specificity what consideration, if any, the Released Parties are providing in exchange for the Debtor Releases.

---

[1] To the extent not otherwise defined herein, capitalized terms in this Objection shall have the meaning(s) ascribed to them in the Plan.

**OBJECTION TO DISCLOSURE STATEMENT AND DISCLOSURE STATEMENT MOTION - Page 5**

a. The Debtor Releases as they relate to the Prepetition Secured Lenders and the Collateral Agent

17. It appears that there are some claims that the Debtor possesses against the Prepetition Secured Lenders and/or the Collateral Agent as evidenced by the Prepetition Secured Lenders agreeing to forego payment of approximately $550,000.00 that they assert they are owed by the Debtor.[2] However, there is nothing in the Disclosure Statement that identifies what claims the Debtor has against the Prepetition Secured Lenders and Collateral Agent. Given that the Prepetition Secured Lenders made their loan around 100 days preceding the Petition Date and seized the Debtor's accounts shortly before the bankruptcy filing it would appear that some claims may exist.[3]

18. In the *Declaration of Michael Fallquist in Support of the Debtor's Chapter 11 Petitions and First Day Relief* [Docket No. 21] (the "Fallquist Declaration"), Mr. Fallquist states, "[o]n February 23, 2021, Griddy paid $11,138,011.87 in cash to Macquarie to satisfy the amounts outstanding under the Macquarie Agreements related to the purchase of physical electricity from Macquarie, thereby greatly reducing the amounts owed under the facilities but also reducing Griddy's cash on hand." Fallquist Declaration ¶ 56.

19. The Debtor's Amended Schedules of Assets and Liabilities [Docket No. 156] (the "Amended Schedules") provide additional information with regard to transfers to one of the Prepetition Secured Lenders, Macquarie Investments US Inc., within the forty-five days preceding the Petition Date. The Amended Schedules list the following transfers:

---

[2] Notably, this amount decreased from the amount proposed to be foregone in the Original Plan of $600,000.00.

[3] In the *Declaration of Robin Spigel in Support of Debtor's Application for Entry of an Order Authorizing Retention and Employment of Baker Botts L.L.P. as Counsel to the Debtor Effective as of the Petition Date* [Docket No. 134-2] (the "Spigel Declaration"), it is disclosed that Macquarie Energy LLC, one of the Prepetition Secured Lenders and certain of its affiliates are current clients of Baker Botts L.L.P., proposed counsel for the Debtor. Spigel Declaration ¶ 31. The Disclosure Statement should disclose the foregoing and should also address whether or not a disinterested third party has conducted a lien analysis with regard to the Prepetition Secured Lenders' alleged liens.

| Payment Date | Payment Amount |
|---|---|
| 1/21/21 | $ 16,739.86 |
| 1/29/21 | $ 2,756.11 |
| 2/22/21 | $ 5,472,011.57 |
| 2/22/21 | $ 302,189.43 |
| 2/23/21 | $ 1,253,285.54 |
| 2/24/21 | $ 3,347,368.34 |
| 2/26/21 | $ 4,084,715.19 |
| 3/03/21 | $ 541.67 |
| 3/04/21 | $ 500,125.00 |
| 3/05/21 | $ 10,125.00 |
| **Total** | **$ 14,989,857.70** |

20. There is no information in the Disclosure Statement that discloses whether the Non-Debtor Affiliates benefitted as a result of the foregoing transfers. In the Fallquist Declaration, Mr. Fallquist states that three of the Non-Debtor Affiliates are guarantors under the Borrowing Base Facility Agreement with Macquarie Investments US, Inc. Fallquist Declaration ¶ 24. The Debtor should be required to disclose whether and how any of the Non-Debtor Affiliates benefitted from the transfers made by the Debtor to the Prepetition Secured Lenders.

21. Mr. Fallquist also states in the Fallquist Declaration, "Macquarie began to take steps to preserve its remedies, culminating in a letter sent to Griddy dated February 17, 2021, notifying it of numerous alleged defaults under the Macquarie Agreements. As a result of the alleged defaults, transactions and borrowing under the Macquarie Agreements were suspended." Fallquist Declaration ¶ 45.

22. It further appears that on or about February 18, 2021, "Macquarie sent a Shifting Control Notice to Griddy and its bank, through which *it took control of all of Griddy's bank accounts* pursuant to the Blocked Account Control Agreement the parties had entered into to secure the obligations under the Macquarie Agreements." Fallquist Declaration ¶ 51 (emphasis added).

23. The Disclosure Statement contains no information as to the propriety or potential impropriety of the above almost $15 million in transfers, the vast majority made within thirty days of the Petition Date. It is notable that the maximum credit that could be extended per the loan documents was $15 million.

24. What the Debtor does state in the Disclosure Statement is the following, "the Debtor *believes* that the Prepetition Secured Lenders' liens were properly perfected when the Debtor was solvent." Disclosure Statement § II.C.(a) (emphasis added). Whether or not alleged liens are properly perfected should generally not be a question of "belief;" either the requirements for perfection have been met or they have not. The Debtor should be required to disclose precisely how and when this alleged perfection was effectuated.

25. The Debtor also cryptically states, "[t]he Prepetition Secured Lenders *activated the deposit account control agreements* (that were put in place in December 2020) *during the winter storm event* and continue to have control over one account of the Debtor that contains approximately $2.689 million." *Id.* (emphasis added). The foregoing statement begs for clarification; i.e., how does one "activate" a deposit account control agreement? If activated during the winter storm event, this suggests that perfection did not occur in December 2020 with regard to the Debtor's cash but rather potentially during the winter storm event which would make such "activation" subject to avoidance. Further, the language is vague as to when in

December 2020 the deposit account control agreement was "put into place" which is significant given that the 90th day preceding the Petition Date is on or about December 16, 2020.

26. The Debtor should be required to disclose all of the foregoing information as part of its Disclosure Statement. The Disclosure Statement should not be conditionally approved absent adequate disclosures on these points.

> b. <u>The Debtor Releases as they relate to the Non-Debtor Affiliates of the Debtor and the directors, officers, members, managers and principals of both the Debtor and its Non-Debtor Affiliates</u>

27. The Debtor provides a vague description as to the consideration that the Non-Debtor Affiliates and the directors, officers, members, managers and principals of both the Debtor and its Non-Debtor Affiliates are providing in exchange for the sweeping releases being granted them by the Debtor. In the Disclosure Statement, the Debtor states, "[t]he Released Parties have made substantial and valuable contributions to the Debtor's orderly wind down plan through efforts to negotiate and implement the Plan, which will maximize the amount of assets available to be distributed to holders of Claims." Disclosure Statement § II.C.

28. The Disclosure Statement fails to disclose what analysis, if any, was conducted with regard to whether there may be viable claims against Non-Debtor Affiliates, the Debtor's directors and officers and/or the directors and officers of the Non-Debtor Affiliates with regard to the business strategy employed by the Debtor that resulted in the Debtor and its customers being exposed to market fluctuations to a greater degree than its competitors.[4]

---

[4] In the Spigel Declaration, it is disclosed that two of the Debtor's Non-Debtor Affiliates, Griddy Holdings LLC and Griddy VI Holdings LLC are current clients of Baker Botts L.L.P., proposed counsel for the Debtor. Spigel Declaration ¶ 37 & Schedule 2 to Declaration. The Disclosure Statement should disclose the foregoing and should also address whether or not a disinterested third party has conducted an analysis with regard to claims that may exist against such Non-Debtor Affiliates.

29.     The lack of disclosure of such information renders the Disclosure Statement inadequate, especially considering that the Debtor's own Liquidation Analysis may not support the Best Interest of Creditors Test as set forth herein.

30.     With regard to the claims being released, the Disclosure Statement contains the following information:

> [T]he Debtor also believes there are no viable claims against its non-Debtor affiliates. As set forth above, the Debtor was solvent until mid-February. The Debtor's Schedules of Assets and Liabilities reflect one intercompany claim by a sister company of approximately $4,600. The Debtor's Statement of Financial Affairs do not reflect any cash transfers from the Debtor to any of its affiliates. Fourth, the Debtor does not believe there are any viable claims against its members, controlling directors and/or officers. The Debtor believes that it and such parties acted in the best interests of it and its stakeholders at all times. Any payments to such parties were on account of salaries, fees and/or expenses paid in the ordinary course of business.

Disclosure Statement § II.C.(a).

31.     While the Debtor's solvency would be pertinent to certain types of Chapter 5 causes of action, it is not pertinent to all of them. There may be issues with regard to whether or not the Debtor was solvent prior to mid-February 2021. A statement that the Debtor was solvent before mid-February is not evidence. Further, there could be other claims against such parties that do not depend on insolvency as an element.

32.     In addition, if there are no claims then why are the releases necessary.

### ii.     **The Liquidation Analysis attached as Exhibit B to the Disclosure Statement is inadequate**

33.     The Debtor has attached a Liquidation Analysis to the Disclosure Statement as Exhibit B to attempt to meet the Best Interests of Creditors Test which requires the following:

> With respect to each impaired class of claims or interests—(A) each holder of a claim or interest of such class—(i) has accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder

would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. §1129(a)(7).

34.     The Liquidation Analysis fails to take into account that under a Chapter 7 scenario, none of the releases proposed by the Debtor in the Plan will have been given. This highlights the importance of additional information being disclosed regarding the value of the claims and causes of action being released and the disclosure of information regarding what investigation was conducted with regard to such claims and causes of action by the Debtor. The Debtor's following conclusory statement is insufficient that, "[b]ased on its investigation and consultation with its advisors, the Debtor does not believe there are any viable causes of action against the Released Parties. The Debtor has therefore not ascribed any value to recovery from, nor included any costs related to, any causes of action pursued in a chapter 7 liquidation or chapter 11 liquidation for purposes of the Liquidation Analysis." Liquidation Analysis p. 4.

35.     In connection therewith, the Debtor makes the assumption that the Prepetition Secured Lenders would be unwilling to waive $550,000.00 of their claim and also assumes no recovery by the Chapter 7 Trustee of any claims against the Prepetition Secured Lenders. The Debtor also assumes only $129,188.00 in Chapter 11 Wind-down Costs and ultimately comes to the conclusion that there would supposedly be a lesser recovery in a Chapter 7 scenario. The Debtor states in the Liquidation Analysis that,

> The Liquidation Analysis therefore assumes that the claims reconciliation process would take 2 months and estimates costs of legal and financial professionals and former employees retained to assist the Plan Administrator in the aggregate amount of $35,000 per month. The Chapter 11 Wind Down Costs also include the monthly fees of the Plan Administrator. The amount of such fees will be subject to negotiation between the Plan Administrator and the Debtor and could vary significantly. Further, the Chapter 11 Wind Down Costs include quarterly fees payable to the United States Trustee.

Liquidation Analysis p. 8.

**OBJECTION TO DISCLOSURE STATEMENT AND DISCLOSURE STATEMENT MOTION - Page 11**

36. The projected $129,188.00 in Chapter 11 Wind-down Costs seems optimistic. It does not seem realistic that this Bankruptcy Case could be wound down in *two months*. This is, notwithstanding, the fact that the deadline to file objections to claims is *120 days after the Effective Date*. Plan § 9.01. Therefore, ERCOT suspects that a much higher amount of Chapter 11 Wind-down Costs will be incurred, thereby, making a Chapter 7 liquidation result in a better estimated recovery for unsecured creditors.

37. Accordingly, more detail needs to be given with regard to the costs of the Chapter 11 case post-confirmation given that it seems highly unlikely that the Bankruptcy Case will be wound down in two months.

### iii. The Disclosure Statement should disclose the rate of postpetition interest proposed by the Debtor

38. The Disclosure Statement should disclose what rate of post-petition interest the Debtor intends to pay in the event that payment of post-petition interest becomes required under sections 4.06 or 4.07 of the Plan.

39. Section 4.06(b) of the Plan provides the following treatment for Intercompany Claims:

> Treatment. Except to the extent that a holder of an Allowed Intercompany Claim agrees to a different treatment, if any Causes of Action are successfully prosecuted, settled, and/or otherwise resolved, each holder of an Allowed Intercompany Claim shall be entitled to received its Pro Rata share of any and all Cash or other property remaining with the Debtor after (i) *all Allowed Claims (other than Intercompany Claims) are paid in full in Cash (including payment of postpetition interest at a rate sufficient to render all Allowed Other General Unsecured Claims unimpaired)* in accordance with the Plan . . . .

Plan § 4.06(b)(emphasis added).

40. There is a similar provision regarding post-petition interest in section 4.07(b) of the Plan. The Disclosure Statement should disclose what post-petition interest rate the Debtor proposes.

### iv. The proposed claim objection procedures in the Solicitation Procedures are too time compressed

41. The proposed process for "Resolution of Disputed Claims and Interests for Voting Purposes; Resolution Event" set forth in the Solicitation Procedures attached as Exhibit 2 to the Disclosure Statement Motion (the "<u>Solicitation Procedures</u>") is too compressed and fails to give parties adequate time to move to estimate their claims and have a hearing on such estimation prior to the proposed Voting Deadline.

42. The deadline for creditors to file proofs of claim is April 28, 2021. The proposed Voting Deadline is June 1, 2021. By and through the proposed Solicitation Procedures, if the Debtor files an objection other than a "reduce and allow" objection on or prior to May 25, 2021, "the applicable holder shall not be entitled to vote to accept or reject the Plan on account of such Claim or Interest unless a Resolution Event (as defined below) occurs as provided herein or the Court orders otherwise." Solicitation Procedures p. 3.

43. Absent an agreement between the parties or a withdrawal of the claim objection, a Resolution Event would only occur if an order of the Court is entered either (a) allowing the objected to claim under 11 U.S.C. § 502(b), or (b) temporarily allowing the claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing.

44. Allowing the Debtor to object to a claim up to 7 days before the Voting Deadline does not provide adequate time for the creditor to prepare and file a Rule 3018 Estimation Motion and have such motion heard prior to the Voting Deadline.

45. ERCOT proposes that the following timing would be more appropriate if the Voting Deadline is June 1:[5]

---

[5] ERCOT reserves the right to propose different timing for these deadlines should the proposed June 1 Voting Deadline change.

    a. May 7, 2021 – Deadline for the Debtor or any other party to file an objection to a claim on either a full or a reduce and allow basis.

    b. May 14, 2021 – Deadline for the creditor to file a Motion to Estimate pursuant to Bankruptcy Rule of Procedure 3018.

    c. May 18, 2021 – Deadline for the objecting party to file a response to the Motion to Estimate.

    d. No later than May 24, 2021 – Hearing to be held on the Motion to Estimate.

46. The Solicitation Procedures should be revised to give creditors sufficient time to seek estimation of their claims should an objection be lodged to them. The proposed Solicitation Procedures fail to provide for this and should not be approved.

**v. The proposed timing for approval of the Disclosure Statement and confirmation of the Plan is too compressed based on the circumstances of the Bankruptcy Case**

47. Nothing in the pleadings filed in the Bankruptcy Case suggests that the Debtor is a classic "melting ice cube." This case is a liquidating 11 where the assets of the estate do not appear to be diminishing solely as a function of the passage of time. Providing sufficient time for the Committee to thoroughly investigate claims and causes of action that the Debtor may have against its Pre-Petition Lenders, Collateral Agent, Non-Debtor Affiliates and the directors, officers, members, managers and principals of the Debtor and its Non-Debtor Affiliates would be beneficial to the bankruptcy estate.

### III. RESERVATION OF RIGHTS

48. This Objection is not meant to be all-inclusive of ERCOT's objections to the Disclosure Statement and Plan. ERCOT reserves its rights to amend or supplement this Objection, to file additional objections to the Disclosure Statement, and to lodge additional objections to the Disclosure Statement at the hearing to consider final approval of the Disclosure Statement. ERCOT further reserves the right to object to confirmation of the Plan on any basis.

WHEREFORE, PREMISES CONSIDERED, ERCOT respectfully requests that this Court enter an Order denying conditional approval of the Disclosure Statement; and that the Court grant such other and further relief to which it may be justly entitled at law or in equity.

Dated: April 23, 2021                           **MUNSCH HARDT KOPF & HARR, P.C.**

                                           By:    /s/ Deborah M. Perry
                                                     Kevin M. Lippman
                                                     Texas Bar No. 00784479
                                                     Deborah M. Perry
                                                     Texas Bar No. 24002755
                                                     500 N. Akard Street, Suite 3800
                                                     Dallas, Texas 75201
                                                     Telephone: (214) 855-7500
                                                     Facsimile: (214) 855-7584

                                                    ATTORNEYS FOR ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.

## CERTIFICATE OF SERVICE

This is to certify that the undersigned caused a true and correct copy of the foregoing Objection to be served upon the parties listed below via United States first class mail postage prepaid, and via electronic notice upon the parties who receive electronic notice in this case pursuant to the Court's ECF filing system, on the 23rd day of April, 2021.

| | |
|---|---|
| Office of the United States Trustee<br>for the Southern District of Texas<br>515 Rusk Street, Suite 3516<br>Houston, Texas 77002<br>Attn: Jana Whitworth | Griddy Energy LLC<br>Attn: Roop Bhullar<br>P.O. Box 1288<br>Greens Farms, Connecticut 06838 |
| Baker Botts L.L.P.<br>910 Louisiana Street<br>Houston, Texas 77002<br>Attn: David R. Eastlake | Baker Botts L.L.P.<br>30 Rockefeller Plaza<br>New York, NY  10112<br>Attn: Robin Spigel and Chris Newcomb |
| Charles R. Gibbs<br>Shelby Perry<br>McDermott Will & Emery LLP<br>2501 North Harwood St., Suite 1900<br>Dallas, Texas 75201-1664 | Darren Azman<br>Blaine Adams<br>McDermott Will & Emery LLP<br>340 Madison Avenue<br>New York, NY  10173-1922 |

　/s/ Deborah M. Perry　　　　　　　
Deborah M. Perry