IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| GRIDDY ENERGY LLC,[1] | § § | Case No. 21-30923 (MI) |
| Debtor. | § § § | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTOR AND NON-DEBTOR AFFILIATES' MOTION TO QUASH AND FOR A PROTECTIVE ORDER**

The Official Committee of Unsecured Creditors of Griddy Energy LLC (the "Committee") submits this objection (the "Objection") to the *Debtor and Non-Debtor Affiliates' Motion to Quash and for a Protective Order* [Docket No. 165] (the "Motion").[2] In support of this Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Debtor is part of a corporate family of at least 14 affiliated entities (the "Non-Debtor Affiliates"), all of which appear to be owned or controlled by the Debtor's current officers and directors. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

2. Based on the limited information the Debtor has provided to date, the Committee believes that there are likely to be actionable claims related to the Non-Debtor Affiliates, including

---

[1] The last four digits of its federal tax identification number of the Debtor are 1396. The mailing address for the Debtor is PO Box 1288, Green Farms, CT 06838.

[2] Capitalized terms used but not defined herein have the meanings ascribed to such terms in the Motion.

marshalling claims against Macquarie and substantive consolidation claims against the Non-Debtor Affiliates.

3. The Debtor's position is that the Non-Debtor Affiliates are "off limits" because they are not the subject of this Chapter 11 Case. Of course, the only reason that the Non-Debtor Affiliates are not the subject of this Chapter 11 Case is because of the decision made by the Debtor's directors and officers, all of whom have control over the Non-Debtor Affiliates.

4. As set forth in more detail in the Debtor's disclosure statement objection [Docket No. 187] (the "Disclosure Statement Objection"), this Chapter 11 Case appears to be designed to shield valuable assets from the Debtor's creditors. The Committee must investigate all claims related to the Non-Debtor Affiliates. In order to do so, the Committee needs information from (and related to) the Non-Debtor Affiliates. These claims and any related investigations are well within the purview of the Committee's statutory mandate, and thus the Motion should be denied.

## BACKGROUND

5. On March 15, 2021 (the "Petition Date"), the Debtor commenced this Chapter 11 Case and filed the *Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code and the [Proposed] Disclosure Statement for Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* [Docket Nos. 1, 23, 24].

6. On April 19, 2021, the Debtor filed the *Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* (the "Plan") and the *[Proposed] Disclosure Statement for Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") [Docket Nos. 175, 176]. The Plan proposes to release any and all claims against the Released Parties held by the Debtor or by third parties (subject to opt-out). Plan, 37–38.

7. On the Petition Date, the Debtor filed the *Declaration of Michael Fallquist in Support of the Debtor's Chapter 11 Petitions and First Day Relief* [Docket No. 21] (the "First Day Declaration"). The First Day Declaration provides that ownership of the Debtor was purchased by the current ownership group in a transaction that closed on December 4, 2020 (the "Business Combination"). First Day Declaration, ¶ 23. The First Day Declaration does not provide any additional information regarding the Business Combination or the Non-Debtor Affiliates.

8. Attached hereto as **Exhibit A** is an organizational chart produced by the Debtor (which was not attached to the First Day Declaration). ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

9. On March 31, 2021, the United States Trustee for Region 7 appointed the Committee. Docket No. 116. On April 6, 2021, the Committee retained the undersigned counsel as its proposed bankruptcy counsel. On April 14, 2021, the Committee retained Province as its proposed financial advisor. Since its appointment, the Committee has informally and formally requested information from the Debtor necessary to investigate a number of issues related to the Plan.

10. On April 8, 2021, the Committee served its *Notice of Examination of the Debtor and the Non-Debtor Affiliates Pursuant to Federal Rule of Bankruptcy Procedure 2004* (the "First Notice").

11. On April 13, 2021, the Committee served its Second Notice of Examination of the Debtor and the Non-Debtor Affiliates Pursuant to Federal Rule of Bankruptcy Procedure 2004 (the "Second Notice," and together with the First Notice, the "Notices").

12. On April 14, 2021, the Debtor filed the Motion, seeking to quash any examination of the Non-Debtor Affiliates and to limit the examination of the Debtor.

13. The Debtor's counsel has confirmed that it does not represent the majority of the Non-Debtor Affiliates and has not responded to the Committee's request to provide counsel or other contact information for those entities.

14. As detailed below, the Debtor has produced certain documents and engaged in limited discussions with the Committee and its advisors.

| Date Produced | Bates Range | Notes |
|---|---|---|
| 4/9/2021 | GRIDDY_0000001 – GRIDDY_0000584 | ███ |
| 4/10/2021 | GRIDDY_0000585 – GRIDDY_0000890 | ███ |
| 4/13/2021 | GRIDDY_0000891 – GRIDDY_0000959 | ███ |
| 4/16/2021 | GRIDDY_0000960 – GRIDDY_0000986 | ███ |
| 4/19/2021 | GRIDDY_0000987 – GRIDDY_0005153 | ███ |
| 4/21/2021 | GRIDDY_0005154 – GRIDDY_0007257 | ███ |
| 4/22/2021 | GRIDDY_0007258 – GRIDDY_0007266 | ███ |
| 4/23/2021 | n/a | ███ |

Of the approximately 7,000 pages of documents produced, only a single document discusses the assets and operations of the Non-Debtor Affiliates, and only in a cursory manner.[3] Notably, despite the Committee's request, the Debtor has not produced documents that identify all of the former or current directors and officers of each Non-Debtor Affiliate.

15.     On April 20, 2021, Province met with the Debtor's management team to discuss a number of topics. Throughout the meeting, the Debtor's counsel repeatedly objected to any questions related to the Non-Debtor Affiliates. After further discussions on this issue, the Debtor finally offered to allow the Committee to have a discussion with the Debtor's CEO to discuss the Non-Debtor Affiliates, but the Debtor explicitly limited that conversation to only 30 minutes. This call was held on April 22, 2021. Significant questions relating to the Non-Debtor Affiliates remain unanswered.[4]

16.     On April 23, 2021, the Committee filed its Disclosure Statement Objection, in which the Committee raised many of these same issues in connection with the Debtor's requested approval of its Disclosure Statement. The Debtor's document production disputes raised in the Committee's Disclosure Statement Objection have not been resolved as of the date of filing of this Objection.

## OBJECTION

17.     Bankruptcy Rule 2004 provides that, upon the motion of any party in interest, the Court may authorize the examination of any entity, through both document requests and depositions, "that ha[s] knowledge of the debtor's 'acts, conduct, or property or to the liabilities

---

[3] The Debtor produced a large number of documents on April 23, 2021. Accordingly, the undersigned counsel's review of these documents remains ongoing.

[4] During the April 22, 2021 call, certain of the Debtor's objections in the Motion were resolved, including the Debtor's objections to Request Nos. 6, 10, and 14 of the First Notice. This Objection addresses only those objections that have not been resolved.

and financial condition of the debtor, or to any matter which may affect the administration of the estate….'" *In re Buccaneer Res., LLC*, No. 14-60041, 2015 WL 8527424, at *6 (Bankr. S.D. Tex. Dec. 10, 2015) (quoting Fed. R. Bankr. P. 2004(b)); *In re Correra*, 589 B.R. 76, 108 (Bankr. N.D. Tex. 2018).

18. The purpose of an examination under Rule 2004 is to assist a party in interest in "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Correra*, 589 B.R. at 109 (internal quotations omitted). Courts are generally "reluctant to allow escape from a Rule 2004 examination unless the party can show that the examination would be oppressive or burdensome." *Id.* at 108 (internal quotations omitted). "The scope of a Rule 2004 examination is unfettered and broad and is commonly recognized as more in the nature of a fishing expedition." *Id.* at 108-09 (internal quotations omitted). Indeed, "[d]iscovery under Rule 2004 is broader than that available under the Federal Rules of Civil Procedure" and "affords few of the procedural safeguards that an examination under Rule 26 of the Federal Rules of Civil Procedure does." *Id.* at 108-09.

19. The documents and information that the Committee seeks are necessary to allow the Committee to evaluate the Plan, including the broad releases provided to the Non-Debtor Affiliates, as well as potential claims for substantive consolidation—facets of the Plan that the Committee is duty-bound to investigate.

20. The party seeking Rule 2004 discovery has the burden to show good cause for the examination it seeks, and the decision to grant the requested relief lies within the sound discretion of the Bankruptcy Court. *Picard v. Marshall (In re Bernard L. Madoff Inv. Secs. LLC)*, Adv. Pro. No. 08–01789, 2014 WL 5486279, at *2 (Bankr. S.D.N.Y. Oct. 30, 2014); *see In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001). Generally, good cause is

6

shown if the Rule 2004 examination "is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.*, 318 B.R 263, 268 (Bankr. S.D.N.Y. 2004). "In evaluating a request to conduct a Rule 2004 examination, the Court must balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re SunEdison, Inc.*, 562 B.R. 249 (Bankr. S.D.N.Y. 2017); *see also In re Gawker Media LLC*, Case No. 16-11700 (SMB), 2017 WL 2804870 at *5 (Bankr. S.D.N.Y. June 28, 2017).

21. For the reasons set forth below, the information sought by the Committee is more than appropriate—indeed, it is necessary—and the Debtor's Motion should be denied.

I. **Discovery of Information Pertaining to the Non-Debtor Affiliates Is Appropriate.**

22. The Debtor objects to the Notices to the extent that they seek discovery pertaining to the Non-Debtor Affiliates, arguing that such discovery exceeds the scope of permissible discovery under Rule 2004. The Debtor's position has no merit. The Committee may conduct a Rule 2004 examination of anyone "having knowledge of the debtor's acts, conduct, liabilities, [or] assets." *In re Johns-Manville Corp.*, 42 B.R. 362, 364 (S.D.N.Y. 1984) ("the inquiry may cut a broad swath through the debtor's affairs, those associated with him, and those who might have had business dealings with him."); *see also In re Correra*, 589 B.R. at 108 ("Third parties are subject to examination pursuant to Rule 2004 if they have knowledge of the debtor's affairs.").

23. In order to evaluate the proposed releases under the Plan, the Committee must have access to information necessary to understand the scope and implications of the releases. The Plan contemplates releases in favor of:

> (a) the Debtor, (b) the Committee and its members, (c) the Prepetition Secured Lenders and the Collateral Agent, and (d) each of such parties' respective predecessors, successors, assigns, subsidiaries, affiliates, including the Non-Debtor Affiliates, owners, and each of their respective current and former officers, directors, employees, managers, members, principals, shareholders, agents,

7

advisors and professionals (including any attorneys, consultants, financial advisors, investment bankers and other professionals retained by such Persons) or other representatives, each in their capacities as such, together with their successors and assigns;

Plan, 11.

24. The Debtor may have claims against: (i) Macquarie, including avoidance, preference, fraudulent transfer, marshalling, and other contract, tort, or equitable claims; (ii) the Non-Debtor Affiliates, including substantive consolidation, claims related to intercompany transactions and agreements, and claims related to the Business Combination; and (iii) the current and former directors and officers for breach of fiduciary duties regarding their conduct in relation to Winter Storm Uri or the Business Combination.[5] The Committee has a fiduciary obligation to investigate these claims, but cannot fulfill that obligation without access to the information requested in the Notices. Accordingly, the Debtor's objection to the Notices to the extent that they seek discovery of information pertaining to the Non-Debtor Affiliates (and not the Debtor) should be overruled.

## II. The Debtor's Objection to Requests No. 3 and 4 of the Second Notice Are Inappropriate.

25. The Debtor objects to Request Nos. 3 and 4 of the Second Notice on multiple grounds, including the timeframe and scope of the requests, and the fact that the Requests call for the production of privileged documents.

26. *First*, the Debtor objects to the time frame of the Requests—January 1, 2021 to the Petition Date—on the grounds that Winter Storm Uri did not begin until on or around February 13, 2021. Motion, ¶ 9. As a preliminary matter, it is certainly possible that the Debtor was aware of, and exchanging communications concerning Winter Storm Uri in the days leading up to the

---

[5] The Committee reserves all rights to assert any other claim against the Released Parties and any other person. Nothing contained herein shall be deemed a waiver or limitation of such rights.

8

day the storm touched ground in Texas. Indeed, the Debtor claims to have warned its customers in advance of the storm that they would likely experience increased energy prices during the storm. In any event, if there are no responsive documents until February 13, 2021, then the Debtor will have nothing to produce. The Debtor should produce any responsive documents it has within such timeframe.

27. *Second*, the Debtor objects to the breadth of Request Nos. 3 and 4, arguing that they "call for nearly every document or communication created across a several-week time span." *Id.* Although it is doubtful that every document or communication the Debtor created in the relevant time period concerned Winter Storm Uri, even if that is true, the period is relatively short, as the Debtor acknowledges. Perhaps more importantly, it is the storm that caused the Debtor's ultimate demise. Nothing could be more important in this Chapter 11 Case than the events surrounding Winter Storm Uri. As discussed above, the Committee must investigate the releases under the Plan, including any potential claims against the Debtor's directors and officers. The only way for the Committee to conduct such investigation is to understand how the Debtor's directors and officers acted leading up to this critical period of time. Accordingly, the balancing of interests and hardships weighs in favor of the Committee, and the Debtor should produce documents responsive to Request Nos. 3 and 4. *See In re AOG Ent., Inc*, 558 B.R. 98, 109 (Bankr. S.D.N.Y. 2016) ("In evaluating a request to conduct a Rule 2004 examination, the Court must balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination.").

28. *Third*, the Debtor objects to Request Nos. 3 and 4 to the extent that they seek the production of documents protected by the attorney-client privilege and attorney work product doctrine. *Id.* Like any document production request under Rule 2004 (or the FRCP), the producing

9

party can withhold documents that are subject to the attorney client privilege or work product doctrine. This Chapter 11 Case is no different. If the Debtor believes that responsive documents should not be produced for these reasons, they should withhold production and provide the Committee with a privilege log.

29. For these reasons, the Debtor's objections to Request Nos. 3 and 4 of the Second Notice should be overruled.

## RESERVATION OF RIGHTS

30. The Committee reserves all rights to raise additional objections to the Motion. Nothing contained herein is intended to, or should be construed as, a waiver of such rights.

*[Remainder of Page Intentionally Left Blank]*

**CONCLUSION**

**WHEREFORE**, the Committee requests that the Court enter an order (i) denying the Motion; and (ii) granting such other and further relief as the Court may deem just and proper.

Dated: April 25, 2021

Respectfully submitted,

**MCDERMOTT WILL & EMERY LLP**

*/s/  Charles R. Gibbs*
Charles R. Gibbs
Texas State Bar No. 7846300
Shelby Perry (admitted *pro hac vice*)
2501 North Hardwood Street, Suite 1900
Dallas, TX 75201-1664
Telephone:  (214) 295-8000
Facsimile:  (972) 232-3098
Email:  crgibbs@mwe.com

- and -

Darren Azman (admitted *pro hac vice*)
Blaine Adams (admitted *pro hac vice*)
340 Madison Ave.
New York, NY 10173-1922
Telephone:  (212) 547-5615
Facsimile:  (212) 547-5444
Email  dazman@mwe.com

*Proposed Counsel to the Official
Committee of Unsecured Creditors*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 9013-1(g)(1), I certify that on April 22, 2021, I conferred with Debtor's counsel, John B. Lawrence, and the Debtor's CEO, Michael Fallquist, regarding the substance of the foregoing Objection. During such conference, certain of the Debtor's objections in the Motion were resolved, including the Debtor's objections to Request Nos. 6, 10, and 14 of the First Notice. The parties have been unable to resolve the remainder of the Debtor's objections.

## CERTIFICATE OF SERVICE

I certify that on April 25, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Charles R. Gibbs*
Charles R. Gibbs