# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| GRIDDY ENERGY LLC,[1] | Case No. 21-30923 (MI) |
| Debtor. | **Related to Docket No. 165** |

## DEBTOR AND NON-DEBTOR AFFILIATES' REPLY IN SUPPORT OF MOTION TO QUASH AND FOR A PROTECTIVE ORDER

Griddy Energy LLC, the debtor and debtor in possession in the above-captioned case (the "Debtor"), and Griddy Holdings LLC and Griddy Holdings VI LLC on behalf of the Non-Debtor Affiliates,[2] submit this reply (the "Reply") in support of the *Debtor and Non-Debtor Affiliates' Motion to Quash and for a Protective Order* [Dkt. 165] (the "Motion" or "Mot."). While the Debtor and the Non-Debtor Affiliates have been working in good faith with the Official Committee of Unsecured Creditors (the "Committee") to resolve the objections raised in the Motion without Court intervention, the Committee recently abruptly requested that the Debtor set this Motion for hearing on April 29, 2021, and filed its *Objection* [Dkt. 193] to the Motion ("Objection" or "Obj."). This is emblematic of the Committee's discovery strategy as a whole. Rather than work in an efficient manner to procure the information it needs, the Committee seeks

---

[1] The last four digits of the federal tax identification number of the Debtor are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

[2] The Rule 2004 Notices at issue define the Non-Debtor Affiliates to include: Griddy Holdings LLC, Beachside New Utility Holdings LLC, EDF Trading North America LLC, Elliot New Utility Holdings LLC, Grid Investments Inc., Griddy 6 Holdings LLC, Griddy VI Holdings LLC, Griddy VI Series A Holdings LLC, Griddy Pro LLC, Griddy Technologies LLC, Janson New Utility Holding LLC, Niab Holdings Pty Limited, and SRA Investments Pty Limited. By filing this Reply, the Non-Debtor Affiliates do not voluntarily appear before this Court nor do they consent to the jurisdiction of the bankruptcy court or other authority of the bankruptcy court that could be exercisable under 28 U.S.C. § 157. This Reply should not be construed as "consent" under 28 U.S.C. § 157(c)(2). Each Non-Debtor affiliate explicitly reserves any challenge to the jurisdiction of this Court, including any challenge to the exercise of personal jurisdiction in connection with any matter in this Court.

disarray to further its strategy of creating a litigation target out of whole cloth. That is not in the best interests of the estate (or, in the Debtor's view, of the Committee), and should not be permitted to continue. While the Debtor and the Non-Debtor Affiliates believe that the parties' and the Court's resources would be more productively expended were the parties to continue their discussions, if the Committee seeks a ruling, it is clear the Motion should be granted.

## I. The Debtor's and Non-Debtor Affiliates' Objections Are Appropriate.

1. It is not true when the Committee states that "[t]he Debtor objects to the Notices to the extent that they seek discovery pertaining to the Non-Debtor Affiliates." Obj. ¶ 22. As is made clear in the Motion, and as the Debtor has discussed multiple times with the Committee, the Debtor has agreed to produce all responsive information "relating to *both* the Debtor and Non-Debtor Affiliates." Mot. ¶ 4. In other words, any responsive document in the Debtor's possession that relates to both the Debtor and any of the Non-Debtor Affiliates will be—and at this point, has been—produced.

2. The Committee's Objection itself shows the unreasonableness of its position. While at the time the Motion was filed the Committee had not yet identified any basis whatsoever for discovery related to the Non-Debtor Affiliates, the Committee now explains that through its requests related to the Non-Debtor Affiliates it is seeking "information necessary to understand the scope and implications of the releases." Obj. ¶ 23. And in particular, that in assessing those releases the Committee needs to investigate whether "[t]he Debtor may have claims against . . . the Non-Debtor Affiliates, including substantive consolidation, claims related to intercompany transactions and agreements, and claims related to the Business Combination." *Id.* ¶ 24.

3. The Committee—which acknowledges that it "has the burden to show good cause

for the examination it seeks," *id.* ¶ 20 (collecting cases)—provides no basis to believe that the broad discovery it seeks (including from several separate Non-Debtor Affiliates) is necessary to its stated task. If the Debtor has any claim, against any party, one would naturally expect the Debtor to have evidence of the existence of that claim within its own files. If corporate separateness has been disregarded to the extent that a viable substantive consolidation claim existed, evidence of that disregard would necessarily be found in the Debtor's records. Likewise, if any viable claim exists related to any intercompany transaction or agreement, evidence of the existence of that claim would also be found within the Debtor's records. And if any viable "claims related to the Business Combination" (the Committee does not even attempt to describe what those claims might be) exist, evidence of the existence of such claims would be found within the Debtor's records.

4. The Debtor has been producing documents responsive to the Notices since the day after receiving the First Notice, and it completed that production several days ago. If after its review of the Debtor's own documents the Committee is not able to do any more than provide a rote list of the same causes of action that every committee explores in every bankruptcy, there is no basis to burden the Debtor, its rapidly diminishing estate, or the Non-Debtor Affiliates with additional discovery beyond what has already been provided. Rule 2004 discovery "may relate *only* to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." FED. R. BANKR. P. 2004(b) (emphasis added). And "[i]t is clear that Rule 2004 may not be used as a device to launch a wholesale investigation of a non-debtor's business affairs." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985); *see* Mot. ¶¶ 2–4.

## II. The Debtor Has Worked in Earnest to Provide the Committee with the Information it Requests.

5. The Committee is manufacturing a discovery dispute to support a scorched-earth litigation strategy inappropriate for this matter. The Debtor has worked cooperatively and in good faith to provide the Committee with the information it needs to do its job. The Debtor and Non-Debtor Affiliates filed their Motion in order to preserve their rights; under Local Rule 2004-1(f), the Debtor was required to file a motion to quash within seven days of being served with the Notices if it objected to any part of the requests therein. In the very introduction to the Motion, the Debtor and Non-Debtor Affiliates made clear the Motion was being filed solely for that purpose, and that they would "continue to work with the Committee to resolve these issues by agreement." Mot. at 2. The same was communicated to the Committee multiple times.

6. The Debtor and Non-Debtor Affiliates meant what they said. In conferring on these issues on April 16, 2021, the Debtor made clear to the Committee that it would provide all responsive information in the Debtor's possession that relates to both the Debtor and any Non-Debtor Affiliate, as laid out above. Counsel for the Debtor further told counsel for the Committee that, if after reviewing that information the Committee still believed it required additional information to do meet its duties and do its job, the Debtor and Non-Debtor Affiliates would consider such requests.

7. The Debtor continued to produce documents responsive to the Notices as limited by its objections, and completed that production days ago. This is more fully described in the concurrently-filed *Debtor's Omnibus Reply in Support of (i) Conditionally Approving the Adequacy of the Disclosure Statement; (ii) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Plan; (iii) Approving the Form of Various Ballots and Notices in Connection Therewith; and (iv) Approving the Scheduling of Certain Dates in*

*Connection with Plan Confirmation.*

8. True to its word, the Debtor did not limit itself to the completion of that production. When the Committee requested that the Debtor provide a representative to take part in a 30-minute discussion concerning who the Non-Debtor Affiliates are, and how they relate to the Debtor, the Debtor agreed and provided CEO Michael Fallquist to do so. It is not true that "the Debtor explicitly limited that conversation to only 30 minutes." Obj. ¶ 15. It was the Committee that specifically requested a 30-minute conversation on this topic during the parties' April 16 meet-and-confer. Indeed, the Committee's own evidence reflects that, in accepting the request, the Debtor stated that it "will agree to *the Committee's request for a 30-minute discussion* later this week with a representative of the Debtor concerning who the Non-Debtor Affiliates are and how they relate to the Debtor." Azman Decl., Ex. F [Dkt. 197-6] (emphasis added). At no point did the Committee respond and indicate that it now wanted additional time beyond what it had initially requested. Nor did the Debtor limit the length of that discussion on the day it occurred, April 22. Mr. Fallquist answered every one of the questions posed to him by the Committee's counsel and its financial advisor (no objections were lodged to any question), and the discussion was terminated by the Committee, with both its counsel and its financial advisor stating that they had no additional questions at that time.

9. Hours after the Committee's April 22 call with Mr. Fallquist, the Debtor's counsel proactively reached out to the Committee's counsel to reiterate what the parties had discussed in the past: while the Committee's broad Rule 2004 Notices are legally improper, the Debtor is willing to entertain requests for additional information from the Committee if the Committee believes it needs that information to do its job. Counsel for the Debtor specifically asked counsel for the Committee to inform the Debtor of what additional questions regarding the Non-Debtor

Affiliates remained following the call with Mr. Fallquist. The parties on that call also agreed to file a stipulation abating the Motion, informing the Court that the parties had been working cooperatively and in good faith to resolve the issues raised in the Motion and believed they would be able to resolve those issues without Court intervention.

10. Thirty minutes later, as counsel for the Debtor requested, the Committee sent the an email with additional questions: "We have two initial follow-up questions from our call earlier today . . . ." Ex. C (Apr. 22, 2021 Azman Email) at 1. The Debtor provided the information responsive to one of those questions later that night, and provided the information responsive to the other question the next morning, Friday April 23, 2021.

11. Since receiving those "two initial follow-up questions" on April 22, the Debtor has received *no* further requests for information from the Committee, regarding the Non-Debtor Affiliates or otherwise.

12. As the parties had agreed, on April 23 the Debtor also sent the Committee a draft of a stipulation abating this Motion and informing the Court that the parties had been working cooperatively and in good faith to resolve the issues raised in the Motion and believed they would be able to resolve those issues without Court intervention. Ex. D (Apr. 23-26 Email Chain) at 3-4. It was the Debtor's expectation that this stipulation would be filed.

13. But later that evening, after the Debtor would not agree to a two-week adjournment of the hearing on the conditional approval of the Disclosure Statement because it lacks adequate resources, the Committee informed the Debtor that it had changed its mind and now wanted the Motion heard at the April 29 hearing. The Debtor expressed its disappointment with this decision, having believed that the parties were working in good faith to attempt to resolve any remaining dispute without Court intervention. *Id*. at 3.

14. The Debtor further expressed its fear that this new path would only serve to harm what should be the mutual goal of both the Debtor and the Committee: moving forward both swiftly and efficiently. *Id.* Events since then have proven this fear well-founded. The Objection filed the evening of April 25 displays a desire by the Committee to pick a fight, not solve a problem. Whereas the Committee only had "two initial follow-up questions" regarding the Non-Debtor Affiliates on April 22, it complains in its Objection of additional information that it claims it needs and is lacking regarding the Non-Debtor Affiliates. Obj. ¶¶ 13, 14. Because the Debtor wants to resolve these discovery issues amicably if possible, after receiving the Objection the Debtor reached out to the Committee offering to provide the requested information. Ex. D (Apr. 23-26 Email Chain) at 1-2. The Debtor understands that these specific additional requests are now resolved.

15. Similarly, the Objection complains of the Debtor's objections to Request Nos. 3 and 4 from the Second Notice, which the Committee had never before mentioned in any of the parties' discussions. Obj. ¶¶ 25–29. Nevertheless, the Debtor also reached out to the Committee to attempt to resolve this disagreement. Ex. D (Apr. 23-26 Email Chain) at 2. Request Nos. 3 and 4 are overbroad as they purport to seek all documents and communications "concerning Winter Storm Uri," which could arguably include nearly every document and communication of the Debtor between the February 13, 2021 start of the storm and the Petition Date more than four weeks later. But the Debtor is willing to consider and work toward a reasonable middle ground that does not unnecessarily deplete estate assets. Based on the Committee's response, the Debtor expects to be able to resolve this issue amicably as well. *Id*. at 1-2.

## CONCLUSION

16. For the foregoing reasons, the Debtor and the Non-Debtor Affiliates respectfully

request that the Motion be granted.

Dated: April 28, 2021
      Dallas, Texas

                **BAKER BOTTS L.L.P.**

                By: */s/ John B. Lawrence*
                John B. Lawrence
                Texas Bar No. 24055825
                *john.lawrence@bakerbotts.com*
                Jonathan Rubenstein
                Texas Bar No. 24037403
                *jonathan.rubenstein@bakerbotts.com*
                2001 Ross Avenue, Suite 900
                Dallas, Texas 75201
                Telephone: (214) 953-6500
                Facsimile: (214) 953-6503

                and

                Robin Spigel (admitted *pro hac vice*)
                *robin.spigel@bakerbotts.com*
                Chris Newcomb (admitted *pro hac vice*)
                *chris.newcomb@bakerbotts.com*
                30 Rockefeller Plaza
                New York, New York 10012-4498
                Telephone: (212) 408-2500
                Facsimile: (212) 259-2501

                *Proposed Counsel To The Debtor And Debtor In Possession, and Counsel to Griddy Holdings LLC and Griddy VI Holdings LLC*

## CERTIFICATE OF SERVICE

      I certify that on April 28, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                */s/ John B. Lawrence*
                John B. Lawrence