**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| *In re:* | ) | Chapter 11 |
|  | ) |  |
| GRIDDY ENERGY LLC,[1] | ) | Case No. 21-30923 (MI) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

**DECLARATION OF ANITA-MARIE HILL LAURIE OF SITRICK AND COMPANY PURSUANT TO ORDER AUTHORIZING RETENTION AND COMPENSATION OF CERTAIN PROFESSIONALS USED IN THE ORDINARY COURSE OF BUSINESS**

I, Anita-Marie Hill Laurie, declare under penalty of perjury:

1.      I am a member of the Firm of Sitrick And Company, a unit of Sitrick Group, LLC, located at 11999 San Vicente Blvd., Penthouse, Los Angeles CA 90049(the "Company").

2.      Griddy Energy, LLC (the "Debtor") has requested that the Company provide strategic communications services to the Debtor, namely handling the press, internal and external communications, and the Company has consented to provide such services,  solely for the period from March 15, 2021 through April 19, 2021. The compensation sought by Sitrick will not exceed $27,500 inclusive of its retainer.

3.      The Company may have performed services in the past, may currently perform services and may perform services in the future, in matters unrelated to the chapter 11 case, for persons that are parties in interest in the Debtor's chapter 11 case.  The Company does not perform services for any such person in connection with this chapter 11 case, or have any relationship with

---

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

any such person, their attorneys or accountants that would be adverse to the Debtor or its estate with respect to the matter on which the Company is proposed to be employed.

4.      As part of its customary practice, the Company is retained in cases, proceedings and transactions involving many different parties, some of whom may represent or be employed by the Debtor, claimants and parties in interest in this chapter 11 case.

5.      Neither I nor any principal, partner, director, officer, etc., of or professional employed by, the Company has agreed to share or will share any portion of the compensation to be received from the Debtor with any other person other than the principal and regular employees of the Company.

6.      Neither I nor any principal, partner, director, officer, etc., of or professional employed by, the Company, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtor or its estate with respect to the matter(s) upon which this Company is to be employed.

7.      The Debtor does not owe the Company any amounts for prepetition services. During the 90-days preceding the Petition Date, the Company was paid $66,958.00. The Company is currently holding a prepetition retainer of $16,024.49.  The Company shall apply any remaining amounts of its prepetition retainer as a credit toward its unpaid fees and expenses.

8.      I further understand that this Declaration will not suffice as the Company's proof of claim.

9.      As of March 15, 2021, which was the date on which the Debtor commenced this chapter 11 case, the Company was party to an agreement for indemnification with the Debtor. A copy of such agreement is attached as Exhibit 1 to this Declaration.

10.     Such agreement for indemnification (the "OCP Agreement") is subject to the following modifications, applicable during the pendency of the Debtor's chapter 11 case:

    a.     The Ordinary Course Professional shall not be entitled to indemnification, contribution, or reimbursement pursuant to the OCP Agreement for services other than the services provided under the OCP Agreement, unless such services and the indemnification, contribution or reimbursement are approved by the Court.

    b.     Notwithstanding anything to the contrary in the OCP Agreement, the Debtor shall have no obligation to indemnify the Ordinary Course Professional, or provide contribution or reimbursement to the Ordinary Course Professional, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from the Ordinary Course Professional's gross negligence, willful misconduct, self-dealing, bad faith, breach of fiduciary duty (if any) or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of the Ordinary Course Professional's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible under applicable law; (iii) of any type for which the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to *In re Thermadyne Holdings Corp.*, 283 B.R. 749, 756 (B.A.P. 8th Cir. 2002); or (iv) settled prior to a judicial determination under (i) or (ii), but determined by the Court, after notice and a hearing, to be a claim or expense for which the Ordinary Course Professional should not receive indemnity, contribution, or reimbursement under the terms of the OCP Agreement as modified by the Court.

    c.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal) or (ii) the entry of an order closing this chapter 11 case, the Ordinary Course Professional believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the OCP Agreement (as modified by this Order), including the advancement of defense costs, the Ordinary Course Professional must file an application therefor in this Court, and the Debtor may not pay any such amounts to the Ordinary Course Professional before the entry of an order by the Court approving the payment.  All parties in interest shall retain the right to object to any demand by the Ordinary Course Professional for indemnification, contribution, or reimbursement. In the event that the Ordinary Course Professional seeks reimbursement from the Debtor for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the OCP Agreement, the invoices and supporting time records for the attorneys' fees and expenses shall be included in the Ordinary Course Professional's own

applications, both interim and final, but determined by the Court after notice and a hearing.

11.     The Company is conducting further inquiries regarding its retention by any creditors of the Debtor, and upon conclusion of that inquiry, or at any time during the period of its employment, if the Company should discover any facts bearing on the matters described herein, the Company will supplement the information contained in this Declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 29, 2021

_____
**Anita-Marie Hill Laurie**

**<u>Exhibit 1</u>**

# SITRICK AND COMPANY

a unit of Sitrick Group, LLC

February 24, 2021

Michael Fallquist
Chief Executive Officer
Griddy Energy
30 Post Road E, 2nd Floor
Westport, CT 06880

Dear Michael:

This letter will confirm our agreement that:

1.     Retention of Sitrick And Company.

This letter, when accepted on behalf of Griddy Energy ("Company"), effective as of February 24, 2021, as provided below, will constitute the agreement with respect to the engagement of Sitrick And Company, a unit of Sitrick Group, LLC ("Sitrick") as corporate communications consultants in connection with a potential restructuring of Company (hereafter referred to as "Agreement").

2.     Retainer and Fees for Services Rendered.

Upon signing this Agreement, Company shall pay Sitrick a minimum, non-refundable retainer of sixty thousand dollars ($60,000.00). Sitrick's fees will be applied against this retainer and will be determined in accordance with Sitrick's standard hourly billing rates which range from $195 to $1,250, depending on the professional performing the services. Travel time is charged on a portal-to-portal basis for any travel for meetings held outside of Sitrick's offices. Hourly rates may be adjusted at the end of each calendar year. If one of our professionals performs multiple tasks for Company during the course of the day, our statement will describe those tasks in a continuous narrative form accompanied by single time entry for all tasks. Time is billed by Sitrick in increments of one-tenth of an hour. When the retainer has been fully applied against time charges, additional time charges will be billed as incurred.

3.     Reimbursement of Costs and Expenses.

Company shall reimburse Sitrick for all reasonable and necessary out-of-pocket expenses incurred by Sitrick in the course of Sitrick's providing services to Company, including, but not limited to, transportation, lodging, food, production costs, long distance telephone, copying, postage messengers and air courier. With respect to travel costs, Company will reimburse Sitrick for actual costs incurred. Reimbursable costs are not applied against the retainer and will be billed monthly by Sitrick. Company shall pay Sitrick a refundable expense advance of five thousand dollars ($5,000.00). Reasonable and necessary out-of-pocket expenses incurred by Sitrick will be applied against this advance. When the expense advance has been fully applied against reasonable and necessary out-of-pocket expenses, additional costs and expenses will be billed as incurred.

11999 San Vicente Boulevard  /  Penthouse  /  Los Angeles, CA 90049  /  office 310 788 2850  /  fax 310 788 2855

v/12.20.2019     LOS ANGELES    NEW YORK    SAN FRANCISCO    BOSTON    WASHINGTON D.C.

4. Submission of Monthly Billing Statements.

Within thirty (30) days after the end of each calendar month, or as soon as practicable thereafter, Sitrick will provide Company with a statement setting forth the fees and expenses incurred by Sitrick during the prior month. Fees and out-of-pocket expenses are due and payable within twenty (20) days after date of invoice.

5. Termination of Engagement.

Sitrick's engagement hereunder may be terminated by either party hereto by written notice. All provisions of this Agreement relating to the payment of fees, time charges, costs and expenses and indemnification will survive conclusion of the engagement or any termination of the engagement by either party.

6. Indemnification.

a. Company will indemnify and hold harmless Sitrick and its members, shareholders, parent company, affiliates, officers, directors, employees and agents (collectively, the "Indemnified Parties", and each, individually, an "Indemnified Party") from and against any and all losses, claims, damages, liabilities, costs and expenses (including for Indemnified Person's own negligence, passive or active, and including, but not limited to, reasonable attorney's fees) which Sitrick or any Indemnified Party may be subject to or incur at any time (notwithstanding the termination or conclusion of this engagement) in connection with the services rendered by Sitrick to Company, including, but not limited to, those arising from Sitrick's or any Indemnified Party's reliance on information, representations, reports or data furnished to Sitrick by Company and those arising from any need to produce documents or give testimony at any time arising out of or in relation to the services rendered by Sitrick to Company. This paragraph shall not apply to any such losses, claims, damages, liabilities, costs or expenses of Sitrick or any Indemnified Party that are judicially and finally determined to have resulted from Sitrick's or such other Indemnified Party's gross negligence or willful misconduct.

b. In the event that (i) Company files a voluntary petition for relief under Chapter 7 or Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"), or (ii) Company has an involuntary petition under Chapter 7 or Chapter 11 of the Bankruptcy Code filed against it, the following provisions relating to indemnification shall also apply:

Any request by Sitrick for indemnification pursuant to paragraph 6(a) of this Agreement shall be subject to prior approval of the Court in accordance with the requirements under §§ 330 and 331 of the Bankruptcy Code.

All requests by Sitrick for payment of indemnity pursuant to this Agreement shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall Sitrick nor any Indemnified Party be entitled to be indemnified for losses, claims, damages, liabilities, costs or expenses that are judicially determined to have resulted from

2

Sitrick's or such other Indemnified Party's bad faith, self-dealing, breach of fiduciary duty, gross negligence, or reckless or willful misconduct.

In no event shall Sitrick be indemnified if Company, the Debtor, the estate, or the official committee of unsecured creditors asserts a claim for, and a court determines by final order that such claim arose out of, Sitrick's own bad faith, self-dealing, breach of fiduciary duty, gross negligence, or reckless or willful misconduct arising from the foregoing.

In the event that Sitrick seeks reimbursement for attorney's fees from Company pursuant to this Agreement, the invoices and supporting time records from such attorneys shall be included in Sitrick's own applications (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of §§ 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under § 327 of the Bankruptcy Code.

7.    Confidentiality.

In the performance of this Agreement, Sitrick may receive, or otherwise have access to, confidential, proprietary and/or other nonpublic information belonging to Company, some or all of which may be specifically designated by Company as confidential ("Confidential Information").

Sitrick agrees to maintain in strictest confidence all Confidential Information and to take reasonable measures to maintain the confidentiality of such information. Sitrick agrees, with respect to such Confidential Information, to use the same methods and degree of care to prevent disclosure of such Confidential Information as it uses to prevent disclosure of its own proprietary and Confidential Information. Sitrick further agrees not to use, or disclose to any third party, any Confidential Information for any purpose without the prior consent of Company or unless compelled by court order or other legal or governmental process requiring such disclosure.  Notwithstanding the foregoing, confidentiality obligations shall not apply to any information which (i) enters (or has entered) the public domain through no fault of Sitrick; (ii) which was known to Sitrick prior to receipt from Company; (iii) is or becomes available to Sitrick on a non-confidential basis from a source other than Company (unless Sitrick is aware of a duty of confidentiality on the part of the source owed to Company); (iv) which is independently developed or acquired by Sitrick without recourse to Confidential Information; or (v) which is permitted to be disseminated or otherwise disclosed pursuant to the next paragraph of this Agreement.

It is expressly understood between the parties that a key function Sitrick will be providing in connection with its public relations services will be the dissemination of information and materials as a public relations firm, including the disclosure and dissemination of certain information and materials received from Company or its affiliated representatives, agents, and/or entities or as to which Company has consented to its dissemination and disclosure or which prior to such disclosure and dissemination, has not been specifically identified and designated by Company as Confidential Information not to be disclosed.  Notwithstanding the foregoing or anything in this agreement to the contrary, it shall be the responsibility of Company to specifically identify and designate to Sitrick the information provided to Sitrick

3

which is not to be disclosed because it is Confidential Information, and Company acknowledges and consents to Sitrick disclosing to the media or others that Sitrick is acting in its capacity as a public relations firm for the benefit of Company.

In the event that Sitrick is requested or required to produce (pursuant to any legal or governmental process or proceeding): (i) any Confidential Information or (ii) any documents generated by Sitrick in connection with this engagement by subpoena, request for information or documents, production of records consistent with its retention as Company's expert, or other similar legal process ("Request"), Sitrick will provide Company prompt written notice of the Request so that Company may seek a protective order or otherwise seek to limit or protect such Confidential Information and/or documents from disclosure.

8. Conflicts.

Company acknowledges that as a firm with a diversified practice Sitrick is often called upon to represent clients in many fields and with different interests. It is expressly understood between the parties that although Sitrick will not represent another client on the same subject matter of this particular engagement where such other client is adverse to Company on the particular subject matter of this engagement, nothing contained herein in any way prohibits or restricts Sitrick from representing a client now or in the future whose interests conflict with or are adverse to Company. In such event, Sitrick would of course maintain the confidentiality of information provided by Company.

9. Hiring of Employee of Other Party.

Each of the parties agrees not to solicit for employment, or employ any employee of the other during the pending of Sitrick's engagement and for a period of two years thereafter. If either party hires an employee of the other during the engagement or within the two year period following the conclusion or termination of the engagement, the hiring party agrees to pay the employer of the employee(s) so hired, as liquidated damages, a fee equal to one hundred percent of the annualized total gross billings generated by each such hired employee for the twelve-month period prior to such employee's departure, or the annual gross salary of the employee at the time of departure, whichever is higher in dollar amount. All terms contained in this paragraph will survive for a period of two years following the date of any termination or conclusion of this engagement.

10. Arbitration.

Sitrick and Client agree that in the event of any dispute or claim arising out of or relating to this Agreement, our relationship, Sitrick's charges, or Sitrick's services, such dispute or claim shall be resolved by final and binding arbitration before a single neutral arbitrator in Los Angeles County, under the auspices and rules of Judicial Arbitration and Mediation Services ("JAMS") using JAMS Streamlined Arbitration Rules and Procedures effective July 1, 2014 or successor JAMS Rules ("JAMS Rules"). The terms of this Agreement control with regard to arbitration, and as such, any JAMS Rules which contradict this Agreement or could be construed as contrary to this Agreement shall have no force or effect on the parties hereto, and JAMS and any arbitrator appointed by JAMS are prohibited from following or enforcing said JAMS Rules. Sitrick and Client shall each timely pay one-half of all JAMS fees, deposits and expenses as may be requested by JAMS, and said fees, deposits and

4

expenses must be paid to JAMS no later than 30 days after receipt of request from JAMS for such payment. Time is of the essence. In the event a party fails to timely make a payment or deposit requested by JAMS within 30 days of such request from JAMS, the party shall be in default and shall be prohibited from offering evidence at an Arbitration Hearing in support of any claim or defense. In the event of such default, the arbitrator shall take evidence from the non-defaulting party by one or more of the following methods: telephonically, by declaration, affidavit or written submission. The non-defaulting party shall be entitled to an in-person Arbitration Hearing at its request. In the event of default, the arbitrator shall issue an award within 21 days of taking evidence as aforesaid. By agreeing to arbitrate, Sitrick and Client each waives any right to a court or jury trial. Judgment upon any arbitration award may be entered in the Superior Court for Los Angeles County, California, which the parties agree has, and hereby consent to, jurisdiction over all such matters. Any party may serve another party to this Agreement with a demand for arbitration and with any and all legal papers and filings in any legal proceedings via email or by Federal Express next business day delivery. Each of the parties agree to such service via either email or Federal Express and expressly waives personal service and any other method of service required by any applicable law, including but not limited to any foreign law, or by JAMS. This Agreement shall be interpreted and enforced in accordance with the substantive laws of the State of California applicable to contracts made and to be performed therein. The prevailing party in any arbitration or litigation shall recover reasonable attorneys' fees and all costs and expenses of any sort, including, but not limited to, all JAMS fees and expenses.

In the event that Company is the subject of a proceeding under Chapter 7 or Chapter 11 of the Bankruptcy Code, the United States Bankruptcy Court for the district in which such proceeding is pending shall have jurisdiction over this Agreement and any controversies, claims or disputes hereunder to the extent that such Bankruptcy Court has retained jurisdiction over such Chapter 7 or Chapter 11 proceeding.

11.   Interest.

Any sums due under this Agreement that are not paid to Sitrick within thirty (30) days of date of invoice shall bear interest at the rate of ten percent (10%) per annum.

12.   Applicable Law.

This Agreement shall be interpreted and enforced in accordance with the substantive laws of the State of California applicable to contracts made and to be performed therein.

13.   Interpretive Provisions.

The paragraph headings of this Agreement are for convenience of reference only and shall not affect the interpretation of this Agreement.

If any provision of this Agreement is held to be invalid or unenforceable, such invalidity or unenforceability shall not invalidate this Agreement as a whole, but this Agreement shall be construed as though it did not contain the particular provision held to be invalid or unenforceable and the rights and obligations of the parties shall be construed and enforced only to such extent as shall be permitted by applicable law.

5

14.     This Agreement may be executed in one or more counterparts, each of which shall be deemed to be a duplicate original, but all of which, taken together, shall be deemed to constitute a single instrument. The parties agree that a facsimile or e-mailed PDF of an executed counterpart of this Agreement shall be deemed to constitute due and sufficient delivery of a duplicate original that may be used for all the same purposes as an original. The parties agree that this Agreement may be electronically signed and that such signatures shall be deemed the same as original handwritten signatures for all purposes, including the validity, enforceability, and admissibility of this Agreement.

Please countersign and return the enclosed copy, whereupon this Agreement will constitute an agreement between Company and Sitrick.

We are pleased to have the opportunity to work with you, and you have the assurance of our very best efforts.

Very truly yours,

Sitrick Group, LLC

By:

Michael S. Sitrick
Chairman and Chief Executive Officer

Agreed:  Griddy Energy

By:

Michael Fallquist
Chief Executive Officer

6

v/12.20.2019

Michael Fallquist
Chief Executive Officer
Griddy Energy
30 Post Road E, 2nd Floor
Westport, CT 06880

## INVOICE

Non-Refundable Retainer for the period beginning:

February 24, 2021 .............................................................$60,000.00

Refundable Expense Advance ...........................................$5,000.00

TOTAL DUE ..................................................................$65,000.00

Please wire transfer funds to:



or

Please make check payable to:

Sitrick Group, LLC
11999 San Vicente Blvd., Penthouse
Los Angeles, CA 90049
(310) 788-2850
Fed ID No.

7