1              IN THE UNITED STATES BANKRUPTCY COURT

2              FOR THE SOUTHERN DISTRICT OF TEXAS

3                       HOUSTON DIVISION

4    IN RE:                    §      CASE NO. 21-30923-11
                               §      HOUSTON, TEXAS
5    GRIDDY ENERGY, LLC,       §      THURSDAY,
                               §      MAY 20, 2021
6              DEBTOR.         §      9:59 A.M. TO 10:34 A.M.

7                  STATUS CONFERENCE (VIA ZOOM)

8
              BEFORE THE HONORABLE MARVIN ISGUR
9               UNITED STATES BANKRUPTCY JUDGE

10

11      APPEARANCES:                   (SEE NEXT PAGE)

12

13

14      (Recorded via CourtSpeak; No log notes)

15

16

17

18

19

20
                  TRANSCRIPTION SERVICE BY:
21
              JUDICIAL TRANSCRIBERS OF TEXAS, LLC
22                935 Eldridge Road, #144
                    Sugar Land, TX 77478
23                     281-277-5325
                 www.judicialtranscribers.com
24
      Proceedings recorded by electronic sound recording;
25        transcript produced by transcription service.

1                          APPEARANCES (VIA ZOOM):

2

  FOR THE DEBTOR:                  BAKER BOTTS, LLP
3                                  Robin Spigel, Esq.
                                   30 Rockefeller Plaza
4                                  New York, New York  10112
                                   212-408-2545
5

6  FOR OFFICIAL COMMITTEE
   OF UNSECURED CREDITORS:         MCDERMOTT WILL & EMERY, LLP
7                                  Charles R. Gibbs, Esq.
                                   2501 N Harwood Street
8                                  Suite 1900
                                   Dallas, Texas  75201
9                                  14-295-8063

10

   FOR NON-DEBTOR AFFILIATES:      AKIN GUMP STRAUSS HAUER &
11                                 FELD, LLP
                                   Marty L. Brimmage, Esq.
12                                 2300 N Field Street
                                   Suite 1800
13                                 Dallas, Texas  75201
                                   214-969-2885
14

15 FOR KAREN PRESCOTT, ET AL:      FOX ROTHSCHILD, LLP
                                   Trey A. Monsour, Esq.
16                                 2843 Rusk Street
                                   Houston, Texas  77003
17                                 713-927-7469

18

19

20 (Please also see Electronic Appearances.)

21

22

23

24

25

1           HOUSTON, TEXAS; THURSDAY, MAY 20, 2021; 9:59 A.M.

2           THE COURT:  All right.  Good morning.  We're here

3  in the Griddy Energy case.  It's 21-30923.

4           Electronic appearances have already been made.

5  If you had not yet made your electronic appearance, you can

6  still do so.  Just do it by end of the morning if you would.

7           Why don't we start with just a status report from

8  Ms. Spigel on where we are and where she's hoping to go

9  today and then we'll hear from others about similar issues,

10 then we'll move into the balance of the Agenda?

11          Ms. Spigel, good morning.

12          MS. SPIGEL:  (No audible response).

13          THE COURT:  Ms. Spigel, good morning.

14          MS. SPIGEL:  Good morning, Judge Isgur.  Thank

15 you for your time today, we appreciate it.

16          As Your Honor knows, we have three matters on the

17 Agenda today, one of which I'm going to ask the Court to

18 adjourn.  So I want to report several good developments in

19 the case since the last time we've been here.

20          We now have agreements in principle with the

21 Attorney General's Office, as well as a global agreement

22 with the Creditors Committee, Macquarie and the Debtors'

23 non-Debtor affiliates on settlements for the case.

24          With respect to the Attorney General's Office, we

25 have negotiated a settlement in connection with the

1  prepetition action by the Attorney General's Office against

2  the Debtor and its parent company, as well as the civil

3  investigation (indiscernible) to the company after the

4  winter storm event in February.  I'm pleased to report

5  parties have an agreement in principle and (indiscernible)

6  to include in the Disclosure Statement and we anticipate

7  entering into a settlement agreement and seeking approval

8  thereof pursuant to Rule 9019 in the near future.

9  Otherwise, Your Honor, with respect to the settlement,

10  there's no admission of wrongdoing or liability by either

11  the Debtor or the parent company.

12         And if it works for Your Honor, we're still in

13  negotiating to the settlement, so one of the things I'm

14  going to ask Your Honor today is to adjourn the Disclosure

15  Statement Hearing till tomorrow at -- I understand Your

16  Honor may have time at 2:30 Central and at that time, we

17  would go over hopefully more there.  We'll go over the terms

18  of the Attorney General's settlement.

19         Also, we have negotiated a global settlement with

20  the Creditors Committee and Macquarie, which is the Debtor's

21  prepetition secured lender, and the Debtor's non-Debtor

22  affiliates, which we reached late last night, and we're in

23  the process of documenting that settlement as well, and the

24  Plan and the Disclosure Statement.

25         Given the limited resources of the Estate, we do

1  not plan to enter into any kind of tort agreement or similar

2  agreement.  We hope to get the Plan and the Disclosure

3  Statement revised and then put on the Record at the hearing

4  any types of negotiating concerns between the parties.

5          And the third piece of this is that we're working

6  on a settlement with PATC, as well.  That's separate and

7  apart from these other pieces, but we would hope to

8  injunctive settlement with PATC and then that wouldn't

9  require a Plan or Disclosure Statement update, but we would

10 enter into a settlement the (indiscernible) negotiated and

11 then file it with the Court with a 9019 motion.  So we're

12 thinking we still have a way to go PATC at this point, but

13 we are hopeful that we'll reach a settlement.

14          So those are all the developments since the last

15 time we were here and we've made significant progress with

16 all the parties in the case, which is why we think it makes

17 sense to adjourn the hearing till tomorrow in an effort to

18 get all these different pieces together and revise the

19 documents.

20          THE COURT:  Ms. Spigel, that certainly is

21 something I'm available to do.  I have maybe a slight

22 alternative suggestion for you.  I know that when you first

23 checked with Ms. Do, she told you you could not get a

24 hearing on Monday.  I'm inclined to think that if you can

25 file your redrafted Disclosure Statement and Plan by 2:30

1 tomorrow, I'll then give you an 8:00 a.m. hearing on Monday

2 and that way people have a chance to review it and you won't

3 lost any actual time.  And I'll just change the rest of my

4 schedule and fit you in at 8:00 a.m. on Monday.  If that

5 doesn't work better for you, that's fine.  I mean, I can do

6 it tomorrow at 2:30, but I have a feeling that people are

7 going to want to read it a little more carefully than during

8 the middle of the hearing.

9          Would that be better?

10          MS. SPIGEL:  Probably, Your Honor.

11          Is it possible to hold the 2:30 hearing and see

12 if we can get something done and filed tonight?  And if we

13 can't, then can we get to you Monday at 8:00?

14          THE COURT:  Why don't we do this?  I mean, if

15 that hearing is important to you, if you can get your Plan

16 and Disclosure Statement on file by 9:00 o'clock in the

17 morning, we'll hold a 2:30 hearing.  And if you can't, the

18 hearing will be Monday at 8:00.

19          Does that work?

20          MS. SPIGEL:  Okay.  Yes.  Thank you, Your Honor,

21 I appreciate that.

22          THE COURT:  That way we won't -- now people may

23 still need more time and I'm not suggesting they can't at

24 2:30, but I think if you filed it any time after 9:00 in the

25 morning, it's just pointless to waste everybody's time at a

1  2:30 hearing.  People would want more time than that.  So

2  the hearing at 2:30 is contingent on your filing something

3  by 9:00 that includes the two settlements you've identified.

4  And again if you can't get that done, you can have up until

5  2:30 to file it and then we'll have the hearing Monday

6  morning at 8:00.  And Ms. Do will just have to juggle the

7  schedules as she watches what you do.

8          So let me hear if anybody has any problem with

9  that sort of plan of attack.  If you would please press

10  five star if you do on the Disclosure Statement issue have

11  any issue with maybe a hearing tomorrow at 2:30 and maybe a

12  hearing Monday at 8:00.

13          Mr. Gibbs, good morning.

14          MR. GIBBS:  Your Honor, can you hear me?

15          THE COURT:  I can, Mr. Gibbs.  Good morning.

16          MR. GIBBS:  Good morning, Your Honor.  And for

17  the Record, Chuck Gibbs with McDermott Will and Emery, on

18  behalf of the Official Committee of Unsecured Creditors.

19          I just wanted to confirm to the Court what

20  counsel for the Debtor has just indicated.  We did reach

21  agreement in principle.  I want to thank the Debtor's

22  counsel on their representatives and counsel to non-debtor

23  affiliates and counsel for the (indiscernible) party.  We've

24  worked long and hard to try to get to this stage.

25          I'm hopeful although it's a bit of a task to be

1  -- to have certainly the revised documents ready by tomorrow

2  morning.  I'm (indiscernible) doing their best to get there

3  by 2:30 tomorrow, but we had agreed to adjournment till

4  tomorrow afternoon (indiscernible) that agreement tell I get

5  there (indiscernible) worked diligently to do that.  I just

6  -- I'll remind the Court that your comments at the last

7  hearing (indiscernible) the process and I think it was a

8  well-founded trust.  I think the process worked and we've

9  come to an agreement that I think purely advances the

10  recoveries for creditors in this case and we're anxious to

11  (indiscernible).

12         THE COURT:  Mr. Gibbs, your phone line is really

13  sketchy right now.

14         MR. GIBBS:  Uh-oh.  Well, it's consistent with

15  past performance.  This is our third attempt to changing our

16  phone system and speaker box, but I don't know if you heard

17  any of that and I don't have an ability to --

18         THE COURT:  I heard it, but I will tell you the

19  recording is going to be pretty useless.  I'm not sure

20  that -- but in any event, what I'm hearing you say is -- and

21  let me repeat it to you and if you want to alter my

22  understanding, that would be great.

23         You committed to having the hearing tomorrow at

24  2:30.  You're going to stick with your word.  You think it

25  might be a task that is not going to be met to get

1  everything done by 9:00 in the morning, but you're willing

2  to live with the process of two potential hearings, one at

3  2:30 if you can get it done by 9:00 and you'll work

4  diligently to get that done, but if you can't, then the

5  hearing Monday morning at 8:00.  I think that's what you

6  told me, but if you want to revise those comments, go ahead.

7          MR. GIBBS:  No, that's -- you heard it

8  accurately.  Hopefully you can hear this response.  Maybe

9  it's slightly better.  I turned the volume up as much as I

10  could.  But we are -- we're thankful to be at this stage.

11  We think what we have agreed to (indiscernible) last plan,

12  it's a materially better plan for the creditors in the case.

13          THE COURT:  Thank you, Mr. Gibbs.  Let me just

14  make an offer to you, Mr. Gibbs.  The phone really isn't the

15  quality that you're going to want it to be.  If you have

16  your staff arrange a time, we'll arrange to where you

17  connect into our courtroom and you can test your system

18  live.  I don't know if you have the problem with other

19  courtrooms or not.  We usually have a pretty good reception

20  here.  And I know a live test may better and we'll do that.

21  We'll set it up and we'll get it done.

22          MR. GIBBS:  We'll try to do that.  I just left

23  virtually a hearing across the hall with Judge Jones and he

24  didn't indicate any problems, but we'll -- I'll make sure

25  that I test with Your Honor's courtroom.

1              THE COURT:  Yeah, that's just because he's nicer

2   than I am.  All right.

3              Does anybody else want to have a comment about

4   that?

5              Mr. Brimmage, I don't -- Mr. Brimmage, go ahead

6   please.

7              MR. BRIMMAGE:  Thank you, Your Honor.  Good

8   morning, Your Honor.  Marty Brimmage with Akin Gump Strauss

9   Hauer and Feld here on behalf of what we had termed the non-

10  debtor affiliates and we filed notices of appearance

11  yesterday.  We are happy to join the party.

12             In the Court's recitation of what occurred from

13  Mr. Gibbs, I think you left out one really important part

14  and that is Mr. Gibbs' acknowledgement that the non-debtor

15  affiliates were very constructive and cooperative in helping

16  come to this and I didn't want that left out.  Obviously he

17  talked about the Debtors as well.  I'm being mildly

18  capricious, but only just mildly.  So I wanted to make sure

19  that the Court heard that from Mr. Gibbs given his own

20  issues.

21             And other than that, Your Honor, just wanted to

22  say that we are also very pleased on behalf of the non-

23  debtors with the agreement in principle and look forward to

24  getting this resolved.

25             THE COURT:  Thank you, Mr. Brimmage.

1          Do I need to introduce you to Mr. Gibbs at all or

2   you think you can handle this?

3          MR. BRIMMAGE:  Oh, no, definitely not,

4   Your Honor.

5          MR. GIBBS:  And, Your Honor, if we're just

6   clarifying for the Record, I want to make sure the Record is

7   clear that were thanking counsel from Macquarie and if you

8   want me to rank my thanks, I'm happy to do that as well.

9       (Laughter.)

10         THE COURT:  All right.  Thank you.  Anyone else

11  have any comments as you all are celebrating trying to get a

12  deal done here?

13      (No audible response.)

14         THE COURT:  Okay.  Look, Ms. Spigel, if you want

15  to keep that arrangement, that's just fine.  It does sound

16  unlikely, but if you can get it done by 9:00 o'clock in the

17  morning, that's great, the hearing will be at 2:30.  I'm not

18  even going to call it unless it hits the Docket with a time

19  stamp before 9:00 o'clock and then we'll call it though at

20  8:00 o'clock Monday morning.  And so we'll be flexible

21  depending on what you can get done.

22          Where did you want to go from there?

23         MS. SPIGEL:  Thank you.  And as to your

24  accessibility, Your Honor, we appreciate it.  I realize that

25  it will be a difficult task to get everything done by 9:00

1  but hope springs eternal and I think everyone is motivated

2  to try to get everything done.  So I really do appreciate

3  your availability.

4          A few other things on the Agenda are -- there's a

5  former customer bar date order and I understood that

6  Your Honor had some comments to the proposed order, some

7  questions.

8          And we also have -- there are certain tort

9  claimants that have requested a status conference so I will

10 turn it over to their counsel with respect to that status

11 conference.

12         THE COURT:  All right.  Why don't we go to

13 Mr. Monsour?  And then I can go through the comments I've

14 got on the former customer order.

15         Mr. Monsour, let me see if I can find your line

16 or if you want to press five star.  There you are, got you.

17 Mr. Monsour, good morning.

18         MR. MONSOUR:  Good morning, Your Honor.

19         Trey Monsour from Fox Rothschild, on behalf of

20 Karen Prescott and other tort claimants.  We contacted the

21 Court earlier this week requesting that we withdraw the

22 Motion to lift abatement because we thought there may be a

23 more constructive way to approach what we're trying to

24 accomplish in this case and so we reached out to Debtor's

25 counsel and we reached out to Committee counsel and I wanted

1   to inform the Court what we're really trying to accomplish

2   because we're really not trying to impede the bankruptcy

3   process or confirmation of a plan.

4           We just want to make sure really two things

5   happen or don't happen.  One is that there's not some

6   adjudication in the Bankruptcy Court that in any way impacts

7   our ability to pursue claims against third parties that are

8   non-debtors and non-debtor affiliates, so someone else up

9   the food chain other than Griddy.

10          And the second thing that we wanted to inform the

11  Court is for those that are filing proofs of claim -- for

12  those that don't file proofs of claim, then they're out of

13  luck.  We're not looking for a distribution of the unsecured

14  creditors.  We're looking solely to insurance.  So if

15  insurance is available, then we'll look to insurance for any

16  recovery provided that the tort claims are claims that are

17  allowed at some point down the road.

18          And when I spoke with Ms. Spigel, I told her that

19  we would propose some language for the Disclosure Statement

20  that might hopefully preserve and -- a status quo for us so

21  that we're not in any way prejudiced and at the same time,

22  not impacting what she's trying to accomplish under the

23  Plan.  I thought I might have that language to her before

24  today, but it looks like it will probably be later today for

25  her consideration, for the Committee's consideration and

1   hopefully that language will be something that will be

2   acceptable or, with some minor modification, something that

3   would enable them to press forward and us to preserve the

4   concerns that we've got in protecting our ability to pursue

5   other defendants.

6            THE COURT:  Mr. Monsour, thank you.  So this may

7   matter.  About 45 minutes ago, I signed a pretty short

8   memorandum opinion dealing with a discharge injunction in

9   self-insured retentions.  I don't know what the Debtor's

10  insurance situation is.  It was in obviously a case

11  unrelated to this case, but as you think about how you're

12  going to approach it, you might want to take a look at that

13  issue just to be sure that, A, you can know my views about

14  it but, B, you can disagree with those views if you want to,

15  but it essentially says self-insured retentions matter and

16  take you out of the *Edgeworth* world is the short description

17  that I will give you of that Opinion.

18            But I appreciate your statement and I appreciate

19  where you're trying to go, Mr. Monsour, and thought that

20  might be a helpful comment back to you.

21            Does anyone have any retort to Mr. Monsour or his

22  statement will stand for just that being their own

23  statements sort of giving a roadmap as to where they're

24  hoping to go?

25            (No audible response.)

1          THE COURT:  All right.  Look on the Order, I

2   wanted to have an order that I was pretty sure that the

3   former customers would fully understand what was going on

4   and I'll open it.  I'm going to -- it's got notes all over

5   it that I sort of made to myself and I'm just going to show

6   you all those notes, but I'm concerned it's a little bit

7   schizophrenic about we're only dealing with claims in this

8   narrow few days and then it's also that we're dealing with

9   all prepetition claims.  And I guess if you really parse

10  through the definitions that may be limited only to those

11  few days, but I think you'll see the confusion when I show

12  it to you.

13          So let me just -- again what you're going to be

14  seeing are my own notes to myself so you'll know where the

15  issues are.  So I've taken the Order, converted it into

16  Word, redlined it.

17      (Pause in the proceedings.)

18          THE COURT:  So this is it.  I'm not sure the

19  definition works to limit claims to those days.  You have a

20  footnote and also the Order apparently trying to do the same

21  thing to define what a "former customer" is.  Right here,

22  (indicating), you have basically the identical language.

23          So then paragraph 2 says:

24     "Each former customer that asserts a claim that arose

25      before the petition date has to file a proof of claim."

1          And again that's basically where the conflict is.
2    This comes up multiple times throughout here.  I don't know
3    why you want to limit it to the five days of saying, "If
4    you're a former customer and you have any prepetition claim,
5    this governs it."

6          I am not willing to have proofs of claim not
7    available to the public so redacted ones to eliminate PID is
8    fine, but we've got to have those available.

9          And then paragraph 5 seems to directly contradict
10   the definition.

11         Paragraph 6 I thought would just confuse people.
12   You all aren't going to file amended schedules dealing with
13   former customers I don't think and I think we just add
14   confusion there.  I may be wrong about that.  It's not that
15   I object to it, I'm just trying to simplify the Order.

16         So the exceptions are listed below, but there
17   actually aren't any when you come down to it.  And again I'm
18   just trying to simplify it.

19         Again this is a conflict with the definition.

20         These are the exemptions, but none of them apply
21   to former customers.  Maybe B, but why are we bothering to
22   really confuse matters by that?  There are no former
23   customers where we've allowed a claim.

24         We're not fixing a separate deadline.  This only
25   applies to the former customers.  So I just think I want to

1   simplify it some to be sure people see what it is.

2        And then down in -- of course that's just taking

3   out the exemptions a couple places.

4        I thought that we should take out the email

5   address.  You say it 18 times in your notes "send it by

6   email," but then you tell people what the email address is

7   here on the proof of claim and I think that can only lead to

8   a problem.

9        I don't want to tell people they're not required

10  to file a proof of claim.  It's just dangerous to tell

11  people that I think.

12       That was just a typo up there, (indicating).  We

13  may have to come out of the conversion.

14       And then here's the notice, (indicating).  Same

15  problems with the definition.

16       This says there are three ways.  It's actually

17  two ways and later you define the same thing as being two

18  ways.

19       That's it.  So anyway I just thought we probably

20  ought to clean it up but mainly we ought to -- I actually am

21  not sure, if I signed this Order, whether I'm requiring

22  anyone with a prepetition claim to file one or only with a

23  prepetition claim that relates to the freeze and that's the

24  issue.  It's just making clear.

25       Ms. Spigel, go ahead.  Your line's open.

1          MS. SPIGEL:  Thank you, Your Honor.  When we were

2    before Your Honor at a prior hearing related to the issues

3    (indiscernible) everyone else or -- the idea -- Your Honor,

4    I think that's defining the "former customers" and that

5    definition is in the non-former customers bar date.  And

6    maybe -- I'll have to go back to see, but we'll talk about

7    it now, but the idea is that if you have a customer who's

8    affected by the winter storm, that they have a longer period

9    to file a proof of claim.  Wasn't intended to limit the

10   proof of claim that they filed.  They could file -- it's

11   just those people who were affected by the storm can file

12   any type of claim, whatever (indiscernible) petition date.

13   So it's intended to define who that former customer is, but

14   not intended to limit them in respect to their claims other

15   than -- have to be a prepetition claim.

16          THE COURT:  So I want to go back to Mr. Monsour's

17   client's claim, which I believe is -- Mr. Monsour, I'm not

18   limiting your claim, I'm just trying to deal with an

19   example -- a failure to warn claim that is out there.  So

20   the failure to warn, if that created a cause of action that

21   accrued as of the date of the warning under Texas law, it

22   occurred outside of those days.  The damages would have

23   occurred within those days.

24          Do those people have to file a proof of claim to

25   have one?

1          MS. SPIGEL:  If they were a customer between the

2     11th and the 19th and they hold any kind of claim that

3     relates to the winter storm period, then they can file their

4     proof of claim.  So (indiscernible) that included the warn

5     motion that was withdrawn, but it's (indiscernible) to

6     assert that duty to warn claim.  They would -- I believe

7     that they would have the ability to assert the claim.  We're

8     trying to define who the person is as opposed to limiting

9     the type of claim they are asserting.  Because it relates

10    to -- indeed it relates to the period, right?  Their duty to

11    warn relates to the winter storm period.  That's at least

12    the allegation.

13          THE COURT:  So let's go to paragraph 5 for a

14    minute.  And assume there was a duty to warn and somebody

15    signed up on January 1 and didn't get a warning.  There was

16    then a freeze.  Somebody was out of town and on February --

17    and on March 20th came home, turned on their water and there

18    was then a burst pipe that did damage post-petition, I want

19    to tell people whether they need to file a claim.  I

20    actually don't care what you're including or not including

21    in this.  I just want people to know to where we'll never

22    have an ambiguity about this.

23          Is that a prepetition claim?  Certainly the

24    precipitating events were all prepetition.  The damage was

25    manifested post-petition.  I would normally think that's a

1  prepetition claim.  But all those definitions are bothering

2  me.

3          MS. SPIGEL:  Yeah, it would be a prepetition

4  claim in my mind if they -- if that person is making a claim

5  as it relates to damage during the winter storm

6  (indiscernible) the Debtor disputes that there's any

7  liability (indiscernible).  But putting that aside for a

8  second, but if it relates to the winter storm, then they

9  would be able to assert that claim.  They could assert the

10 claim and they couldn't say this Order stopped them from

11 doing that.  It was intended for customers who are

12 outside -- who weren't customers during this period.  They

13 had to file a proof of claim by (indiscernible), the other

14 bar date.  So to the extent somebody --

15         THE COURT:  So can I suggest to you then that we

16 unlink this from damages at all and from the freeze at all

17 and write a definition that says, "If you were a customer

18 between February 11th and February 19th," all or any part of

19 that, "this covers you"?  Because this says you also have to

20 hold a claim that arose during -- it relates to period from

21 February 11th to February 19th and then we get into all

22 these rule questions and manifestation questions and I don't

23 know that you need that.  I think what you really need are

24 "This applies to anyone that was a Griddy customer at any

25 point between February 11th and February 19th," period.

1  Maybe I'm missing the point.

2          MS. SPIGEL:  So I understood, Your Honor,

3  previously in the prior hearing to want to have this bar

4  date pertain to those claims that related to --

5          THE COURT:  No, I get it.  You didn't

6  misunderstand me.  But then when I read it, I was really

7  worried if I were just a public customer out there that I

8  was getting -- and I do understand the distinction you're

9  making between the definition and the instructions.  I'm

10 just concerned I'm going to -- we're dealing here with

11 people that aren't going to have lawyers and I really want

12 clarity and that's all I'm looking for.  And I agree that

13 you have understood me and I said what I said and I meant

14 it.  And then when I read it, I say people are going to get

15 confused and that's not what we need.

16          MS. SPIGEL:  Right.  So we didn't serve the other

17 bar date on any customers that -- during this period.  Those

18 customers were not served so I don't think that changing

19 this definition, as you're suggesting, will be problematic.

20 They'll just assert the claim.  As long as they're a

21 customer between these two dates, they can assert whatever

22 claims they want and the plan administrator will be able to

23 submit those claims.

24          THE COURT:  And so once you do that, it seems to

25 me that the concept between prepetition and post-petition

1  also can simply come out of this because like you said, if

2  their damage occurred during the freeze and some of their --

3  I'm sorry -- if the liability occurs during the freeze and

4  some of the damage is manifested post-petition, we want

5  these people filing claims.  We can deal later with whether

6  they are allowed or not allowed, but let's not have somebody

7  try and say, "Well, no, mine really isn't a prepetition

8  claim."

9          It seems to me that we ought to just tell people,

10  "If you were a customer and you have a claim of any sort

11  against Griddy, you were a customer between those eight

12  days, and you have a claim of any sort against Griddy,

13  you've got to file a proof of claim or you're going to lose

14  your claim," and eliminate -- I understand your explanation

15  and accept it's not a conflict, but I think you also

16  understand mine that it is confusing to a non-lawyer.  It

17  was confusing to me and I'm a lawyer.

18          MS. SPIGEL:  I understand what you're saying

19  although I would just stress a little bit on the

20  manifestation issue.  So the only claims that one would

21  think are -- I mean, I (indiscernible) manufacture any kind

22  of claim.  So we've heard from tort claimants that those --

23  if there tort (indiscernible) that's related to things that

24  happened during the storm.  It's not (indiscernible)

25  injuries and other types of that sort.  It would be some

1   sort of something happened during that week.  So I don't

2   think a manifestation issue is present here in this case.

3              THE COURT:  Right.  So look at paragraph --

4              MS. SPIGEL:  Even if --

5              THE COURT:  But now go to paragraph 5 for a

6   minute.

7              MS. SPIGEL:  Okay.

8              THE COURT:  It says that:

9        "This bar date applies to all types of claims that

10       arose or deemed to have arisen before the petition date

11       except for claims specifically exempt from

12       (indiscernible) former customer claims bar date as set

13       forth in this order."

14        Why don't we just say the former customer claims

15   bar date applies to all types of claims of any former

16   customer, period -- against the Debtor -- sorry -- period,

17   and leave out everything else that restricts it?

18              MS. SPIGEL:  So, I mean, I think it's a

19   (indiscernible) against the Debtor, right?

20              THE COURT:  Right.

21              MS. SPIGEL:  Of any former customer against the

22   Debtor.  But if you don't specify for them (indiscernible)

23   to have arisen before March 15th, then -- I mean, there are

24   no customers anymore so -- and there weren't as of March

25   15th.

1          THE COURT:  Right.

2          MS. SPIGEL:  I just -- okay.  In my mind, a bar

3  date is for prepetition claims, claims that arise prior to

4  the petition date.

5          THE COURT:  I agree and if we want everybody

6  hiring a lawyer to try to define that for them and then

7  they're going to come in and say, "Well, no, this wasn't

8  prepetition.  My roof fell in post-petition," why are we

9  crossing that bridge?  We know they're no longer receiving

10 power from you and why shouldn't we just tell people, "If

11 you have a claim against the Debtor, you've got to file it

12 by this date and this date applies to you if you were a

13 customer between February 11th and February 19th or any

14 point of that time period," and eliminate all these other

15 definitions, eliminate all the exemptions, eliminate all the

16 definition of what's prepetition and post-petition,

17 eliminate every date?  "If you were a customer between

18 February 11th and 19th, this is your deadline."

19         MS. SPIGEL:  Okay.  So I suppose we just reserve

20 our right to the extent somebody says that there's a claim

21 that accrued or manifested post-petition.

22         THE COURT:  Of course.

23         MS. SPIGEL:  And we'll reserve our rights.

24         THE COURT:  Yeah, of course.  Of course.  I'm not

25 suggesting to you that you have to pay any of these claims.

1   We want people to file them so that you can deal with them.

2   And we also want people to -- we also want to have finality

3   where we don't have somebody coming in in three months and

4   saying, "Well, I didn't have to file."  That's why I want

5   the clarity.

6            MS. SPIGEL:  Right.

7            THE COURT:  It's more of the latter is we have a

8   lot of retail customers the vast, vast majority of which

9   should not be required to find a lawyer to figure out if

10  they want to file a claim.  That's why I'm focused on this.

11           Would you --

12           MS. SPIGEL:  Okay.

13           THE COURT:  Look why don't you rethink about this

14  and rework it?  But again I would like to make this really

15  plain.

16           MS. SPIGEL:  Okay.  Understood.

17           THE COURT:  Would it help if -- I don't know if

18  somebody was taking notes as I sort of quickly went through

19  this.

20           Do you want me to have somebody just email you

21  those notes that I showed everyone?  And then --

22           MS. SPIGEL:  That'd be great.

23           THE COURT:  -- you'll have them there and you

24  deal with the ones -- I think it's going to require you to

25  change the structure of the Order a little bit and I don't

1  want to sit here and rewrite it all.  And just upload an
2  order that does that.  And I'll have Ms. Do send this to
3  you.

4          MS. SPIGEL:  Okay.  Thank you, Your Honor.  There
5  may be a delay because I have to get the Plan and Disclosure
6  Statement done first so we'll take a look at that and then
7  try to get that.  And I need the Attorney General's Office
8  and Creditors' Committee to weigh in so we'll get it
9  (indiscernible).

10          THE COURT:  We've got plenty of time.  The
11  deadline's not till July so we're good on that, right?

12          MR. SPEAKER:  Yes.

13          MS. SPIGEL:  I'm sorry, I had some weird
14  interference in my conference room.

15          THE COURT:  No, you take your time to get this
16  new Order uploaded.  We have time to get it issued because
17  their claims bar date isn't until July 19th so if it takes
18  10 days to get this done, it's not that big of a deal.

19          MS. SPIGEL:  Okay.  Thank you, Your Honor.

20          THE COURT:  And Ms. Do will just email you my
21  notes.  If anybody else wants a copy of it, which I've shown
22  everyone 100 percent of the notes.  If anybody else wants a
23  copy of it, contact Ms. Steel or contact Ms. Do and she'll
24  get a copy of it.  They're not very monumental.

25          What else can we do today?

1        MS. SPIGEL:  That's all, Your Honor.  Thank you

2  again for your time.  We really appreciate it and for your

3  availability tomorrow and Monday.

4        THE COURT:  Thank you.  Does anyone else have any

5  issues that you need to bring up in the Griddy case today?

6      (No audible response.)

7        THE COURT:  All right.

8        MR. SPEAKER:  No, Your Honor.

9        THE COURT:  I hope I see you tomorrow.  I believe

10 I will see you on Monday.  We'll see.  All right.  Work

11 hard.  Bye, bye.

12        MS. SPIGEL:  Thank you, Your Honor.

13        THE COURT:  Thank you.

14        MR. SPEAKER:  Thank you.

15      (Hearing adjourned at 10:34 a.m.)

16                        * * * * *

17        *I certify that the foregoing is a correct

18 transcript to the best of my ability due to the condition of

19 the electronic sound recording of the ZOOM/telephonic

20 proceedings in the above-entitled matter.*

21 */S/ MARY D. HENRY*

22 *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

23 *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

24 *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

25 *JTT TRANSCRIPT #64018          DATE FILED:  MAY 21, 2021*