# EXHIBIT A

Plan Administrator Agreement

## PLAN ADMINISTRATOR AGREEMENT

This Plan Administrator Agreement (the "Agreement"), dated July __, 2021, is between Griddy Energy LLC (the "Debtor") and [__] (the "Plan Administrator"). This Agreement sets forth, among other things, the rights, powers, duties and scope of the services to be provided by the Plan Administrator. Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the *Modified Third Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code*, dated May 26, 2021 [Docket No. 305] (as may be altered, amended, modified, or supplemented from time to time in accordance with its terms, the "Plan").

## RECITALS

WHEREAS, on March 15, 2021 (the "Petition Date"), the Debtor filed a voluntary petition (the "Chapter 11 Case") under title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court").

WHEREAS, on May 26, 2021, the Debtor filed the solicitation version of the Plan.

WHEREAS, on or after the Confirmation Date but prior to the Effective Date, the Plan Administrator assumed all of its obligations, powers and authority under the Plan to: (i) establish bank accounts as may be required to fulfill the Debtor's obligations under the Plan, including, to the extent not previously established by the Debtor, to establish and fund the Disputed Claims Reserves in accordance with the terms thereof; and (ii) exercised such other power and authority as may be set forth in the Confirmation Order.

WHEREAS, pursuant to the Plan, effective as of the date hereof (the "Effective Date"), the Plan Administrator has assumed all of its other obligations, powers and authority under the Plan and shall comply with all applicable provisions of the Plan.

WHEREAS, pursuant to article 7.05 of the Plan, effective as of the Effective Date, a committee was appointed to participate in the oversight of certain material actions of the Plan Administrator (the "Oversight Committee").

WHEREAS, pursuant to the Plan, the Plan Administrator will carry out and implement all provisions of the Plan, including, among other things, implementing the wind down of the Debtor, prosecuting certain claims and causes of action on behalf of the Debtor, and making distributions to holders of Allowed Claims.

WHEREAS, on [June 18, 2021], the Debtor filed the Plan Supplement for the Plan, which included, among other things, forms of this Agreement and the amended and restated limited liability company operating agreement of the Debtor (the "Operating Agreement") [Docket No. __].

WHEREAS, on [July 7], 2021, the Court entered an Order confirming the Plan and approving, among other things this Agreement [Docket No. __] (the "Confirmation Order").

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the sufficiency of which is hereby acknowledged by the parties, the parties hereto agree as follows:

1.      *Acceptance and Effectiveness*. The Plan Administrator hereby agrees to accept appointment as the Plan Administrator and ownership of the membership interest of the Debtor and to provide the Services (as defined below) pursuant to the Plan and the Confirmation Order, and as set forth herein.

2.      *Duties, Powers, and Rights of Plan Administrator*. Sections 7.03 and 7.04 of the Plan are incorporated herein by reference. From and after the Effective Date, the Plan Administrator will act for the Debtor's Estate in the same fiduciary capacity as applicable to a

board of directors or officers of a Delaware corporation, subject to the provisions hereof and of the Plan. The Plan Administrator will have, subject to the powers and rights of the Oversight Committee set forth herein, the Plan and the Confirmation Order, all duties, powers, and rights set forth herein, in the Plan, and in the Confirmation Order to perform the services set forth in the Plan, the Confirmation Order, and this Agreement (the "Services"), including the following:

a.   take all steps and execute all instruments and documents necessary to make Distributions to holders of Allowed Claims and Allowed Interests and to perform the duties assigned to the Plan Administrator under the Plan and this Agreement;

b.   observe and comply with the Plan, the Confirmation Order and any and all obligations set forth therein and herein;

c.   employ, retain, or replace professionals to represent the Plan Administrator with respect to the Plan Administrator's responsibilities;

d.   object to Claims as provided in the Plan, and prosecute such objections;

e.   compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim;

f.   prosecute Causes of Action that are not released under the Plan or Confirmation Order;

g.   compromise and settle any Causes of Action;

h.   establish, replenish, or release reserves as provided in the Plan, as applicable;

i.   seek a determination of tax liability under Bankruptcy Code section 505, file tax returns, and pay taxes, if any, related to the Debtor;

j.   abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of the Plan Administrator's choice, any assets of the Debtor if the Plan Administrator concludes that they are of no benefit to the Estate or the Debtor;

k.   purchase or create and carry all insurance policies and paying all insurance premiums and costs the Plan Administrator deems necessary or advisable, including that cover the liabilities and obligations of the Plan Administrator and the Oversight Committee under this Agreement;

3

l.     seek entry of a final decree in the Chapter 11 Case at the appropriate time; and

m.    exercise such other powers as may be vested in the Plan Administrator pursuant to the Plan, this Agreement, or any other Plan Documents or order of the Bankruptcy Court or otherwise act on behalf of and for the Debtor from and after the Effective Date in a manner consistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan.

The Debtor (including the Plan Administrator as the sole member, manager and equity holder of the Debtor) shall not be required to post a bond in favor of the United States.

3.    *Reports to be Filed by the Plan Administrator*. On a quarterly basis, the Plan Administrator will file with the Bankruptcy Court a reasonably detailed report summarizing the Plan Administrator's work, including the status of any pending actions initiated by the Plan Administrator and any material settlements entered into with respect to any Claims against the Debtor or Causes of Action of the Debtor, and the Debtor's finances, including the amount of fees and expenses incurred and paid to Professionals and the Plan Administrator, which reports with respect to the Debtor's finances may be in the form of quarterly operating reports filed with the Bankruptcy Court as required by the United States Trustee.

4.    *Distributions*. Pursuant to the terms and provisions of the Plan, the Plan Administrator will make the required Distributions specified in the Plan to holders of Allowed Claims and Interests as of the Distribution Date in accordance with the Plan and Confirmation Order.

Other than the obligations set forth in the proviso in Section 8.12 of the Plan, the Plan Administrator shall have no duty or obligation whatsoever to attempt to locate the holder of any Allowed Claim entitled to unclaimed distributions other than to review the Debtor's books and records, or proofs of claim filed against the Debtor.

5.     *Winddown and Dissolution of Debtor*. As soon as reasonably practicable after all Distributions have been made to holders of Allowed Claims and Allowed Interests in accordance with the terms of the Plan, the Plan Administrator shall cause the Debtor to: (a) file its certificate of dissolution, together with all other necessary corporate documents, to effect its dissolution under the applicable Delaware state law; and (b) complete and file its final federal, state and local tax returns, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of the Debtor or its Estate for any tax incurred during the administration of the Chapter 11 Case, as determined under applicable tax laws.

6.     *No Other Duties; Amendments to Operating Agreement*. Other than the duties and obligations of the Plan Administrator specifically set forth in this Agreement, the Plan, or the Confirmation Order, the Plan Administrator will have no duties or obligations of any kind or nature with respect to such position. The Plan Administrator will not amend or modify (whether through waiver or otherwise) the Operating Agreement without the prior unanimous written consent of the Oversight Committee.

7.     *Retention of Counsel and Agents*. Subject to the terms of this Agreement, the Plan Administrator may hire attorneys, accountants, consultants, independent contractors, and other professionals (collectively, the "Professionals") which the Plan Administrator deems in his or her discretion to be required or appropriate in connection with the Plan Administrator's duties hereunder. The Plan Administrator shall pay to any Professionals retained by the Plan Administrator reasonable compensation for services rendered and reimbursement of reasonable and documented costs and expenses incurred in connection with the Plan Administrator's performance of the Services. The payment of any reasonable fees, costs, and expenses of the Professionals will be made in the ordinary course of business and will not be subject to the

approval of the Bankruptcy Court; *provided*, *however*, that any disputes related to such fees, costs, and expenses will be resolved by the Bankruptcy Court.

8.    *Fees*. The fees of the Plan Administrator (collectively, the "Fees") will be [$_____],[1] commencing on the Effective Date and payable until the removal of the Plan Administrator or the termination of this Agreement and will be prorated, if appropriate. [The initial payment of $_____ will be made within five (5) business days following the Effective Date, and each successive payment will be made on the same date (or the first subsequent business day) of each month going forward.]  The Fees will be payable out of the Debtor's Available Cash.

9.    *Expenses*. The reasonable and documented out-of-pocket expenses of the Plan Administrator incurred in performance of the Services will be reimbursed from the Debtor's Available Cash.

10.    *Service of Plan Administrator*. The Plan Administrator will serve until the earlier of (a) the termination of this Agreement and (b) the effective date of any resignation or other discharge of the Plan Administrator.  The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court and the Oversight Committee; *provided*, *that*, such resignation will only become effective upon the appointment of a permanent or interim successor Plan Administrator, unless either (1) the insurance policies covering the Plan Administrator terminates for any reason other than the Plan Administrator's unreasonable refusal to renew such insurance policies or (2) the Plan Administrator determines in the Plan Administrator's reasonable judgment that insufficient assets and financial resources are available to complete the duties and powers assigned to the Plan Administrator under the Plan, the

---

[1] Fees to be updated based on agreement with the Plan Administrator.

Confirmation Order, and/or this Agreement, in either of which case such resignation may become effective without appointment of a successor Plan Administrator, provided that, in the case of 10(2), the Plan Administrator shall also provide (30) days' written notice to all holders of Allowed Claims and Interests thereof, and shall take such steps as may be necessary to close or convert the Chapter 11 Case prior to the effective date of such resignation. The resignation or removal of a Plan Administrator will not terminate this Agreement, revoke any existing agency created pursuant to this Agreement, or invalidate any prior action taken by the Plan Administrator.

11.     *Removal of the Plan Administrator for Cause.* The Oversight Committee may remove the Plan Administrator, by unanimous written consent, for cause upon written notice containing a reasonably detailed explanation of the basis for the Plan Administrator's removal ("Cause Notice") by the Oversight Committee to the Plan Administrator. In the event the Plan Administrator disputes its termination for cause set forth in the Cause Notice, the Plan Administrator may file, within ten (10) days of receipt of the Cause Notice (the "Dispute Period"), a motion with the Bankruptcy Court contesting such termination for Cause (a "Cause Dispute Motion"). If the Plan Administrator fails to file a Cause Dispute Motion prior to expiration of the Dispute Period, the Plan Administrator will be automatically removed without any further action required upon the expiration of the Dispute Period. If the Plan Administrator files a Cause Dispute Motion, the Plan Administrator will be automatically removed without any further action required upon the entry of an order of the Bankruptcy Court removing the Plan Administrator.

12.     *Successor Plan Administrator.* In the event of the resignation, death, Disability (as defined below), or removal of the Plan Administrator in accordance with this Agreement, the

Oversight Committee will appoint a replacement Plan Administrator in accordance with the Plan; *provided*, *however*, if the Oversight Committee fails to appoint a replacement Plan Administrator within twenty (20) days of such resignation, death, Disability, or removal of the Plan Administrator, the Bankruptcy Court may appoint a replacement. For purposes hereof, the term "Disability" means incapacity resulting in the inability to perform the Services for thirty (30) consecutive days or in the aggregate of sixty (60) days during any twelve-month period. Any resigning or removed Plan Administrator (or the executor or other representative of any deceased or incapacitated Plan Administrator) shall transfer, in exchange for consideration of one dollar ($1.00), the membership interest of the Debtor owned by such Plan Administrator to the successor Plan Administrator.

13.     *Indemnification*.

Except as otherwise set forth in the Plan or Confirmation Order, the Plan Administrator and all Professionals (collectively, the "Indemnified Parties") will be, to the fullest extent permitted by law, indemnified, defended, and held harmless by the Debtor from and against loss, liability, damages, cost, or expense (including reasonable and documented legal fees and expenses and any amounts reasonably paid in settlement) (each, a "Loss" and, collectively, "Losses") resulting from a claim, demand, lawsuit, action, or proceeding caused by, relating to, based on, or arising out of (directly or indirectly) the Plan Administrator's performance or nonperformance of the Services or the Plan Administrator's other obligations or fulfillment or nonfulfillment of the Plan Administrator's fiduciary duties under this Agreement, the Plan, or the Confirmation Order; *provided*, *that*, such acts or omissions of such Indemnified Person are not found by a Final Order of a court of competent jurisdiction to constitute actual fraud, gross negligence, or willful misconduct. Any obligation of the Debtor arising pursuant to the terms of

8

this section will be payable only from the Debtor's Available Cash and may with the approval of the Oversight Committee be advanced to the applicable Indemnified Person prior to the conclusion of the matter from which such obligation arises, and such right to payment will be prior and superior to the rights of any other party to receive a distribution of the Debtor's Available Cash.

Any former director, officer, affiliate, employee, employer, professional, agent, or representative of the Debtor (collectively, the "Debtor Indemnified Parties") shall be defended, held harmless, and indemnified from time to time by the Debtor against any and all Losses arising from or relating to any third party claims brought or asserted against the Debtor Indemnified Parties (including any purported counterclaims or claims for contribution) that arise from any action or omission by the Plan Administrator or related to any Cause of Action that the Plan Administrator elects to prosecute, *provided*, *that*, such acts or omissions of such Debtor Indemnified Parties are not found by a Final Order of a court of competent jurisdiction to constitute actual fraud, gross negligence, or willful misconduct.

The Plan Administrator will be permitted to pay from the Debtor's Available Cash expenses reasonably incurred by any Indemnified Party or Debtor Indemnified Party in defending, participating in, or settling any action, proceeding, or investigation in which such Indemnified Party or Debtor Indemnified Party is a party or is threatened to be made a party or otherwise is participating in connection with the duties, acts, or omissions of the Plan Administrator, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.

Each Indemnified Party and Debtor Indemnified Party will, and by its acceptance of the indemnification rights hereunder, hereby undertakes to, repay any and all such amounts so

advanced if it is ultimately determined that such Indemnified Party or Debtor Indemnified Party is not entitled to be indemnified therefor under this Agreement.

The provisions of this section will survive the termination of this Agreement. The Indemnified Parties and Debtor Indemnified Parties are third-party beneficiaries of this Agreement solely with respect to the provisions of this Section [13] and are entitled to enforce the terms hereof against the applicable Persons.

14.     *Standard of Care; Exculpation*. Neither the Plan Administrator nor any director, officer, member, affiliate, employee, employer, professional, agent, or representative (collectively, "Representatives") of the Plan Administrator will be liable for losses, claims, damages, liabilities, or expenses in connection with the affairs or property of the Debtor to any Holder of an Allowed Claim, or any other Person, for the acts or omissions of the Plan Administrator under this Agreement or the Plan (other than for acts or omissions constituting willful misconduct, bad faith, gross negligence, or actual fraud of such Person as determined by Final Order of a court of competent jurisdiction). Every act done, power exercised, or obligation assumed by any Representative of the Plan Administrator pursuant to the provisions of this Agreement will be deemed to be done, exercised, or assumed, as the case may be, by such Representative for and on behalf of the Plan Administrator and not otherwise; *provided*, *however*, that none of the foregoing Persons will be deemed to be responsible for any other such Persons' actions or inactions outside of the scope of the authority provided by the Plan Administrator. Except as provided in the proviso of the first sentence of this section, every holder of an Allowed Claim, Person, or entity contracting or otherwise dealing with or having any relationship with the Plan Administrator or any Representative, will have recourse only to the Debtor's Available Cash for payment of any liabilities arising in connection with such

10

contracts, dealings, or relationships, and the Plan Administrator or any Representative will not be individually liable therefor. For the avoidance of doubt, except as provided in the proviso of the first sentence of this section, the Plan Administrator, in the Plan Administrator's capacity as such, will have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtor.

15.     *Limitation of Liability*. In connection with all actions taken by the Plan Administrator as such, the Plan Administrator will be entitled to rely upon the applicable exculpation, release, indemnification, and limitation of liability provisions set forth in any corporate organizational document (including the Operating Agreement), this Agreement, the Plan, and the Confirmation Order; *provided*, *that*, the Plan Administrator will not be entitled to any release, exculpation, or indemnification if the Plan Administrator is determined to have engaged in actual fraud, gross negligence, or willful misconduct as determined by a Final Order of a court of competent jurisdiction.

16.     *Reliance by Plan Administrator*. To the fullest extent permitted by applicable law, the Plan Administrator may rely, and will be fully protected in acting or refraining from acting if the Plan Administrator relies, upon any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document that the Plan Administrator reasonably believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of e-mails or facsimiles or other electronic communication, that the Plan Administrator reasonably believes to have been sent by the proper party or parties, and the Plan Administrator may conclusively rely as to the truth of the statements and correctness of the opinions expressed therein. To the fullest extent permitted by applicable law, the Plan Administrator may consult with counsel, accountants, financial advisors, and other

Professionals with respect to matters in their area of expertise, and any opinion of counsel will be full and complete authorization and protection in respect of any action taken or not taken by the Plan Administrator (other than for acts or omissions constituting willful misconduct, bad faith, gross negligence, or actual fraud of the Plan Administrator as determined by Final Order of a court of competent jurisdiction). To the fullest extent permitted by applicable law, the Plan Administrator will be entitled to rely upon the advice of Professionals in acting or not acting and will not be liable for any act taken or not taken in reliance thereon (other than for acts or omissions constituting willful misconduct, bad faith, gross negligence, or actual fraud of the Plan Administrator as determined by Final Order of a court of competent jurisdiction). To the fullest extent permitted by applicable law and subject to providing reasonable notice to the other parties and the Oversight Committee, the Plan Administrator will have the right at any time to seek and rely upon instructions from the Bankruptcy Court concerning this Agreement, the Plan, the Operating Agreement, or any other document executed in connection herewith or therewith, and the Plan Administrator will be entitled to rely upon such instructions in acting or not acting and will not be liable for any act taken or not taken in reliance thereon.

17.    *Ratification of Prior Acts*. In order to effectuate an orderly and efficient transition of the administration of the Plan, the Plan Administrator may perform certain services in connection with the Plan Administrator's duties and obligations under this Agreement prior to the Effective Date, and the authorization for such performance and ratification of acts taken by the Plan Administrator prior to the Effective Date is evidenced by the execution hereof to the extent not already authorized by the Plan or the Confirmation Order.

18.    *Insurance*. The Plan Administrator may purchase, using Available Cash, and carry all insurance policies and pay all insurance premiums and costs that the Oversight

Committee or the Plan Administrator deem reasonably necessary or advisable, including, without limitation, purchasing any errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs, and expenses it may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its fraud, gross negligence or willful misconduct with respect to the implementation and administration of the Plan or this Agreement as determined by a Final Order of a court of competent jurisdiction.

19.     *Preservation of Privilege*. Any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether oral or written) in respect of any right, claim, Cause of Action or other asset of the Debtor (collectively, the "Privileges") will vest in the Plan Administrator on the Effective Date, and thereafter, such Privileges will belong to the Plan Administrator and will be enforceable and waivable by the Plan Administrator. The Plan Administrator will seek to preserve and protect all applicable Privileges and any Causes of Action of the Debtor. The Plan Administrator's receipt of any information subject to the Privileges will not waive any such Privileges, and all such Privileges are expressly preserved.

20.     *Powers of the Oversight Committee*. Section 7.05 of the Plan is incorporated herein by reference. The Oversight Committee has been constituted pursuant to Section 7.05 of the Plan, including the provisions relating to Toggle Events (as defined in the Plan) as provided therein. The members of the Oversight Committee (i) selected by the Committee will act in a fiduciary capacity the same as an official committee of unsecured creditors and (ii) selected by the Debtor (and any affiliate of the Debtor, as provided in the Plan) will act in a fiduciary capacity the same as required by officers under the Debtor's limited liability company agreement

in effect as of the Petition Date. Vacancies on the Oversight Committee will be filled pursuant to Section 7.05 of the Plan. The Oversight Committee will dissolve and its members shall cease to have any duties at such time as the Plan Administrator has settled or otherwise resolved all Causes of Action and distributions of the proceeds thereof have been made to the beneficiaries thereof pursuant to the terms of the Plan or at such time as shall otherwise be agreed upon between the Plan Administrator and all members of the Oversight Committee.

No member of the Oversight Committee will be compensated by the Debtor for their service thereon; *provided*, *that*, such members may be reimbursed by the Debtor for reasonable and documented out-of-pocket expenses, if any, incurred during the performance of services by such member as a member of the Oversight Committee.

Notwithstanding anything contained herein to the contrary, prior to a Toggle Event, unanimous consent of the Oversight Committee will be required for the following actions:

a.   material modifications or amendments to the Plan Administrator Agreement, including any modification of any provision that governs amendments to the Plan Administrator Agreement, Plan, Confirmation Order or Operating Agreement;

b.   cancellation or modification of insurance covering the Plan Administrator or the Oversight Committee;

c.   the settlement, compromise, dismissal, abandonment, release, submission to binding arbitration or mediation, or waiver, in whole or in part, of any claims, rights, causes of action, appeals, or collection efforts arising thereunder or in connection therewith, of any claim by the Plan Administrator where the Disputed Amount at issue equals or exceeds $3 million;

d.   the decision whether to enter into an agreement with any entity respecting the joint prosecution of any claim and causes of action belonging to the Debtor;

e.   choosing a successor Plan Administrator;

f.   removing the Plan Administrator; and

       g.     the Plan Administrator's retention of professionals to pursue any Texas Storm Causes of Action.

All material actions by the Plan Administrator other than the foregoing will require majority consent of the Oversight Committee, except as otherwise provided in Section 7.05(c) of the Plan. After the Toggle Event, the actions listed above and in Section 7.05(b)(i)-(vii) of the Plan will require majority consent of the Oversight Committee.

Notwithstanding any other provision in the Plan or this Agreement, the Plan Administrator may only settle Causes of Action as follows: (i) without notice to, or consent from, the Oversight Committee where the Disputed Amount is less than $250,000; (ii) with written notice to the Oversight Committee where the Disputed Amount is between $250,000 and $2,999,999 and the Plan Administrator proposes to settle such claim; *provided*, *that*, no member of the Oversight Committee objects in writing to the proposed settlement within five (5) business days after receipt of such writing; *provided*, *further*, that if a member of the Oversight Committee so objects, then the Plan Administrator may only proceed with the proposed settlement with the consent of a majority of the members of the Oversight Committee; and (iii) with written notice to, and the consent of, all members of the Oversight Committee where the Disputed Amount is more than $2,999,999.

21.    *Termination of Agreement; Survival*. This Agreement will terminate when the Bankruptcy Court enters a final decree contemplated by Bankruptcy Code section 350 and Bankruptcy Rule 3022 closing the Chapter 11 Case, unless otherwise set forth in such final decree. Upon termination of this Agreement, the Plan Administrator will have no further duties or obligations hereunder or as Plan Administrator, except as specifically provided herein. Sections [___] of this Agreement and any other provision in the Agreement that, by its terms, specifically survives termination of the Agreement will survive termination of this Agreement.

15

22.     *Headings*. The section headings contained in this Agreement are for reference purposes only and will not affect in any way the meaning or interpretation of this Agreement or of any term or provision hereof.

23.     *Amendment; Waiver*. Upon notice to the Oversight Committee, the Plan Administrator may modify, supplement, or amend this Agreement to clarify any ambiguity or inconsistency, or render the Agreement in compliance with its stated purposes, if such amendment is not material and does adversely affect the interests, rights or treatment of the parties or the Oversight Committee. With respect to all other amendments of this Agreement, the Plan Administrator may amend this Agreement with the unanimous consent of the Oversight Committee.

24.     *Third-Party Beneficiaries*. The Oversight Committee is a third-party beneficiary of this Agreement and is entitled to enforce the terms hereof. Except as otherwise specifically provided in this Agreement, the Plan, or the Confirmation Order, nothing herein is intended or shall be construed to confer on or to give any person other than the parties hereto and any rights or remedies under or by reason of this Agreement.

25.     *Governing Law*. This Agreement will be governed by and construed in accordance with the laws of the State of Delaware without regard to the rules of conflict of laws of the State of Delaware or any other jurisdiction.

26.     *Retention of Jurisdiction*. The Bankruptcy Court will retain jurisdiction over the Debtor to the fullest extent permitted by law, including, but not limited to, for the purposes of interpreting and enforcing the provisions of this Agreement. Each party to this Agreement hereby irrevocably consents to the jurisdiction of the Bankruptcy Court in any action to enforce, interpret, or construe any provision of this Agreement or of any other agreement or document

delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens, or lack of personal jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that any action to enforce, interpret, or construe any provision of this Agreement will be brought only in the Bankruptcy Court. Each party hereby irrevocably consents to the service of any process in any action to enforce, interpret or construe any provision of this Agreement through the method of notice provided for in this Agreement. Notwithstanding the preceding, nothing herein shall be interpreted as requiring the commencement or prosecution of any Causes of Action in the Bankruptcy Court, and all determinations regarding the proper forum for initiating any Cause of Action shall be at the discretion of the Plan Administrator consistent with applicable law.

27.     *Dispute Resolution*. Except as authorized by an order of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding may be commenced against the Plan Administrator in the Plan Administrator's official capacity as such with respect the Plan Administrator's status, duties, powers, acts, or omissions in any forum other than the Bankruptcy Court.

28.     *Conflict with Plan*. The principal purpose of this Agreement is to aid in the implementation of the Plan and Confirmation Order and, therefore, this Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that the provisions of this Agreement are found to be inconsistent with the provisions of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order, as applicable, will control.

29.     *Severability*. If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable, this Agreement will be deemed to be amended to the extent

necessary to make such provision enforceable, or, if necessary, this Agreement will be deemed amended to delete the unenforceable provision or portion thereof. In the event any provision is deleted or amended, the remaining provisions will remain in full force and effect. Notwithstanding the foregoing, the parties recognize and agree that this Agreement is to be interpreted and applied in such manner as to, as nearly as possible, give effect to the parties' intent as to all provisions hereof, including, without limitation, such provisions as may be declared to be unenforceable.

30.     *Integration*. This Agreement (together with the Plan, the Operating Agreement, and the Confirmation Order) sets forth the whole agreement between the parties with respect to the transactions contemplated herein, superseding all other discussions, promises, representations, warranties, agreements, and understandings, whether written or oral, between the parties with respect thereto.

31.     *Successors and Assigns*. Except as provided herein, no party hereto will have the right to assign its rights hereunder.

32.     *Notice*. Notices or other documents required to be delivered to the Plan Administrator under this Agreement shall be in writing and shall be deemed to have been duly given to a person, if delivered in person or if sent by overnight mail, registered mail, certified mail, regular mail, with postage prepaid or e-mail, to the following addresses::

If to the Debtor or the Plan Administrator:

[_____]

with a copy to:

[_____]

If the Plan Administrator is required to provide notice to the Oversight Committee pursuant to this Agreement, such notice will be served to the address (or, in the case of electronic communication, email address) for the members of the Oversight Committee last known to the Plan Administrator as of the Effective Date, or as otherwise updated in writing (which may be email) to the Plan Administrator.

33.    *Counterparts; Effectiveness*. This Agreement may be executed in one or more counterparts, each of which will be an original, but all such counterparts together constitute one and the same agreement. Provided that the Effective Date has occurred, this Agreement will become effective when each party hereto has received a counterpart thereof signed by the other parties hereto. The parties agree that this Agreement will be considered signed when the signature of a party is delivered by facsimile or e-mail transmission. Such facsimile or e-mail signature will be treated in all respects as having the same effect as an original signature.

[*The remainder of this page is intentionally left blank.*]

**[SIGNATURE PAGE FOLLOWS.]**

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers or representatives, all as of the date first above written.

**DEBTOR**

**GRIDDY ENERGY LLC**


**By:** _____
**Name:** _____
**Title:** _____



**PLAN ADMINISTRATOR**


**By:** _____



AGREED AND ACKNOWLEDGED BY:

Members of the Oversight Committee

[To be Added]


_____