**<u>EXHIBIT B</u>**

Second Amended and Restated Limited Liability Company Agreement of Griddy Energy LLC

SECOND AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT

OF

GRIDDY ENERGY LLC

A DELAWARE LIMITED LIABILITY COMPANY

EFFECTIVE AS OF [●], 2021

# TABLE OF CONTENTS

**Page**

ARTICLE I ORGANIZATION .................................................................... 2

    Section 1.1    Formation ................................................................. 2
    Section 1.2    Name ...................................................................... 2
    Section 1.3    Purpose .................................................................. 2
    Section 1.4    Term ...................................................................... 2
    Section 1.5    Principal Office ........................................................ 2
    Section 1.6    Registered Office; Registered Agent ............................. 2
    Section 1.7    Powers of the Company .............................................. 3

ARTICLE II MEMBERS; LIMITED LIABILITY COMPANY INTERESTS ........................... 3

    Section 2.1    Initial Member ......................................................... 3
    Section 2.2    Limited Liability Company Interests .............................. 3
    Section 2.3    Effect of Resignation, Death or Removal of the Member ........ 3
    Section 2.4    Powers of Member ..................................................... 4
    Section 2.5    Officers. ................................................................. 4
    Section 2.6    Title to Company Property ........................................... 5
    Section 2.7    No State Law Partnership ............................................ 5
    Section 2.8    Maintenance of Separate Existence ................................ 5

ARTICLE III MANAGEMENT OF THE COMPANY ............................................... 5

    Section 3.1    Authority, Power and Duties of the Member ..................... 5

ARTICLE IV UNITS ............................................................................. 5

    Section 4.1    Authorized Units ...................................................... 5
    Section 4.2    Initial Issuance of Common Unit; Admission of The Member .... 5

ARTICLE V CAPITAL CONTRIBUTIONS; DISTRIBUTIONS ................................... 5

    Section 5.1    Capital Contributions ................................................ 6
    Section 5.2    Distributions ........................................................... 6

ARTICLE VI DISSOLUTION; DEEMED LIQUIDATION EVENT; TERMINATION ............. 6

    Section 6.1    Dissolution ............................................................. 6
    Section 6.2    Termination ............................................................ 6

ARTICLE VII TRANSFERS OF UNITS ......................................................... 6

    Section 7.1    General; Permitted Transfers ........................................ 6
    Section 7.2    Restrictions on Transfer ............................................. 7

ARTICLE VIII ADMINISTRATIVE MATTERS ................................................. 7

    Section 8.1    Maintenance of Records .............................................. 7
    Section 8.2    Accounting Methods .................................................. 7
    Section 8.3    Fiscal Year; Taxable Year ............................................ 7
    Section 8.4    Tax Classification ..................................................... 7

i

Section 8.5    Tax Returns ................................................................................................ 7

ARTICLE IX LIMITED LIABILITY; INDEMNIFICATION & EXCULPATION .................... 8

Section 9.1    Limited Liability of Member ........................................................................ 8
Section 9.2    Indemnification ............................................................................................ 8
Section 9.3    Payment of Expenses in Advance ................................................................ 8
Section 9.4    No Impairment ............................................................................................. 8

ARTICLE X GENERAL PROVISIONS ................................................................................... 9

Section 10.1    Amendments and Waivers ......................................................................... 9
Section 10.2    Entire Agreement ...................................................................................... 9
Section 10.3    GOVERNING LAW .................................................................................. 9
Section 10.4    No Third Party Beneficiaries .................................................................... 9
Section 10.5    Severability ............................................................................................... 9

## SECOND AMENDED AND RESTATED
## LIMITED LIABILITY COMPANY AGREEMENT
## OF
## GRIDDY ENERGY LLC

**THIS SECOND AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT** (as it may be amended from time to time in accordance with its terms, this "*Agreement*"), effective as of [●], 2021 (the "*Effective Date*"), of Griddy Energy LLC, a Delaware limited liability company (the "*Company*"), is executed by [●] as the sole member of the Company (the "*Member*"). Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in that certain *Modified Third Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code*, dated May 26, 2021 (as amended, supplemented or modified from time to time, the "*Plan*"), and the rules of interpretation set forth in Article 1.B. of the Plan also apply for purposes of this Agreement.

### RECITALS

WHEREAS, the Company was organized as a Delaware limited liability company on March 7, 2016 (the "*Commencement Date*") by the filing of a Certificate of Formation (the "*Certificate*") with the Secretary of State of the State of Delaware pursuant to and in accordance with the Delaware Limited Liability Company Act, as amended from time to time (the "*Delaware Act*");

WHEREAS, the Company adopted that certain First Amended and Restated Limited Liability Company Agreement of the Company, effective as of December 1, 2020 (the "*Amended LLC Agreement*");

WHEREAS, on March 15, 2021, the Company commenced a voluntary chapter 11 case, styled "In re GRIDDY ENERGY LLC," administered under Case No. 21-30923 (the "*Chapter 11 Case*") under title 11 of the United States Code (as may be amended from time to time, the "*Bankruptcy Code*"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "*Bankruptcy Court*");

WHEREAS, on May 26, 2021, the Company filed the Plan and related disclosure statement (the "*Disclosure Statement*") with the Bankruptcy Court;

WHEREAS, on May 26, 2021, the Court entered an order conditionally approving the Disclosure Statement;

WHEREAS, on [●], 2021, the Bankruptcy Court entered an order approving the Disclosure Statement on a final basis and confirming the Plan (the "*Confirmation Order*");

WHEREAS, on the date hereof, the Plan has become effective and [_____] has been appointed as the Plan Administrator of the Plan;

WHEREAS, pursuant to the Plan, the Plan Administrator is the sole member and manager of the Company;

1

WHEREAS, in connection with the Plan and the liquidation of the Company as contemplated by the Plan and the Confirmation Order, all of the Company's previously-existing equity interests, options, warrants or other rights, contractual or otherwise, to acquire such interests in the Company, have been cancelled;

WHEREAS, in connection with the Plan and the liquidation of the Company pursuant to the Plan and the Confirmation Order, the Company issued 1 Common Unit representing a 100% membership interest in the Company to the Member;

WHEREAS, in connection with the Plan and the liquidation of the Company, concurrently herewith the Member entered into that certain *Plan Administrator Agreement* (the "Plan Administrator Agreement"); and

WHEREAS, the Member desires to amend and restate the Amended LLC Agreement in its entirety as set forth herein and this Agreement hereby amends, restates and supersedes the Amended LLC Agreement in its entirety.

NOW, THEREFORE, the Member hereby adopts the following:

# ARTICLE I

## ORGANIZATION

Section 1.1    Formation. The Company and the Units shall be governed by the terms and conditions of this Agreement and, except as otherwise provided herein, the Delaware Act.

Section 1.2    Name. The name of the Company is "Griddy Energy LLC."

Section 1.3    Purpose. The purpose of the Company is to act exclusively for the purposes of liquidating the Company's bankruptcy estate pursuant to the Plan, including, without limitation, as set forth in Article VI and Section 12.13 of the Plan, and the Confirmation Order.

Section 1.4    Term. The Company commenced its existence on the Commencement Date and will continue in existence until terminated pursuant to ARTICLE VI hereof.

Section 1.5    Principal Office. The principal office of the Company will be located at such place or places inside or outside the State of Delaware as the Member may designate from time to time.

Section 1.6    Registered Office; Registered Agent. The registered office and registered agent of the Company is as set forth in the Certificate. At any time (subject to the terms of the Plan Administrator Agreement), the Member may designate another registered agent and/or registered office and file an amendment of the Certificate reflecting such change, without the consent of any other Person being required.

Section 1.7 <u>Powers of the Company</u>. Subject to the limitations set forth in this Agreement, the Plan and the Confirmation Order, the Company shall possess and may exercise all of the powers and privileges granted to it by the Delaware Act, by any other applicable law or this Agreement, together with all powers incidental thereto, so far as such powers are necessary or convenient to the conduct, promotion or attainment of the purposes of the Company set forth in <u>Section 1.3</u>.

## ARTICLE II

## MEMBERS; LIMITED LIABILITY COMPANY INTERESTS

Section 2.1 <u>Initial Member</u>. The Member owns 100% of the membership interests in the Company.  The name and the mailing address of the Member are as follows:

| Name | Address |
|---|---|
| [●], in his capacity as Plan Administrator | [●] [●] |

Section 2.2 <u>Limited Liability Company Interests</u>. The limited liability company membership interests in the Company are divided into and represented by "***Units***." As of the Effective Date, the Company is authorized to issue one class of Units designated as "***Common Units***." A holder of a Unit will have the rights, powers, duties, obligations, preferences and privileges attributable to such Unit as is set forth in this Agreement, provided, however, that for the avoidance of doubt, (i) the ownership of the Units shall not represent any right to participate in any profits of the Company or in any economic benefit resulting from the assets of the Company, and (ii) any and all economic benefits resulting from the assets of the Company shall be distributed in accordance with Article VIII of the Plan. The Units are being held by the Member solely in his capacity as the Plan Administrator and are not being issued to the Member as compensation for services; rather, the Member will be compensated for his services to the Company and in connection with the Plan solely pursuant to the Plan Administrator Agreement. The Company shall not issue any non-voting equity securities to the extent prohibited by Section 1123 of the Bankruptcy Code as in effect on the Effective Date; *provided, however*, that the foregoing (a) shall have no further force and effect beyond that required under Section 1123 of the Bankruptcy Code, (b) shall have such force and effect, if any, only for so long as such section of the Bankruptcy Code is in effect and applicable to the Company, and (c) in all events may be amended or eliminated in accordance with applicable law as from time to time may be in effect.  Notwithstanding anything contained in this Agreement to the contrary, in accordance with the terms of the Plan, Griddy Holdings LLC, as the holder of an Allowed Class 7 Interest (as defined in the Plan), has retained its equity interest in the Company solely for the purpose of evidencing a right of distribution under the Plan.

Section 2.3 <u>Effect of Resignation, Death or Removal of the Member</u>. The replacement of the Member in the event of his resignation, death or removal pursuant to the Plan Administrator Agreement shall be governed by the Plan Administrator Agreement and the Plan. The resigning or removed Member (or the executor or other representative of the deceased or incapacitated Member) shall transfer, in exchange for consideration of one dollar ($1.00), all Common Units to the successor Member.

3

Section 2.4   <u>Powers of Member</u>.  The Member will have only the power to exercise the rights specifically granted to the Member pursuant to the express terms of this Agreement, the Plan Administrator Agreement, the Plan, including without limitation as set forth in Article VII and Section 12.13 of the Plan, and the Confirmation Order.

Section 2.5   <u>Officers.</u>

(a)   *Designation and Election.*  The Member shall have the authority to elect officers of the Company to the extent reasonably necessary, including a President and Chief Executive Officer, a Chief Financial Officer, a Secretary and such other officers, including Vice Presidents and assistant officers, as it may from time to time determine (subject in all respects to the terms of the Plan Administrator Agreement).  Any two or more offices may be held by the same person.

(b)   *Authority and Duties of Officers.*

(i)   *<u>President and Chief Executive Officer</u>*.  The President and Chief Executive Officer, if any, shall be the chief executive officer of the Company and shall have general executive charge, management, and control of the properties and operations of the Company in the ordinary course of its business, with all such powers with respect to such properties and operations as may be reasonably incident to such responsibilities, subject in all respects to the Plan Administrator Agreement, the Plan, and the Confirmation Order.

(ii)   *<u>Secretary</u>*.  Except as otherwise provided in this Agreement, the Secretary shall keep the minutes of all meetings of the Company in books provided for that purpose, shall issue and execute certificates attesting to the corporate matters or records of the Company, and shall attend to the giving and service of all notices.  He or she may sign with the President and Chief Executive Officer, in the name of the Company, all contracts of the Company.  He or she shall in general perform all duties incident to the office of the Secretary, subject to the control of the Member and the President and Chief Executive Officer (and subject in all respects to the terms of the Plan Administrator Agreement).

(iii)   Subject to the provisions of this <u>ARTICLE II</u>, all officers of the Company shall have such powers and authority, subject to the direction and control of the Member (and subject in all respects to the terms of the Plan Administrator Agreement), and shall perform such duties in connection with the management of the business and affairs of the Company as are provided in this Agreement (subject in all respects to the terms of the Plan Administrator  Agreement), or as may be determined from time to time by the Member (subject in all respects to the terms of the Plan Administrator Agreement). In the absence of a contrary determination by the Member (subject in all respects to the terms of the Plan Administrator Agreement), each officer shall have such powers and authority as would be incident to his or her office if he or she served as a comparable officer of a Delaware corporation.

**(iv)**   The initial President, Chief Executive Officer and Secretary shall be **[the Plan Administrator]**.

4

Section 2.6    <u>Title to Company Property</u>. All property of the Company, whether real, personal or mixed, tangible or intangible, shall be deemed to be owned by the Company as an entity, and the Member, individually, shall not have any direct ownership interest in such property.

Section 2.7    <u>No State Law Partnership</u>. No provision of this Agreement shall be deemed or construed to constitute the Company as a partnership (including, without limitation, a limited partnership).

Section 2.8    <u>Maintenance of Separate Existence</u>. The Company shall do all things necessary to maintain its limited liability company existence separate and apart from the existence of the Member.

## ARTICLE III

### MANAGEMENT OF THE COMPANY

Section 3.1    <u>Authority, Power and Duties of the Member</u>. Subject to <u>Section 2.4</u>, the Member shall be the manager of the Company and have exclusive and complete authority and discretion to manage the operations and affairs of the Company and to make all decisions regarding the business of the Company, subject in all respects to the Plan Administrator Agreement, the Plan and the Confirmation Order. Any action taken by the Member shall constitute the act of and serve to bind the Company. Persons dealing with the Company are entitled to rely conclusively on the power and authority of the Member as set forth in this Agreement. The Member shall have all rights and powers of a manager under the Act, and shall have such authority, rights and powers in the management of the Company to do any and all other acts and things necessary, proper, convenient or advisable to effectuate the purposes of this Agreement (subject in all respects to the terms of the Plan Administrator Agreement).

## ARTICLE IV

### UNITS

Section 4.1    <u>Authorized Units</u>. As of the Effective Date, the Company is authorized to issue 1 Common Unit pursuant to this Agreement.  All Common Units shall be evidenced in book-entry or similar form and maintained by or on behalf of the Company in such form.

Section 4.2    <u>Initial Issuance of Common Unit; Admission of The Member</u>. On the Effective Date, the Company issued one Common Unit to the Member in accordance with the Plan and the Member was admitted as the Member of the Company.

## ARTICLE V

### CAPITAL CONTRIBUTIONS; DISTRIBUTIONS

Section 5.1    <u>Capital Contributions</u>. Except as required by applicable law, the Member is not obligated to make any capital contributions to the Company.

Section 5.2    <u>Distributions</u>.

(a)    <u>Distributions, Generally</u>. Except for compensation disclosed as part of the chapter 11 Plan process or as otherwise permitted by the Bankruptcy Court, under no circumstances shall the Member be entitled to receive any distributions of Company assets.  Any and all distributions of assets shall be made exclusively in conformity with Article VIII of the Plan as well as the Confirmation Order.

(b)    <u>Limitations on Distributions</u>. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not make a distribution of assets if such distribution would violate the provisions of the Plan or the Confirmation Order or any applicable law.

## ARTICLE VI

## DISSOLUTION; DEEMED
## LIQUIDATION EVENT; TERMINATION

Section 6.1    <u>Dissolution</u>. Subject to the terms of the Plan and the Confirmation Order, the Company will be dissolved as soon as reasonably practicable upon the first to occur of the following (a "***Liquidation Event***"): (a) after all Distributions have been made to holders of Allowed Claims in accordance with the terms of the Plan and the Confirmation Order; (b) the Chapter 11 Case is closed; (c) at such time as the Company has no Members, unless the Company is continued in accordance with the Delaware Act; or (d) the entry of a decree of judicial dissolution of the Company under Section 18-802 of the Delaware Act. Upon a Liquidation Event, (i) the Company's affairs will be wound up as soon as is practicable, and the Company will engage in no further business except as may be necessary, in the reasonable discretion of the Member (subject in all respects to the terms of the Plan Administrator  Agreement), to preserve the value of the Company's assets during the period of dissolution and liquidation, and (ii) the assets of the Company (including, without limitation, proceeds from the sale or disposition of any assets during the period of dissolution and liquidation) shall be applied in accordance with the Plan, including in accordance with Article VIII of the Plan, and the Confirmation Order.

Section 6.2    <u>Termination</u>. The Company and this Agreement will terminate when all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company, have been distributed in the manner provided for in this <u>ARTICLE VI</u>, and the Certificate has been canceled in the manner required by the Delaware Act.

## ARTICLE VII

## TRANSFERS OF UNITS

Section 7.1    <u>General; Permitted Transfers</u>.

6

     (a)    <u>Transfer of Units, Generally</u>. No Units shall be transferred, in whole or in part, except in the event of the resignation, death or removal of the Member described in <u>Section 2.3</u>. Any successor Member shall execute a joinder to this Agreement as a condition precedent to receiving any Units. Any transfer of Units that is not in compliance with the terms of this Agreement, the Plan or Confirmation Order, as applicable, is void *ab initio*. Upon its admission as the Member, the transferee will succeed to all of the rights and obligations of the transferring Member to the extent attributable to the Units transferred to such transferee.

     (b)    <u>Effect of Disposition of Units</u>. Following a permitted transfer of Units by the Member to a transferee, the transferring Member will no longer have any of the rights, powers, duties, obligations, preferences or privileges attributable to such Member, except as explicitly provided for in this Agreement.

     Section 7.2    <u>Restrictions on Transfer</u>. Notwithstanding anything in this Agreement to the contrary, no transfer of any Units shall be made if such transfer would violate then applicable law.

## ARTICLE VIII

## ADMINISTRATIVE MATTERS

     Section 8.1    <u>Maintenance of Records</u>. The Company shall maintain books and records necessary, convenient or incidental to recording the Company's business and affairs.

     Section 8.2    <u>Accounting Methods</u>. The books and records of the Company shall be kept on an accrual basis for financial reporting and tax purposes. All financial records shall be maintained in accordance with GAAP.

     Section 8.3    <u>Fiscal Year; Taxable Year</u>. The fiscal year (the "***Fiscal Year***") of the Company is the calendar year; provided that the Fiscal Year for 2021 will begin on the Effective Date. The taxable year (the "***Taxable Year***") of the Company is the Fiscal Year, except as otherwise required under the Code, the Treasury Regulations or other applicable laws.

     Section 8.4    <u>Tax Classification</u>. The Company has made an election to be classified as an association taxable as a corporation for U.S. federal income tax purposes and has or will make a similar election for purposes of applicable state and local income tax purposes if any additional election is needed so that the Company is taxed as a corporation for applicable state and local income tax purposes whenever possible. The Member (subject to the terms of the Plan Administrator Agreement) shall take all reasonable actions as may reasonably be required in order for the Company to qualify for classification as a corporation for U.S. federal and applicable state, local and foreign income tax purposes.

     Section 8.5    <u>Tax Returns</u>. The Company shall also cause to be prepared and filed all tax returns required of the Company.

# ARTICLE IX

# LIMITED LIABILITY; INDEMNIFICATION & EXCULPATION

Section 9.1     Limited Liability of Member. Except to the extent provided by the Delaware Act, the Member will not be liable: (i) for the debts, obligations or liabilities of the Company, or (ii) to the Company for any loss, damage or claim incurred by reason of any action taken or omitted to be taken by such Member in good-faith reliance on the provisions of the Plan Administrator Agreement or this Agreement, so long as such action or omission does not constitute bad faith, willful misconduct, fraud or gross negligence by such Member, as determined by a final order of a court of competent jurisdiction. The Member shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements (including financial statements and information, opinions, reports or statements as to the value or amount of the assets, liabilities, net income or net losses of the Company or any facts pertinent to the existence and amount of assets from which Distributions might properly be paid) of the following Persons or groups: (i) any attorney, independent accountant, appraiser or other expert or professional employed or engaged by or on behalf of the Company; or (ii) any other Person selected in good faith by or on behalf of the Company, in each case as to matters that such relying Person reasonably believes to be within such other Person's professional or expert competence. The preceding sentence shall in no way limit any Person's right to rely on information to the extent provided in § 18-406 of the Delaware Act.

Section 9.2     Indemnification. The Company, its receiver or its trustee shall, to the fullest extent permitted by applicable law and the Plan, indemnify, defend and hold harmless each Mandatory Indemnified Party from and against any expense, loss, damage or liability (including reasonable attorneys' fees) (the "*Indemnified Liabilities*") incurred in connection with, or any legal proceeding arising from or related to, the Company or any act or omission of such Person on behalf of the Company; provided, that such conduct did not constitute willful misconduct, fraud or gross negligence, as determined by a final order of a court of competent jurisdiction. As used herein, "*Mandatory Indemnified Party*" means any Person (and the partners, members, directors, stockholders, employees, agents, heirs, personal representatives, and successors of such Person) who is or was a Member or officer of the Company following the Effective Date.

Section 9.3     Payment of Expenses in Advance. Except as otherwise provided in the Plan, expenses incurred in defending any legal proceeding for which indemnification is required pursuant to Section 9.2 hereof shall be paid by the Company in advance of the final disposition of such Legal Proceeding, provided the Company has received a written undertaking by or on behalf of the Mandatory Indemnified Party to repay all amounts so advanced if it is ultimately determined by a final, non-appealable order of a court of competent jurisdiction that such Person is not entitled to be indemnified pursuant to this ARTICLE IX.

Section 9.4     No Impairment. No amendment or modification of this Agreement may impair the rights of any Person under this ARTICLE IX arising at any time with respect to events occurring prior to such amendment or modification.

## ARTICLE X

## GENERAL PROVISIONS

Section 10.1    Amendments and Waivers. This Agreement may be amended, and the observance of any provision of this Agreement may be waived (either generally or in a particular instance, and either retroactively or prospectively), only upon the written consent of the Member (but only consistent with the Plan, the Plan Administrator Agreement, and the Confirmation Order) or as may be approved by the Bankruptcy Court.

Section 10.2    Entire Agreement. This Agreement constitutes the entire understanding and agreement among the parties hereto with respect to the subject matter hereof. The Amended LLC Agreement is deemed amended and restated and superseded and replaced in its entirety by this Agreement and is of no further force or effect.

Section 10.3    GOVERNING LAW. THE PROVISIONS OF THIS AGREEMENT ARE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE WITHOUT GIVING EFFECT TO ANY CHOICE OR CONFLICT OF LAW PROVISION OR RULE (WHETHER OF THE STATE OF DELAWARE OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE APPLICATION OF THE LAWS OF ANY JURISDICTION OTHER THAN THE STATE OF DELAWARE.

Section 10.4    No Third Party Beneficiaries. Except as expressly set forth in this Agreement and except for a Mandatory Indemnified Party, none of the provisions in this Agreement are for the benefit of or enforceable by any Person other than the parties to this Agreement (including the parties expressly deemed to be party hereto in accordance with the terms of this Agreement) their respective successors and assigns.

Section 10.5    Severability. In case any one or more of the provisions of this Agreement is for any reason held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality, or unenforceability will not affect any other provision of this Agreement, and such invalid, illegal, or unenforceable provision will be reformed and construed so that it will be valid, legal, and enforceable to the maximum extent permitted by applicable law and still be consistent with the intentions of the parties hereto.

* * * * * *

IN WITNESS WHEREOF, the undersigned has executed this Agreement to be effective as of the date first above written.

By: _____
Name: **[●]**
Title:   Sole Member