## **EXHIBIT D**

Consulting Agreement

**CONSULTING AGREEMENT**

This CONSULTING AGREEMENT (this "Agreement") is effective as of [●], 2021 (the "Effective Date"), by and between New Utility Holdings LLC, a Delaware limited liability company ("Consultant") and Griddy Energy LLC, a Delaware limited liability company (the "Company"). Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in that certain *Modified Third Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code*, dated May 26, 2021 (as amended, supplemented or modified from time to time, the "Plan").

WHEREAS, on March 15, 2021, the Company commenced a voluntary chapter 11 case, styled "In re GRIDDY ENERGY LLC," administered under Case No. 21-30923 (the "Chapter 11 Case") under title 11 of the United States Code (as may be amended from time to time, the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court");

WHEREAS, on May 26, 2021, the Company filed the Plan and related disclosure statement (the "Disclosure Statement") with the Bankruptcy Court;

WHEREAS, on May 26, 2021, the Court entered an order conditionally approving the Disclosure Statement;

WHEREAS, on [●], 2021, the Bankruptcy Court entered an order approving the Disclosure Statement on a final basis and confirming the Plan;

WHEREAS, on the date hereof, the Plan has become effective and [●] has been appointed as the Plan Administrator of the Plan;

WHEREAS, the Plan Administrator is the sole member and manager of the Company;

WHEREAS, as part of a settlement with the Company's prepetition lenders and the Official Committee of Unsecured Creditors of the Company in the Chapter 11 Case (the "Settlement"), Consultant agreed to provide reasonable assistance to the Plan Administrator in connection with the prosecution of causes of action on terms and conditions to be agreed; and

WHEREAS, the Company desires to engage the services of Consultant to assist in providing the Services (as defined below), and Consultant is willing to accept such engagement subject to the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises contained in this Agreement and other good and valuable consideration, the parties agree as follows:

**1.     Term.** This Agreement shall be effective on the Effective Date and shall continue until (i) the six month anniversary of the Effective Date or (ii) as agreed to in writing by the Company and Consultant; *provided, however*, that any covenant or obligation that by its terms survives the termination of this Agreement, including Section 5, Section 6 and Section 7 shall continue in full force and effect until completed.

**2.     Services.** Consultant agrees to provide consulting services reasonably requested by the Company from time to time that are reasonably necessary in connection with the pursuit of prepetition causes of action by the Company (the "Services"); *provided*, *however*, that the Services shall be limited to

an aggregate amount of up to (i) 30 hours per month during the Term; *provided*, *further*, that the Services of each individual director, officer, or employee of Consultant shall be limited to 10 hours per month during the Term. It is understood and agreed by the parties hereto that the Services to be provided will be the types of services an officer or director of a similar company would provide to such company, and entail high-level support to the Company regarding factual background related to the Debtor, the events that impacted the Debtor's business related to the winter storm event that occurred in Texas in February 2021, and other high-level consulting advice regarding the pursuit of causes of action related to the foregoing as may be reasonably requested by the Company in connection therewith. For the avoidance of doubt, the Services do not include the provision of (a) oral or written testimony or the preparation of discovery materials unless otherwise agreed in writing between the Debtor and Consultant or compelled by law, (and for which Consultant would be compensated as mutually agreed between the parties) and (b) administrative or clerical services, banking, accounting, tax related and other similar types of services.

**3.** **Fees and Expenses.** During the Term and subject to the proviso in Section 2 above, in consideration of the Services and the mutual promises and covenants contained in the Settlement, (i) Consultant shall not be compensated and (ii) the Company shall reimburse all reasonable and documented out-of-pocket expenses of the Consultant relating to the provision of the Services.

**4.** **Liability and Insurance.** Consultant is responsible for maintaining its own health, disability, liability, and other similar insurance policies on behalf of its members, employees and agents, as applicable, and Consultant agrees that the Company is not under any obligation to and shall not at any time provide such insurance for Consultant's members, employees or agents. It is the intent of the parties to create an independent contractor relationship. Consultant cannot act for or bind Company or incur any debts or liabilities in the name of Company.

**5.** **Confidentiality.** In connection with the execution of this Agreement and the provision of the Services, Consultant acknowledges and agrees that Consultant and its Associates (as defined below) may have access to certain Confidential Information of the Company and its Associates. Said information shall be governed as follows:

(a) As used in this Agreement, "Confidential Information" means any proprietary, secret or confidential information of the Company or its Associates, disclosed to or otherwise obtained by Consultant or its Associates in connection with the Services. Notwithstanding the foregoing, Confidential Information does not include any proprietary, secret or confidential information of the Company which: (i) was known by Consultant or its Associates at the time of its receipt from the Company or its Associates; (ii) prior to or after the time the disclosure becomes generally available to the public, not as a result of any inaction or action of Consultant or its Associates in violation of its obligations hereunder; (iii) is obtained by Consultant or its Associates from a source other than the Company or its Associates, which source does not have any obligation of confidentiality to the Company or its Associates; (iv) is approved, in writing, for release by the Company; or (v) was independently developed by Consultant or its Associates without use of or reference to the Confidential Information.

(b) Except as directed or agreed to by the Company, Consultant hereby agrees not to, and will direct its Associates not to, disclose the Confidential Information or use the Confidential Information for any purpose except providing Services hereunder. Consultant will not, and will direct its Associates not to, disclose any Confidential Information to third parties except those Associates of Consultant who are similarly bound by a duty of confidentiality and are required to have the information in order to carry out the Services. Consultant shall inform its Associates of the confidential nature of the Confidential Information and shall instruct them to treat the information confidentially. Consultant shall be responsible for any breach of this Agreement by

its Associates and agrees, at its sole expense, to take all reasonable measures to restrain its Associates from prohibited or unauthorized disclosure or use of the Confidential Information.

(c) In the event that Consultant or its Associates become legally compelled under applicable law, regulation, or by a competent governmental, administrative or regulatory authority or in a proceeding before a court, arbitrator or administrative agency to disclose any portion of the Confidential Information, Consultant will, and will direct its Associates to, use its reasonable efforts to cooperate with the Company at the Company's sole cost and expense in any attempt the Company may make to obtain a protective order or other appropriate remedy or with respect to Consultant's and/or its Associates' seeking a waiver of compliance with the relevant provisions of this Agreement. In the event that a protective order or other remedy is not obtained in such a proceeding, or the Company fails to waive compliance with the relevant provisions of this Agreement, Consultant agrees that it will, and will direct its Associates to, disclose only that Confidential Information which its counsel advises is legally required to be disclosed and will exercise commercially reasonable efforts, and will direct its Associates to exercise their commercially reasonable efforts, to cooperate with the Company to obtain reliable assurance that confidential treatment will be accorded the Confidential Information which is so disclosed.

(d) Upon written request by the Company, Consultant shall promptly return to the Company or destroy and ensure that its Associates promptly return or destroy, all documents or other tangible materials representing Confidential Information. Notwithstanding the foregoing, Consultant shall be entitled to retain archival copies of the Confidential Information for legal, regulatory, or compliance purposes, and nothing shall require the erasure or destruction of back-up media made in accordance with Consultant's document-retention procedures.

(e) For purposes of this Agreement, "Associates" means subsidiaries and other individuals and entities controlled, directly or indirectly, by a party or under common control with a party, as well as the respective directors, officers, employees, members, managers, agents, representatives, consultants, accountants, legal counsel, insurers and/or advisors of the party or such subsidiaries, individuals or entities. For purposes of this definition, "control" means the possession of the power to direct or cause the direction of the management and policies of such person, whether through the ownership of voting securities, by contract or otherwise.

**6.  Limitation of Liability and Damages; Amount of Damages.**

(a) Company understands that Consultant will receive no compensation or remuneration for the Services and that Consultant's agreement to offer its services without compensation is based on, among other things, the Company's agreement to limit Consultant's liability. Notwithstanding anything to the contrary contained herein, Consultant and its Associates shall have no liability to the Company or its Associates, or any creditor or former customer of the Company or any other third party with respect to the performance of any Services hereunder (regardless of whether such liability arises from the negligence or other fault of Consultant or any of its Associates), except to the extent such liability is determined by a court of competent jurisdiction to arise from actual intentional fraud, gross negligence, or willful misconduct of Consultant or any of its Associates.

(b) Notwithstanding anything to the contrary contained in this Agreement, no action or inaction by any party or any of their Associates shall be deemed to be a breach of this Agreement for any purpose hereunder, and no party shall have any claim or recourse against another party with respect to such action or inaction to the extent (i) the other party or any of its Associates was required to take or not to take such action pursuant to the terms of this Agreement

3

or applicable law or (ii) such party or any of its Associates has directed or requested the other party or any of its Associates to take or not take such action.

(c) To the maximum extent permitted by applicable law, none of the parties shall be liable for any indirect, special, incidental, or consequential damages (including damages for loss of business and loss of future profits, revenue or income, damages based on a multiple of earnings, diminution in value or loss of business reputation or opportunity relating to the breach or alleged breach of this Agreement), whether based on breach of contract, breach of warranty, tort (including negligence), product liability, misrepresentation or otherwise, even if the damages were foreseeable or if such party was advised of the possibility of such damages.

(d) The limitations set forth in this Section 6 shall not apply to the Company's indemnification obligations contained in Section 7.

**7.     Indemnification.**

(a) To the fullest extent permitted by law and the Plan, the Company shall indemnify and hold harmless Consultant and its Associates ("Indemnitees") from and against any and all losses, claims, damages, liabilities, judgements, fines, penalties, interest, assessments, amounts paid or payable in settlement and any and all expenses (including attorneys' fees and expenses) arising from any and all threatened, pending, or completed claims, demands, actions, suits, proceedings, or alternative dispute mechanisms, whether civil, criminal, administrative, arbitrative, investigative, or other, whether made pursuant to federal, provincial, state, or local law, whether formal or informal, and including appeals (a "Proceeding"), in which Consultant may be involved, or is threatened to be involved, as a party, a witness, or otherwise, related to any act or omission of Consultant in the provision of the Services, except to the extent such liability arises from actual intentional fraud, gross negligence, or willful misconduct of Consultant or any of its Associates.

(b) To the fullest extent permitted by law and the Plan, Consultant shall have the right to advancement by the Company, prior to the final disposition of any Proceeding by final adjudication, of any and all expenses actually and reasonably incurred by Consultant (or reasonably expected by Consultant to be incurred by Indemnitee within three months) in connection with any Proceeding for which indemnity is provided under Section 7(a); *provided, however*, that Consultant hereby agrees to repay any amounts paid, advanced, or reimbursed by the Company pursuant to this Section 7(b) in respect of expenses that are not ultimately paid by Consultant or that relate to, arise out of, or result from any Proceeding in respect of which it shall be determined by a final and non-appealable judgment by a court of competent jurisdiction that Consultant is not entitled to be indemnified under the terms of this letter agreement.

**8.     Disclaimer of Warranties.**  The Services and deliverables of Consultant, if any, are provided "As-Is" and, to the maximum extent permitted by applicable law, Consultant and its Associates, disclaim all warranties, express or implied, regarding Consultant's Services and deliverables including any warranty of fitness for a particular purpose, title, merchantability, or non-infringement.

**9.     Continuation of Services.**  If at any time, one or more of the individuals Michael Fallquist, Christian McArthur, or Roop Bhullar are no longer employed or controlled by Consultant, such individual(s) shall enter into a separate consulting agreement, in their individual capacity, with the Company that provides for the continued provision of consulting services on terms that are substantially similar to this Agreement by such individual.

4

**10.     Severability of Covenants.**  If any provision of this Agreement is declared illegal, unenforceable, ineffective, or void, such provision shall be performed to the extent permitted by law, and the remainder of the Agreement will not be affected.

**11.     Mutual Preparation.**  Each party has read this Agreement, fully understands the contents thereof, has been independently advised as to its legal effect, and is under no duress or pressure of any sort to execute it.  This Agreement reflects the mutual understanding of the parties with respect to all subject matter addressed herein and shall be construed accordingly.

**12.     Governing Law and Venue.**  This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Delaware. Each of the parties hereby agrees and irrevocably consents to personal jurisdiction and venue in any state or federal court in Delaware having subject matter jurisdiction, for the purposes of any action, suit or proceeding arising out of or relating to this Agreement.

**13.     Assignment; Successors; No Third-Party Beneficiaries.**  This Agreement may not be assigned by either party without the other party's express written consent to such assignment.  This Agreement shall be binding on and inure to the benefit of the parties to it and their respective permitted successors and/or assigns.  There shall be no third-party beneficiaries to this Agreement.  Consultant may not, without the prior written consent of Company: (i) subcontract any of the Consulting Services provided under this Agreement, or (ii) assign any of its rights or delegate any of its duties pursuant to this Agreement.  Any attempted assignment without Company's consent will be void.

**14.     Entire Agreement.**  This Agreement contains the complete and exclusive agreement of Company and Consultant concerning Consultant's engagement, and all discussions, agreements, and statements are merged into this Agreement.  This Agreement may not be changed orally, but only by an agreement in writing signed by Company and Consultant.

[*Signature page follows*]

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed effective as of the Effective Date.

**COMPANY**:

Griddy Energy LLC

By: _____
Name:
Title:

**CONSULTANT**:

New Utility Holdings LLC

By: _____
Name:
Title:

**MICHAEL FALLQUIST**:

By: _____
Name: Michael Fallquist

**CHRISTIAN MCARTHUR**:

By: _____
Name: Christian McArthur

**ROOP BHULLAR**:

By: _____
Name: Roop Bhullar

[*Signature Page to Consulting Agreement*]