UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| GRIDDY ENERGY LLC,[1] | ) ) ) | Case No. 21-30923 (MI) |
| Debtor. | ) ) ) |  |

**DECLARATION OF ROOP BHULLAR IN SUPPORT OF
(A) APPROVAL OF THE ADEQUACY OF DEBTOR'S DISCLOSURE
STATEMENT ON A FINAL BASIS AND (B) CONFIRMATION OF
THE MODIFIED THIRD AMENDED PLAN OF LIQUIDATION FOR
<u>GRIDDY ENERGY LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

I, Roop Bhullar, hereby declare under penalty of perjury:

1.      I am the Chief Financial Officer of Griddy Energy LLC, the debtor and debtor in possession in the above-captioned case (the "<u>Debtor</u>"). I have served in my current role since December 4, 2020. Prior to my appointment in my current role, I was the Chief Financial Officer of Crius Energy LLC until the business was acquired in July 2019. I have held various accounting and finance positions over the last 20 years, including at two other retail energy businesses as well as at a Big Four public accounting firm. I hold a Bachelor of Management Studies and Bachelor of Laws from the University of Waikato, New Zealand and a Master of Business Administration degree from University of California, Los Angeles. I submit this declaration (this "<u>Declaration</u>") in conjunction with the Debtor's memorandum of law (the "<u>Confirmation Brief</u>") in support of (a) final approval of the *Disclosure Statement for Modified Third Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy*

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Griddy Energy LLC (1396). The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

*Code* [Docket No. 312], dated as of May 26, 2021 (as modified, amended and/or supplemented from time to time, the "Disclosure Statement") and (b) confirmation of the *Modified Third Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* [Docket No. 311], dated as of May 26, 2021 (as modified, amended and/or supplemented from time to time, the "Plan").[2]

2. Except as otherwise indicated, all facts set forth in this Declaration are based upon: (a) my direct personal knowledge of the Debtor's operations and finances; (b) information learned from my review of relevant documents; (c) inquiries made to others; and/or (d) opinion based upon experience and knowledge of the Debtor's business affairs and financial condition and the advice provided by the Debtor's counsel.

3. I am familiar with the terms and provisions of the Plan, the Disclosure Statement, the Plan Supplement (as defined below) and other documents related thereto, having participated in the negotiation and development thereof. I am authorized to submit this Declaration in support of approval of the Disclosure Statement and confirmation of the Plan. If called upon to testify, I could and would testify to the facts set forth herein.

**I.    Notice and Solicitation Procedures**

4. On May 26, 2021, the Court entered an order [Docket No. 308] (the "Combined Hearing Order"), which, among other things: (a) conditionally approved the adequacy of the Disclosure Statement; (b) (i) scheduled a combined hearing to approve the adequacy of the Disclosure Statement on a final basis and confirm the Plan, (ii) established June 25, 2021 at 5:00 p.m. (prevailing Central Time) as the deadline to file objections to the adequacy of the

---

[2] Capitalized terms not otherwise defined herein have the meanings given them in the Disclosure Statement, Plan or Confirmation Brief, as applicable.

Disclosure Statement and/or confirmation of the Plan, (iii) approved the solicitation procedures as described therein with respect to the Plan, which included establishing June 25, 2021 at 5:00 p.m. (prevailing Central Time) as the Voting Deadline, approving the form and manner of service of Ballots and contents of the Solicitation Package, and (iv) approved the form and manner of service of certain notices related to the Plan; and (c) granted related relief.

5. As reflected in affidavits, declarations and certificates of service and publication that have been filed with the Court, the Debtor, with the assistance of its noticing agent, Stretto, solicited acceptances of the Plan and provided notice of the date and time of the confirmation hearing as set forth in the Combined Hearing Order. To the best of my knowledge, the Debtor has complied in good faith with all requirements of the Bankruptcy Code, Bankruptcy Rules, the Bankruptcy Local Rules and solicitation procedures adopted by the Court in the Combined Hearing Order.

## II. The Plan Complies with the Confirmation Standards Set Forth in the Bankruptcy Code[3]

6. Counsel to the Debtor has informed me that the Debtor must demonstrate that the Plan satisfies section 1129 of the Bankruptcy Code in order for the Plan to be confirmed. Based on my understanding of the Plan and discussions that I have had with the Debtor's counsel regarding various orders entered in the chapter 11 case and the requirements of the Bankruptcy Code and applicable law, I believe that the Plan satisfies the confirmation requirements of sections 1129(a) and (b) of the Bankruptcy Code and should be confirmed.

---

[3] I understand that sections 1129(a)(6) (regarding regulatory rate changes), 1129(a)(14) (regarding domestic support obligations), 1129(a)(15) (regarding individual debtors) and 1129(a)(16) (regarding transfers of property by non-moneyed businesses or trusts) are inapplicable to the Debtor.

## A. The Plan Complies with the Applicable Provisions of the Bankruptcy Code as Required by Section 1129(a)(1) of the Bankruptcy Code

### i. The classifications in the Plan are proper (11 U.S.C. § 1122)

7. Counsel to the Debtor has informed me that the classifications in the Plan are proper and in accordance with the standards set forth in section 1122 of the Bankruptcy Code. The Plan provides for the following seven Class of Claims and Interests: (a) Class 1 (Prepetition Lender Claims); (b) Class 2 (Other Secured Claims); (c) Class 3 (Priority Non-Tax Claims); (d) Class 4 (Other General Unsecured Claims); (e) Class 5 (Customer Claims); (f) Class 6 (Intercompany Claims); and (g) Class 7 (Existing HoldCo Interests).

8. Each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. I understand that the Plan's classification scheme recognizes the differing legal and equitable rights of creditors versus interest holders, secured versus unsecured claims and priority versus non-priority claims. Accordingly, I believe that the Plan complies with section 1122 of the Bankruptcy Code.

### ii. The Plan complies with the mandatory requirements under the Bankruptcy Code (11 U.S.C. § 1123(a))

9. Counsel to the Debtor has informed me that section 1123(a) of the Bankruptcy Code sets forth seven requirements applicable to a corporate debtor's plan. Based on my understanding of the requirements of section 1123(a), I believe that the Plan complies with each of these seven requirements:

   a. <u>11 U.S.C. § 1123(a)(1)</u>. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Plan designates 7 different classes of Claims and Interests consistent with the requirement of section 1122.

   b. <u>11 U.S.C. § 1123(a)(2)</u>. In accordance with section 1123(a)(2) of the Bankruptcy Code, Article III of the Plan specifies that Class 2 (Other Secured Claims) and Class 3 (Priority Non-Tax Claims) are not impaired under the Plan.

4

    c. <u>11 U.S.C. § 1123(a)(3)</u>.  In accordance with section 1123(a)(3) of the Bankruptcy Code, Article IV of the Plan specifies that Claims in Class 1 (Prepetition Lender Claims), Class 4 (Other General Unsecured Claims), Class 5 (Customer Claims), Class 6 (Intercompany Claims) and Class 7 (Existing HoldCo Interests) are impaired under the Plan and provides the treatment for each Class.

    d. <u>11 U.S.C. § 1123(a)(4)</u>.  In accordance with section 1123(a)(4) of the Bankruptcy Code, under Article IV of the Plan, each Claim against or Interest in the Debtor in each respective Class is the same as the treatment of every other Claim or Interest in such Class, unless the holder of a particular Claim or Interest has agreed to a less favorable treatment for such Claim or Interest.

    e. <u>11 U.S.C § 1123(a)(5)</u>.  In accordance with section 1123(a)(5) of the Bankruptcy Code, Article VI of the Plan sets forth adequate means for implementation, and contemplates, among other things: (a) the vesting of the Debtor's assets in and the operation of the Debtor after the Effective Date of the Plan; (b) the management of the Debtor by the Plan Administrator; (c) revision of the Debtor's operating agreement; (d) the process for distributions to be made under the Plan; (d) except as set forth in the Plan, the cancellation of existing securities, agreements and security interests; (e) the comprehensive settlement of Claims and controversies; and (f) preservation of Causes of Action not otherwise released under the Plan.

    f. <u>11 U.S.C § 1123(a)(6)</u>.  In accordance with Section 6.01 of Article VI of the Plan, the Debtor's amended and restated limited liability company agreement, a draft of which is contained in the Plan Supplement, prohibits the issuance of nonvoting equity securities to the extent required by section 1123(a)(6) of the Bankruptcy Code.

    g. <u>11 U.S.C. § 1123(a)(7)</u>.  In accordance with section 1123(a)(7) of the Bankruptcy Code, Section 6.02 of Article VI of the Plan, from and after the Effective Date, the Debtor shall be managed and administered by the Plan Administrator, who will be the sole officer, member and manager of the Debtor and will have full authority to administer the provisions of the Plan.  The Plan Administrator has fiduciary duties to the Estate, of which the Debtor's creditors and interests holders are beneficiaries.

       iii. **The Plan contains certain provisions permitted under the Bankruptcy Code (11 U.S.C. § 1123(b))**

10.     Counsel to the Debtor has informed me that section 1123(b) of the Bankruptcy Code sets forth provisions that may be included in a chapter 11 plan.  I believe each of the provisions described below and included in the Plan are permissible under section 1123(b):

5

a. <u>11 U.S.C. § 1123(b)(1)</u>. As permitted by section 1123(b)(1) of the Bankruptcy Code, Article IV of the Plan provides that Classes 2 and 3 are unimpaired because the Plan leaves unaltered the legal, equitable and contractual rights of the holders of Claims within such Classes. Conversely, Classes 1 (Prepetition Lender Claims), 4 (Other General Unsecured Claims), 5 (Customer Claims), 6 (Intercompany Claims) and 7 (Existing HoldCo Interests) are impaired.

b. <u>11 U.S.C. § 1123(b)(2)</u>. As permitted by section 1123(b)(2) of the Bankruptcy Code, Article X of the Plan provides for the rejection of all executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code upon the occurrence of the Effective Date. As the Debtor is liquidating, the Debtor has determined in its business judgment to reject all of its executory contracts because those executory contracts will not be necessary to facilitate the Debtor's orderly winddown in chapter 11 or beneficial to the Debtor or its Estate in any other way.

c. <u>11 U.S.C. § 1123(b)(3)(A)</u>. As permitted by section 1123(b)(3)(A) of the Bankruptcy Code, the settlements contemplated in the Plan, including Article XII and the Global Settlement, have been proposed in good faith and represent a good faith compromise of Claims, Interests and controversies.

d. <u>11 U.S.C. § 1123(b)(3)(B)</u>. As permitted by section 1123(b)(3)(B) of the Bankruptcy Code, the Plan contemplates the retention of Causes of Action, subject to the releases, injunctions and exculpations contained in Article XII of the Plan.

e. <u>11 U.S.C. § 1123(b)(5)</u>. As permitted by Section 1123(b)(5) of the Bankruptcy Code, in accordance with section 1123(b)(5) of the Bankruptcy Code, Article IV of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims and Interests in each Class.

f. <u>11 U.S.C. § 1123(b)(6)</u>. As permitted by section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions, such as releases, exculpation and injunction provisions that are consistent with the provisions of the Bankruptcy Code.

### 1. The Debtor Release, the Third Party Releases and the Customer Releases Should be Approved.

11. As more fully set forth in Article XII of the Plan, the Plan provides for releases of Claims and Causes of Action (a) by the Debtor and its Estate of the Released Parties (the "<u>Debtor Release</u>"), (b) by holders of Claims entitled to vote on the Plan against the Released Parties and Participating Customers (the "<u>Third Party Releases</u>"), and (c) the mutual releases by

and between the Released Parties and each Participating Customer (the "Customer Releases"). Counsel to the Debtor has informed me that section 1123(b)(6) of the Bankruptcy Code provides that a chapter 11 plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]." Based on my understanding of the law, as has been explained to me by Debtor's counsel, I believe that the Debtor release is consistent with the provisions of the Bankruptcy Code and applicable law.

### 2. The Debtor Release is Appropriate

12.     Subject to certain specified exceptions, including gross negligence or willful misconduct, the Debtor Release set forth in section 12.07(a) of the Plan provides that, as of the Petition Date, the Debtor will release, among other things, claims, obligations, suits, damages, demands, debts, rights and causes of action against each Released Party. In my business judgment, the Debtor Release is reasonable and I understand satisfies the standard courts generally apply when reviewing these types of releases.

13.     First, I do not believe that the Debtor has any viable causes of action against the other Released Parties. Thus, I believe that any litigation would be time consuming, expensive and, ultimately, not successful – all of which would deplete the Estate's resources rather than maximize amounts available to be distributed to holders of Allowed Claims and Interests. With respect to the Prepetition Secured Lenders, based on my discussions with the Debtor's counsel, I do not believe there are any viable causes of action against them or that their liens can be avoided pursuant to chapter 5 of the Bankruptcy Code. In addition, it is my understanding that as a result of the Prepetition Secured Lenders' oversecured status, the Debtor would have to reimburse the Prepetition Secured Lenders for costs relating to any litigation against them, including reasonable legal fees and expenses. Further, it is my understanding that the Debtor has

not identified any viable causes of action against the Debtor's Non-Debtor Affiliates and their officers, directors, stockholders, employees, agents and representatives, and the stockholders, members, officers, directors, managers, employees, agents and representatives of such persons (in their capacities as such). Even if there were viable causes of action, it is my understanding that each such party has rights to seek indemnification by the Debtor under the Debtor's limited liability company agreement and the Debtor agreed to defend and hold harmless such Released Parties. As such, it is my understanding that any rights to seek indemnification or other claims could negate the benefit to the Debtor's estate of pursuing claims against the Released Parties.

14. Second, I believe that the Debtor Release is in the best interest of the Estate. The Prepetition Secured Lenders, who hold a lien on virtually all of the Debtor's remaining cash, have agreed to forego a distribution of approximately $1.448 million plus unpaid interest at the default contract rate, which will increase amounts available to be distributed to the Debtor's creditors. I believe that the Prepetition Secured Lenders would not have agreed to this concession if they did not receive a release in exchange therefor. In addition, other than the limited amount of cash that will remain in the Estate at the conclusion of this case, the Debtor's only other asset is its viable Causes of Action, primarily, related to the winter storm event. It is my understanding and belief that, the Plan Administrator may need the input, cooperation and assistance of one or more Non-Debtor Affiliates and their respective officers and directors in order to implement the Plan and prosecute Causes of Action related to the winter storm. As part of the Global Settlement, among other things, (a) the officers and directors agreed to provide on an uncompensated basis certain services to the Debtor after the Effective Date in connection with the pursuit of Causes of Acton (notwithstanding that they will be employed by one or more Non-Debtor Affiliates), as more fully detailed in the Consulting Agreement included in the Plan

Supplement; (b) Griddy Technologies LLC, one of the Debtor's non-Debtor affiliates, agreed to provide a limited license of its technology without cost in order to aid the Debtor in efficiently winding down the Estate; (c) other than the independent director, those directors that receive Board fees agreed to the suspension of such fees through the month of July, notwithstanding their continued active participation on the Board; and (d) one or more Non-Debtor Affiliates agreed to pay up to $225,000 of the Prepetition Lenders' Fee Claims, which amounts would otherwise have been required to have been paid by the Debtor to the Prepetition Secured Lenders.  Moreover, I believe that there is no question that members, managers, officers and directors have provided and continue to provide valuable consideration to the Debtor as they commit substantial time and effort to winding down and liquidating the Debtor throughout this chapter 11 process.  Lastly, it is my understanding that the Debtor is an additional insured on insurance policies issued to a parent company.  Thus, it shares insurance coverage with affiliated Released Parties.  It is my understanding that, if the Debtor Release is not approved, claims against affiliated Released Parties could deplete the availability of insurance proceeds under the shared insurance policy limits, which, in turn, would leave less insurance available for the benefit of the Debtor and its Estate.

15. Third, I believe that the Plan, including the Debtor Release, was vigorously negotiated by certain significant parties in interest in the chapter 11 case, each of which was represented by able counsel, including the Prepetition Secured Lenders, certain of the Non-Debtor Affiliates, Committee and the State of Texas.  Ultimately, the Debtor Release provides the Debtor and the Released Parties with finality and, as described above, the consideration given for the releases aids in maximizing the recoveries available to the Debtor's creditors.  I believe that the Debtor Release was an integral part of the negotiations between the parties and without it

9

the Prepetition Secured Lenders and the Non-Debtor Affiliates may not have supported the Plan and made the concessions provided therein.

16. Finally, it is my understanding that the Debtor Release is "fair and equitable" because none of the settlements contemplated in the Plan cause any junior class to receive a distribution prior all senior classes being paid in full, except as otherwise agreed by such senior class.

17. Accordingly, it is my belief that the Debtor Release is reasonable, represents a valid exercise of the Debtors' business judgment, and should be approved.

### 3. The Third-Party Releases are appropriate.

18. Based on my understanding of the applicable law and my discussions with Debtor's counsel, I believe that the Third-Party Releases are proper under these provisions as a consensual settlement of claims and the causes of action by the holders of claims and interests providing such releases, each of which have been provided consideration in exchange for providing the Third-Party Releases.

19. Specifically, I believe that the Third-Party Releases are consensual because, with the exception of Classes 6 (Intercompany Claims) and 7 (Existing HoldCo Interests), which are comprised of affiliates of the Debtor and are included in the definition of Released Parties, each of the Ballots sent to the Classes to which the Third-Party Releases apply advises the holder in bold type of the Third-Party Release (including the language of the Third-Party Release in its entirety), the opportunity to opt out of the release, and that the Third-Party Release will apply if they fail to do so. In addition, each Ballot provides detailed instructions regarding how to properly complete the Ballot, including the opt out, and how to submit the Ballot so that the holder's opt out will be counted. Additionally, I believe that the Third-Party Releases are

integral to the Plan, which effectuates a global settlement of claims of and against, among others, the Debtor and the other Released Parties as well as on behalf of Participating Customers, and (a) was a condition of the Released Parties to agreeing to the settlements under the Plan and (b) with respect to the Participating Customers, was a condition of the Global Settlement. Lastly, the Third-Party Releases are given for consideration in that the Released Parties have made concessions and contributions that benefit the estate and the holders of Claims as beneficiaries thereof and with respect to the Participating Customers, such releases were part of the concessions and contributions made in connection with the Global Settlement.

### 4. The Customer Releases are Reasonable and Appropriate

20. In the Debtor's business judgment, the Customer Releases are reasonable and appropriate.

21. First, I believe that the most efficient way to monetize consumer receivables of the ages and amounts similar to the Debtor's portfolio of outstanding consumer receivables would be to sell such receivables to a collection agency or other third-party buyer. However, as a threshold matter, it is my understanding based on the Expert Report and Declaration of Tony W. Spencer that it would be difficult for the Debtor to sell its outstanding consumer debt portfolio to a collection agency or other third-party based on the unusual circumstances in which the debt arose. And, it is my understanding based on the Expert Report and Declaration of Tony W. Spencer that, even if the debt portfolio could be sold to a collection agency or third-party buyer, due to the unexpected nature of the debt, the fact that the customers may argue the debt was beyond their control, the litigation risks associated with the debt, the current (and potential future) negative publicity surrounding the debt, and the fact that the debt would likely need to be sold on an "as-is, where is" basis, such customer receivables would be worth far less than typical

11

utility debt that would be sold to a collection agency or other third-party buyer in the amounts and ages of the Debtor's outstanding customer receivables. It is also my understanding based on the Expert Report and Declaration of Tony W. Spencer that, if the Debtor were able to sell its consumer debt receivables to a collection agency or other third-party buyer, the value of the portfolio would likely be between 1 to 1.75 cents on the dollar. I believe that the foregoing, combined with the public interest in assisting approximately 24,000 people of the State of Texas from being subject to collection actions and negative credit ratings, and the fact that there were no objections to the Customer Releases, militates in favor of approving the Customer Releases.

22.   Second, I believe that the Customer Releases allow the Debtor to maximize value by (a) avoiding litigating thousands of lawsuits whose costs may exceed the value to be recovered and (b) avoiding claims being asserted against the Estate and litigating the merit of such claims. . I believe that the cost of prosecuting such actions likely would be far in excess of what the Debtor would recoup, including, because more than 22,000 former customers each owe the Debtor an amount that is less than $5,001. While the underlying collection actions may not be complex, I understand that managing up to approximately 24,000 collections actions likely would require significant resources and result in significant professional fees, and could take several years to prosecute. Further, the outstanding amounts due from former customers are the result of unanticipated events (*i.e.*, the extreme price of electricity during the winter storm). Thus, for those former customers that owe the Debtor more than $5,000, they may not have the financial wherewithal to pay such amounts or they may try to assert claims against the Estate. While I do not believe any such claims have any merit, the Debtor would still need to spend Estate resources to defend against those claims.

23. Although the Debtor proposed to exchange mutual releases with its former customers as part of its Plan filed on the Petition Date, the Customer Releases in their current form (which includes allowing Participating Customers to share in, among other things, certain litigation proceeds if they file proofs of claim for amounts they paid the Debtor during period February 13 – February 19 time period) are the result of extensive arm's length negotiations between the Debtor and the State of Texas as well as the Debtor and the Committee.

24. Third, I understand that under the requirements of the Bankruptcy Code and applicable law, the Customer Releases are consensual because the Class 5 Ballots provide detailed instructions on how to properly complete the Ballot, including the opt out of the Customer Releases, and how to submit the Ballot. I believe that the Customer Releases are an integral part of the Plan, which effectuates a global settlement of claims between the Debtor and the State of Texas, the Debtor and the Committee, and the Released Parties and each Participating Customer. Further, I believe that each Participating Customer provides consideration to the Released Parties in the form of a mutual release, which in addition to shielding Participating Customers from collection actions will also benefit customers by avoiding having the credit of such persons potentially damaged by reporting the overdue amounts to credit agencies.

25. Accordingly, I believe that the Customer Releases are reasonable, represent a valid exercise of the Debtor's business judgment, and satisfy the applicable provisions of the Bankruptcy Code and applicable law necessary for their approval.

### 5. The Exculpation Provision is Appropriate

26. I understand Section 12.08 of the Plan (the "Exculpation Provision") complies with the requirements of the Bankruptcy Code and applicable law. The Exculpation Provision,

which excludes gross negligence or willful misconduct, is appropriate and important because it provides protection to those parties who served as fiduciaries during the chapter 11 process or made substantial and critical contributions to the settlements contained in the Plan. It is my understanding that the Exculpation Provision helps to prevent future collateral attacks that, if otherwise permitted, may have caused the parties that are to be exculpated under the Plan to have been reluctant to cooperate with the negotiations and formulation of the Plan.

### 6. The Plan Injunction Provision is Appropriate

27. I understand that the injunctions in Sections 12.06 and 12.09 of the Plan (the "Plan Injunction") are necessary to effectuate the release and exculpation provisions of the Plan and to protect the Debtor from any potential litigation from prepetition creditors after the Effective Date. I further understand that, without the Plan Injunction, there would be no mechanism to enforce the provisions of the Plan. As a result, the Debtor, who is liquidating and has limited wind down funds, could be faced with numerous lawsuits in various jurisdictions related to Claims that are treated under the Plan.

### B. The Debtor has Complied with Applicable Provisions of the Bankruptcy Code (Section 1129(a)(2))

28. I believe that the Debtor has compiled with all orders of the Court entered during the chapter 11 case.

### C. The Plan has been Proposed in Good Faith and Not By Any Means Forbidden By Law (Section 1129(a)(3))

29. I believe the Plan has been proposed in good faith, and not by any means forbidden by law. The Debtor proposed the Plan for the legitimate, good faith and honest purpose of allowing it to efficiently liquidate in chapter 11, maximize recovery to its creditors while balancing its desire to assist former customers in respect of their energy bills related to the

winter storm event and the extreme pricing that occurred during the storm.  The Plan embodies arm's-length negotiations among parties in interest and incorporates agreements reached with those parties.  Further, I believe that the overwhelming acceptance of the Plan by the impaired voting Classes and the fact that no objections have been filed challenging the Debtor's good faith evidences this view.

    **D. The Plan provides that the Debtor's Payment of Fee Claims are Subject to Court Approval (Section 1129(a)(4))**

30. I understand that any payment made or promised by the Debtor for services for costs and expenses in, or in connection with the chapter 11 case, or in connection with the Plan and incident to the chapter 11 case, including Fee Claims of Professional Persons, may not be paid under the Plan absent prior Court approval, and therefore that all such Fee Claims and corresponding payments are subject to prior Court approval and the reasonableness requirements under sections 328 and/or 330 of the Bankruptcy Code.  Among other things, I believe the Plan contains appropriate procedures for filing applications for final allowance of compensation by Professional Persons.

31. I believe that the Debtor's ordinary course professionals will be paid in the ordinary course as holders of Administrative Expense Claims consistent with the *Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business* [Docket No. 234].

    **E. The Debtor Has Disclosed All Necessary Information Regarding Directors, Officers and Insiders (Section 1129(a)(5))**

32. As set forth in the supplement to the Plan Supplement [Docket No. 355], the Debtor has identified the name and compensation of the Plan Administrator.  The Plan Administrator is not an insider of the Debtor and none of the Debtor's current directors or

officers will maintain their position after the Effective Date.  I believe that the appointment of former Judge Russell Nelms as Plan Administrator is consistent with the interests of creditors, interest holders and public policy.  None of the Debtor's current officers, members or managers will maintain their positions with the Debtor.  However, as part of the Global Settlement, the directors of the Debtor's indirect parent and the officers of the Debtor agreed to provide certain services for an agreed period of time on an uncompensated basis to the Debtor post-Effective Date.  The services and terms thereof are included in the Consulting Agreement included in the Plan Supplement.

### F.  The Plan Satisfies the Best Interest of Creditor's Test (Section 1129(a)(7))

33.     The Debtor, with the assistance of its counsel, prepared the liquidation analysis (the "Liquidation Analysis") attached to the Disclosure Statement as Exhibit B.  The Liquidation Analysis sets forth estimate of recoveries by creditors in the event of a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.  I am familiar with the methods used, and the conclusions reached, in the preparation of the Liquidation Analysis.  I believe that the Liquidation Analysis represents the Debtor's reasonable estimate of the cash that would be available for distribution to the holders of Claims and Interests if the Debtor was to be liquidated under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis was based on a variety of assumptions, which are detailed in the notes to the Liquidation Analysis, and which I believe were made in good faith and are reasonable under the circumstances.

34.     Each holder of a Claim or Interest that is impaired under the Plan has accepted the Plan or, based on the Liquidation Analysis, will receive a distribution under the Plan that is not less than the amount that such holder would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code unless they agreed to a lesser treatment.  Specifically, as part of the

settlement between the Debtor, the Committee, the Prepetition Secured Lenders and certain Non-Debtor Affiliates, holders of Claims in Class 1 (Prepetition Lender Claims) have consensually agreed to lesser treatment with respect to their Claims.  Thus, while, holders of Prepetition Lender Claims are estimated to fair better in a chapter 7 liquidation than under the Plan, each of the holders of Prepetition Lender Claims has voted to accept the Plan.  Holders of Allowed Class 4 Claims (Other General Unsecured Claims) and Allowed Class 5 (Customer Claims) will receive a greater recovery under the Plan than they would in a chapter 7 liquidation because such holders are projected to receive a recovery of 3% (per each Class) under the Plan, but are not projected to receive a recovery in a chapter 7.  In addition, holders of Claims in Class 6 (Intercompany Claims) and Interests in Class 7 (Existing HoldCo Interests) will receive no less under the Plan than they would in a chapter 7 liquidation (*i.e.*, under the Plan, if all Claims of a higher priority are paid in full in cash plus interest, Intercompany Claims and, thereafter, Existing HoldCo Interests, will be entitled to a distribution; in a chapter 7 liquidation Intercompany Claims and Existing HoldCo Interests are not projected to receive a distribution).

35. Based on the Liquidation Analysis, I believe that the Plan satisfies the so-called "best interests test" under section 1129(a)(7) of the Bankruptcy Code.

### G. All Impaired Classes have Voted to accept the Plan (Section 1129(a)(8))

36. It is my understanding that section 1129(a)(8) of the Bankruptcy Code generally requires that each Class of Claims or Interests must either accept the Plan or be unimpaired under the Plan.  Here, as set forth in the Voting Declaration, all Classes entitled to vote voted to accept the Plan.  Accordingly, the Plan satisfies the requirements of section 1129(a)(8).

### H. The Plan Provides for the Payment in Full of All Allowed Priority Claims (Section 1129(a)(9))

37. I understand that, except to the extent that the holder of a particular Claim has a agreed to a different treatment of such Claim, the treatment of Claims under the Plan specified in section 507(a)(1) and 507(a)(3) – 507(a)(8) of the Bankruptcy Code, if any, complies with the provisions of section 1129(a)(9) of the Bankruptcy Code. The Debtor will have the financial wherewithal to make such payments required by section 1129(a)(9) of the Bankruptcy Code when they become due in accordance with the Plan. *See* Plan §§ 2.01, 2.05, 4.03.

### I. At least One Class of Impaired, Non-Insider Claims, Has Accepted the Plan (Section 1129(a)(10))

38. Based on the *Declaration of Angela Tsai on Behalf of Stretto Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting Modified Third Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* (the "Voting Declaration"), at least one Class of impaired Claims accepted the Plan, not counting the votes of any insiders.[4] *See* Voting Declaration at Exhibit A. Specifically, all voting Classes have voted to accept the Plan. Accordingly, I believe section 1129(a)(10) of the Bankruptcy Code is satisfied.

### J. The Plan Meets the Feasibility Requirement of the Bankruptcy Code (Section 1129(a)(11))

39. The Plan is a liquidating chapter 11 plan. The Debtor has sufficient cash on hand as of the Effective Date to distribute in accordance with the Plan. I also understand that the Debtor will likely pursue various Causes of Action, and will distribute any net proceeds thereof, in accordance with the terms of the Plan. The Plan is feasible because the Debtor is able to

---

[4] Classes 1, 4 and 5 do not include the Claims of any insiders.

satisfy all conditions precedent to the Effective Date, and will have sufficient funds to meet its post-confirmation obligations. Accordingly, I believe that the Plan is feasible as the term is used in connection with confirmation of a liquidating chapter 11 plan.

### K.  All Statutory Fees Have Been or Will Be Paid (Section 1129(a)(12))

40. The Plan provides for payment of all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code, together with interest pursuant to section 31 U.S.C. 3717, if any, on an ongoing basis the later of (a) the Effective Date and (b) the date that such U.S. Trustee fees become due until such time as the Chapter Case is closed, converted to a case under chapter 7 or dismissed or the Court orders otherwise. *See* Plan §§ 2.04, 14.04.

### L.  Plan Funding

41. Based on my knowledge of the Debtor's books and records and the Debtor's Schedules of Assets and Liabilities, I believe that the Debtor will have sufficient cash available to make cash distributions required to be made under the Bankruptcy Code in accordance with the terms of the Plan.

## III.  Adverse Consequences of Non-Confirmation of the Plan

42. If the Plan is not confirmed in the near term, based on the Debtor's current resources, I believe it is unlikely that the Debtor would be able to provide the projected recoveries for its creditors that are currently contemplated under the Plan, and the Debtor would likely not be able to provide the Customer Releases provided under the Plan. Further, if the Plan is not confirmed, it would be unlikely that the Debtor would have sufficient liquidity to confirm an alternative chapter 11 plan. Failure to confirm the Plan would lead to the conversion of this case to a case under chapter 7 of the Bankruptcy Code. Accordingly, I believe it is imperative that the Plan be confirmed and that the Debtor emerge from chapter 11 as quickly as possible.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: July 2, 2021

/s/ *Roop Bhullar*
Roop Bhullar
Chief Financial Officer
Griddy Energy LLC