**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| | ) | |
| **Griddy Energy LLC,** | ) | **Case No. 21-30923 (MI)** |
| | ) | |
| **Debtor.** | ) | |

**AFFIDAVIT OF PUBLICATION OF THE COMBINED HEARING NOTICE IN THE NEW YORK TIMES**



# PROOF OF PUBLICATION

Jun-01, **20**21

I, Edgar Noblesala, in my capacity as a Principal Clerk of the Publisher of The New York Times a daily newspaper of general circulation printed and published in the City, County and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on

Jun 1, 2021, NYT & Natl, pg B3

Sworn to me this 1st day
of June, 2021

Notary Public

Ellen Herb
Notary Public, State of New York
No. 01HE6163785
Qualified in New York County
Commission Expires April 2, 2023

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

In re: GRIDDY ENERGY LLC,[1] Debtor. ) Chapter 11 ) Case No. 21-30923 (MI)

**NOTICE OF: (A) DEADLINE TO CAST VOTES TO ACCEPT OR REJECT CHAPTER 11 PLAN OF THE DEBTOR; (B) COMBINED HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN; (C) DEADLINE TO OBJECT TO CONFIRMATION; AND (D) RELATED MATTERS AND PROCEDURES**

On May 26, 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. 308] (the "Disclosure Statement Order") that conditionally approved the *Disclosure Statement for Modified Third Amended Plan of Liquidation For Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* [Docket No. 312] (as may be amended, supplemented or modified from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") as containing adequate information, as required under section 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"), for the purposes of solicitation, and authorized the Debtor to solicit votes with regard to the acceptance or rejection of the *Modified Third Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* [Docket No. 311] (as may be amended, supplemented or modified from time to time and including all exhibits and supplements thereto, the "Plan").[2]

**VOTING RECORD DATE.** The "Voting Record Date" for purposes of determining (a) which holders of Claims or Interests are entitled to vote on the Plan and (b) whether Claims or Interests have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of the Claim or Interest is **May 25, 2021**.

**VOTING DEADLINE.** If you held a Claim or Interest against the Debtor as of the Voting Record Date, and are entitled to vote on the Plan, you have received a Ballot and voting instructions appropriate for your Claim(s) or Interest(s). For your vote to be counted in connection with confirmation of the Plan, you must follow the appropriate voting instructions, complete all required information on the Ballot, as applicable, and execute and return the completed Ballot so that it is actually received by the Solicitation Agent in accordance with the voting instructions by **June 25, 2021 at 5:00 p.m. (prevailing Central Time)** (the "Voting Deadline"). Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote on the Plan.

**OBJECTIONS TO PLAN CONFIRMATION AND FINAL APPROVAL OF DISCLOSURE STATEMENT.** The Court has established **June 25, 2021, at 5:00 p.m. (prevailing Central Time)**, as the deadline for filing objections to confirmation of the Plan and the adequacy of information in the Disclosure Statement (the "Plan and DS Objection Deadline"). Any objection to the Plan and/or adequacy of the information in the Disclosure Statement must: (a) be in writing; (b) conform to the Bankruptcy Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest; (d) state with particularity the basis and nature of any objection to the Plan or adequacy of information in the Disclosure Statement; and (e) be filed with the Court so that it is received by the Clerk of the Court by the Plan and DS Objection Deadline.

**COMBINED HEARING.** A hearing to approve the adequacy of the Disclosure Statement and confirm the Plan (the "Combined Hearing") will commence on **July 7, 2021 at 3:00 p.m. (prevailing Central Time)** before the Honorable Marvin Isgur, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002. It is anticipated that all persons will appear telephonically and also may appear via video at the Combined Hearing. Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. You may view video via GoToMeeting. To use GoToMeeting, the Bankruptcy Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeIsgur" in the GoToMeeting app or click the link on Judge Isgur's home page on the United States Bankruptcy Court for the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting. Please be advised that the Combined Hearing may be continued from time to time by the Court or the Debtor without further notice other than by such continuance being announced in open court or by a notice of continuance or reset being filed with the Court and served on parties entitled to notice under Bankruptcy Rule 2002 or otherwise.

**ASSUMPTION AND CURE NOTICE AND PLAN SUPPLEMENT.** The Debtor intends to file **on or before June 7, 2021** the list of Executory Contracts and Unexpired Leases to be assumed and rejected consistent with Article X of the Plan. The Debtor does not intend to serve copies of the list of Executory Contracts and Unexpired Leases to be assumed and rejected on all parties-in-interest in the chapter 11 case; the list, however, may be obtained from the Solicitation Agent. The Debtor will send a separate notice advising applicable counterparties to Executory Contracts and Unexpired Leases that their respective contracts or leases are being assumed, assumed and assigned, or rejected under the Plan, and if assumed or assumed and assigned, the proposed amount of Cure Amounts. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption and assignment, or the related amount of the Cure Amounts, must be filed with the Court so that it is received by the Clerk of the Court by the later of: (a) **5:00 p.m. (prevailing Central Time) on or before June 21, 2021** and (b) seven days after receiving notice of any amendment, modification or supplement to the Assumption and Cure Notice (the "Cure Objection Deadline").

The Debtor intends to file a Plan Supplement on or before **June 18, 2021**. The Debtor does not intend to serve copies of the Plan Supplement on all parties-in-interest in the chapter 11 case; the Plan Supplement, however, may be obtained from the Solicitation Agent.

**INQUIRIES.** Holders of Claims or Interests that are entitled to vote on the Plan shall receive a Solicitation Package. Further copies of the Solicitation Package may be obtained by: (a) accessing the Solicitation Agent's website at https://cases.stretto.com/Griddy; (b) writing to the Solicitation Agent at Griddy Energy LLC, Ballots, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; (c) emailing GriddyInquiries@stretto.com; (d) calling the Solicitation Agent's toll-free information line with respect to the Debtor at (855) 478-2725 (toll free) or (949) 471-0997 (international); and/or (e) visiting the website maintained by the Court at http://www.txs.uscourts.gov/bankruptcy.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**EACH BALLOT FOR PREPETITION SECURED LENDER CLAIMS AND OTHER GENERAL UNSECURED CLAIMS (INCLUDING NON-PARTICIPATING CUSTOMERS) ADVISES HOLDERS THAT, IF THEY DO NOT ELECT TO OPT OUT OF THE RELEASE PROVISIONS CONTAINED IN SECTION 12.07(b) OF THE PLAN, THEY SHALL BE BOUND BY THE THIRD PARTY RELEASES SET FORTH IN SECTION 12.07(b) OF THE PLAN AND DEEMED TO HAVE FOREVER RELEASED AND WAIVED ALL CLAIMS AND CAUSES OF ACTION AGAINST THE RELEASED PARTIES IN ACCORDANCE WITH THE PLAN.**

**EACH BALLOT FOR CUSTOMER CLAIMS ADVISES HOLDERS THAT (I) IF THEY DO NOT OPT-OUT OF THE CUSTOMER RELEASES (INCLUDING IF THEY ABSTAIN FROM VOTING AND DO NOT OPT-OUT OF THE CUSTOMER RELEASES), THEY SHALL BE BOUND BY THE CUSTOMER RELEASES IN SECTION 12.10 OF THE PLAN UNLESS THE BANKRUPTCY COURT DOES NOT APPROVE THE CUSTOMER RELEASES OR THEY ELECT TO BECOME A NON-PARTICIPATING CUSTOMER PURSUANT TO SECTION 4.04(d) OF THE PLAN, AND (II) IF (A) THEY OPT-OUT OF THE CUSTOMER RELEASES IN CLASS 5, OR (B) THE BANKRUPTCY COURT DOES NOT APPROVE THE CUSTOMER RELEASES, OR (C) THEY ELECT TO BECOME A NON-PARTICIPATING CUSTOMER PURSUANT TO SECTION 4.04(d) OF THE PLAN, AND (D) THEY DO NOT ELECT TO OPT OUT OF THE RELEASE PROVISIONS CONTAINED IN SECTION 12.07(b) OF THE PLAN, THEY SHALL BE BOUND BY THE THIRD PARTY RELEASES SET FORTH IN SECTION 12.07(b) OF THE PLAN AND DEEMED TO HAVE FOREVER RELEASED AND WAIVED ALL CLAIMS AND CAUSES OF ACTION AGAINST THE RELEASED PARTIES IN ACCORDANCE WITH THE PLAN.**

**BAKER BOTTS L.L.P.**
Counsel to the Debtor and Debtor in Possession

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Disclosure Statement Order, the Disclosure Statement, or the Plan, as applicable.

# Hard Seltzers Vie To Be Summer's Drink

FROM FIRST BUSINESS PAGE

period when dozens of old and new competitors vie to be the boozy, bubbly drink of the season.

A grown-up cousin to fizzy seltzer waters like LaCroix, alcoholic hard seltzers became a sensation before the pandemic, racking up around $500 million in sales in 2018, according to NielsenIQ. But in the past year, when people couldn't go to their favorite bars and restaurants, they picked up cases and cases of the drinks at liquor and grocery stores, sending revenues soaring to more than $4 billion in 2020.

Analysts are betting that another big wave of seltzer buying will hit this summer. Nik Modi, an analyst at RBC Capital Markets, notes that hard seltzers are popular at group gatherings, which largely didn't happen last year.

"This summer," Mr. Modi said,

**$4B**

Sales in 2020 for alcoholic hard seltzers, compared with $500 million in 2018.

"is going to be a completely different ballgame." He and others predict that annual sales will top $8 billion over the next four years.

Dave Burwick, the chief executive of Boston Beer, said on CNBC last year that the growth of hard seltzers was the biggest shift in the beer industry since light beers were widely introduced in the 1970s. Boston Beer, the company behind Sam Adams, also makes Truly Hard Seltzer.

While White Claw and Truly — the Coca-Cola and Pepsi of hard seltzer — capture about 70 percent of the market, everyone wants in on the action, drawn by the staggering growth. Old-school beer companies, spirits giants, winemakers and others are fermenting sugar solutions and adding seasonal flavors like watermelon, black cherry and strawberry lemonade to create their own buzzy concoctions. (Care for passion fruit-orange-guava?) They're also trying to outdo one another by coming up with new variations, like so-called spiked seltzers that use rum or tequila, seltzers with antioxidants or even "hard coffee."

Boston Beer introduced Truly Iced Tea Hard Seltzer this year and a few weeks ago released an ad campaign with the British pop singer Dua Lipa. This spring, the hip-hop star Travis Scott released Cacti, a seltzer made with blue agave syrup, in a partnership with Anheuser-Busch. It quickly sold out in many locations.

"People were lining up outside of the stores to buy Cacti and share pictures of themselves with their carts full of Cacti," said Marcel Marcondes, the chief marketing officer for Anheuser-Busch.

Also this spring, Topo Chico Hard Seltzer was released. A partnership between Coca-Cola and Molson Coors Beverage, it hit shelves in 16 markets across the country, chasing the cult following of Topo Chico's seltzer water in the South.

"I feel like I can walk into a party saying, 'Oh, yeah, I brought the Topo Chico,'" said Dane Cardiel, 32, who works in business development for a podcast company and lives in Esopus, N.Y., about 60 miles south of Albany.

How flavored bubbly water with alcohol became a national phenomenon is partly due to social media videos that went viral and clever marketing that sold hard seltzers as a "healthier" alcohol choice.

White Claw's slim cans prominently state that the drinks contain only 100 calories, are gluten free and have only two grams each of carbohydrates and sugar. The brand is owned by the Canadian billionaire Anthony von Mandl, who created Mike's Hard Lemonade.

"The health and wellness element is front and center in terms of the visual marketing," said Vivien Azer, an analyst at the Cowen investment firm. "Every brand's packaging features its relatively low carb and sugar data."

On top of that, the alcohol content in most hard seltzers, about 5 percent, or the same as 12 ounces of a typical beer, is less than a glass of wine or a mixed drink. That makes it easier for people to sip at a party or while watching a game without getting intoxicated or winding up with the belly-full-of-beer feeling.

"It's a nice drink for an afternoon on the patio," said Shelley Majeres, the general manager of Blake Street Tavern in downtown Denver. "You can drink four or five of them in an afternoon and not have a big hangover or get really drunk."

Blake Street, an 18,000-square-foot sports bar, started selling hard seltzers two years ago. Today, they make up about 20 percent of its can and bottle sales.

The industry has also neatly sidestepped the gender issue that plagued earlier, lighter alcoholic alternatives like Zima, which became popular with women but struggled to be adopted by men.

"I've got just as many men as women drinking it," said Nick Zeto, the owner of Boston Beer Garden in Naples, Fla. "And it started with the millennials, but now I have people in their 40s, 50s and 60s ordering it."

That kind of broad appeal is attractive to beer, wine and spirits companies.

"We view ourselves as the challenger brand," said Michelle St. Jacques, the chief marketing officer of Molson Coors, which has been making beer since the late 1700s but hopes to end this year with 10 percent of the hard seltzer market.

Last spring, the company released Vizzy, a hard seltzer that contains vitamin C. Topo Chico came this spring. "We feel like we're making great progress in seltzer by not trying to bring meetoo products, but rather products and brands that have a clear difference," Ms. St. Jacques said.

While grocery and liquor stores have made plenty of space available to the hard seltzer brands that people drink at home, the competition to get into restaurants and bars is fierce. Most want to offer only two or three brands to their customers.

"Oh, my god, I get presented with new hard seltzer whenever they can get my attention," said Mr. Stone, who sells six brands at the Rambler. The crowd favorite, he said, is the vodka-based High Noon Sun Sips peach, made by E.&J. Gallo Winery. "Everybody, from the big brands to small, new ones, are getting into the hard seltzer game."

TODD ANDERSON FOR THE NEW YORK TIMES

LYNDON FRENCH FOR THE NEW YORK TIMES

Topo Chico Hard Seltzer in production in Auburndale, Fla. The Rambler Kitchen and Tap in Chicago offers six hard seltzer brands, left.

# World Stirs, but Game Makers Are 'Doubling Down'

FROM FIRST BUSINESS PAGE

games. He said the pandemic had introduced gaming to a wider audience, so rather than pull back, "we are investing to grow to meet that demand."

When industries predicted slowing growth in the past, companies often reduced costs, but those downturns and recoveries were typically unpredictable, related to a tumbling stock market and recessions, said Bill Pearce, an assistant dean at the Haas School of Business at the University of California, Berkeley.

With the ebbing of the pandemic, businesses have "better clarity and more confidence to invest" because of coronavirus vaccines and predictions of how people will respond when the world opens up, Mr. Pearce said. Some industries that followed conventional wisdom by slowing down, like car dealerships, are now kicking themselves because they can't fulfill surging demand, he said.

But John Paul Rollert, a professor at the University of Chicago Booth School of Business, said plowing ahead in the face of shifting behavior was a high-risk and high-reward approach.

"You're playing some really high-stakes poker," Mr. Rollert said. Still, he added, with the economy rebounding and money sloshing around, "you can understand why these companies might think to themselves, 'Covid has been good to us, but maybe post-Covid will be great to us.'"

Newzoo, a gaming analytics firm, has projected that people will spend $175.8 billion on games this year, down 1 percent from 2020. That would be the first decline since Newzoo began tracking spending in 2012.

Take-Two said last month that it expected sales to plunge 30 percent in its next quarter, from a year earlier, and 8 percent for the fiscal year. Activision Blizzard, which makes the war game Call of Duty, predicted an 11 percent sales decline from a year earlier in its next quarter.

"It's hard to imagine how at least the immediate future is going to have as much spending or as much game time or as many players as the industry benefited from last year," said Matthew Ball, managing partner at Epyllion Industries, which operates a venture capital fund that invests in gaming.

Other challenges loom, like a global chip shortage that is limiting the availability of new video game consoles from Microsoft and Sony, and a dearth of blockbuster games after a year of remote work made game development even trickier than normal.

Yet game makers said they were not worried, especially after such a tremendous spurt of pandemic growth.

In January, Microsoft reported $5 billion in quarterly revenue from gaming for the first time, in part because of a new generation of Xbox consoles. The company also bought ZeniMax Media, which publishes games like Skyrim and Fallout, for $7.5 billion in September.

Microsoft's games business now aims to expand in places like Africa by promoting its cloud gaming service, xCloud, Mr. Spencer said. In cloud gaming, games are hosted in a company's data centers and broadcast to consumers' devices so they don't need to install the games or use expensive hardware.

"If you look over the last decade, gaming has been on a double-digit growth pattern," Mr. Spencer said. "No doubt the pandemic has had an accelerated impact."

At Take-Two, based in New York, profits jumped 46 percent over the last year. The company has brought on about 700 game developers in the last 12 months, expanding its work force by 10 percent, and is spending heavily on technology and marketing, Mr. Zelnick said.

"In many ways, it's an investment year as we build for the future," he said.

Niantic, the San Francisco company that produced the mobile game Pokemon Go, expects to increase its work force by about 25 percent this year to nearly 900 people, said John Hanke, its chief executive. The company was preparing to introduce two new games, one based on the board game Settlers of Catan and the other on the Pikmin franchise, with eight more in development.

At Riot, based in Los Angeles, a post-pandemic downturn was "not even a topic of discussion," Mr. Laurent said. Revenues for the company, which is privately held, rose 20 percent last year.

(Mr. Laurent has been grappling with employee claims and lawsuits that Riot is a sexist workplace; he was sued in January for sexual harassment and retaliation. He has denied the accusations.)

Riot aims to hire 1,000 people this year, increasing its work force by 33 percent, Mr. Laurent said. Aside from expanding its flagship title, League of Legends, he said, Riot is investing in the e-sports leagues for its first-person shooter game Valorant and for Wild Rift, a modified version of League of Legends played on mobile phones. The company is also building two new studios this year in Shanghai and Seattle, he said, and plans to open five more locations over the next three years.

"Gaming's going to be the center of influence" in the 21st century, Mr. Laurent said. "The pandemic's just giving us a little boost."

AMR ALFIKY/ASSOCIATED PRESS

Niantic, which produced Pokemon Go, plans to increase its work force.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: GRIDDY ENERGY LLC,[1] | ) | Chapter 11 |
| Debtor. | ) | Case No. 21-30923 (MI) |

**NOTICE OF: (A) DEADLINE TO CAST VOTES TO ACCEPT OR REJECT CHAPTER 11 PLAN OF THE DEBTOR; (B) COMBINED HEARING TO CONSIDER APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMATION OF THE PLAN; (C) DEADLINE TO OBJECT TO CONFIRMATION; AND (D) RELATED MATTERS AND PROCEDURES**

On May 26, 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. 308] (the "Disclosure Statement Order") that conditionally approved the *Disclosure Statement for Modified Third Amended Plan of Liquidation For Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* [Docket No. 312] (as may be amended, supplemented or modified from time to time and including all exhibits and supplements thereto, the "Disclosure Statement") as containing adequate information, as required under section 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"), for the purposes of solicitation, and authorized the Debtor to solicit votes with regard to the acceptance or rejection of the *Modified Third Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code* [Docket No. 311] (as may be amended, supplemented or modified from time to time and including all exhibits and supplements thereto, the "Plan").[2]

**VOTING RECORD DATE.** The "Voting Record Date" for purposes of determining (a) which holders of Claims or Interests are entitled to vote on the Plan and (b) whether Claims or Interests have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of the Claim or Interest is **May 25, 2021**.

**VOTING DEADLINE.** If you held a Claim or Interest against the Debtor as of the Voting Record Date, and are entitled to vote on the Plan, you have received a Ballot and voting instructions appropriate for your Claim(s) or Interest(s). For your vote to be counted in connection with confirmation of the Plan, you must follow the appropriate voting instructions, complete all required information on the Ballot, as applicable, and execute and return the completed Ballot so that it is actually received by the Solicitation Agent in accordance with the voting instructions by **June 25, 2021 at 5:00 p.m. (prevailing Central Time)** (the "Voting Deadline"). Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote on the Plan.

**OBJECTIONS TO PLAN CONFIRMATION AND FINAL APPROVAL OF DISCLOSURE STATEMENT.** The Court has established **June 25, 2021, at 5:00 p.m. (prevailing Central Time)**, as the deadline for filing objections to confirmation of the Plan and the adequacy of information in the Disclosure Statement (the "Plan and DS Objection Deadline"). Any objection to the Plan and/or adequacy of the information in the Disclosure Statement must: (a) be in writing; (b) conform to the Bankruptcy Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest; (d) state with particularity the basis and nature of any objection to the Plan or adequacy of information in the Disclosure Statement; and (e) be filed with the Court so that it is received by the Clerk of the Court by the Plan and DS Objection Deadline.

**COMBINED HEARING.** A hearing to approve the adequacy of the Disclosure Statement and confirm the Plan (the "Combined Hearing") will commence on **July 7, 2021 at 3:00 p.m. (prevailing Central Time)** before the Honorable Marvin Isgur, United States Bankruptcy Judge, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002. It is anticipated that all persons will appear telephonically and also may appear via video at the Combined Hearing. Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. You will be responsible for your own long-distance charges. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. You may view video via GoToMeeting. To use GoToMeeting, the Bankruptcy Court recommends that you download the free GoToMeeting application. To connect, you should enter the meeting code "JudgeIsgur" in the GoToMeeting app or click the link on Judge Isgur's home page on the United States Bankruptcy Court for the Southern District of Texas website. Once connected, click the settings icon in the upper right corner and enter your name under the personal information setting. Please be advised that the Combined Hearing may be continued from time to time by the Court or the Debtor without further notice other than by such continuance being announced in open court or by a notice of continuance or reset being filed with the Court and served on parties entitled to notice under Bankruptcy Rule 2002 or otherwise.

**ASSUMPTION AND CURE NOTICE AND PLAN SUPPLEMENT.** The Debtor intends to file **on or before June 7, 2021** the list of Executory Contracts and Unexpired Leases to be assumed and rejected consistent with Article X of the Plan. The Debtor does not intend to serve copies of the list of Executory Contracts and Unexpired Leases to be assumed and rejected on all parties-in-interest in the chapter 11 case; the list, however, may be obtained from the Solicitation Agent. The Debtor will send a separate notice advising applicable counterparties to Executory Contracts and Unexpired Leases that their respective contracts or leases are being assumed, assumed and assigned, or rejected under the Plan, and if assumed or assumed and assigned, the proposed amount of Cure Amounts. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption and assignment, or the related amount of the Cure Amounts, must be filed with the Court so that it is received by the Clerk of the Court by the later of: (a) **5:00 p.m. (prevailing Central Time) on or before June 21, 2021** and (b) seven days after receiving notice of any amendment, modification or supplement to the Assumption and Cure Notice (the "Cure Objection Deadline").

The Debtor intends to file a Plan Supplement on or before **June 18, 2021**. The Debtor does not intend to serve copies of the Plan Supplement on all parties-in-interest in the chapter 11 case; the Plan Supplement, however, may be obtained from the Solicitation Agent.

**INQUIRIES.** Holders of Claims or Interests that are entitled to vote on the Plan shall receive a Solicitation Package. Further copies of the Solicitation Package may be obtained by: (a) accessing the Solicitation Agent's website at https://cases.stretto.com/Griddy; (b) writing to the Solicitation Agent at Griddy Energy LLC, Ballots, c/o Stretto, 410 Exchange, Suite 100, Irvine, CA 92602; (c) emailing GriddyInquiries@stretto.com; (d) calling the Solicitation Agent's toll-free information line with respect to the Debtor at (855) 478-2725 (toll free) or (949) 471-0997 (international); and/or (e) visiting the website maintained by the Court at http://www.txs.uscourts.gov/bankruptcy.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**EACH BALLOT FOR PREPETITION SECURED LENDER CLAIMS AND OTHER GENERAL UNSECURED CLAIMS (INCLUDING NON-PARTICIPATING CUSTOMERS) ADVISES HOLDERS THAT, IF THEY DO NOT ELECT TO OPT OUT OF THE RELEASE PROVISIONS CONTAINED IN SECTION 12.07(b) OF THE PLAN, THEY SHALL BE BOUND BY THE THIRD PARTY RELEASES SET FORTH IN SECTION 12.07(b) OF THE PLAN AND DEEMED TO HAVE FOREVER RELEASED AND WAIVED ALL CLAIMS AND CAUSES OF ACTION AGAINST THE RELEASED PARTIES IN ACCORDANCE WITH THE PLAN.**

**EACH BALLOT FOR CUSTOMER CLAIMS ADVISES HOLDERS THAT (I) IF THEY DO NOT OPT-OUT OF THE CUSTOMER RELEASES (INCLUDING IF THEY ABSTAIN FROM VOTING AND DO NOT OPT-OUT OF THE CUSTOMER RELEASES), THEY SHALL BE BOUND BY THE CUSTOMER RELEASES IN SECTION 12.10 OF THE PLAN UNLESS THE BANKRUPTCY COURT DOES NOT APPROVE THE CUSTOMER RELEASES OR THEY ELECT TO BECOME A NON-PARTICIPATING CUSTOMER PURSUANT TO SECTION 4.04(d) OF THE PLAN, AND (II) IF (A) THEY OPT-OUT OF THE CUSTOMER RELEASES IN CLASS 5, OR (B) THE BANKRUPTCY COURT DOES NOT APPROVE THE CUSTOMER RELEASES, OR (C) THEY ELECT TO BECOME A NON-PARTICIPATING CUSTOMER PURSUANT TO SECTION 4.04(d) OF THE PLAN, AND (D) THEY DO NOT ELECT TO OPT OUT OF THE RELEASE PROVISIONS CONTAINED IN SECTION 12.07(b) OF THE PLAN, THEY SHALL BE BOUND BY THE THIRD PARTY RELEASES SET FORTH IN SECTION 12.07(b) OF THE PLAN AND DEEMED TO HAVE FOREVER RELEASED AND WAIVED ALL CLAIMS AND CAUSES OF ACTION AGAINST THE RELEASED PARTIES IN ACCORDANCE WITH THE PLAN.**

**BAKER BOTTS L.L.P.**
Counsel to the Debtor and Debtor in Possession

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Disclosure Statement Order, the Disclosure Statement, or the Plan, as applicable.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA, ROME DIVISION**

| | |
|---|---|
| IN RE: THE FAIRBANKS COMPANY, Debtor. | Chapter 11<br>Case No. 18-41768-PWB<br>Judge Bonapfel |

**NOTICE OF VOTING RIGHTS AND HEARING TO CONSIDER WHETHER TO CONFIRM PLAN OF REORGANIZATION AND TO GRANT CERTAIN INSURANCE SETTLEMENT MOTIONS WITH LIBERTY MUTUAL INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, AND THE TRAVELERS INDEMNITY COMPANY**

**If You or Loved Ones Were Exposed To ASBESTOS or ASBESTOS-CONTAINING Products Distributed, Sold, or Manufactured by THE FAIRBANKS COMPANY, PLEASE READ THIS NOTICE**

1. **Bankruptcy Case.** On July 31, 2018, The Fairbanks Company (the "Debtor") petitioned for reorganization under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia, Rome Division (the "Bankruptcy Court"). The purpose of the Debtor's chapter 11 reorganization is to resolve all existing and future asbestos-related personal injury and wrongful death claims.

2. **Plan of Reorganization and Disclosure Statement.** On April 29, 2021, the Debtor, the Official Committee of Asbestos Claimants, and the Future Claimants' Representative (collectively, the "Plan Proponents") filed a plan for the chapter 11 reorganization of the Debtor, called the *First Amended Plan of Reorganization of The Fairbanks Company Under Chapter 11 of the Bankruptcy Code* (including all exhibits thereto and as amended, supplemented, or otherwise modified from time to time, the "Plan"). On April 29, 2021, the Debtor also filed a detailed document describing the Plan, called the *Disclosure Statement With Respect to the First Amended Plan of Reorganization of The Fairbanks Company Under Chapter 11 of the Bankruptcy Code* (including all exhibits thereto and as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). Capitalized terms used but not defined in this notice have the meanings given to them in the Plan.

3. **Insurance Settlement Motions.** In connection with the Plan, the Debtor filed the following three motions (collectively, the "Insurance Settlement Motions") seeking orders authorizing and approving Insurance Settlement Agreements between the Debtor and Liberty Mutual Insurance Company ("Liberty Mutual"), National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), and The Travelers Indemnity Company and its affiliates ("Travelers"):

- the *Debtor's Motion for Entry of an Order (I) Authorizing the Assumption of, and Approving, the Settlement Agreement and Release Between the Debtor and Liberty Mutual Insurance Company, (II) Authorizing the Sale of Certain Insurance Policies, and (III) Recognizing Certain Related Relief in Connection with the Plan of Reorganization* [Doc. No. 697, filed on March 24, 2021];
- the *Debtor's Motion for Entry of an Order (I) Approving the Settlement Agreement, Mutual Release, and Policy Buyback Between the Debtor and National Union Fire Insurance Company of Pittsburgh, Pennsylvania, (II) Authorizing the Sale of Certain Insurance Policies, and (III) Recognizing Certain Related Relief in Connection with the Plan of Reorganization* [Doc. No. 698, filed on March 24, 2021]; and
- the *Debtor's Motion for Entry of an Order (I) Approving the Settlement, Mutual Release and Policy Buyback Agreement Between the Debtor and The Travelers Indemnity Company and its Affiliates, (II) Authorizing the Sale of Certain Insurance Policies, and (III) Recognizing Certain Related Relief in Connection with the Plan of Reorganization* [Doc. No. 720, filed on April 29, 2021].

Pursuant to the Insurance Settlement Agreements, Liberty Mutual, National Union, and Travelers will pay to the Asbestos Trust, respectively, $46,658,000 (less certain adjustments), $475,000, and $714,639.32. The Insurance Settlement Agreements provide for releases and sales of policies pursuant to section 363 of the Bankruptcy Code, free and clear of all claims and interests. The Insurance Settlement Agreements also provide that Liberty Mutual, National Union, and Travelers will be protected by the injunctions described in paragraph 6 of this notice. Additional Insurance Settlement Agreements may be filed as part of the Plan Supplement and approved as part of the Plan.

4. **Solicitation Materials.** The Disclosure Statement, together with copies of the Plan, the Insurance Settlement Motions, and voting materials, called a "Solicitation Package," has been mailed to known holders of General Unsecured Claims and known holders of Asbestos Claims or their lawyers. The Disclosure Statement contains information that will help you decide how to vote on the Plan if you are entitled to do so. You should read the Plan, the Disclosure Statement, the Insurance Settlement Motions, and all other documents included in the Solicitation Package carefully for details about how the Plan may affect your rights.

5. **Approval of Disclosure Statement.** On May 4, 2021, the Bankruptcy Court entered an order approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code.

6. **Key Parts of the Plan.** The Plan provides for the establishment of an Asbestos Trust that would resolve and, as appropriate, pay all eligible Asbestos Claims. The Plan provides for the issuance of an Asbestos Channeling Injunction that would channel all current and future Asbestos Claims against the Debtor and certain other Asbestos Protected Parties (including Settling Asbestos Insurance Entities) to the Asbestos Trust, which would assume liability for all Asbestos Claims and resolve and compensate eligible Asbestos Claims. The Plan also provides for an Insurance Policy Injunction in favor of the Settling Asbestos Insurance Entities, which will bar claims based on, arising from, or attributable to insurance policies released and/or sold under the Insurance Settlement Agreements. The Plan also proposes certain releases and exculpations, whereby certain parties would be shielded from liability or exculpated for a variety of claims. You should read the Plan, the Disclosure Statement, the Insurance Settlement Motions, and all other documents included in the Solicitation Package carefully for details about how the Plan and the Insurance Settlement Motions may affect your rights.

7. **How to Vote on the Plan.** The Bankruptcy Court has issued an order describing exactly who can vote on the Plan and how to vote. The Disclosure Statement contains information that will help you decide how to vote on the Plan if you are entitled to do so. ***Your legal rights may be affected if the Plan is confirmed (approved).*** To be counted, a ballot voting on the Plan must be ***actually received*** by the Balloting Agent at the address below by **4:00 p.m. (prevailing Eastern Time) on June 24, 2021**. Ballots that are *not actually received* by that date and time—even if they are postmarked on that date—will not be counted. Ballots will *not* be accepted by facsimile or other electronic means, including email. By U.S. mail, delivery, or courier: The Fairbanks Company Balloting Agent, c/o Logan & Company, Inc., 546 Valley Road, Upper Montclair, NJ 07043.

8. **What to Do if You Did Not Receive a Solicitation Package.** If you believe you may be entitled to vote on the Plan, but did not receive a Solicitation Package, you may obtain a Solicitation Package, and other key documents relating to the Debtor's chapter 11 case by consulting the website referenced below or by contacting the Balloting Agent at the telephone and/or address provided in paragraph 11 below.

9. **Asbestos Personal Injury and Wrongful Death Claims.** Proof of an Asbestos Claim does not have to be filed with the Bankruptcy Court at this time. The Bankruptcy Court has established special procedures for holders of Asbestos Claims to vote on the Plan. Lawyers for holders of Asbestos Claims may vote on the Plan on behalf of their clients if the lawyers are authorized to do so. If you are unsure whether your lawyer is authorized to vote on your behalf, please contact your lawyer.

10. **Combined Hearing on Confirmation of the Plan and the Insurance Settlement Motions.** A hearing (the "Combined Hearing") on whether the Bankruptcy Court should confirm the Plan and grant the Insurance Settlement Motions will be held before the Honorable Paul W. Bonapfel, United States Bankruptcy Judge, at the United States Bankruptcy Court for the District of Georgia, Rome Division, Courtroom 1401, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303, on **July 8, 2021, at 10:00 a.m. (prevailing Eastern time)**. You may attend the Combined Hearing in person or by telephone, but you are not required to do so. If you choose to attend the Combined Hearing by telephone, you may use the following toll-free AT&T Reservationless Conference Call dial-in information: Toll Free Number: 888-684-8852 and Access Code: 1896529. For further instructions, please consult the Bankruptcy Court's website at https://www.ganb.uscourts.gov/dial-procedures-att-reservationless-conference-calloption. The Combined Hearing may be continued from time to time by the Bankruptcy Court or the Debtor without further notice to parties other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court.

11. **Objections to Confirmation of the Plan and/or the Insurance Settlement Motions.** Objections and responses, if any, to confirmation of the Plan and/or one or more of the Insurance Settlement Motions must (i) be in writing, (ii) set forth in detail the name and address of any party filing the objection, the grounds for the objection, any relevant and admissible evidence in support of the objection, and the amount of the objector's claim(s) or such other grounds that give the objector standing to assert the objection, (iii) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, (iv) be filed with the Bankruptcy Court, and (v) served in accordance with the Local Rules upon the following parties so as to be actually received on or before **4:00 p.m. (prevailing Eastern Time) on June 24, 2021**: (i) counsel to the Debtor at Reed Smith LLP, 225 Fifth Avenue, Suite 1200, Pittsburgh, PA 15222, Attention: Paul M. Singer, Esq. and Luke A. Sizemore, Esq.; (ii) counsel to the Official Committee of Asbestos Claimants at Caplin & Drysdale, Chartered, One Thomas Circle, N.W., Suite 1100, Washington, D.C. 20005, Attention: Kevin C. Maclay, Esq. and Todd E. Phillips, Esq.; (iii) counsel to the Future Claimants' Representative at Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware, 19801, Attention: Edwin J. Harron, Esq. and Sara Beth A.R. Kohut, Esq.; and (iv) the Office of the United States Trustee at 362 Richard B. Russell Building, 75 Ted Turner Drive, SW, Atlanta, GA 30303, Attention: Martin Ochs. Registered users of the Bankruptcy Court's case filing system must electronically file their objections and responses. All other parties in interest must file their objections and responses in writing with the Clerk of the Bankruptcy Court, 600 East First Street, Rome GA 30161. ***If any objection or response to confirmation of the Plan or the Insurance Settlement Motions is not filed and served strictly as prescribed herein, the objecting party may be barred from objecting to confirmation of the Plan or the Insurance Settlement Motions, as applicable. Likewise, if you or your attorney does not file an objection to the Plan, the Bankruptcy Court may conclude that you do not object to confirmation of the Plan or the Insurance Settlement Motions, and may enter an order confirming the Plan and granting the Insurance Settlement Motions by which you will be bound.***

12. **Additional Information.** Copies of the Plan, the Disclosure Statement, the Insurance Settlement Motions, and other materials contained in the Solicitation Package, including a ballot to vote on the Plan, may be obtained by contacting the Debtor's Balloting Agent, (a) at http://www.loganandco.com, by navigating to the case information page for The Fairbanks Company, (b) upon request by mail to Logan & Company, Inc., 546 Valley Road, Upper Montclair, New Jersey 07043, or (c) upon request by contacting the Balloting Agent by phone at (973) 509-3190, by facsimile at (973) 509-3191, or by email at TFC@loganandco.com. Copies of the Plan and the Disclosure Statement also may be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (prevailing Eastern time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Northern District of Georgia, Rome Division, 600 East First Street, Georgia, 30161. To the extent any portion of this notice conflicts with the Plan, the Disclosure Statement, or the Insurance Settlement Motions, the terms of those documents shall control over this notice.

**Announcing Announcements**

Celebrate births, engagements, weddings, anniversaries and more in The Times. Call 1-800-238-4637.

The New York Times

