

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
07/07/2021

|  |  |
|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GRIDDY ENERGY LLC,[1] | ) | Case No. 21-30923 (MI) |
|  | ) |  |
| Debtor. | ) | **Relates to Docket No. 311, 312, 345, 355** |
|  | ) |  |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER: (I) APPROVING DISCLOSURE STATEMENT; (II) CONFIRMING MODIFIED THIRD AMENDED PLAN OF LIQUIDATION FOR GRIDDY ENERGY LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE; AND (III) GRANTING RELATED RELIEF

The Court having considered: (a) the *Modified Third Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code*, dated May 26, 2021 [Docket No. 311] (as amended, modified, and/or supplemented from time to time, and including the Plan Supplement[2] and any amendments, modifications or supplements to the Plan Supplement, together, the "**Plan**"); (b) the *Disclosure Statement for Modified Third Amended Plan for Liquidation of Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code*, dated May 26, 2021 [Docket No. 312] (including all exhibits thereto and as amended, modified, and/or supplemented from time to time, the "**Disclosure Statement**"); (c) the *Order: (i) Conditionally Approving the Adequacy of the Disclosure Statement; (ii) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Plan; (iii) Approving the Form of Various Ballots and Notices in Connection Therewith; and (iv) Approving the Scheduling of Certain*

---

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

[2] Capitalized terms used but not defined herein have the meanings given them in the Plan (as defined below), which is annexed hereto as <u>Appendix I</u>. The rules of interpretation set forth in Article I.B of the Plan shall apply to this Order.

1

*Dates in Connection with Confirmation of the Plan* [Docket No. 308], entered by the Court on May 26, 2021 (the "**Disclosure Statement Order**"); (d) the affidavits, declarations and related supplements of (i) Angela Tsai of Stretto, dated July 1, 2021 [Docket No. 363] (the "**Voting Declaration**") and (ii) Roop Bhullar, Chief Financial Officer of the Debtor, dated July 2, 2021 [Docket No. 370]; (e) the expert report and declaration of Tony W. Spencer, dated July 2, 2021 [Docket No. 367]; (f) the affidavits, declarations, witness testimony and exhibits admitted into evidence at the hearing conducted on July 7, 2021 to approve the Disclosure Statement on a final basis and to consider confirmation of the Plan (the "**Combined Hearing**"); (g) the arguments of counsel presented at the Combined Hearing; (h) the informal comments to the Plan received by the Debtor; and (i) the Debtor's memorandum of law filed in support of final approval of the Disclosure Statement and confirmation of the Plan, dated July 2, 2021 [Docket No. 376]; and the Court having considered all written and oral evidence submitted by the Debtor in connection with the Chapter 11 Case; and the Court having found that due and proper notice has been given with respect to the Combined Hearing and the deadlines and procedures for filing objections to final approval of the Disclosure Statement and confirmation of the Plan; and the appearance of all interested parties having been made electronically at the Combined Hearing; and upon the record of the Combined Hearing and the Chapter 11 Case, and after due deliberation thereon, and sufficient cause appearing therefor;

## FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]

## JURISDICTION AND VENUE

A. The Court has jurisdiction over this matter and Chapter 11 Case pursuant to 28 U.S.C. § 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of

B.     Final approval of the Disclosure Statement, confirmation of the Plan and approval

of the compromises and settlements incorporated into the Plan are each core bankruptcy

proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O).  The Court has exclusive

jurisdiction to determine whether the Disclosure Statement and the Plan each comply with the

applicable provisions of the Bankruptcy Code and should be approved or confirmed, as

applicable, and the Court has the constitutional power and authority to enter a final order with

respect thereto.  The Debtor is a proper debtor under section 109 of title 11 of the United States

Code (the "**Bankruptcy Code**"), and the Debtor is a proper proponent of the Plan under section

1121(a) of the Bankruptcy Code.

## ADEQUACY OF DISCLOSURE STATEMENT

C.     The Disclosure Statement contains:  (a) sufficient information of a kind necessary

to satisfy the disclosure requirements of all applicable nonbankruptcy laws, rules, and

regulations; (b) "adequate information" (as such term is defined in section 1125(a) of the

Bankruptcy Code and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the

Debtor, the Plan and the transactions contemplated therein; and (c) specific descriptions of

releases and injunctions related thereto in accordance with Rule 3016(c) of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**").  The filing of the Disclosure Statement

satisfied Bankruptcy Rule 3016(b).

## VOTING ON THE PLAN

D.     As evidenced by the Voting Declaration, votes to accept or reject the Plan have

been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code,

---

the Federal Rules of Bankruptcy Procedure.  To the extent any of the following findings of fact constitute
conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute
findings of fact, they are adopted as such.

the Bankruptcy Rules and the Bankruptcy Local Rules for the Southern District of Texas (the

"**Local Rules**"), the Disclosure Statement Order, and all applicable non-bankruptcy laws, rules

or regulations.

      E.      On July 1, 2021, the Debtor filed the Voting Declaration, which certifies in

accordance with the voting tabulation procedures approved by the Disclosure Statement Order

that the holders of Claims in Class 1 (Prepetition Lender Claims), Class 4 (Other General

Unsecured Claims), Class 5 (Customer Claims), Class 6 (Intercompany Claims) and Class 7

(HoldCo Equity Interests) are impaired under the Plan and have voted to accept the Plan in the

numbers and amounts required by section 1126 of the Bankruptcy Code.  All procedures used to

tabulate the Ballots were fair, reasonable and complied with the applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Disclosure Statement Order, and

all other applicable rules, laws and regulations.

      F.      The Debtor has solicited acceptances of the Plan in good faith and in compliance

with the Disclosure Statement Order and applicable provisions of the Bankruptcy Code and

Bankruptcy Rules.  The Debtor shall not be liable at any time for the violation of any applicable

law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan.

**THE PLAN COMPLIES WITH STANDARDS FOR
CONFIRMATION UNDER SECTION 1129 OF THE BANKRUPTCY CODE**

      G.      <u>Section 1129(a)(1)</u>.  The Plan complies with each applicable provision of the

Bankruptcy Code.  In particular, the Plan complies with the requirements of sections 1122 and

1123 of the Bankruptcy Code as follows:

      (i)      In accordance with section 1122(a) of the Bankruptcy Code, Articles III

and IV of the Plan classify each Claim against and Interest in the Debtor into a Class containing

only substantially similar Claims or Interests;

(ii)     In accordance with section 1123(a)(1) of the Bankruptcy Code, Articles III and IV of the Plan properly classify all Claims and Interests that require classification;

(iii)     In accordance with section 1123(a)(2) of the Bankruptcy Code, Articles III and IV of the Plan properly specify each Class of Claims that is not impaired under the Plan;

(iv)     In accordance with section 1123(a)(3) of the Bankruptcy Code, Sections 4.01, 4.04, 4.05, 4.06 and 4.07 of the Plan properly specify the treatment of each Class of Claims or Interests that is impaired under the Plan;

(v)     In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Interest in a particular Class unless the holder of such a Claim or Interest agrees to less favorable treatment;

(vi)     In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation.  Immediately upon the Effective Date, sufficient Cash provided under the Plan will be available to make all payments required to be made on the Effective Date pursuant to the terms of the Plan.  Moreover, Article VI, including funding for the Plan and post-Effective Date corporate management and governance, and various other provisions of the Plan specifically provide adequate means for the Plan's implementation;

(vii)     In accordance with section 1123(a)(6) of the Bankruptcy Code, the Debtor's amended and restated limited liability company agreement contains a provision prohibiting the issuance of non-voting equity securities;

(viii)     In accordance with section 1123(a)(7) of the Bankruptcy Code, the provisions of the Plan, including the provisions of Section 6.02 and Article VII of the Plan, and the Debtor's amended and restated limited liability company agreement setting forth the manner

of selection of officers and directors of the Debtor are consistent with the interests of creditors and equity security holders and with public policy;

(ix)    In accordance with section 1123(b)(1) of the Bankruptcy Code, Article IV of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests;

(x)    In accordance with section 1123(b)(2) of the Bankruptcy Code, Article X of the Plan provides for the assumption or rejection of the Debtor's executory contracts and unexpired leases that have not been previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code and orders of the Court;

(xi)    The settlements and compromises under the Plan, including, among other things, the settlement of Causes of Action subject to the releases, injunctions and exculpations provided in Article XII of the Plan, comply with the requirements of section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019, are a valid exercise of the Debtor's business judgment, are fair and reasonable and in the best interests of the Debtor's estate based on the following factors:  (a) the probability of success of the litigation being settled; (b) the complexity and likely duration of the litigation, any attendant expense, inconvenience, or delay and possible problems collecting a judgment; (c) the interest of creditors with proper deference to their reasonable views; and (d) the extent to which the settlement is truly the product of arm's-length negotiations;

(xii)    In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Section 12.13 of the Plan provides, among other things, that, except with respect to the Released Parties or any other beneficiary of the releases, injunctions, and exculpations contained in Article XII, the Debtor shall have, retain, reserve and be entitled to assert all Causes of Action, rights of setoff, or other legal or equitable defenses that the Debtor had immediately prior to the Petition

Date, including, any actions specifically enumerated in the Schedule of Retained Causes of Action included in the Plan Supplement. The Plan is sufficiently specific with respect to the Causes of Action to be retained by the Debtor, and the Plan and the Plan Supplement provide meaningful disclosure with respect to the potential Causes of Action that the Debtor may retain, and all parties in interest received adequate notice with respect to such retained Causes of Action. After the Effective Date, the Debtor shall have the exclusive right to institute, prosecute, abandon, settle or compromise all Causes of Action (excluding those Causes of Action released pursuant to Article XII or another order of the Court) in its sole discretion without further notice to or action, order or approval of the Court;

(xiii)   In accordance with section 1123(b)(5) of the Bankruptcy Code, Article IV of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims and Interests in each Class; and

(xiv)   In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes various additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code.

(xv)   In accordance with section 1123(d) of the Bankruptcy Code, Article X of the Plan provides for the assumption of contracts and, in accordance with 365(b)(1) of the Bankruptcy Code, the Debtor is required to satisfy the cure amounts associated with each executory contract to be assumed pursuant to the Plan. Cure amounts shall be determined in accordance with the underlying agreements and applicable law.

H.     Section 1129(a)(2). The Debtor has complied with all applicable provisions of the Bankruptcy Code with respect to the Plan and the solicitation of acceptances or rejections of

the Plan. In particular, the Plan complies with the requirements of sections 1125 and 1126 of the Bankruptcy Code as follows:

(i)     Persons entitled to receive notice of the Disclosure Statement, the Plan and the Combined Hearing have received proper, timely and adequate notice in accordance with the Disclosure Statement Order, applicable provisions of the Bankruptcy Code and Bankruptcy Rules, and have had an opportunity to appear and be heard with respect thereto.

(ii)     In transmitting the Plan, the Disclosure Statement, the Disclosure Statement Order, the Ballots, and related documents and notices in soliciting and tabulating votes on the Plan, the Debtor has complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, applicable non-bankruptcy law and the Disclosure Statement Order.

(iii)     Written notice of the Combined Hearing and the relevant deadlines for the submission of Ballots and objections to final approval of the Disclosure Statement and confirmation of the Plan has been provided substantially in the form, within the time, and in accordance with the Bankruptcy Rules and the procedures approved and prescribed by this Court in the Disclosure Statement Order. Such written notice is adequate and sufficient notice of the Disclosure Statement and the Plan, the contents of the Disclosure Statement and the Plan, the Combined Hearing, and the opportunity to object to any aspect of the Disclosure Statement or the Plan.

(iv)     Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan set forth in this Order constitute technical or clarifying changes, changes with respect to particular Claims by agreement with holders of such Claims, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim under the

Plan.  Notice of these modifications was adequate and appropriate under the facts and

circumstances of the Chapter 11 Case.  In accordance with Bankruptcy Rule 3019, these

modifications do not require additional disclosure under sections 1125 or 1127(a) of the

Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and

do not require that holders of Claims or Interests be afforded an opportunity to change previously

cast acceptances or rejections of the Plan.  Accordingly, the Plan is properly before this Court

and all votes cast with respect to the Plan prior to such modification shall be binding and shall

apply with respect to the Plan.

(v)     Claims in Classes 2 (Other Secured Claims) and 3 (Priority Non-Tax

Claims) under the Plan are unimpaired, and such Classes are deemed to have accepted the Plan

pursuant to section 1126(f) of the Bankruptcy Code.

(vi)     All Classes of impaired Claims that were entitled to vote pursuant to the

Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order were given the

opportunity to vote on the Plan (i.e., Classes 1 (Prepetition Lender Claims), 4 (Other General

Unsecured Claims), 5 (Customer Claims), 6 (Intercompany Claims) and 7 (HoldCo Equity

Interests)).  Ballots were received from holders of Claims and Interests in each of the Classes.

(vii)     The Debtor has made a final determination of the validity of, and

tabulation with respect to, all acceptances and rejections of the Plan by holders of Claims and

Interests entitled to vote, including the amount and number of accepting and rejecting Claims in

Classes 1 (Prepetition Lender Claims), 4 (Other General Unsecured Claims), 5 (Customer

Claims), 6 (Intercompany Claims) and 7 (HoldCo Equity Interests) under the Plan.

(viii)     Each of Classes 1 (Prepetition Lender Claims), 4 (Other General

Unsecured Claims), 5 (Customer Claims) and 6 (Intercompany Claims) have accepted the Plan

by at least two-thirds in amount and a majority in number of the Claims against in such Classes that have voted on the Plan. Class 7 (HoldCo Equity Interests) has accepted the Plan by at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have voted on the Plan.

I.      Section 1129(a)(3). The Plan has been proposed in good faith and not by any means forbidden by law. In so finding, the Court has considered the totality of the circumstances of the Chapter 11 Case. The Plan is the result of extensive, good faith, arm's length negotiations among the Debtor and certain of their principal constituencies, including the Prepetition Secured Lenders, the Committee and the State of Texas (the "Principal Constituents"), and includes a global settlement with the Committee acting on behalf of all general unsecured creditors. The Debtor has prosecuted the Chapter 11 Case with an honest belief that liquidation pursuant to chapter 11 of the Bankruptcy Code is fair and appropriate under the circumstances of this case and that the Plan is the best alternative available to it, its creditors, its stakeholders and its former customers.

The Debtor's and the Principal Constituents' good faith is evident from the record of the Chapter 11 Case, including the Disclosure Statement, the Plan, and the record of the Combined Hearing. The Plan achieves a fair and appropriate result, consistent with the objectives and purposes of the Bankruptcy Code. The Debtor and the Principal Constituent's and each of their officers, directors, employees, advisors and professionals: (a) acted in good faith in negotiating, formulating and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions and transfers contemplated thereby and (b) will be acting in good faith in proceeding to (i) consummate and implement the Plan and the agreements, compromises, settlements, transactions, transfers and documentation contemplated thereby, including the Plan Supplement documents and (ii) take any actions authorized, directed or contemplated by this

Order or the Plan.  Thus, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

J.      <u>Section 1129(a)(4)</u>.  Except as otherwise provided in the Plan, any payment made or to be made by the Debtor for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to the approval of, this Court as reasonable, satisfying the requirements of section 1129(a)(4) of the Bankruptcy Code.  Pursuant to Section 2.03 of the Plan, and except as otherwise provided herein and in the Plan, all payments to be made to Professional Persons or other entities asserting a Fee Claim for services rendered before the Effective Date will be subject to review and approval by this Court.

K.      <u>Section 1129(a)(5)</u>.  The Debtor has disclosed the identity and affiliations of the individual proposed to serve, after confirmation of the Plan, as the Plan Administrator, who will be the sole member, manager and officer of the Debtor; the appointment to such offices of such individual is consistent with the interests of the Debtor's creditors and interest holders and with public policy; and the Debtor has disclosed the identity of any insiders who will be employed or retained by the Debtor subsequent to confirmation of the Plan and the nature of any compensation to be paid to such insiders.  These disclosures satisfy the requirements of section 1129(a)(5) of the Bankruptcy Code.

L.      <u>Section 1129(a)(7)</u>.  The liquidation analysis included as Exhibit B to the Disclosure Statement and the other evidence related thereto that was proffered or adduced at the Combined Hearing, (a) is reasonable; (b) utilizes reasonable methodologies and assumptions; (c) have not been controverted by other evidence; and (d) establish that holders of Allowed Claims and Allowed Interests in every Class will recover as much or more under the Plan on

11

account thereof, as of the Effective Date, than the amount such holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.  Each holder of an impaired Claim or Interest in each impaired Class of Claims or Interests either (a) will, on account of such Claim or Interest, receive or retain property under the Plan having a value, as of the Effective Date, that is not less than the amount that such holder would have received or retained if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on the Effective Date or (b) has accepted the Plan.  See Disclosure Statement, Exhibit B.

M.      Section 1129(a)(8).  With respect to each Class of Claims or Interests, (a) such Class has accepted the Plan or (b) such Class is not impaired under the Plan.

N.      Section 1129(a)(9).  Except to the extent that the holder of a particular Claim has agreed to different treatment, the Plan provides treatment for Administrative Expense Claims, Priority Tax Claims, Fee Claims and Priority Non-Tax Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

O.      Section 1129(a)(10).  As evidenced by the Voting Declaration, the Plan has been accepted by Class 1 (Prepetition Lender Claims), Class 4 (Other General Unsecured Claims) and Class 5 (Customer Claims), determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code), which are Classes of impaired Claims that are entitled to vote on the Plan.

P.      Section 1129(a)(11).  The evidence supporting the Plan proffered or adduced by the Debtor at, or prior to, or in affidavits and declarations filed in connection with the Combined Hearing establish that the Debtor has the wherewithal to pay all Allowed Administrative Expense Claims, Fee Claims and Priority Tax Claims in full and expects to be able to comply with its financial commitments in accordance with the Plan.  Thus, the Plan satisfies 1129(a)(11).

Q.     <u>Section 1129(a)(12)</u>.  Pursuant to Section 2.04 of the Plan, all fees payable pursuant to section 1930 of title 28 of the United States Code have been or will be paid.

R.     <u>Sections 1129(a)(6), 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129 (a)(16)</u>. Sections 1129(a)(6), 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Case.

S.     <u>Section 1129(b)</u>.  The Plan satisfies the requirements of subsections (a) of section 1129 of the Bankruptcy Code, including section 1129(8) of the Bankruptcy Code.  Accordingly, section 1129(b) of the Bankruptcy Code is not applicable.

T.     <u>Section 1129(c)</u>.  The Plan is the only plan that has been filed in this case that has been found to satisfy the requirements of subsections (a) of section 1129 of the Bankruptcy Code.  Accordingly, the requirements of section 1129(c) of the Bankruptcy Code have been satisfied.

U.     <u>Section 1129(d)</u>.  No party in interest, including any governmental unit (as defined in section 101(27) of the Bankruptcy Code), has requested that the Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.  Moreover, such avoidance is not the principal purpose of the Plan.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

V.     <u>Satisfaction of Confirmation Requirements</u>.  Based on the foregoing, the Plan satisfies all the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

W.     <u>Retention of Jurisdiction</u>.  This Court may properly, and shall, retain jurisdiction over, and shall hear and determine the matters set forth in section 1142 of the Bankruptcy Code

13

and all matters arising in, arising under, or related to the Chapter 11 Case as set forth in Article

XIII of the Plan.

## INDEMNIFICATION, INJUNCTIONS, RELEASES AND EXCULPATION

X.      The release, indemnification, injunction and exculpation provisions set forth in

Article XII of the Plan constitute good faith compromises and settlements of the matters covered

thereby.  Such compromises and settlements are made in exchange for consideration and are in

the best interests of the Debtor and its Estate, are fair, equitable, reasonable, and are integral

elements of the restructuring and resolution of the Chapter 11 Case in accordance with the Plan.

The failure to effect the release, indemnification, injunction and exculpation provisions described

in Article XII of the Plan would impair the Debtor's ability to confirm the Plan.  Each of the

release, indemnification, injunction and exculpation provisions set forth in the Plan:

(i)      is within the jurisdiction and judicial power of the Court under 28 U.S.C.

§§ 1334(a), (b) and (d);

(ii)     is an essential means of implementing the Plan pursuant to section

1123(a)(5) of the Bankruptcy Code;

(iii)    is an integral element of the settlements and transactions incorporated into

the Plan;

(iv)     confers material benefit on, and is in the best interests of, the Debtor and

its Estate;

(v)      is important to the overall objectives of the Plan to finally resolve all

Claims among or against the parties in interest in the Chapter 11 Case with respect to the Debtor;

and

(vi)     is consistent with and permitted by sections 105, 1123, 1125(e) and 1129 of the Bankruptcy Code and applicable law.

**NOW, THEREFORE, IT IS HEREBY ORDERED, THAT**:

1.     Pursuant to Bankruptcy Rule 3017(b), the Disclosure Statement is approved on a final basis as containing adequate information within the meaning of section 1125(e) of the Bankruptcy Code.

2.     The Plan is confirmed pursuant to section 1129 of the Bankruptcy Code; provided, however, that if there is any conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall control.  Each provision of the Plan is authorized and approved and shall have the same validity, binding effect, and enforceability as every other provision of the Plan.  The terms of the Plan, as previously modified and as modified by any modifications made at the Combined Hearing or herein, are incorporated by reference into and are an integral part of this Order.

3.     The documents contained in the Plan Supplement, including the Plan Administrator Agreement and the Customer Opt-Out Form, are approved by the Court.  The Debtor is authorized to take all actions required under the Plan and the Plan Supplement documents to effectuate the Plan and any transactions contemplated by the Plan.

4.     The terms of the Plan, the Plan Supplement and the exhibits thereto are incorporated herein by reference, and are an integral part of this Order.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other related documents shall be effective and binding as of the Effective Date on all parties in interest, including the Debtor and all holders of Claims and Interests.  The failure specifically to describe, include, or refer to any particular article, section, or provision of the Plan, Plan Supplement or any related document in this Order shall not diminish or impair the effectiveness of such article, section, or provision, it being the

15

intent of the Court that the Plan, the Plan Supplement and all related documents be approved and confirmed in their entirety as if set forth verbatim in this Order.

5. The Effective Date of the Plan shall occur on the first Business Day on which all conditions set forth in Section 11.02 of the Plan have been satisfied or waived.

6. Any objections or responses to approval of the Disclosure Statement or confirmation of the Plan and any reservation of rights contained therein that (a) have not been withdrawn, waived or settled prior to the entry of this Order or (b) are not cured by the relief granted herein, are overruled in their entirety and on their merits, and all withdrawn objections or responses are deemed withdrawn with prejudice.

7. Any assets of the Debtor shall remain subject to the jurisdiction of this Court until the Effective Date.

8. The Plan provides for the comprehensive settlement of Claims, Interests and controversies against the Debtor. The negotiations of such settlements were conducted in good faith and at arm's length, and each such settlement benefits the Debtor and its Estate and represents a fair, necessary and reasonable compromise of the Claims and Interests held by the holders thereof. The terms and conditions of each such compromise and settlement are therefore an integral part of the Plan. The settlements, as reflected in the relative distributions and recoveries of holders of Claims and Interests under the Plan, are fair and reasonable to the Debtor and its Estate and accordingly are approved pursuant to Bankruptcy Rule 9019(a). The settlements will save the Debtor and its Estate the costs and expenses of prosecuting various disputes, the outcome of which would likely consume substantial resources of the Debtor's Estate and require substantial time to adjudicate. The settlements also have facilitated the creation and implementation of the Plan and benefit the Estate and the Debtor's creditors,

16

including all holders of Allowed Other General Unsecured Claims and Allowed Customer

Claims, whose interests were represented by the Committee (which is supportive of the Plan and

all settlements thereunder).

**A.     Plan Implementation**

9.       In accordance with section 1142 of the Bankruptcy Code, section 303 of

the Delaware General Corporation Law and any comparable provisions of the business

corporation law of any other state or foreign law that are applicable, but subject to the occurrence

of the Effective Date, without further action by the Court, the sole member of the Debtor or any

other Person, the Debtor, through any authorized officer, is authorized to: (a) take any and all

actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order

and the transactions contemplated thereby or hereby and (b) execute, deliver, file and record such

documents (including the Plan Documents), contracts, instruments, releases, and other

agreements and documents (collectively, the "**Effectuating Documents**") and perform their

obligations thereunder and take such other action as may be necessary to effectuate and further

evidence the terms and conditions of the Plan.  The Effectuating Documents (when and to the

extent entered into or adopted) shall constitute legal, valid, binding and authorized obligations of

the respective parties thereto, enforceable in accordance with their terms (without further action

unless such Effectuating Document otherwise provides).

10.     This Order shall constitute all approvals and consents required, if any, by

the laws, rules or regulations of any state or any other governmental authority with respect to the

implementation or consummation of the Plan and any other acts that may be necessary or

appropriate for the implementation or consummation of the Plan.

11.     Each and every U.S. federal, state, commonwealth, local, foreign or other

governmental agency is directed and authorized to accept for filing and/or recording any and all

documents and instruments necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Order without payment of any stamp tax or similar tax imposed by state or local law.

12.     Subject to the occurrence of the Effective Date, the Plan Administrator is appointed as the sole officer of the Debtor and shall have full authority to administer the provisions of the Plan.  From and after the Effective Date, the Debtor shall be managed and administered through the Plan Administrator consistent with provisions of Article VII of Plan, the Plan Administrator Agreement, and subject to the limitations set forth in both such documents.

13.     On and after the Effective Date, except as specified in the Plan or this Order, the Debtor may prosecute, compromise or settle any Claims (including any Administrative Expense Claims) and Causes of Action without supervision of, or approval by, the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or Bankruptcy Rules other than restrictions expressly imposed by the Plan or this Order.  Without limiting the foregoing, the Debtor may pay the charges that it incurs on or after the Effective Date for Professional Persons' fees, disbursement, expenses or related support services in the ordinary course of business without application to the Court, including those fees and expenses incurred in connection with the implementation of the Plan.

14.     Any former customer that elected to opt-out of the Customer Releases in such former customer's voting ballot may withdraw the election and opt-into the Customer Releases; provided that any such withdrawal will not change any previous vote on the Plan cast by such former customer and such former customer would not have, or be entitled to have, an Allowed Class 5 Participating Customer Potential Return Claim.

15.     The consummation of the Plan, including the assumption of any executory contract by the Debtor, shall not constitute a change in ownership or change in control under any contract or agreement in existence on the Effective Date to which the Debtor is a party.

**B.     Executory Contracts**

16.     Subject to the occurrence of the Effective Date, the Debtor is authorized to reject, assume and retain, or assume and assign executory contracts in accordance with this Order and Article X of the Plan.  Each executory contract assumed and retained pursuant to Section 10.1 of the Plan shall vest in or revest in (as applicable) and be fully enforceable by the Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption (or assumption and assignment) or applicable federal law.  Any order entered after the Confirmation Date by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered prior to the Confirmation Date.

17.     As of and subject to the occurrence of the Effective Date, all executory contracts of the Debtor shall be deemed rejected, except all executory contracts and unexpired leases that: (a) previously have been assumed, assumed and assigned or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; (b) are the subject of a separate motion to reject under section 365 of the Bankruptcy Code pending on the Confirmation Date, if any, which shall be treated as provided for in the Final Order resolving such motion; or (c) are specifically designated as contracts to be assumed or assumed and assigned by the Debtor in connection with the Plan.

18.     Except as otherwise explicitly set forth in the Plan, all Claims, if any, arising from the rejection of executory contracts or unexpired leases, if evidenced by a timely

filed proof of claim, will be treated as Other General Unsecured Claims. In the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely proof of claim related to such rejection damages, shall be forever barred and shall not be enforceable against the Debtor, or its Estate, interests in property as agents, successors or assigns, unless a proof of claim is timely filed with the Bankruptcy Court and served upon counsel for the Debtor on or before the date that is thirty (30) days after the later of: (a) notice of entry of an order approving the rejection of such executory contract or unexpired, or (b) notice of the occurrence of the Effective Date. Unless previously provided by the Debtor, the Debtor shall provide notice of the last date to file a Claim arising from the rejection of an executory contract to the counterparties of such rejected contracts and leases. Notwithstanding anything contained herein or in any other order of the Court entered prior to the date hereof, if an executory contract or unexpired lease is or has been rejected by the Debtor, the contract counterparty may not offset postpetition amounts owed to the Debtor against such contract counterparty's rejection damage claim. Contracts and leases entered into after the Petition Date by the Debtor shall survive and remain unaffected.

## C. Vesting and Transfer of Assets

19. On the Effective Date, all property of the Estate of the Debtor shall vest in the Debtor, free and clear of all Claims, Interests, liens, charges and other encumbrances, except as otherwise provided herein or in the Plan.

## D. Approval of Injunction, Release and Exculpation Provisions

20. The injunction, release and exculpation provisions contained in the Plan, including those set forth in Article XII of the Plan, are expressly incorporated into this Order as if set forth in full herein and are authorized and approved and shall be immediately effective on

the Effective Date of the Plan without further order or action on the part of the Court or any other Person. Notwithstanding anything to the contrary herein or in the Plan, the releases set forth in Section 12.07 and 12.10 of the Plan that are granted on behalf of any Released Party shall be deemed to be authorized and approved only to the extent such Released Party is empowered to grant such releases on behalf of such applicable Person under applicable non-bankruptcy law.

21.     Without limiting the foregoing, (a) the releases by the Debtor of the Released Parties as set forth in Section 12.07(a) of the Plan (the "Debtor Release"), (b) the third-party releases by (i) each holder of a Claim in a Class entitled to vote on the Plan that does not opt out of the releases and (ii) each Released Party (other than the Debtor) of each Released Party and Participating Customer (solely in each such customer's capacity as such) (the "Third-Party Releases"), and (c) the mutual releases between the Debtor and the Participating Customers as set forth in section 12.10 of the Plan (the "Customer Releases," together with the Debtor Release and the Third-Party Releases, the "Releases") each represent a valid exercise of the Debtor's business judgment under Bankruptcy Rule 9019. Each of the Releases are an integral part of the Plan and in the best interests of the Debtor's Estate as a component of the comprehensive settlement implemented under the Plan. The probability of success in litigation with respect to the matters released, including when weighed against the costs, supports each of the Releases. Holders of Claims and Interests entitled to vote on the Plan have overwhelmingly voted in favor of the Plan, including the Releases. The Releases are appropriate under the circumstances of this Chapter 11 Case.

22.     Except as set forth in and subject to Sections 12.07 and 12.10 of the Plan, nothing contained in the Plan or this Order shall, as contemplated by Section 12.13 of the Plan, be deemed to be a waiver or relinquishment of any rights, claims or Causes of Action, rights of

setoff, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of the Estate or of itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law. Subject to Sections 12.07 and 12.10 of the Plan, the Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses which the Debtor had immediately prior to the Petition Date as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and/or equitable rights respecting any Claim may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

23.     No Person may rely on the absence of a specific reference in the Plan, the Plan Supplement or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor will not pursue any and all available Causes of Action against such Person. Except as set forth in Sections 12.07 and 12.10 of the Plan, the Debtor expressly reserves all rights to prosecute any and all Causes of Action against any Person (other than the Released Parties), in accordance with the Plan and subject to any applicable defenses of any such Persons. Except as set forth herein, in the Plan or in the Plan Administrator Agreement, from and after the Effective Date, the Debtor shall have the exclusive right to initiate, prosecute, abandon, settle or compromise all Causes of Action (excluding those Causes of Action released pursuant to Article XII of the Plan), in its sole discretion and without further notice to or action, order or approval of the Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case. The Debtor and the Plan Administrator are deemed representatives of the Estate for the purpose of prosecuting any claim or Cause of Action and any objections to Claims.

### E.    Order Binding on All Parties

24.    Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and this Order shall be binding upon, and inure to the benefit of the Debtor, all holders of Claims and Interests, all non-Debtor parties to executory contracts and unexpired leases with the Debtor and any other party in interest in this Chapter 11 Case, and their respective successors and assigns.

### F.    Administrative Bar Date

25.    Except as otherwise provided in Section 2.02 of the Plan, requests for payment of Administrative Expense Claims other than:  (a) a Fee Claim; (b) an Administrative Expense Claim that has been Allowed on or before the Effective Date; (c) an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtor pursuant to an order of the Bankruptcy Court; (d) an Administrative Expense Claim held by an officer, director, manager, member, or employee of the Debtor employed as of the Petition Date for indemnification, contribution, or advancement of expenses pursuant to: (i) the Debtor's operating agreement or similar organizational document or (ii) any indemnification or contribution agreement approved by the Bankruptcy Court; (e) an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by the Debtor of an individual from and after the Petition Date, but only to the extent that such Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses; or (f) an Intercompany Claim, must be filed with the Bankruptcy Court and served on the Debtor, the Claims Agent and the United States Trustee so as to be received by 5:00 p.m. (prevailing Central Time) on the date

that is thirty (30) days from the date of service of notice of the Effective Date. Such notice of Administrative Expense Claim must include at a minimum: (i) the name of the holder of the Administrative Expense Claim; (ii) the asserted amount of the Administrative Expense Claim; (iii) the basis of the Administrative Expense Claim; and (iv) supporting documentation for the Administrative Expense Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND RELEASED.**

**G.      Fee Claims**

26.      Any Professional Person seeking allowance by the Bankruptcy Court of a Fee Claim shall (a) file with the Bankruptcy Court and serve on the Debtor, the Committee and the U.S. Trustee, its respective final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is forty-five (45) calendar days after the Effective Date or such other date as may be fixed by the Bankruptcy Court and (b) if granted such an award by the Bankruptcy Court, be paid in full in Cash such amount as awarded by the Bankruptcy Court (i) no later than five (5) Business Days after the date an order is entered with respect to such award or (ii) upon such other terms as may be mutually agreed upon between such holder of a Fee Claim and the Debtor. On the Effective Date, to the extent known, the Debtor or the Plan Administrator shall reserve and hold in the Professional Expense Escrow Cash in an amount equal to accrued but unpaid Fee Claims as of the Effective Date, which Cash shall be used, until all Allowed Fee Claims have been paid in full, solely for the payment of Allowed Fee Claims. Objections to Fee Claims, if any, must be filed with the Bankruptcy Court and served on the applicable holder of the Fee Claim, the Debtor, the Committee and the United States Trustee so as to be received by 5:00

p.m. (prevailing Central Time) no later than 21 days after the application for fees has been filed. To the extent the Cash in the Professional Expense Escrow exceeds the amount of the Allowed Fee Claims, such excess Cash shall be used by the Debtor in accordance with the terms of the Plan.

27.     The Debtor shall, pursuant to Section 2.04 of the Plan, pay all outstanding U.S. Trustee Fees of the Debtor, together with interest pursuant to 31 U.S.C. § 3717, if any, on an ongoing basis on the later of (a) the Effective Date and (b) the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the Chapter 11 Case, the Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

## H.    Binding Effect of Prior Orders

28.     Pursuant to section 1141 of the Bankruptcy Code, effective as of and subject to the occurrence of the Effective Date and subject to the terms of the Plan and this Order, all prior orders entered in the Chapter 11 Case, all documents and agreements executed by the Debtor as authorized and directed thereunder and all motions or requests for relief by the Debtor pending before the Court as of the Effective Date that ultimately are granted shall be binding upon and shall inure to the benefit of the Debtor and its successors and assigns.

## I.    Notice of Confirmation of the Plan

29.     Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtor is directed to serve a notice of the entry of this Order and the occurrence of the Effective Date, substantially in the form of Appendix II attached hereto (the "**Effective Date Notice**"), on all parties that actually received written notice of the Combined Hearing and parties to executory contracts no later than ten (10) days after the Effective Date;  provided, however, that (a) the Debtor shall be obligated to serve the Effective Date Notice only on the record holders of Claims or Interests as of the Confirmation Date and (b) solely with respect to former customers of the

Debtor, the Debtor is authorized to serve the Effective Date Notice by either (i) attaching the Effective Date Notice to an email to former customers or (ii) including a link to Stretto's website where former customers can access the Effective Date Notice.  As soon as practicable after the entry of this Order, the Debtor shall make copies of this Order available on its website at https:// cases.stretto.com/Griddy.

## J.     Provisions for Specific Parties in Interest

30.     Nothing in the Plan or this Order shall constitute a release of any obligations of Griddy VI Holdings LLC or Griddy Holdings LLC to RLI Insurance Company, or a waiver of any defense or other rights or remedies of Griddy VI Holdings LLC or Griddy Holdings LLC with respect to any such obligations, under that certain Commercial Surety General Indemnity Agreement, dated December 7, 2020.

31.     Notwithstanding anything to the contrary in the Plan or this Order, the Public Utilities Commission of Texas opts-out of the release provision set forth in section 12.7(b) of the Plan.

32.     Notwithstanding anything to the contrary in the Plan, including section 9.02 of the Plan, the Electric Reliability Council of Texas, Inc. may amend its filed proof of claim, designated as Claim No. 162 by the Debtor's claims agent (as may be amended in accordance with the terms of this paragraph, the "ERCOT Claim"), through and including August 26, 2021, without authorization of the Bankruptcy Court; provided, that any such amendment pertains solely to the facts set forth in the original filed proof of claim and does not set forth new grounds of liability.  Notwithstanding anything to the contrary in the Plan, the Debtor may only estimate the ERCOT Claim for purposes of calculating and making Distributions under the Plan and for establishment of claims reserves pursuant to an order of the Bankruptcy Court.  ERCOT reserves all rights to oppose such estimation, including, but not

limited to, arguing that estimation is not appropriate with regard to the ERCOT Claim, and the Debtor reserves all rights, claims or otherwise to, among other things, argue otherwise in connection therewith.

33.     Nothing contained in the Plan, Plan Supplement or Confirmation Order operates or should be deemed to operate as a final judgment with res judicata, estoppel or preclusive effect on any Customer Tort Claim (as defined below) against any party, other than the Released Parties (including, for the avoidance of doubt, the Plan Administrator), which could have joint, independent or strict liability.  For purposes of this paragraph, "Customer Tort Claim" means Claims arising in tort of any Participating Customer against the Debtor for the electricity and related fees, taxes, expenses and other costs charged to such customers for the period February 13, 2021 through and including February 19, 2021.

## K.     Miscellaneous Provisions

34.     After the Effective Date, the Debtor shall have no obligation to file with the Court or serve on any parties reports that the Debtor was obligated to file under the Bankruptcy Code or a Court order, including monthly operating reports (even for those periods for which a monthly operating report was not filed before the Effective Date), ordinary course professional reports and reports to any parties otherwise required under the "first" and "second" day orders entered in this Chapter 11 Case; provided, however, that the Debtor will comply with the U.S. Trustee's quarterly reporting requirements and any reporting requirements in the Plan Administrator Agreement.

35.     The Plan Administrator shall have exclusive control over all applicable privileges and work product vested in the Liquidating Debtor.  The Plan Administrator's receipt of such information shall not waive any privileges and such privileges

are preserved. The Liquidating Debtor, the individual officers of the pre-Effective Date Debtor and the officers and directors of any Non-Debtor Affiliates shall remain in control of all of their respective privileges, and the Liquidating Debtor, the individual officers of the pre-Effective Date Debtor and the officers and directors of any Non-Debtor Affiliates, each as applicable, retain the right to waive their own privileges prospectively; provided, that such officers and directors shall not have the right to waive the privileges held by the pre-Effective Date Debtor or the Liquidating Debtor, regardless of when such privileges arose. Nothing herein shall be deemed to permit any party to waive any privilege in connection with a joint representation without the affirmative consent of all parties holding such privilege.

36.     Without the need for a further order or authorization of this Court, but subject to the express provisions of this Order, the Debtor shall be authorized and empowered as may be necessary to make non-material modifications to the documents filed with the Court, including (a) the various documents included in the Plan Supplement and (b) the Plan only in accordance with and subject to Section 14.07 of the Plan and upon notice to any affected parties.

37.     On the Effective Date, the Committee shall dissolve, and its functions shall terminate. Upon such date, each member of the Committee and each Professional Person retained by the Committee shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Case, each in their capacity as either a member of the Committee or a Professional Person retained by the Committee, except as set forth in the proviso in the paragraph immediately below.

38.     On the Effective Date, (a) except as agreed between the Debtor and a Professional Person, the engagement of each Professional Person retained by the Debtor and

28

(b) the engagement of each Professional Person retained by the Committee, shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for allowance and payment of such Fee Claims and the Debtor shall be responsible for the reasonable and documented fees, costs and expenses associated with the prosecution of such Fee Claim.

39. Omitted.

40. Any document related to the Plan that refers to a chapter 11 plan for the Debtor other than the Plan confirmed by this Order shall be, and it is, deemed to be modified such that the reference to a chapter 11 plan for the Debtor in such document shall mean the Plan confirmed by this Order, as appropriate.

41. The provisions of this Order, including the findings of fact and conclusions of law set forth herein, and the provisions of the Plan are integrated with each other, nonseverable, and mutually dependent unless expressly stated by further order of the Court. The provisions of the Plan, the Plan Supplement, and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is any direct conflict between the terms of the Plan or the Plan Supplement and the terms of this Order that cannot be reconciled, then, solely to the extent of such conflict, (a) the provisions of this Order shall govern and any such provision of this Order shall be deemed a modification of

the Plan and shall control and take precedence, and (b) as to all other agreements, instruments, or documents, the provisions of the Plan shall govern and take precedence.

42. Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court shall, on the date of entry of this Order, as contemplated by Section 12.04 of the Plan, remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

43. Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Case after the Effective Date shall be limited to the following parties: (a) the Debtor and its counsel; (b) the United States Trustee; and (c) any party known to be directly affected by the relief sought.

44. If the Plan is revoked or withdrawn pursuant to Section 14.08 of the Plan prior to the Effective Date, the Plan shall be deemed null and void.

45. Notwithstanding the entry of this Order, this Court may properly, and from and after the Effective Date shall, to the fullest extent as is legally permissible, retain jurisdiction over the Chapter 11 Case, and all matters arising under, arising out of, or related to, the Chapter 11 Case and the Plan: (a) as provided for in Article XIII of the Plan; (b) as provided for in this Order; and (c) for the purposes set forth in sections 1127 and 1142 of the Bankruptcy Code.

Signed: July 07, 2021

Marvin Isgur
United States Bankruptcy Judge

**APPENDIX I**

**Plan**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GRIDDY ENERGY LLC,[1] | ) | Case No. 21-30923 (MI) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## MODIFIED THIRD AMENDED PLAN OF LIQUIDATION FOR GRIDDY ENERGY LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

David Eastlake, Texas Bar No. 24074165
**BAKER BOTTS L.L.P.**
910 Louisiana Street
Houston, Texas 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522
Email: *david.eastlake@bakerbotts.com*

Robin Spigel (admitted *pro hac vice*)
Chris Newcomb (admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
30 Rockefeller Plaza
New York, New York 10112-4498
Telephone: (212) 408-2500
Facsimile: (212) 408-2501
Email: *robin.spigel@bakerbotts.com*
      *chris.newcomb@bakerbotts.com*

Dated: May 26, 2021

---

[1] The last four digits of the Debtor's federal tax identification number are 1396. The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

## Table of Contents

**Page**

ARTICLE I DEFINITIONS AND CONSTRUCTION OF TERMS ...............................................1

    A.    Definitions............................................................................................................1

    B.    Interpretation; Application of Definitions and Rules of Construction...................14

    C.    Appendices and Plan Documents..........................................................................15

ARTICLE II ADMINISTRATIVE EXPENSE CLAIMS, FEE CLAIMS, U.S. TRUSTEE
FEES AND PRIORITY TAX CLAIMS ............................................................................15

    2.01    Administrative Expense Claims............................................................................15

    2.02    Time for Filing Administrative Expense Claims ...................................................16

    2.03    Fee Claims ..........................................................................................................16

    2.04    U.S. Trustee Fees ................................................................................................17

    2.05    Priority Tax Claims..............................................................................................17

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS .........................................17

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS ................................................18

    4.01    CLASS 1 – PREPETITION LENDER CLAIMS ..................................................18

    4.02    CLASS 2 – OTHER SECURED CLAIMS ...........................................................18

    4.03    CLASS 3 –PRIORITY NON-TAX CLAIMS .......................................................19

    4.04    CLASS 4 – OTHER GENERAL UNSECURED CLAIMS ...................................19

    4.05    CLASS 5 – CUSTOMER CLAIMS .....................................................................20

    4.06    CLASS 6 – INTERCOMPANY CLAIMS ............................................................21

    4.07    CLASS 7 – EXISTING HOLDCO INTERESTS ..................................................22

ARTICLE V ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF
REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS .........................22

    5.01    Class Acceptance Requirement.............................................................................22

    5.02    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or
             "Cramdown" .......................................................................................................22

    5.03    Elimination of Vacant Classes .............................................................................22

    5.04    Voting Classes; Deemed Acceptance by Non-Voting Classes ..............................23

ARTICLE VI IMPLEMENTATION OF THE PLAN ..............................................................23

    6.01    The Liquidating Debtor........................................................................................23

    6.02    Officers, Managing Member.................................................................................23

    6.03    Operating Agreement Amendments ......................................................................23

    6.04    Plan Funding .......................................................................................................24

    6.05    Cancellation of Existing Securities and Agreements.............................................24

    6.06    Cancellation of Existing Security Interests...........................................................24

    6.07    Approval of Plan Documents................................................................................24

    6.08    Comprehensive Settlement of Claims and Controversies......................................24

    6.09    Wind Down of the Estate and Distribution of Proceeds ........................................25

    6.10    Intercompany Claims ...........................................................................................25

ARTICLE VII PLAN ADMINISTRATOR...........................................................................25

    7.01    General ................................................................................................................25

7.02   Qualifications; Plan Administrator Agreement ....................................26
7.03   Powers and Duties....................................................................................26
7.04   Resignation, Death or Removal of Plan Administrator ........................27
7.05   The Oversight Committee........................................................................27
7.06   Liquidation of the Debtor........................................................................29
7.07   Termination of the Plan Administrator and Oversight Committee.........29
ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ...........29

8.01   Disbursing Agent .....................................................................................29
8.02   Distributions of Cash ..............................................................................30
8.03   Timing of Distributions...........................................................................30
8.04   Holders as of the Distribution Record Date ...........................................30
8.05   Distributions to Address of Record .........................................................30
8.06   No Postpetition Interest on Claims; No More than Payment in Full ....................30
8.07   Minimum Distributions............................................................................31
8.08   Withholding Taxes ...................................................................................31
8.09   Time Bar to Cash Payments by Check ....................................................31
8.10   No Payments of Fractional Dollars.........................................................31
8.11   Setoff and Recoupment ...........................................................................31
8.12   Unclaimed Distributions .........................................................................32
ARTICLE IX PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS ...........................32

9.01   Objections to Claims................................................................................32
9.02   Amendments to Claims.............................................................................33
9.03   Estimation of Claims;  Certain Reserves ...............................................33
9.04   Disputed Claims .......................................................................................33
9.05   Plan Distributions to Holders of Subsequently Allowed Claims...........................34
9.06   Insurance Preservation and Proceeds......................................................34
9.07   Allocation of Plan Distributions Between Principal and Interest .........................35
9.08   No Recourse .............................................................................................35
9.09   Satisfaction of Claims and Interests........................................................35
ARTICLE X EXECUTORY CONTRACTS AND UNEXPIRED LEASES................................35

10.01  Rejection or Assumption and Retention or Assignment........................35
10.02  Cure of Defaults.......................................................................................36
10.03  Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan....................................37
10.04  Indemnification of Directors, Officers and Employees .........................38
ARTICLE XI CONDITIONS PRECEDENT ..................................................................38

11.01  Conditions to Confirmation ....................................................................38
11.02  Conditions Precedent to the Effective Date............................................38
11.03  Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay ..................................................................................................39
ARTICLE XII EXCULPATION, INJUNCTION AND RELATED PROVISIONS EFFECT OF CONFIRMATION ...........................................................................39

12.01  Binding Effect..........................................................................................39
12.02  Vesting of Assets .....................................................................................39

12.03 Release of Claims Against and Interests in the Debtor..........................................40
12.04 Term of Pre-Confirmation Injunctions or Stays ................................................40
12.05 Injunction Against Interference With Plan ........................................................40
12.06 Injunction .........................................................................................................40
12.07 Releases ............................................................................................................41
12.08 Exculpation and Limitation of Liability ..........................................................42
12.09 Injunction Related to Releases and Exculpation...............................................43
12.10 .  Agreement by Holders of Participating Customers; Release of Certain
        Customer Collections........................................................................................43
12.12 Termination of Subordination Rights and Settlement of Related Claims..............44
12.13 Retention of Causes of Action/Reservation of Rights ...........................................44
12.14 Releases of Liens ..............................................................................................44
ARTICLE XIII RETENTION OF JURISDICTION ....................................................................45
13.01 Scope of Bankruptcy Court Jurisdiction ..........................................................45
ARTICLE XIV MISCELLANEOUS PROVISIONS ..................................................................46
14.01 Effectuating Documents and Further Transactions...........................................46
14.02 Corporate Action...............................................................................................46
14.03 Exemption from Transfer Taxes .......................................................................47
14.04 Payment of Statutory Fees; Post Confirmation Reporting................................47
14.05 Disallowance of Existing Securities Law Claims..............................................47
14.06 Post-Effective Date Fees and Expenses ............................................................47
14.07 Amendment or Modification of this Plan .........................................................47
14.08 Revocation or Withdrawal of this Plan .............................................................48
14.09 Termination of Professionals ............................................................................48
14.10 Dissolution of any Committee...........................................................................48
14.11 Confirmation Order...........................................................................................48
14.12 Severability .......................................................................................................48
14.13 Inconsistency.....................................................................................................48
14.14 Governing Law ..................................................................................................49
14.15 Binding Effect ...................................................................................................49
14.16 Exhibits/Schedules............................................................................................49
14.17 Filing of Additional Documents .......................................................................49
14.18 Notices ..............................................................................................................49
14.19 Reservation of Rights........................................................................................50

Griddy Energy LLC, as debtor and debtor in possession, proposes the following liquidating plan under section 1121(a) of title 11 of the United States Code:

## ARTICLE I

### DEFINITIONS AND CONSTRUCTION OF TERMS

A.     <u>Definitions</u>.  As used herein, the following terms have the respective meanings specified below (such meanings to be equally applicable to both the singular and plural):

1.01     <u>Administrative Bar Date</u> has the meaning set forth in Section 2.02 of this Plan.

1.02     <u>Administrative Expense Claim</u> means any right to payment constituting a cost or expense of administration of the Chapter 11 Case of the kind specified in section 503(b) of the Bankruptcy Code, and entitled to priority pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2) or 507(b) of the Bankruptcy Code (other than a Fee Claim or U.S. Trustee Fees) for the period from the Petition Date to the Effective Date, including, without limitation: (a) any actual and necessary costs and expenses of preserving the Estate, any actual and necessary costs and expenses of winding down the Debtor's business, and (b) any indebtedness or obligations incurred or assumed by the Debtor during the Chapter 11 Case.

1.03     <u>Allowed</u> means any Claim (or portion thereof) (a) either (i) proof of which has been timely filed with the Bankruptcy Court or has been deemed timely filed by a Final Order; or (ii) if not so filed, scheduled by the Debtor (as the Schedules have been or may be amended from time to time in accordance with Bankruptcy Rule 1009) other than as disputed, contingent or unliquidated; and (b) allowed by a Final Order, by this Plan or because no party in interest timely has filed an objection, including an Omnibus Claims Objection, filed a motion to equitably subordinate, or otherwise sought to limit recovery or alter priority on such Claim; <u>provided</u>, <u>however</u>, that any Claim listed on the Schedules that has been paid by the Debtor (x) after the Petition Date pursuant to order of the Bankruptcy Court, (y) before the Petition Date and was inadvertently listed in the Schedules, shall not be considered an Allowed Claim. Notwithstanding anything herein to the contrary, Claims allowed solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under this Plan, include interest on such Administrative Expense Claim or Claim from and after the Petition Date.

1.04     <u>Allowed [Class Designation/Type] Claim/Interest</u> means a Claim or Interest, as applicable, that is Allowed in a specified class or of a specified type.

1.05     <u>Allowed Secured Claim</u> means an Allowed Prepetition Lender Claim and/or an Allowed Other Secured Claim, as the context requires, in each case, to the extent such Claim is secured by Collateral.

1.06     <u>Available Cash</u> means (a) all Cash of the Debtor less (b) the amount of Cash (i) necessary to pay holders of Allowed Prepetition Lender Claims, Other Secured Claims Administrative Expense Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims to

1

the extent provided in, and in accordance with, this Plan, and (ii) estimated and reserved by the Debtor to (x) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan on and after the Effective Date, including the fees and expenses of the Liquidating Debtor (including Plan Administrator Expenses) and all other Wind Down Costs in accordance with the Wind Down Budget, (y) pay all U.S. Trustee Fees, and (z) fund and maintain any postpetition reserve requirements in connection any agreements or otherwise. Unless the Debtor determines in its reasonable discretion that the following is required to fund the amounts set forth in this Section 1.06(b), Available Cash shall include the applicable portions of (1) excess amounts retained for Disputed Claims that become available in accordance with Section 9.04 of this Plan and (2) amounts represented by undeliverable Distributions in accordance with and subject to the terms of Section 8.12 of the Plan.  To the extent there is a Settlement Deficiency, each holder of an Allowed Class 5 Participating Customer Potential Return Claim will share Pro Rata in Available Cash with holders of Allowed Class 4 Claims in the amount of the Settlement Deficiency.

1.07    Available Prepetition Lender Contribution means the amount of the Prepetition Lender Contribution less the amount of Cash (a) necessary to pay holders of Allowed Prepetition Lender Claims, Other Secured Claims, Administrative Expense Claims, Fee Claims, Priority Tax Claims, Priority Non-Tax Claims to the extent provided in, and in accordance with, this Plan, and (b) estimated and reserved by the Debtor to (x) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan on and after the Effective Date, including the fees and expenses of the Liquidating Debtor (including Plan Administrator Expenses) and all other Wind Down Costs in accordance with the Wind Down Budget, (y) pay all U.S. Trustee Fees, and (z) fund and maintain any postpetition reserve requirements in connection any agreements or otherwise.

1.08    Avoidance Actions means any avoidance, equitable subordination or recovery actions or proceedings under chapter 5 of the Bankruptcy Code (e.g., 502(d), 510, 542 through 551, and 553) or applicable state law.

1.09    Ballot means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject this Plan, on which is to be indicated acceptance or rejection of this Plan.

1.10    Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

1.11    Bankruptcy Court means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, having jurisdiction over the Chapter 11 Case.

1.12    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and the Local Rules of the Bankruptcy Court.

1.13    Bar Date means the applicable deadline for filing proofs of Claim, including, without limitation, Claims arising prior to the Petition Date (including 503(b)(9) Claims) and

Administrative Expense Claims, as established by an order of the Bankruptcy Court or under this Plan.

1.14    Bar Date Order means the Non-Former Customers Bar Date Order or the Former Customers Bar Date Order, as applicable.

1.15    Business Day means any day other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

1.16    Cash means legal tender of the United States of America and equivalents thereof.

1.17    Causes of Action means, without limitation, any and all actions, causes of action, Avoidance Actions, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever owned by the Debtor, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, whether assertable directly, indirectly, derivatively or in any representative or other capacity, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act, failure to act, error, omission, transaction, occurrence or other event arising or occurring prior to the Petition Date or during the course of the Chapter 11 Case, including through the Effective Date.

1.18    Chapter 11 Case means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor, which is under case caption Griddy Energy LLC, Chapter 11, Case No. 21-30923 and is currently pending before the Bankruptcy Court.

1.19    Claim means any "claim" (as defined in section 101(5) of the Bankruptcy Code) against the Debtor, including, without limitation, any Claim arising after the Petition Date.

1.20    Claims Agent means Bankruptcy Management Solutions, Inc. d/b/a Stretto, or any other entity approved by the Bankruptcy Court to act as the Debtor's claims and noticing agent pursuant to 28 U.S.C. § 156(c).

1.21    Class means each category of Claims or Interests established under Article III of this Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.22    Class 4 Distribution means, as of any given Distribution Date, (a) the aggregate amount of Available Cash and (b) any Net Recovery Proceeds.

1.23    Collateral means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

1.24    Collateral Agent means Macquarie Energy LLC, in its capacity as collateral agent for the Prepetition Secured Lenders.

1.25    Committee means any statutory committee of unsecured creditors appointed in the Chapter 11 Case pursuant to section 1102 of the Bankruptcy Code, as the same may be reconstituted from time to time.

3

1.26    Confirmation Date means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

1.27    Confirmation Hearing means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to Bankruptcy Code section 1129, as such hearing may be adjourned or continued from time to time.

1.28    Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129, which shall be in form and substance acceptable to the Debtor and the Collateral Agent.

1.29    Cure Amounts has the meaning set forth in Section 10.02 of this Plan.

1.30    Cure Dispute has the meaning set forth in Section 10.02 of this Plan.

1.31    Cure Schedule has the meaning set forth in Section 10.02 of this Plan.

1.32    Customer Claim means any unsecured nonpriority claim of a former customer of the Debtor against the Debtor; provided that the foregoing shall not include: (a) a Prepetition Lender Claim, (b) an Other Secured Claim, (c) an Administrative Expense Claim, (d) a Fee Claim, (e) a Priority Claim, (f) a Priority Non-Tax Claim, (g) an Other General Unsecured Claim, (h) an Intercompany Claim, (i) an Existing Securities Law Claim, and (j) U.S. Trustee Fees, and shall not include Claims that are not Allowed or are released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of the Plan or otherwise; provided that, notwithstanding the foregoing exclusions, (x) the Customer Claim of a Non-Participating Customer shall be classified and treated as an Other General Unsecured Claim solely if such Non-Participating Customer properly and timely filed an unsecured nonpriority claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order, and (y) if the Bankruptcy Court does not approve the Customer Releases pursuant to Bankruptcy Rule 9019 through this Plan or otherwise, then each Participating Customer will not have an Allowed Class 5 Claim and, solely if such Participating Customer properly and timely filed an unsecured nonpriority claim against the Debtor by the applicable Bar Date in accordance with the Bar Date Order, such Customer Claim shall be classified and treated as an Other General Unsecured Claim.

1.33    Customer Release Opt-Out Form means the opt-out form that will enable a Participating Customer to elect to become a Non-Participating Customer under the Plan, subject to the terms and conditions of the Plan, which shall be included in substantially final form in the Plan Supplement.

1.34    Customer Releases means the mutual releases by and among the Participating Customers, on the one hand, and the Released Parties, on the other hand, whereby (i) the Debtor and each other Released Party releases and waives all Claims against each Participating Customer, solely in its capacity as such, including, for unpaid amounts owed by such Participating Customer to the Debtor for the electricity and related fees, taxes, expenses and other costs charged to such customers for the period February 13, 2021 through and including February 19, 2021, including when the Public Utilities Commission of Texas imposed the $9,000 per MWh price for wholesale power; and (ii) each Participating Customer releases and waives all

4

Claims against each of the Released Parties relating to the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator, the Chapter 11 Case, the Plan or the Disclosure Statement, including, any Claims for any loss a Participating Customer may suffer, have suffered or be alleged to suffer as a result of or relating to the Participating Customer's agreements with the Debtor as well as the electricity and related fees, taxes and costs charged to such customers for any period while they were a customer of the Debtor, including, the period February 13, 2021 through and including February 19, 2021, including when the Public Utilities Commission of Texas imposed the $9,000 per MWh price for wholesale power; provided, that, notwithstanding the foregoing, each eligible Participating Customer may assert a Participating Customer Potential Return Claim in a timely and properly filed proof of claim form in accordance with the Former Customers Bar Date Order and, solely to the extent each Participating Customer has an Allowed Participating Customer Potential Return, receive its Pro Rata share of (i) the Texas Storm Causes of Action Net Recovery Proceeds, if any, and (ii) any Available Prepetition Lender Contribution, which shall be shared with holders of Allowed Other General Unsecured Claims on a Pro Rata basis and be distributed (Pro Rata) to holders of (a) Allowed Other General Unsecured Claims and (b) Allowed Participating Customer Potential Return Claims.

1.35    Debtor means Griddy Energy LLC, prior to the Effective Date, and the Liquidating Debtor from and after the Effective Date, as the context requires.

1.36    Disallowed means a finding of the Bankruptcy Court in a Final Order, which may include one or more orders granting one or more Omnibus Claims Objections, or provision in the Plan providing that a Disputed Claim shall not be an Allowed Claim.

1.37    Disbursing Agent means, for purposes of making distributions under the Plan, the Debtor or a designee thereof (including the Plan Administrator).

1.38    Disclosure Statement means the disclosure statement relating to this Plan, as such disclosure statement may be amended, modified, or supplemented from time to time (including, without limitation, all exhibits and schedules thereto).

1.39    Disputed means, as of any relevant date, any Claim or Interest, or any portion thereof: (a) that is not an Allowed Claim, Allowed Interest, Disallowed Claim or Disallowed Interest as of the relevant date; or (b) for which a proof of Claim or Interest has been filed with the Bankruptcy Court or a written request for payment has been made, to the extent the Debtor or any party in interest has interposed a timely objection, including an Omnibus Claims Objection, or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order as of the relevant date.

1.40    Disputed Amount means, with respect to any Cause of Action that has not been released under the Plan, the amount initially sought to be recovered by the Plan Administrator in respect thereof, as determined in a commercially reasonable manner by the Plan Administrator in consultation with the Oversight Committee, and as documented by the Plan Administrator.

1.41    Disputed Claims Reserves means, collectively, the Disputed Other General Unsecured Claims Reserve and the Disputed Priority Claims Reserve.

1.42    <u>Disputed Other General Unsecured Claims Reserve</u> has the meaning set forth in Section 9.04(c) of this Plan.

1.43    <u>Disputed Priority Claims Reserve</u> has the meaning set forth in Section 9.04(b) of this Plan.

1.44    <u>Distribution</u> means a distribution of Cash or other property pursuant to this Plan.

1.45    <u>Distribution Date</u> means any date that is: (a) the Effective Date; (b) the Initial Distribution Date; (c) any Interim Distribution Date; or (d) the Final Distribution Date, as the context requires.

1.46    <u>Distribution Record Date</u> means the Confirmation Date, or such other later date as shall be established by the Bankruptcy Court in the Confirmation Order.

1.47    <u>Effective Date</u> means the first Business Day as soon as reasonably practicable after all conditions to the occurrence of the Effective Date set forth in Section 11.02 hereof have been satisfied or waived, and no stay of the Confirmation Order is in effect.

1.48    <u>Estate</u> means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

1.49    <u>Estimation Order</u> means an order or orders of the Bankruptcy Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim.  The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

1.50    <u>Existing HoldCo Interests</u> means the Interests in the Debtor outstanding immediately prior to the Effective Date.

1.51    <u>Existing Securities Law Claim</u> means any Claim, whether or not the subject of an existing lawsuit: (a) arising from rescission of a purchase or sale of any securities of the Debtor or an affiliate of the Debtor; (b) for damages arising from the purchase or sale of any such security; (c) for violations of the securities laws, misrepresentations, or any similar Claims, including, to the extent related to the foregoing or otherwise subject to subordination under section 510(b) of the Bankruptcy Code, any attorneys' fees, other charges, or costs incurred on account of the foregoing Claims; or (d) except as otherwise provided for in this Plan, including Section 10.04 hereof, for reimbursement, contribution, or indemnification allowed under section 502 of the Bankruptcy Code on account of any such Claim.

1.52    <u>Federal Judgment Rate</u> means the interest rate provided under 28 U.S.C. § 1961(a), calculated as of the Petition Date, compounded annually.

1.53    <u>Fee Claim</u> means a Claim by a Professional Person for compensation, indemnification or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Chapter 11 Case, including, without limitation, in connection with the final fee applications of such Professional Person.

1.54    Final Distribution means the distribution to be made by the Disbursing Agent after the Debtor's assets have been reduced to Cash, abandoned or otherwise disposed of, and the Debtor has resolved all Disputed Claims and paid all Fee Claims approved by the Bankruptcy Court by Final Order.

1.55    Final Distribution Date means the date upon which the Final Distribution occurs.

1.56    Final Order means an order or judgment, as entered on the docket of the applicable court, that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely-filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Rule 50 or 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Civil Procedure or Bankruptcy Rules, may be filed relating to such order, ruling or judgment shall not cause such order, ruling or judgment not to be a Final Order; provided, further, that no order or judgment shall fail to be a Final Order solely because of the susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code.

1.57    Former Customers means a Person who (a) was a retail electricity customer (or the legal representative of such customer) of the Debtor at any point from February 11, 2021 through February 19, 2021 and (b) is the holder of a Claim of any kind against the Debtor that arose during or relates to the period from February 11, 2021 through February 19, 2021.

1.58    Former Customers Bar Date Order means the order of the Court that, among other things, sets the Bar Date in respect of Claims solely for Former Customers arising prior to the Petition Date.

1.59    HoldCo means Griddy Holdings LLC, the direct parent company of the Debtor.

1.60    Initial Distribution Date means, except as set forth in this Plan, the first Business Day 20 days after the Effective Date, or such longer or shorter period as may be reasonably determined by the Debtor, to make initial Distributions under this Plan.

1.61    Intercompany Claim means a Claim, Cause of Action or remedy held or asserted by or against the Debtor by a non-Debtor affiliate of the Debtor.

1.62    Intercreditor Agreement means the Macquarie Intercreditor Agreement, dated as of December 4, 2020, among the Prepetition Secured Lenders, the Collateral Agent, HoldCo, the Debtor and certain non-Debtor affiliates of the Debtor.

1.63    Interest means the interest (whether legal, equitable, contractual or other rights) of any holders of any class of equity securities of the Debtor represented by membership interests or other instruments evidencing an ownership interest in the Debtor, whether or not certificated, transferable, voting or denominated "unit" or a similar security, and any Claim or Cause of Action related to or arising from the foregoing, or any option, warrant or right, contractual or otherwise, to acquire any such interest.

1.64    Interim Distribution Date means any date, other than the Final Distribution Date, after the Initial Distribution Date on which the Debtor determines that an interim distribution should be made to holders of Allowed Claims in light of, inter alia, resolutions of Disputed Claims and the administrative costs of such a distribution.

1.65    Lien shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

1.66    Liquidating Debtor means the Debtor and its respective Estate from and after the Effective Date.

1.67    Net Recovery Proceeds means the Cash or other amounts received by the Debtor, if any, from the pursuit of any Cause of Action (formally or informally) not released under this Plan, net of all costs and expenses deducted therefrom, to be distributed (Pro Rata) to holders of Allowed Other General Unsecured Claims, subject to all Claims of a higher priority being paid in full or adequate reserves being set aside in accordance with this Plan.

1.68    Non-Debtor Affiliates means the Debtor's non-debtor affiliates, HoldCo, Griddy Technologies LLC, Griddy Pro LLC, Griddy VI Holdings LLC, Griddy VI Intermediate Holdings LLC, Griddy 6 Holdings LLC, Griddy VI Series A Holdings LLC, Beachside New Utility Holdings LLC, Beachside New Utility (VI) Holdings LLC, Elliot New Utility Holdings LLC, Elliot New Utility (VI) Holdings LLC, Janson New Utility Holdings LLC, Janson New Utility (VI) Holdings LLC, Grid Investments Inc., EDF Trading North America LLC, Niab Holdings Pty Limited and SRA Investments Pty Limited.

1.69    Non-Former Customers Bar Date Order means the order of the Court, dated March 30, 2021 [Docket No. 107], that, among other things, sets the general and governmental unit Bar Date in respect of Claims other than of Former Customers arising prior to the Petition Date.

1.70    Non-Participating Customer means any holder of a Customer Claim in Class 5 that opts-out of the Customer Releases.

1.71    Omnibus Claims Objection means one or more omnibus objections to Claims pursuant to Bankruptcy Rule 3007 or other applicable law objecting to or otherwise reconciling Claims filed against the Debtor.

1.72    Other General Unsecured Claim means any unsecured nonpriority claim against the Debtor, other than: (a) a Prepetition Lender Claim, (b) an Other Secured Claim, (c) an Administrative Expense Claim, (d) a Fee Claim, (e) a Priority Claim, (f) a Priority Non-Tax Claim, (g) a Customer Claim, (h) an Intercompany Claim, (i) an Existing Securities Law Claim, and (j) U.S. Trustee Fees, and shall not include Claims that are not Allowed or are released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of the Plan or otherwise; provided that, notwithstanding the foregoing exclusions, (x) the Customer Claim of a Non-Participating Customer shall be classified and treated as an Other General Unsecured Claim solely if such Non-Participating Customer properly and timely filed an unsecured nonpriority claim against the Debtor by the applicable Bar Date in accordance with the applicable Bar Date Order, and (y) if the Bankruptcy Court does not approve the Customer Releases pursuant to Bankruptcy Rule 9019 through this Plan or otherwise, then

each Participating Customer will not have an Allowed Class 5 Claim and, solely if such Participating Customer properly and timely filed an unsecured nonpriority claim against the Debtor by the applicable Bar Date in accordance with the applicable Bar Date Order, such Customer Claim shall be classified and treated as an Other General Unsecured Claim.

1.73    Other Secured Claims means any Secured Claim against the Debtor other than a Prepetition Lender Claim.

1.74    Outstanding LC means the irrevocable standby letter of credit (ending 120) issued pursuant to the Prepetition Lender BBFA in favor of EDF Trading North America, LLC by order and for the account of the Debtor in the aggregate amount of $300,000, which letter of credit expires on September 25, 2021.

1.75    Oversight Committee means the committee appointed pursuant to Section 7.05 of the Plan to participate in the oversight of certain material actions of the Plan Administrator.

1.76    Participating Customer means any holder of a Customer Claim that does not opt-out of the Customer Releases, including those holders of Customer Claims that abstain from voting and do not opt-out of the Customer Releases.

1.77    Participating Customer Potential Return means, for each applicable Participating Customer, the total amount such Participating Customer paid the Debtor for electricity consumed by such Participating Customer during the period February 13, 2021 through February 19, 2021, including when the Public Utilities Commission of Texas imposed the $9,000 per MWh price for wholesale power, as reflected on the Debtor's books and records, *less* any amounts such Participating Customer successfully disputed and received a full or partial refund from such Participating Customer's credit card company (to the extent not accounted for in the Debtor's books and records).

1.78    Participating Customer Potential Return Claim mean any unsecured nonpriority claim against the Debtor for a Participating Customer Potential Return.

1.79    Person means any individual, corporation, partnership, association, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, Interest holder, or any other entity or organization of whatever nature.

1.80    Petition Date means March 15, 2021.

1.81    Plan means this chapter 11 liquidating plan, including the Plan Supplement and all exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended, or modified from time to time.

1.82    Plan Administrator means the responsible officer, acting in his or her capacity as such, designated by the Debtor (or any Bankruptcy Court approved successor) to serve as the sole officer of the Debtor who shall, among other things, implement this Plan pursuant to its terms and the terms of the Confirmation Order.

1.83    Plan Administrator Agreement means the agreement governing, among other things, the retention and duties of the Plan Administrator, as described in Section 7.03 of the Plan, which shall be in form and substance as contained in the Plan Supplement.

1.84    Plan Administrator Expenses means all actual and necessary costs and expenses incurred on and after the Effective Date in connection with the wind down of the Debtor and the administration of the Plan, including, but not limited to, the Debtor's costs, expenses and legal fees incurred related to: (a) filing and prosecuting objections to Claims; (b) if necessary, investigating, litigating, settling, negotiating, pursuing or otherwise associated with Causes of Action not released under the terms of the Plan, including, but not limited to, attorneys' fees, accounting fees, expert witness fees, and all costs relating to obtaining and distributing recoveries from such causes of action; (c) performing the duties set forth in Article VII of the Plan and the Plan Administrator Agreement; and (d) all U.S. Trustee Fees.

1.85    Plan Documents means those documents contained in the Plan Supplement necessary to effectuate this Plan following entry of the Confirmation Order, including the Plan Administrator Agreement, a form of amended limited liability company agreement for the Liquidating Debtor, any Cure Schedule and the Customer Release Opt-Out Form, which shall be subject to revision and modification prior to the Effective Date.

1.86    Plan Supplement means the supplemental appendix to this Plan, to be filed no later than five (5) Business Days prior to the deadline for Ballots to be received in connection with voting to accept or reject the Plan, which will contain, among other things, draft forms, signed copies, or summaries of material terms, as the case may be, of the Plan Documents and the names of the Plan Administrator and the initial members of the Oversight Committee, each of which shall be subject to revision and modification prior to the Effective Date.

1.87    Prepetition ISDA Master Agreement means the ISDA 2002 Master Agreement, dated as of December 4, 2020, between Macquarie Energy LLC and the Debtor, including all schedules thereto, confirmations thereunder and agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

1.88    Prepetition Lender BBFA means the Borrowing Base Facility Agreement among the Debtor, as Counterparty, Griddy Holdings LLC, Griddy Technologies LLC and Griddy Pro LLC, as Guarantors and Macquarie Investments US Inc., dated as of December 4, 2020, including all agreements, documents, notes, instruments and any other agreements delivered pursuant thereto or in connection therewith (in each case, as amended, modified or supplemented from time to time).

1.89    Prepetition Lender Claim means any unpaid Claim as of the Effective Date arising under, related to or in connection with any and all of the Prepetition Secured Agreements, which shall be Allowed on the Effective Date in the aggregate principal amount of $1,448,937.58, plus (a) Cash in an amount sufficient to cash collateralize the Outstanding LC; (b) with respect to the Prepetition Lender BBFA, accrued and unpaid fees in respect of the Outstanding LC and all prior letters of credit through the Effective Date; and (c) the Prepetition Lender Fee Claim.

1.90     Prepetition Lender Contribution means the $1,448,937.58 that the Prepetition Secured Lenders would be entitled to receive on account of the Prepetition Lender Claim, which amount the Prepetition Secured Lenders will be deemed to have contributed (via waiver) to the Debtor under the Plan.

1.91     Prepetition Lender Distribution means the following to be distributed by the Debtor to the Collateral Agent: (a) Cash in an amount sufficient to fully cash collateralize the Outstanding LC, (b) accrued and unpaid fees due and owing under the Prepetition Lender BBFA in respect of the Outstanding LC and all prior letters of credit through the Effective Date, and (c) the Prepetition Lender Fee Claim; provided that, notwithstanding anything contained in this Plan to the contrary other than the proviso in the definition of "Prepetition Lender Fee Claim," which shall apply in all respects, if the Outstanding LC remains undrawn or partially drawn by the beneficiary thereof after September 25, 2021, the Prepetition Secured Lenders shall, on or prior to September 30, 2021, refund in full in Cash to the Debtor all such undrawn amounts; provided further that if, prior to or on September 25, 2021, the Outstanding LC is canceled, within four (4) Business Days, the Prepetition Secured Lenders shall refund in full in Cash to the Debtor all unused amounts.  Any and all such refunded Cash shall be used by the Debtor in accordance with the terms of the Plan.

1.92     Prepetition Lender Fee Claim means any unpaid reasonable and documented out-of-pocket fees and expenses incurred by the Prepetition Secured Lenders or the Collateral Agent under the Prepetition Secured Agreements to the extent provided thereunder in an amount of no more than $225,000 for the period through the Effective Date, which shall be paid solely by one or more of the Non-Debtor Affiliates as determined by the Non-Debtor Affiliates in their sole discretion; provided, that, if there are any unanticipated litigation or contested matters, including any document requests or other discovery that arise during the period May 19, 2021 through the Effective Date in this Chapter 11 Case or any related adversary proceeding that cause the Prepetition Secured Lenders or the Collateral Agent to incur fees and expenses in excess of $225,000, the Prepetition Secured Lenders or the Collateral Agent, as the case may be, may offset such reasonable and documented out-of-pocket fees and expenses incurred by the Prepetition Secured Lenders or the Collateral Agent in connection therewith (to the extent provided under the Prepetition Secured Agreements) solely against any undrawn amounts remaining from cash collateralizing the Outstanding LC promptly after expiration thereof.  The reasonable and documented out-of-pocket fees and expenses described in the foregoing sentence shall be deemed Allowed on the Effective Date.

1.93     Prepetition Secured Agreements means (a) the Prepetition Lender BBFA; and (b) the Prepetition ISDA Master Agreement.

1.94     Prepetition Secured Lenders means (a) Macquarie Investments US Inc. (and its respective successors and assigns), solely in its capacity as set forth in the Prepetition Lender BBFA, (b) Macquarie Energy LLC (and its respective successors and assigns), solely in its capacity as counterparty under the Prepetition ISDA Master Agreement.

1.95     Priority Non-Tax Claim means any Claim, other than an Administrative Expense Claim, a Fee Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

1.96    Priority Tax Claim means any Claim of a governmental unit (as defined in section 101(27) of the Bankruptcy Code) of the kind specified in Bankruptcy Code sections 502(i) and 507(a)(8).

1.97    Professional Expense Escrow means the segregated account maintained by the Debtor for payment of Fee Claims by Professional Persons.

1.98    Professional Persons means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Case, pursuant to sections 327, 328, 330 or 1103 of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to order of the Bankruptcy Court.

1.99    Pro Rata means proportionate, so that, for example, the ratio of (a) the amount of all consideration distributed on account of an Allowed Claim to (b) the amount of such Allowed Claim is the same as the ratio of (i) the amount of all consideration distributed on account of all Allowed Claims in the Class in which such Claim is classified to (ii) the amount of all Allowed Claims in such Class.

1.100    PUCT Settlement means the settlement, if any, between the Debtor and the Public Utilities Commission of Texas relating to that certain irrevocable standby letter of credit (ending 083) issued pursuant to the Prepetition Lender BBFA in favor of the Public Utility Commission of Texas by order and for the account of the Debtor in the aggregate amount of $500,000, which letter of credit was drawn in full prior to the Petition Date by the Public Utility Commission of Texas, which settlement, if any, would be subject to (a) the consent of the Committee (not to be unreasonably withheld) and (b) Bankruptcy Court approval.  It is anticipated that the Public Utilities Commission of Texas will directly administer any distribution of funds under the PUCT Settlement and that such funds would not become property of the Debtor's Estate.

1.101    Released Parties means, collectively, and each solely in its capacity as such: (a) the Debtor, (b) the Committee and its members, (c) the Prepetition Secured Lenders and the Collateral Agent, and (d) each of such parties' respective predecessors, successors, assigns, subsidiaries, affiliates, the Non-Debtor Affiliates, owners, and each of their respective current (as of the Petition Date) officers, directors, employees, managers, members, principals, shareholders, agents, advisors and professionals (including any attorneys, consultants, financial advisors, investment bankers and other professionals retained by such Persons) or other representatives, each in their capacities as such, together with their successors and assigns; provided, however, that such attorneys and professional advisors shall only include those that provided services related to the Chapter 11 Case and the transactions contemplated by the Plan; provided, further, that no Person shall be a Released Party if it elects to opt out of the releases provided for in Article XII of the Plan in its Ballot.

1.102    Schedules means the schedules of assets and liabilities, the lists of holders of Interests, and the statements of financial affairs filed by the Debtor pursuant to Bankruptcy Code section 521 and Bankruptcy Rule 1007, and all amendments and modifications thereto filed with the Bankruptcy Court through and including the Confirmation Date.

1.103    Secured Claim means a Claim, either as set forth in this Plan, as agreed to by the holder of such Claim and the Debtor or as determined by a Final Order in accordance with sections 506(a) or 1111(b) of the Bankruptcy Code: (a) that is secured by a valid, perfected and enforceable Lien on Collateral that is not subject to avoidance under bankruptcy or nonbankruptcy law, to the extent of the value of the Claim holder's interest in such Collateral as of the relevant date or (b) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

1.104    Settlement Deficiency means, if the PUCT Settlement is approved by the Bankruptcy Court but the amount of such settlement that is to be distributed to holders of Allowed Class 5 Claims in accordance with Section 4.05(c) of this Plan is less than $500,000, the difference between $500,000 and the total amount of the PUCT Settlement that is to be distributed under the PUCT Settlement.

1.105    State of Texas Settlement means the settlement between the Debtor, Holdco and the State of Texas, by and through the Attorney General of Texas, resolving (a) the action styled *The State of Texas v. Griddy Energy LLC and Griddy Holdings, LLC*, Cause No. 2021-11518, filed in the 133rd District Court of Harris County, Texas and (b) the Civil Investigative Demand issued by the State of Texas to the Debtor on February 19, 2021, which settlement is subject to Bankruptcy Court approval and the occurrence of the Effective Date of this Plan.

1.106    Supplemental Cure Schedule has the meaning set forth in Section 10.02 of this Plan.

1.107    Texas Storm Causes of Action means any and all Causes of Action of the Debtor arising from, relating to or in connection the winter storm (commonly referred to as "Winter Storm Uri") that occurred in Texas during the month of February 2021 (primarily February 13, 2021 through February 19, 2021).  For the avoidance of doubt, such Causes of Action of the Debtor exclude any and all claims against the Released Parties.

1.108    Texas Storm Causes of Action Net Recovery Proceeds means the Cash or other amounts received by the Debtor, if any, from the pursuit of any Texas Storm Causes of Action (formally or informally) not released under this Plan, net of all costs and expenses deducted therefrom, to be distributed (Pro Rata) to holders of (a) Allowed Other General Unsecured Claims and (b) Allowed Participating Customer Potential Return Claims, subject to all Claims of a higher priority being paid in full or adequate reserves being set aside in accordance with this Plan.

1.109    U.S. Trustee means the United States Trustee for Region 7.

1.110    U.S. Trustee Fees means fees arising under 28 U.S.C. § 1930(a)(6), and accrued interest thereon arising under 31 U.S.C. § 3717, if any.

1.111    Voting Deadline means June 25, 2021 at 5:00 p.m. (prevailing Central Time), which is the deadline set by the Bankruptcy Court to accept or reject the Plan.

1.112    Wind Down Costs includes the fees and expenses incurred by the Debtor following the Effective Date (including reasonable fees and costs of attorneys and other

13

professionals) for the purpose of: (a) resolving Disputed Claims, if any, and effectuating distributions to holders of Allowed Claims; (b) otherwise implementing the Plan, the wind down of the Debtor and the closing of the Chapter 11 Case; and (c) undertaking such other matters relating to implementation of the Plan as are deemed necessary and appropriate by the Debtors.

1.113   Wind Down Budget means a budget to be prepared by the Debtor to be filed with the Court no later than five (5) Business Days prior to the Confirmation Hearing and which may be amended from time to time after entry of the Confirmation Order, and shall estimate the funds necessary to administer the Plan, continue the Debtor's wind down, and otherwise unwind the Debtor's affairs, including the costs of holding and liquidating the Estate's remaining property, if any, objecting to Claims, making the Distributions required by the Plan, prosecuting Claims and Causes of Action, if any, that may be held by the Estate against third parties that are not released, waived or transferred pursuant to the Plan (including pursuant to Article XII) or otherwise, paying taxes, filing tax returns, paying the Plan Administrator's Professional fees, funding payroll and other employee costs, if any, providing for the purchase of errors and omissions insurance and/or other forms of indemnification for the Plan Administrator, and creating appropriate reserves for all such items and other costs of administering the Plan, the Estate and the Debtor.

B.       Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein. Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The word "including" as used in this Plan means "including, without limitation" regardless of whether so specified. Any reference in this Plan to a contract, instrument, release, credit agreement or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, amended and restated, modified, or supplemented from time to time. Subject to the provisions of any contract, limited liability company agreements, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules. The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns.

C.     <u>Appendices and Plan Documents</u>.

All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein. The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. Holders of Claims and Interests may inspect copies of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or via the Claims Agent's website at https://cases.stretto.com/Griddy, or obtain a copy of the Plan Documents by a written request sent to the Claims Agent at the following address:

Griddy Energy LLC
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

Copies may also be obtained by contacting Stretto via telephone at (855) 478-2725 (toll free U.S.) or for international calls at (949) 471-0997.

**ARTICLE II**

**<u>ADMINISTRATIVE EXPENSE CLAIMS,
FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS</u>**

All Claims and Interests, except Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims are placed in the Classes set forth in Article III below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims of the Debtor have not been classified, and the holders thereof are not entitled to vote on this Plan. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A Claim or Interest also is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. However, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

2.01     <u>Administrative Expense Claims</u>. Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Expense Claim becomes an Allowed Claim, the holder of such Allowed Administrative Expense Claim shall receive from the Debtor Cash in an amount equal to such Allowed Claim; <u>provided</u>, <u>however</u>, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as debtor in possession, shall be paid by the Debtor in the ordinary

15

course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such liabilities.

      2.02   <u>Time for Filing Administrative Expense Claims</u>.  The holder of an Administrative Expense Claim, other than:

      (a)    a Fee Claim;

      (b)    an Administrative Expense Claim that has been Allowed on or before the Effective Date;

      (c)    an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtor pursuant to an order of the Bankruptcy Court;

      (d)    an Administrative Expense Claim held by an officer, manager, member or employee of the Debtor employed as of the Petition Date for indemnification, contribution, or advancement of expenses pursuant to: (i) the Debtor's operating agreement or similar organizational document, or (ii) any indemnification or contribution agreement approved by the Bankruptcy Court;

      (e)    an Administrative Expense Claim arising, in the ordinary course of business, out of the employment by the Debtor of an individual from and after the Petition Date, but only to the extent that such Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses; or

      (f)    an Intercompany Claim,

must file with the Bankruptcy Court and serve on the Debtor, the Claims Agent, and the United States Trustee, **notice of such Administrative Expense Claim so as to be received by 5:00 p.m. prevailing Eastern time on the date that is thirty (30) days after service of notice of occurrence of the Effective Date (the "<u>Administrative Bar Date</u>").**  Such notice must include at a minimum: (i) the name of the Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND RELEASED**.

      2.03   <u>Fee Claims</u>.  All Professional Persons seeking allowance by the Bankruptcy Court of a Fee Claim shall: (i) file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date that is forty-five (45) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court; and (ii) if granted such an award by the Bankruptcy Court, be paid in full in Cash such amount as awarded by the Bankruptcy Court (A) no later than five (5) Business Days after the date an order is entered with respect to such award or (B) upon such

other terms as may be mutually agreed upon between such holder of a Fee Claim and the Debtor. On the Effective Date, to the extent known, the Debtor or the Plan Administrator shall reserve and hold in the Professional Expense Escrow Cash in an amount equal to accrued but unpaid Fee Claims as of the Effective Date, which Cash shall be used, until all Allowed Fee Claims have been paid in full, solely for the payment of Allowed Fee Claims.  Objections to Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than sixty-five (65) days after the Effective Date.  To the extent the Cash in the Professional Expense Escrow exceeds the amount of the Allowed Fee Claims, such excess Cash shall be used by the Debtor in accordance with the terms of this Plan.

2.04    <u>U.S. Trustee Fees</u>.  The Debtor shall pay all outstanding U.S. Trustee Fees of the Debtor, together with interest pursuant to 31 U.S.C. § 3717, if any, on an ongoing basis on the later of (i) the Effective Date and (ii) the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the Chapter 11 Case or the Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

2.05    <u>Priority Tax Claims</u>.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtor either: (i) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Claim, or (ii) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled calculated in accordance with section 511 of the Bankruptcy Code); <u>provided</u>, <u>however</u>, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due.

## ARTICLE III

## <u>CLASSIFICATION OF CLAIMS AND INTERESTS</u>

Claims, other than Administrative Expense Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims, and Interests are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Prepetition Lender Claims | Impaired | Yes (entitled to vote) |
| Class 2 | Other Secured Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 3 | Priority Non-Tax Claims | Unimpaired | No (conclusively presumed to accept) |
| Class 4 | Other General Unsecured Claims | Impaired | Yes (entitled to vote) |

17

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 5 | Customer Claims | Impaired | Yes (entitled to vote) |
| Class 6 | Intercompany Claims | Impaired | Yes (entitled to vote) |
| Class 7 | Existing HoldCo Interests | Impaired | Yes (entitled to vote) |

# ARTICLE IV

# TREATMENT OF CLAIMS AND INTERESTS

4.01    CLASS 1 – PREPETITION LENDER CLAIMS.

(a)    Impairment and Voting.  Class 1 is impaired by the Plan.  Each holder of a Prepetition Lender Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  Except to the extent that a holder of an Allowed Prepetition Lender Claim has been paid in full by the Debtor prior to the Effective Date or agrees to a different treatment with respect to such holder's Claim, on the Effective Date, or as soon as practicable thereafter, the Collateral Agent shall receive (for the benefit of itself and the Prepetition Secured Lenders) the Prepetition Lender Distribution, to be distributed in accordance with the applicable Prepetition Secured Agreements, including the Intercreditor Agreement.  The Prepetition Lender Claims are Allowed Claims under the Plan; provided that, notwithstanding the foregoing, the Prepetition Secured Lenders waive their right to receive the Prepetition Lender Contribution, which shall be contributed to the Debtor to be used and distributed in accordance with the payment priorities set forth in this Plan.  Notwithstanding anything herein to the contrary, upon the full payment or other satisfaction or release of such obligations, the Liens securing such Allowed Prepetition Lender Claim shall be deemed released, terminated and extinguished against all parties, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.  All Cash held by the Prepetition Secured Lenders on the Effective Date that is in excess of the amount of the Prepetition Lender Distribution shall be promptly returned to the Debtor and utilized by the Debtor in accordance with the terms of this Plan.

4.02    CLASS 2 – OTHER SECURED CLAIMS.

(a)    Impairment and Voting.  Class 2 is unimpaired by the Plan.  Each holder of an Other Secured Claim is not entitled to vote to accept or reject the Plan because it is unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)    Treatment.  Except to the extent that a holder of an Allowed Other Secured Claim has been paid in full by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other Secured Claim shall receive at the election of the Debtor on or before, the later of the Effective Date and thirty (30) days after the date on which a Class 2 Claim becomes an Allowed Claim, or as soon as reasonably practicable

thereafter: (i) Cash in an amount equal to such Allowed Other Secured Claim; (ii) title to the property securing such Allowed Class 2 Claim to the holder of such Claim; or (iii) such other treatment that leaves such Allowed Other Secured Claim unimpaired pursuant to section 1124(2) of the Bankruptcy Code. Notwithstanding anything herein to the contrary, upon the full payment or other satisfaction of such obligations, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(c)     <u>Deficiency Claims</u>.  To the extent that the value of the Collateral securing each Other Secured Claim is less than the Allowed amount of such Other Secured Claim, the undersecured portion of such Allowed Claim shall be treated for all purposes under this Plan as an Allowed Other General Unsecured Claim and shall be classified as an Other General Unsecured Claim.

(d)     <u>Separate Classification of Secured Claims</u>.  Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of voting on the Plan and receiving Distributions.

4.03     <u>CLASS 3 –PRIORITY NON-TAX CLAIMS</u>.

(a)     <u>Impairment and Voting</u>.  Class 3 is unimpaired by the Plan.  Each holder of an Allowed Priority Non-Tax Claim is not entitled to vote to accept or reject the Plan because it is unimpaired and conclusively deemed to have accepted the Plan, pursuant to section 1126(f) of the Bankruptcy Code.

(b)     <u>Treatment</u>.  The legal, equitable and contractual rights of the holders of Priority Non-Tax Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim has been paid in full by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Non-Tax Claim shall receive Cash in an amount equal to such Allowed Priority Non-Tax Claim on the later of the Effective Date and the date such Allowed Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim, or as soon thereafter as is practicable.

4.04     <u>CLASS 4 – OTHER GENERAL UNSECURED CLAIMS</u>.

(a)     <u>Impairment and Voting</u>.  Class 4 is impaired by the Plan.  Each holder of an Other General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b)     <u>Treatment</u>.  Except to the extent that a holder of an Allowed Other General Unsecured Claim has been paid in full by the Debtor prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Other General Unsecured Claim shall receive in full satisfaction, settlement, and release of, and in exchange for such Allowed Other General Unsecured Claim, its Pro Rata share of the Class 4 Distribution; <u>provided</u> that, notwithstanding the foregoing, (i) all Texas Storm Causes of Action Net Recovery Proceeds, if any, and (ii) any Available Prepetition Lender Contribution shall be shared with holders of Allowed Participating

Customer Potential Return Claims on a Pro Rata basis and be distributed (Pro Rata) to holders of (a) Allowed Other General Unsecured Claims and (b) Allowed Participating Customer Potential Return Claims.

    4.05    CLASS 5 – CUSTOMER CLAIMS.

    (a)    Impairment and Voting. Class 5 is impaired by the Plan. Each holder of a Customer Claim is entitled to vote to accept or reject the Plan.

    (b)    Treatment. Except to the extent that a holder of an Allowed Customer Claim has been paid in full by the Debtor prior to the Effective Date or agrees to a different treatment,

    (i)    in full satisfaction, settlement, and release of, and in exchange for its Customer Claim, each Participating Customer will (a) grant and receive the Customer Releases as set forth in Section 12.10 of the Plan; and (b) solely to the extent a Participating Customer has an Allowed Participating Customer Potential Return Claim, receive its Pro Rata share of (w) any Texas Storm Causes of Action Net Recovery Proceeds in accordance with the terms of this Plan, (x) any Available Prepetition Lender Contribution, and (y) any Settlement Deficiency.

    (ii)    if a Customer Claim is held by a Non-Participating Customer, such holder (x) will not be treated as an Allowed Class 5 Claim, (y) will not give or receive the Customer Releases, and (z) (1) solely if the Non-Participating Customer timely and properly files an unsecured nonpriority proof of claim against the Debtor by the applicable Bar Date in accordance with the applicable Bar Date Order, such Customer Claim shall be classified as an Other General Unsecured Claim and treated for all purposes under this Plan as an Other General Unsecured Claim; or (y) solely if the Non-Participating Customer does not timely and properly file an unsecured nonpriority proof of claim against the Debtor by the applicable Bar Date in accordance with the applicable Bar Date Order, such Customer Claim shall not be treated as either a Class 5 Claim or a Class 4 Claim (other than for purposes of voting on the Plan as a Class 4 Claim).

    (c)    If Class 5 Approves the Plan; Treatment Subject to Bankruptcy Court Approval. On the Effective Date, each Participating Customer shall be deemed to have an Allowed Class 5 Claim; provided that a Participating Customer Potential Return Claim shall only be Allowed: (1) if such Participating Customer timely and properly files a proof of claim for such Claim by the Former Customers Bar Date in accordance with the Former Customers Bar Date Order and (2) only in an amount up to the Participating Customer Potential Return; provided further that, subject to the last sentence of this Section 4.05(c), if the Bankruptcy Court does not approve the Customer Releases pursuant to Bankruptcy Rule 9019 or otherwise, then each Participating Customer will not have an Allowed Class 5 Claim and, solely if such Participating Customer timely and properly filed an unsecured nonpriority proof of claim against the Debtor by the applicable Bar Date in accordance with the applicable Bar Date Order, such Customer Claim shall be classified as an Other General Unsecured Claim and treated for all purposes under this Plan as an Other General Unsecured Claim. Notwithstanding the foregoing, if the PUCT Settlement is approved by the Bankruptcy Court but the amount of such settlement

20

is less than $500,000, then each Participating Customer that timely and properly files a proof of claim for a Participating Customer Potential Return Claim shall have an Allowed Claim in the amount of the Participating Customer Potential Return solely for purposes of sharing Pro Rata in the Settlement Deficiency.

(d)     Notwithstanding anything to the contrary contained in this Plan, Participating Customers shall have forty-five (45) days after the Effective Date to elect to become Non-Participating Customers by completing the Customer Release Opt-Out Form and returning it so that it is actually received by the Claims Agent or Plan Administrator by the forty-fifth (45th) day after the Effective Date by:

(i)     Electronic mail to the Plan Administrator, which email address is identified on the Customer Release Opt-Out Form; or

(ii)     U.S. Mail or other hand delivery system at the following address:

Griddy Energy LLC
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

Copies may also be obtained by contacting the Claims Agent via telephone at (855) 478-2725 (toll free U.S.) or for international calls at (949) 471-0997. If a Participating Customer elects to become a Non-Participating Customer in accordance with the foregoing, the former Participating Customer shall be treated as a Non-Participating Customer under the Plan for all purposes; provided that such Person's vote on the Plan shall not be deemed changed if the election is made after the Voting Deadline.

(e)     Notwithstanding anything to the contrary contained in the Plan, if the Bankruptcy Court does not approve (i) (x) any Available Prepetition Lender Contribution or (y) any Settlement Deficiency being distributed to holders of Allowed Class 5 Claims in accordance with the terms of this Plan, or (ii) the releases of Participating Customers in Section 12.07(b) of this Plan, the provisions of the Plan relating to any or all such provisions, as applicable, shall be deemed stricken from the Plan and of no force and effect. In such event, holders of Allowed Class 5 Claims shall be entitled to the remainder of the treatment and Distributions provided for in the Plan as if either or both such provisions, as applicable, were not included in the Plan.

4.06     CLASS 6 – INTERCOMPANY CLAIMS.

(a)     Impairment and Voting. Class 6 is impaired by the Plan. The holders of Intercompany Claims are entitled to vote to accept or reject the Plan.

(b)     Treatment. Except to the extent that a holder of an Allowed Intercompany Claim agrees to a different treatment, if any Causes of Action are successfully prosecuted, settled and/or otherwise resolved, each holder of an Allowed Intercompany Claim shall be entitled to receive its Pro Rata share of any and all Cash or other property remaining with the Debtor after

(i) all Allowed Claims (other than Intercompany Claims) are paid in full in Cash (including payment of postpetition interest from the Petition Date through the payment date at the Federal Judgment Rate; provided that, the contractual rate of interest shall apply, if applicable, based on the particular contractual agreement between the Debtor and the holder of an Allowed Claim) in accordance with the Plan and (ii) all other Wind Down Costs are paid in accordance with the Wind Down Budget.

(c) The Non-Debtor Affiliates shall be deemed to have contributed all claims and causes of action identified in the Plan Supplement.

4.07    CLASS 7 – EXISTING HOLDCO INTERESTS.

(a)    Impairment and Voting. Class 7 is impaired by the Plan. The holder of the Existing HoldCo Interests is entitled to vote to accept or reject the Plan.

(b)    Treatment. Except to the extent that the holder of the Allowed Existing HoldCo Interest agrees to a different treatment, if any Causes of Action are successfully prosecuted, settled and/or otherwise resolved, the holder of the Existing HoldCo Interests shall be entitled to receive any and all Cash or other property remaining with the Debtor after (i) all Allowed Claims are paid in full in Cash (including payment of postpetition interest from the Petition Date through the payment date at the Federal Judgment Rate; provided that, the contractual rate of interest shall apply, if applicable, based on the particular contractual agreement between the Debtor and the holder of an Allowed Claim) in accordance with the Plan and (ii) all other Wind Down Costs are paid in accordance with the Wind Down Budget.

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS

5.01    Class Acceptance Requirement. A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount of the Allowed Claims in such Class and more than one-half (1/2) in number of holders of such Claims that have voted on the Plan. A Class of Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount of the Allowed Interests in such Class that have voted on the Plan.

5.02    Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown". If any Class rejects this Plan, the Debtor will request confirmation of the Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Classes. Subject to Section 14.07 of this Plan, the Debtor reserves the right to alter, amend, modify, revoke or withdraw this Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

5.03    Elimination of Vacant Classes. Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of

determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

5.04    Voting Classes; Deemed Acceptance by Non-Voting Classes.  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims or Interests in such Class.

# ARTICLE VI

# IMPLEMENTATION OF THE PLAN

6.01    The Liquidating Debtor.  The Debtor shall continue to exist as the Liquidating Debtor on and after the Effective Date, with all of the powers of a limited liability company under applicable law solely for the purposes of satisfying the Debtor's obligations under the Plan, including making distributions as required under the Plan and effectuating the wind down of the Debtor.  The operating agreement of the Liquidating Debtor shall, inter alia, prohibit the issuance of nonvoting stock to the extent required by section 1123(a)(6) of the Bankruptcy Code. On the Effective Date, the Liquidating Debtor shall issue one membership interest to the Plan Administrator in exchange for payment of one dollar ($1.00).  On the Effective Date, except as provided in this Plan, all property of the Debtor shall vest in the Liquidating Debtor, free and clear of all Claims, Interests, liens, charges or other encumbrances.

6.02    Officers, Managing Member.

(a)    On the Effective Date, the authority, power and incumbency of the persons then acting as officers, as managing member or board of the Debtor shall be deemed to have resigned without the necessity of any act on the part of such parties.

(b)    From and after the Effective Date, the Debtor shall be managed and administered through the Plan Administrator, who shall be appointed the sole officer of the Debtor and shall have full authority to administer the provisions of the Plan.  The Plan Administrator may employ one or more Persons to assist it with performing its duties under the Plan.  If the Plan Administrator in its discretion decides not to sell any non-Cash property or if such property cannot, in the Plan Administrator's judgment, be sold in a commercially reasonable manner prior to the Final Distribution Date, the Debtor shall have the right to abandon or otherwise dispose of such property in it business judgment.  Absent willful misconduct or fraud in connection therewith, no party in interest shall have a cause of action against the Plan Administrator, the Debtor or the Liquidating Debtor, or each of their respective managers, officers, employees, consultants, trustees, or similar persons, or professionals arising from or related to the disposition of non-Cash property in accordance with this Section 6.02 of the Plan.

6.03    Operating Agreement Amendments.  The operating agreement and/or other constituent documents and agreements of the Debtor shall be revised as necessary and appropriate to comport with the terms of the Plan.

6.04    Plan Funding.  The Distributions to be made in Cash under the terms of this Plan shall be funded from the Debtor's Cash on hand as of and after the Effective Date and any Net Recovery Proceeds, consistent with the terms of this Plan.

6.05    Cancellation of Existing Securities and Agreements.  Except for the purpose of evidencing a right to distribution under this Plan, on the Effective Date, any document, agreement, or instrument evidencing any Claim or Interest shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtor under such documents, agreements, or instruments evidencing such Claims and Interests, as the case may be, shall be deemed extinguished.  The holders of parties to such cancelled instruments, securities and other documentation will have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan.  Notwithstanding anything to the contrary herein, the Prepetition Lender Secured BBFA shall continue in effect solely to the extent necessary to allow the Prepetition Secured Lenders to hold Cash for any reimbursement obligations under the Outstanding LCs.

6.06    Cancellation of Existing Security Interests.  Upon the full payment or other satisfaction of an Allowed Secured Claim, or promptly thereafter, the holder of such Allowed Secured Claim shall deliver to the Debtor any Collateral or other property of the Debtor held by such holder, and any termination statements, instruments of satisfactions, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

6.07    Approval of Plan Documents.  The solicitation of votes on the Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder.  Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions.  On the Effective Date, the Debtor shall be authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further corporate, board or shareholder action.

6.08    Comprehensive Settlement of Claims and Controversies.  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim, including Allowed Participating Customer Claims, or any distribution to be made pursuant to this Plan on account of any Allowed Claim, including, Allowed Participating Customer Return Claims.  The treatment of Allowed Class 5 Customer Claims is a good faith compromise and settlement of all Claims or controversies relating to the rights of the holders of such Claims and is not and should not be deemed to be an admission or waiver of rights or defenses of the Debtor or any other Released Party.  But for the proposed settlement and compromise set forth in the Plan, the Debtor would not have proposed the treatment in Class 5, including, related to Participating Customer Potential Return Claims.  The Debtor and each other Released Party reserves all rights and defenses against any Non-Participating Customers, including in respect of an alleged credit, refund, return or otherwise in respect of any and all amounts paid for electricity and related fees, costs, taxes and other charges, or otherwise that is

24

not released pursuant to this Plan. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies, including the settlement and the Customer Releases set forth in Section 12.10 of this Plan, and the Bankruptcy Court's finding that all such compromises or settlements are: (a) in the best interest of the Debtor and its Estate and property, and of holders of Claims or Interests; and (b) fair, equitable and reasonable. If the Effective Date does not occur, the settlements set forth herein shall be deemed to have been withdrawn without prejudice to the respective positions of the parties.

6.09    <u>Wind Down of the Estate and Distribution of Proceeds</u>. After the Effective Date, all non-Cash assets of the Estate not previously released, disposed of or transferred shall be sold or otherwise liquidated or abandoned.

6.10    <u>Intercompany Claims</u>. Except as provided in this Plan or the Confirmation Order, the Debtor may take such steps as necessary or required to cancel, release and extinguish Intercompany Claims including, in connection therewith, taking such steps as necessary or required to facilitate the cancellation, release and extinguishment of intercompany claims between or among the Debtor and HoldCo as well as any other non-Debtor affiliate(s) of the Debtor.

## ARTICLE VII

## PLAN ADMINISTRATOR

7.01    <u>General</u>. Not less than ten (10) days prior to the commencement of the Confirmation Hearing and subject to Bankruptcy Court approval in connection with confirmation of the Plan, the Debtor and the Committee shall jointly select the person who initially will serve as the Plan Administrator; <u>provided</u>, <u>however</u>, that: (a) if the Debtor and the Committee jointly agree, they shall have the right at any time prior to the Effective Date to remove the Plan Administrator without cause; and (b) the Plan Administrator shall be subject to removal by the Bankruptcy Court for cause shown at any time. On or after the Confirmation Date but prior to the Effective Date, the Plan Administrator shall assume all of its obligations, powers and authority under the Plan to: (i) establish bank accounts as may be required to fulfill the Debtor's obligations under this Plan, including, to the extent not previously established by the Debtor, to establish and fund the Disputed Claims Reserves in accordance with the terms hereof; and (ii) exercise such other power and authority as may be set forth in the Confirmation Order (collectively, the "<u>Pre-Effective Date PA Duties</u>"). On the Effective Date, the Plan Administrator shall assume all of its obligations, powers and authority under the Plan and shall comply with all applicable provisions of the Plan. All other property of the Estate, including any Causes of Action not released by the Plan, shall be managed by the Plan Administrator and shall be held in the name of the Debtor free and clear of all Claims against the Debtor and Interests, except for the rights to such Distribution afforded to the holders of Allowed Claims under the Plan. The Plan Administrator shall make the remaining Distributions required under the Plan in accordance with the Plan's terms. After the Effective Date, the Plan Administrator shall have no liability to holders of Claims or Interests other than as provided for in the Plan. The Plan will be administered, and actions will be taken in the name of the Debtor through the Plan Administrator irrespective of whether the Debtor has been dissolved.

7.02    Qualifications; Plan Administrator Agreement.

(a)    Plan Administrator as Fiduciary.  The Plan Administrator shall act for the Debtor in a fiduciary capacity, shall have such qualifications and experience as are sufficient to enable the Plan Administrator to perform its obligations under this Plan and under the Plan Administrator Agreement, and shall be compensated and reimbursed for expenses as set forth in, and in accordance with, the Plan Administrator Agreement.  To the extent necessary, following the Effective Date, the Plan Administrator shall be deemed to be a judicial substitute for the Debtor as the party-in-interest in the Chapter 11 Case, under the Plan or in any judicial proceeding or appeal to which the Debtor is a party, consistent with section 1123(b)(3)(B) of the Bankruptcy Code.  The Plan Administrator shall not be liable for any action it takes or omits to take that it believes in good faith to be authorized or within its rights or powers unless it is ultimately and finally determined by a court of competent jurisdiction that such action or inaction was the result of fraud, gross negligence or willful misconduct.

(b)    Provisions of Agreement and Order.  The Plan Administrator Agreement and the Confirmation Order shall provide that:  (i) the Plan Administrator (x) prior to the Effective Date, shall be independent of the Debtor; and (y) shall be a fiduciary of the Estate; (ii) neither the Debtor (except as expressly set forth in the Plan Administrator Agreement) nor its managing member, officers, employees, if any, and professionals shall have any liability for any action taken or omitted to be taken by the Plan Administrator in performing the Pre-Effective Date PA Duties and all Persons are enjoined from pursuing any Claims against the foregoing pursuant to this Plan on account of any such action taken or omitted to be taken; (iii) any determinations made by the Plan Administrator with respect to the establishment of reserves under this Plan shall not be binding on any party if the Effective Date fails to occur; and (iv) if the Plan is withdrawn or otherwise abandoned prior to the occurrence of the Effective Date, the Plan Administrator position shall thereafter be dissolved automatically.

7.03    Powers and Duties.

(a)    General Powers and Duties.  From and after the Effective Date, pursuant to the terms and provisions of this Plan and the Plan Administrator Agreement, the Plan Administrator shall be empowered and directed to:  (i) take all steps and execute all instruments and documents necessary to make Distributions to holders of Allowed Claims and to perform the duties assigned to the Plan Administrator under this Plan and/or the Plan Administrator Agreement; (ii) comply with this Plan and the obligations hereunder; (iii) employ, retain, or replace professionals to represent it with respect to his or her responsibilities; (iv) object to Claims as provided in this Plan, and prosecute such objections; (v) compromise and settle any issue or dispute regarding the amount, validity, priority, treatment, or Allowance of any Claim; (vi) establish, replenish or release reserves as provided in this Plan, as applicable; (vii) seek a determination of tax liability under section 505 of the Bankruptcy Code, file tax returns and pay taxes, if any, related to the Debtor; (viii) abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of his or her choice, any assets of the Debtor if he or she concludes that they are of no benefit to the Estate or the Debtor; (ix) purchase or create and carry all insurance policies and paying all insurance premiums and costs he or she deems necessary or advisable, including that cover the liabilities and obligations of the Plan Administrator and the Oversight Committee under the Plan Administrator

26

Agreement; (x) seek entry of a final decree in the Chapter 11 Case at the appropriate time; and (xi) exercise such other powers as may be vested in the Plan Administrator pursuant to the Plan, the Plan Administrator Agreement or any other Plan Documents or order of the Bankruptcy Court or otherwise act on behalf of and for the Debtor from and after the Effective Date in a manner consistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable with respect to administering the Plan. The Debtor shall pay the Plan Administrator Expenses and the reasonable fees and expenses of the professional persons employed by the Plan Administrator in connection with his or her duties and responsibilities as set forth in this Plan.

(b)     Distributions. Pursuant to the terms and provisions of the Plan, the Plan Administrator shall make the required Distributions specified under the Plan, on the Initial Distribution Date, Interim Distribution Date, or Final Distribution Date, as the case may be, under the Plan.

(c)     Compromise of Claims or Causes of Action. On and after the Effective Date, the Plan Administrator may, in the name of the Debtor, take such action and settle and compromise Claims or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order. Notwithstanding the foregoing, the Plan Administrator may seek an order of the Bankruptcy Court in respect of any Claims or Causes of Action, including in respect of any settlement or any dispute or otherwise.

7.04     Resignation, Death or Removal of Plan Administrator. The Plan Administrator may resign at any time upon application to the Bankruptcy Court. In the event of any such resignation, or the removal, death or incapacity of the Plan Administrator, the Oversight Committee shall appoint a successor to serve as the Plan Administrator in accordance with the Plan Administrator Agreement. No successor Plan Administrator hereunder shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors. Every successor Plan Administrator appointed pursuant hereto shall execute, acknowledge and file with the Bankruptcy Court, and deliver to the holders of Other General Unsecured Claims (at the addresses as provided in Section 8.05) an instrument in writing accepting such appointment hereunder, and thereupon such successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor. Any resigning or removed Plan Administrator (or the executor or other representative of any deceased or incapacitated Plan Administrator) shall transfer, in exchange for consideration of one dollar ($1.00), the membership interest of the Debtor owned by such Plan Administrator to the successor Plan Administrator.

7.05     The Oversight Committee.

(a)     The Oversight Committee shall be comprised initially of (i) two members selected by the Committee and (ii) one member selected by the Debtor; provided that, (x) if the Plan Administrator recovers sufficient funds to deposit into a segregated account $7.7 million or (y) if the total amount of Allowed Claims (excluding the claim of the Electric Reliability Council of Texas, Inc.) is less than $7.7 million and the Plan Administrator recovers sufficient funds to deposit into a segregated account the total amount required to pay such Allowed Claims

(excluding the claim of the Electric Reliability Council of Texas, Inc.) in full (excluding interest), and (z) the Plan Administrator deposits such applicable funds into a segregated account for the benefit of the holders of such Allowed Claims, the Oversight Committee shall be reconstituted to be comprised of (i) two members selected by HoldCo (or its successor or assign) and (ii) one remaining member (who was previously selected by the Committee); provided further that, notwithstanding the foregoing, upon all Allowed Class 4 and Class 5 Claims being paid in full in accordance with the terms of the Plan, the Oversight Committee shall be reconstituted to be comprised of three members selected by HoldCo (or its successor or assign) (each of the two immediately preceding provisos being referred to herein as a "Toggle Event"). If the trigger for a Toggle Event is as a result of the events occurring in the first proviso of this Section 7.05(a), the two members of the Oversight Committee that were selected by the Committee (or their successors, as applicable) shall determine between themselves which member shall resign. If such members cannot make a determination promptly, the Plan Administrator shall seek an order of the Bankruptcy Court in respect of same. The Oversight Committee members selected by (a) the Committee (and any successors) shall act in a fiduciary capacity the same as an official committee of unsecured creditors and (b) the Debtor (and any successors) shall act in a fiduciary capacity the same as required by officers under the Debtor's limited liability company agreement in effect as of the Petition Date. Vacancies on the Oversight Committee shall be filled by a Person designated by (x) as to a Committee selected member, the remaining member that was selected by the Committee (or his or her successor) from among the holders of Allowed Customer Claims or Allowed Other General Unsecured Claims and (y) as to the Debtor selected member, HoldCo or its successor or assign. Any successor appointed pursuant to this Section shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor. For the avoidance of doubt, no member on the Oversight Committee shall be compensated for serving as a member of the Oversight Committee; provided, if applicable, such members may be reimbursed by the Debtor for reasonable and documented out-of-pocket expenses, if any. In addition, the Plan Administrator may, but is not required to, seek an order of the Bankruptcy Court in respect of depositing the applicable funds described in this Section 7.05(a) into a segregated account as described above.

(b)     Prior to the Toggle Event, unanimous consent of the Oversight Committee shall be required for the following actions: (i) material modifications or amendments to the Plan Administrator Agreement; (ii) cancellation or modification of insurance covering the Plan Administrator or the Oversight Committee; (iii) the settlement, compromise, dismissal, abandonment, release, submission to binding arbitration or mediation, or waiver, in whole or in part, of any claims, rights, causes of action, appeals, or collection efforts arising thereunder or in connection therewith, of any claim by the Plan Administrator where the Disputed Amount at issue equals or exceeds $3 million; (iv) the decision whether to enter into an agreement with any entity respecting the joint prosecution of any claim and causes of action belonging to the Debtor; (v) choosing a successor Plan Administrator; (vi) removing the Plan Administrator; and (vii) the Plan Administrator's retention of professionals to pursue any Texas Storm Causes of Action. All material actions by the Plan Administrator other than the foregoing shall require majority consent of the Oversight Committee, except as otherwise provided in Section 7.05(c). After the Toggle Event, the actions listed in Section 7.05(b)(i)-(vii) shall require majority consent of the Oversight Committee.

(c)     Notwithstanding any other provision in this Plan, the Plan Administrator may only settle Causes of Action as follows: (i) without notice to, or consent from, the Oversight Committee where the Disputed Amount is less than $250,000; (ii) with written notice to the Oversight Committee where the Disputed Amount is between $250,000 and $2,999,999 and the Plan Administrator proposes to settle such claim; provided that no member of the Oversight Committee objects in writing to the proposed settlement within five (5) business days after receipt of such writing; provided, further that if a member of the Oversight Committee so objects, then the Plan Administrator may only proceed with the proposed settlement with the consent of a majority of the members of the Oversight Committee; and (iii) with written notice to, and the consent of all members of, the Oversight Committee where the Disputed Amount is more than $2,999,999.

7.06    Liquidation of the Debtor.  As soon as reasonably practicable after the Distributions have been made to holders of Allowed Claims in accordance with the terms of the Plan, the Debtor shall:  (a) file its certificate of dissolution, together with all other necessary corporate documents, to effect its dissolution under the applicable Delaware state law; and (b) complete and file its final federal, state and local tax returns, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of the Debtor or its Estate for any tax incurred during the administration of the Chapter 11 Case, as determined under applicable tax laws.  The filing by the Debtor of its certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order or rule, including, without limitation, any action by the equity holders or the board of managers of the Debtor and expressly without the need to pay any franchise or similar taxes in order to effectuate such dissolution.

7.07    Termination of the Plan Administrator and Oversight Committee.

(a)     After the Chapter 11 Case is closed and the Plan Administrator has completed all tasks necessary in order to fully and completely wind down and dissolve the Debtor and otherwise to comply with his obligations under the terms of the Plan and the Plan Administrator Agreement, the Plan Administrator shall be deemed to have fully completed his or her duties hereunder and thereunder and shall be fully released and discharged of its duties and obligations to carry out the terms of this Plan.

(b)     After the Plan Administrator has settled or otherwise resolved all Causes of Action and distributions of the proceeds thereof have been made to the beneficiaries thereof, the Oversight Committee shall terminate unless otherwise agreed between the Plan Administrator and the Oversight Committee.

# ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

8.01    Disbursing Agent.  Except as otherwise provided herein, all distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise

ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor. Furthermore, any such entity required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

8.02    Distributions of Cash. Any payment of Cash made by the Disbursing Agent pursuant to the Plan shall, at the Disbursing Agent's option, be made by check drawn on a domestic bank or wire transfer.

8.03    Timing of Distributions. In the event that any payment, distribution, or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Any requirement under the Plan that the Debtor or Disbursing Agent make a payment or Distribution on a date shall mean that such party is required to commence the process of making a payment or Distribution on such date.

8.04    Holders as of the Distribution Record Date. As of the close of business on the Distribution Record Date: (a) the claims register maintained in the Debtor's Chapter 11 Case shall be closed and (b) any transfer of any Claim or any Interest therein shall not be recognized by the Debtor. The Debtor shall have no obligation to recognize any transfer of any Claim occurring after 4:00 p.m. (Houston time) on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under this Plan with only those holders of record as of 4:00 p.m. (Houston time) on the Distribution Record Date.

8.05    Distributions to Address of Record. Subject to Bankruptcy Rule 9010, and except as set forth in this Section 8.05 of the Plan, all Distributions under the Plan to holders of Allowed Claims shall be made to the holder of each Allowed Claim at the address of such holder as listed on the Schedules as of the Distribution Record Date, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the timely filing of a proof of claim by such holder that provides an address for such holder different from the address reflected on the Schedules. In the event that any Distribution to any such holder is returned as undeliverable, no distribution to such holder shall be made unless and until the appropriate Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution shall be made to such holder without interest; provided, however, that, at the later of the expiration of sixty (60) days after: (a) the Effective Date and (b) the first Distribution Date after a Claim becomes an Allowed Claim, such Distributions shall be deemed unclaimed property and shall revest in the Debtor and be distributed to other holders of Allowed Other General Unsecured Claims, in accordance with the Plan or as otherwise ordered by the Bankruptcy Court, as set forth in Section 8.12 of the Plan.

8.06    No Postpetition Interest on Claims; No More than Payment in Full.

(a)    Unless otherwise specifically provided for in the Plan, Confirmation Order or other order of the Bankruptcy Court, or required by applicable bankruptcy or non-bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

(b)    No holder of an Allowed Claim shall be entitled to receive more than payment in full of such Allowed Claim (excluding postpetition interest), and such Claims will be administered and treated in the manner provided in this Plan.

8.07    Minimum Distributions.  No payment of Cash of less than 100 dollars ($100) shall be made by the Debtor to any holder of an Allowed Claim unless a request therefor is made in writing to the Debtor.  If no request is made as provided in the preceding sentence within sixty (60) days of the later of: (a) the Effective Date and (b) the first Distribution Date such Claim is Allowed, all such distributions shall be distributed to other holders of Allowed Other General Unsecured Claims in accordance with the Plan or as otherwise ordered by the Bankruptcy Court.  Notwithstanding anything contained herein to the contrary, if, on any Distribution Date there remains $10,000 or less available for distribution to holders of Allowed Other General Unsecured Claims, in lieu of making any further Distributions to the holders of such Claims, the Debtor may distribute such Cash to the charity of the Debtor's choice.

8.08    Withholding Taxes.  Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any Distributions hereunder, and any property so withheld will then be paid by the Debtor to the appropriate authority.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.  The Debtor may, if necessary or appropriate to comply with applicable withholding requirements imposed on them, withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Debtor to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within sixty (60) days from the date of first notification to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as unclaimed property in accordance with Section 8.12 herein or the amount required to be withheld may be so withheld and turned over to the applicable authority.

8.09    Time Bar to Cash Payments by Check.  Checks issued by the Debtor on account of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  After that date, all Claims in respect of void checks shall be released and forever barred and the proceeds of those checks shall, subject to the proviso in Section 8.12 herein, be deemed unclaimed property in accordance with section 347(b) of the Bankruptcy Code and be distributed as provided in Section 8.12 herein.

8.10    No Payments of Fractional Dollars.  Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

8.11    Setoff and Recoupment.  The Debtor may, but shall not be required to, setoff against, or recoup from, any Claim and the Distributions to be made pursuant to the Plan in respect thereof, any claims or defenses of any nature whatsoever that the Debtor or its Estate

may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor or their respective Estate of any right of setoff, recoupment claims, or other rights or Causes of Action that the Debtor or their respective Estate or any of their respective successors may possess against such holder.

8.12    Unclaimed Distributions.  All distributions to holders of Allowed Claims under the Plan that are unclaimed for a period of sixty (60) days after distribution thereof shall be deemed unclaimed property under Bankruptcy Code section 347(b), and any entitlement of any holder of any Claim to such distributions shall be extinguished and forever barred; provided that, if the Bankruptcy Court approves the State of Texas Settlement and after the Effective Date occurs, then all distributions to Former Customers that are unclaimed for a period of sixty (60) days after distribution thereof shall be turned over to the Unclaimed Property Division of the State of Texas Comptroller of Public Accounts pursuant to applicable Texas state unclaimed property law to enable such Former Customer(s) to retrieve such funds in perpetuity.  Except as set forth in the immediately preceding proviso, all such unclaimed property shall revest in the Debtor and, subject to Section 8.07, be distributed to other holders of Allowed Claims in accordance with the Plan or as otherwise ordered by the Bankruptcy Court.

## ARTICLE IX

## PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS OR EQUITY INTERESTS

9.01    Objections to Claims.  Other than with respect to Fee Claims, only the Debtor shall be entitled to object to Claims after the Effective Date.  Any objections to Claims (other than Fee Claims), which Claims have been filed on or before the later of the Confirmation Date and the applicable Bar Date, if any, shall be served and filed on or before the later of:  (a) one year after the Effective Date (or such applicable Bar Date if such applicable Bar Date is after the Effective Date); or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) of this Section.  Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtor unless the Person or entity wishing to file such Claim has received prior Bankruptcy Court authority to file such Claim after the applicable Bar Date.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the Debtor effects service in any of the following manners: (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (c) by (i) first class mail, postage prepaid, or (ii) if available, electronic mail, on any counsel that has appeared on the claimant's behalf in the Chapter 11 Case (so long as such appearance has not been subsequently withdrawn).  From and after the Effective Date, the Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.  After the Effective Date, the Debtor shall be entitled to determine, in its reasonable discretion, that the cost and expense of pursuing claims objections outweighs the benefits to be advanced by filing one or more objections.

9.02    Amendments to Claims.  After the Confirmation Date, a proof of Claim may not be amended without the authorization of the Bankruptcy Court.  Any Claim amended after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Debtor, unless the holder of the Claim has obtained prior Bankruptcy Court authorization to file the amendment.

9.03    Estimation of Claims;  Certain Reserves.  For purposes of calculating and making Distributions under the Plan, the Debtor shall be entitled to estimate, in good faith and with due regard to litigation risks associated with Disputed Claims, the maximum dollar amount of Allowed and Disputed Claims, inclusive of contingent and/or unliquidated Claims in a particular Class.  The Debtor also shall be entitled to seek one or more Estimation Orders from the Bankruptcy Court for such purposes, regardless of whether the Debtor has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim for purposes of determining the Allowed amount of such Claim at any time.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.  All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.  Appropriate Disputed Claims reserves shall be established for each category of Claims as to which estimates are utilized or sought.  Unless otherwise expressly set forth herein, the Debtor shall not be obligated to physically segregate and maintain separate accounts for reserves.  Accordingly, reserves may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, as appropriate.  Unless otherwise ordered by the Bankruptcy Court, no reserves shall be required to be established or maintained with respect to Claims filed after the applicable Bar Date.

9.04    Disputed Claims.

(a)    No Distributions Pending Allowance.  Notwithstanding any other provision hereof, if any portion of a Claim is Disputed, no payment or distribution provided hereunder shall be required to be made on account of such Claim unless and until such Disputed Claim becomes Allowed in its entirety.

(b)    Establishment of Disputed Priority Claims Reserve.  Subject to Section 9.03, on the Effective Date or as soon thereafter as is reasonably practicable, the Debtor shall reserve from Cash on hand for the benefit of each holder of a Disputed Administrative Expense Claim, Disputed Priority Tax Claim and Disputed Priority Non-Tax Claim, Cash in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order; (ii) if no Estimation Order has been entered with respect to such Claim, the amount in which such Disputed Claim is proposed to be allowed in any pending objection filed by the Debtor; or (iii) if no Estimation Order has been entered with respect to such Claim and no objection to such Claim is pending on the Effective Date, (A) the amount listed in the Schedules or (B) if a timely filed proof of claim or application for payment has been filed with the Bankruptcy Court or Claims Agent, as applicable, the amount set forth in such timely filed proof of claim or application for payment, as applicable.  The Debtor, in its reasonable discretion, may

33

increase the amount reserved as to any such particular Disputed Claim. Such reserved amounts, collectively, shall constitute the "Disputed Priority Claims Reserve".

(c)     Establishment of Disputed Other General Unsecured Claims Reserve. Subject to Section 9.03, prior to any Distributions to holders of Allowed Class 4 or Class 5 Claims, the Debtor shall reserve from the Cash on hand, for the benefit of each holder of a Disputed Other General Unsecured Claim, Cash in an amount equal to the Pro Rata Distribution to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim, in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order; (ii) if no Estimation Order has been entered with respect to such Claim, the amount in which such Disputed Claim is proposed to be allowed in any pending objection filed by the Debtor; or (iii) if no Estimation Order has been entered with respect to such Claim and no objection to such Claim is pending, (A) the amount listed in the Schedules or (B) if a timely filed proof of claim or application for payment has been filed with the Bankruptcy Court or Claims Agent, as applicable, the amount set forth in such timely filed proof of claim or application for payment, as applicable. If and to the extent that a Disputed Claim becomes an Allowed Claim, on the first Distribution Date that is at least thirty (30) Business Days after such allowance, the Debtor shall distribute to the holder thereof the amount of Cash to which such holder is entitled under the provisions of this Plan. If a Disputed Claim is Disallowed, in whole or in part, pursuant to a Final Order, on the first Distribution Date that is at least thirty (30) Business Days after such disallowance, the Debtor shall: (a) first, reallocate Cash that had been reserved on account of such Disallowed Disputed Other General Unsecured Claim to the holders of then Allowed and Disputed Claims in such Class; and (b) second, distribute to each holder of an Allowed Claim in such Class and allocate to the reserves established for remaining Disputed Claims in such Class, Pro Rata, the Cash that has been so reallocated to such Class in accordance with clause (a) of this section. The Debtor, in its reasonable discretion, may increase the amount reserved as to any particular Disputed Claim. Such reserved amounts, collectively, shall constitute the "Disputed Other General Unsecured Claims Reserve".

9.05     Plan Distributions to Holders of Subsequently Allowed Claims. On each Distribution Date (or such earlier date as determined by the Debtor in its sole discretion), the Disbursing Agent will make distributions or payments from the applicable Disputed Claims reserve on account of any Disputed Claim that has become an Allowed Claim since the occurrence of the previous Distribution Date. The Disbursing Agent shall distribute in respect of such newly Allowed Claims the Pro Rata Distributions to which holders of such newly Allowed Claims would have been entitled under this Plan if such newly Allowed Claims were fully or partially Allowed, as the case may be, on the Effective Date, less direct and actual expenses, fees or other direct costs.

9.06     Insurance Preservation and Proceeds. Except with regard to Claims against the Released Parties that are released hereunder, nothing in the Plan shall diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtor or any related Person. Notwithstanding anything to the contrary contained herein, to the extent the Debtor has insurance with respect to an Allowed Claim, such Allowed Claim shall (a) be paid from the proceeds of insurance to the extent that the Claim is insured, and (b) receive the treatment provided for herein to the extent the applicable insurance policy does not provide coverage with respect to any portion of the Allowed Claim. Holders of Claims which are eligible to be

satisfied, in whole or in part, through any such policy shall be obligated, as a condition to receiving any Distributions under the Plan, to seek recovery (or, if applicable, assist the Debtor in seeking recovery) under such policies with regard to such Claims.

9.07 <u>Allocation of Plan Distributions Between Principal and Interest</u>. To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

9.08 <u>No Recourse</u>. Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which, after application of the payment priorities established by this Plan, there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Disbursing Agent, the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator or any of their respective professionals, consultants, officers, directors, employees or members or their successors or assigns, or any of their respective property. **THE ESTIMATION OF CLAIMS AND THE ESTABLISHMENT OF RESERVES UNDER THE PLAN MAY LIMIT THE DISTRIBUTION TO BE MADE ON INDIVIDUAL DISPUTED CLAIMS, REGARDLESS OF THE AMOUNT FINALLY ALLOWED ON ACCOUNT OF SUCH DISPUTED CLAIMS.**

9.09 <u>Satisfaction of Claims and Interests</u>. Unless otherwise provided in the Plan or the Confirmation Order, any Distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete settlement and satisfaction of such Allowed Claims.

## ARTICLE X

## <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

10.01 <u>Rejection or Assumption and Retention or Assignment</u>.

(a) <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>. Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code:

(i) all executory contracts and unexpired leases of the Debtor shall be deemed to be rejected by the Debtor as of the Effective Date, except for any executory contract or unexpired lease: (x) that previously has been assumed and/or assigned pursuant to an order of the Bankruptcy Court entered prior to the Effective Date; (y) as to which a motion for approval of the assumption and/or assignment of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date; or (z) that is specifically designated as a contract or lease to be assumed and/or assigned by the Debtor. Any order entered after the Confirmation Date by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered prior to the Confirmation Date. All Claims arising from the rejection of executory

contracts or unexpired leases, if any, will be treated as Other General Unsecured Claims. Notwithstanding anything herein to the contrary, all compensation and benefits programs shall continue in effect until there are no employees of the Debtor, at which time all compensation and benefit programs shall be deemed terminated.

(ii)     notwithstanding anything otherwise herein to the contrary, the Debtor reserves the right, on or prior to the Effective Date, to amend the Cure Schedule, if any, to delete any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be, as applicable, rejected, assumed and/or assigned or retained. The Debtor shall provide notice of any amendments to any Cure Schedule to the parties to the executory contracts and unexpired leases affected thereby. The listing of a document on any Cure Schedule shall not constitute an admission by the Debtor that such document is an executory contract or an unexpired lease or that the Debtor have any liability thereunder.

(b)     Approval of Assumptions and Rejections by Confirmation Order. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumption and assignments, and rejections contemplated by this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code. Notwithstanding anything herein to the contrary, any agreement, obligation, security interest, transaction or similar undertaking that the Debtor believes is not executory or a lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under section 365 of the Bankruptcy Code, shall be subject to assumption or rejection within thirty (30) days of any such determination or such longer period as may be authorized by the Bankruptcy Court.

10.02   Cure of Defaults.

(a)     Generally. Except as may otherwise be agreed to by the Debtor and the non-Debtor party to the contract or lease, the Debtor shall cure any and all undisputed monetary defaults under each executory contract or unexpired lease assumed by the Debtor pursuant to the Plan, in accordance with Bankruptcy Code section 365(b) (the "Cure Amount"). Subject to the last sentence of Section 10.02(b) of the Plan, all disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

(b)     Cure Schedule. With respect to all executory contracts and unexpired leases to which the Debtor is a party, no later than five (5) Business Days prior to the deadline for Ballots to be received in connection with voting to accept or reject the Plan, the Debtors shall file a schedule (the "Cure Schedule"), which may be the Schedule of Assumed Contracts and Leases, setting forth the Cure Amount, if any, for each executory contract and unexpired lease to be assumed or assumed and assigned pursuant to Section 10.01 of this Plan, and serve such Cure Schedule on each applicable counterparty. Any party to an executory contract or unexpired lease to which a Debtor is a counterparty that fails to object to the applicable Cure Amount listed on the Cure Schedule within fourteen (14) calendar days of the filing thereof, shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any Claim against the pre-Effective

36

Date Debtor, the Liquidating Debtor and the Plan Administrator arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule. If, prior to the Confirmation Date, the Debtor identifies additional executory contracts and unexpired leases to which the Debtor is a counterparty that might be assumed or assumed and assigned by the Debtor, the Debtor will promptly file a supplemental Cure Schedule ("Supplemental Cure Schedule") and serve such Supplemental Cure Schedule on each applicable counterparty and each applicable counterparty shall have fourteen (14) calendar days of the filing thereof to object to the applicable Cure Amount set forth on the Supplemental Cure Schedule.

(c)  Objections to Proposed Cure Amount. The non-Debtor parties to such contracts and leases shall have until fourteen (14) calendar days following service of the Cure Schedule (or individualized notice of the Cure Amount) to object (a "Cure Dispute") in writing regarding: (i) the Cure Amount; (ii) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed; or (iii) any other matter pertaining to assumption. The cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the Cure Dispute and approving the assumption. If the Cure Dispute relates solely to the Cure Amount, the Debtor may assume and/or assume and assign the subject contract prior to resolution of such dispute provided that the Debtor reserves Cash in an amount sufficient to pay the full amount asserted by the non-Debtor party to the subject contract (or such other amount as may be fixed or estimated by the Bankruptcy Court). In the event that no objection is timely filed, the applicable party shall be deemed to have consented to the cure proposed by the Debtor (including amounts of compensation for actual pecuniary loss) and shall be forever enjoined and barred from seeking from the Debtor any additional amount on account of the Debtor's cure obligations under section 365 of the Bankruptcy Code. If an objection is timely filed with respect to the Cure Amount proposed by the Debtor for an executory contract or unexpired lease, the Bankruptcy Court shall hold a hearing to determine the amount of any Cure Dispute. Notwithstanding anything otherwise to the contrary, at all times through the date that is thirty (30) days after the entry of a Final Order resolving and fixing the amount of a Cure Dispute, whether such date is before or after the Effective Date, the Debtor shall be authorized to reject such executory contract or unexpired lease by notice to the non-debtor party to such executory contract or unexpired lease. **Any party that fails to object to the applicable Cure Amount listed on the Cure Schedule within fourteen (14) calendar days following service of the Cure Schedule (or individualized notice of the Cure Amount), shall be forever barred, estopped and enjoined from disputing the Cure Amount set forth on the Cure Schedule (including a Cure Amount of $0.00) and/or from asserting any claim against the Debtor arising under section 365(b)(1) of the Bankruptcy Code except as set forth on the Cure Schedule.**

10.03  **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan. Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 10.01 of the Plan must be filed with the Bankruptcy Court and served upon the Debtor no later than thirty (30) days after the later of: (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease; and (ii) notice of occurrence of the Effective Date. All such Claims not filed within such time will be forever barred from assertion against the Debtor and its Estate.**

37

10.04 <u>Indemnification of Directors, Officers and Employees</u>. For purposes of the Plan, the obligation of the Debtor to indemnify and reimburse any Person or entity serving at any time on or after the Petition Date as one of its directors, member, officers or employees by reason of such Person's or entity's service in such capacity, or as a director, member, officer or employee of the Debtor or any other company or legal entity, to the extent provided in such Debtor's constituent documents, a written agreement with the Debtor, in accordance with any applicable law, or any combination of the foregoing, shall survive confirmation of the Plan and the Effective Date, remain unaffected thereby, become an obligation of the Liquidating Debtor solely to the extent of available insurance, and not be released, irrespective of whether indemnification or reimbursement is owed in connection with an event occurring before, on, or after the Petition Date. For the avoidance of doubt, nothing herein shall be construed as the Debtor assuming any obligation with respect to any self-insured retention for which the applicable insurer has the ability to assert a prepetition Claim against the Debtor in accordance with the applicable Bar Date Order or other order of the Court. On and after the Effective Date, the coverage under any directors' and officers' insurance policies in effect on the Petition Date shall not be terminated or otherwise reduced by or on behalf of the Debtor, and all directors and officers of the Debtor at any time shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such directors and/or officers remain in such positions after the Effective Date.

## ARTICLE XI

## <u>CONDITIONS PRECEDENT</u>

11.01 <u>Conditions to Confirmation</u>. The following are conditions precedent to confirmation of the Plan that may be satisfied or waived in accordance with <u>Section 11.03</u> of this Plan:

     (a) the Debtor shall have sufficient Cash on hand to pay in full, or reserve for, the projected Allowed Administrative Expense Claims, Allowed Fee Claims, Allowed Priority Tax Claims and Allowed Priority Non-Tax Claims; and

     (b) the Bankruptcy Court shall have entered the Confirmation Order.

11.02 <u>Conditions Precedent to the Effective Date</u>. The occurrence of the Effective Date is subject to:

     (a) the Confirmation Order having become a Final Order;

     (b) the operating agreement of the Debtor having been amended or amended and restated as provided in the Plan;

     (c) the Plan Documents having been executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith; and

(d)     One or more of the Non-Debtor Affiliates having paid the Prepetition Lender Fee Claim in an amount no greater than $225,000 as provided in the definition of "Prepetition Lender Fee Claim".

11.03   Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay.

(a)     The Debtor, with the consent of the Committee, if any, (which shall not be unreasonably withheld, delayed or conditioned), shall have the right to waive one or more of the conditions precedent set forth in Sections 11.01 and 11.02 of the Plan at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with consummation of the Plan.  For the avoidance of doubt, if all conditions precedent of the Plan are satisfied or waived in accordance the immediately preceding sentence, the Effective Date of the Plan as to the Debtor may occur.  If any condition precedent to the Effective Date is waived pursuant to this Section 11.03 and the Effective Date occurs, the waiver of such condition shall benefit from the "mootness doctrine," and the act of consummation of the Plan shall foreclose any ability to challenge the Plan in any court.  Unless otherwise provided herein, any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

(b)     Pursuant to Bankruptcy Rule 3020(e), the Confirmation Order shall be immediately effective upon its entry and shall not be subject to the stay provided in Bankruptcy Rule 3020(e).

# ARTICLE XII

# EXCULPATION, INJUNCTION AND
# RELATED PROVISIONS EFFECT OF CONFIRMATION

12.01   Binding Effect.  This Plan shall be binding and inure to the benefit of the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator, each of the Released Parties, all present and former holders of Claims and Interests, and their respective successors and assigns.

12.02   Vesting of Assets.  On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Estate shall vest in the Debtor, free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as otherwise provided herein or in the Confirmation Order, including with respect to the rights to receive any Distribution hereunder.  On and after the Effective Date, the Debtor may effectuate the wind down of the Estate, including payment of all Wind Down Costs in accordance with the Wind Down Budget, and may use, acquire and dispose of property and prosecute, compromise or settle any Claims (including any Administrative Expense Claims) and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.

12.03 **_Release of Claims Against and Interests in the Debtor_**. **_Upon the Effective Date and in consideration of the Distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived and released the Debtor of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and Interests and their affiliates shall be forever precluded and enjoined from prosecuting or asserting any such waived and released Claim against or terminated Interest in the Debtor. Nothing in this Section shall preclude any holder of an Allowed Claim or Interest from receiving the applicable Distribution provided for under the Plan._**

12.04 Term of Pre-Confirmation Injunctions or Stays. Unless otherwise provided herein, all injunctions or stays arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

12.05 Injunction Against Interference With Plan. Upon the entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, managers, members or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

12.06 **_Injunction_**.

(a) **_Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtor or its Estate are, with respect to any such Claims or Interests, permanently enjoined from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the pre-Effective Date Debtor, the Liquidating Debtor, the Estate, the Plan Administrator, the Released Parties, or any of their respective property; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, the pre-Effective Date Debtor, the Liquidating Debtor, the Estate, the Plan Administrator, the Released Parties or any of their respective property; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the pre-Effective Date Debtor, the Liquidating Debtor, the Estate, the Plan Administrator, the Released Parties; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan_**.

40

(b)  *Each holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth herein*.

12.07  *Releases.*

(a)  *Releases by the Debtor.  Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, the Debtor, as debtor in possession, and any person seeking to exercise the rights of the Debtor's Estate, including without limitation, any successor to the Debtor, including the Liquidating Debtor, the Plan Administrator or any representative of the Debtor's Estate appointed or selected pursuant to sections 1103, 1104, or 1123(b)(3) of the Bankruptcy Code or under chapter 7 of the Bankruptcy Code, shall be deemed to forever release and waive all claims (as such term "claim" is defined in section 101(5) of the Bankruptcy Code), obligations, suits, judgments, damages, demands, debts, rights, causes of action (including, but not limited to, the Causes of Action) and liabilities (other than the rights of the Debtor to enforce the Plan and the contracts, instruments, releases and other agreements or documents delivered thereunder) against any Released Party, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on and after December 4, 2020 through and including the Effective Date in any way relating to the Debtor, the Chapter 11 Case, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtor or its Estate, whether directly, indirectly, derivatively or in any representative or any other capacity; provided, however, that in no event shall anything in this Section 12.07(a) be construed as a release of any Person's gross negligence or willful misconduct, as determined by a Final Order, for matters with respect to the Debtor and/or their affiliates.*

(b)  *Releases by Holders of Claims.  Except as otherwise provided in the Plan or the Confirmation Order, including Section 12.10 as to Participating Customers, on the Effective Date, (i) each holder of a Claim in a Class entitled to vote on the Plan and (ii) each Released Party (other than the pre-Effective Date Debtor, the Liquidating Debtor and the Plan Administrator), to the fullest extent permissible under applicable law as such law may be extended or interpreted subsequent to the Effective Date, in consideration for the obligations of the Debtor under the Plan, the Distributions under the Plan and other contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan, will be deemed to have consented to the Plan and the restructuring embodied herein for all purposes and deemed to forever release and waive all claims (as such term is defined in section 101(5) of the Bankruptcy Code) against any and all Released Parties and Participating Customers (solely in each such customer's capacity as such), including but not limited to any claim sounding in law or equity or asserting a tort, breach of any duty or contract, violations of the common law, any federal or state statute, any federal or state securities laws or otherwise, demands, debts, rights, causes of action (including without limitation, the Causes of Action) or liabilities (other than the right to enforce the obligations of any party under the Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with the Plan), including but not limited any claims for any such loss such holder may suffer, have suffered or be alleged to suffer as a result of the Debtor commencing the Chapter 11 Case or as a result of the Plan being consummated, whether liquidated or*

*unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator, the Chapter 11 Case, the Plan or the Disclosure Statement; provided, however, that the foregoing releases shall not apply to any holder of a Claim if such holder "opts out" of the releases provided in this Section 12.07(b) in a timely and properly submitted Ballot; provided, further, that in no event shall anything in this Section 12.07(b) be construed as a release of any Person's gross negligence or willful misconduct, as determined by a Final Order, for matters with respect to the Debtor.  For the avoidance of doubt, the only parties that are bound by the releases set forth in this Section 12.07(b) are (a) the Released Parties and (b) holders of Claims in a Class entitled to vote on the Plan that do not "opt out" of the releases provided in Section 12.07(b) of the Plan in a timely and properly submitted Ballot or Customer Release Opt-Out Form in accordance with the terms of the Plan*.

(c)     *Notwithstanding anything to the contrary contained herein: (i) except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, the releases provided for in this Section 12.07 of the Plan shall not release any non-Debtor entity from any liability arising under (x) the Internal Revenue Code or any state, city or municipal tax code or (y) any criminal laws of the United States or any state, city or municipality; (ii) the releases set forth in this Section 12.07 shall not release any (x) any claims against any Person to the extent such Person asserts a crossclaim, counterclaim and/or claim for setoff which seeks affirmative relief against the Debtor or any of its officers, directors, or representatives, and (y) claims against any Person arising from or relating to such Person's gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Courts.  In addition, for the avoidance of doubt, nothing in the Plan or the Confirmation Order shall constitute a release of the obligations of Griddy VI Holdings LLC under: (1) that certain Note Purchase Agreement, dated as of December 4, 2020, by and between Griddy VI Holdings LLC and Macquarie Investments US Inc.; (2) that certain Convertible Promissory Note, dated as of December 4, 2020, issued by Griddy VI Holdings LLC to Macquarie Investments US Inc.; and (3) that certain Letter Agreement, dated as of December 4, 2020, by and between Griddy VI Holdings LLC and Macquarie Investments US Inc.*

12.08  **Exculpation and Limitation of Liability**.  *None of the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator nor the other Released Parties shall have or incur any liability to any holder of any Claim or Interest for any postpetition act or omission in connection with, or arising out of the Debtor's restructuring, including without limitation the negotiation and execution of the Plan, the Chapter 11 Case, the Disclosure Statement, the Disclosure Statement Supplement, the solicitation of votes for and the pursuit of the Plan (including that solicitation of acceptances of the Plan was not conducted in good faith nor in compliance with the applicable provisions of the Bankruptcy Code), the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of the Plan except gross negligence or willful misconduct as*

*determined by a Final Order of the Bankruptcy Court. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute gross negligence or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation. The Debtor and the Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities with respect to the Chapter 11 Case, the Plan and the administration thereof.*

12.09   *Injunction Related to Releases and Exculpation. The Confirmation Order shall permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to the Plan, including but not limited to the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released under this Article XII of the Plan.*

12.10   *Agreement by Holders of Participating Customers; Release of Certain Customer Collections. Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, (i) each Participating Customer will be deemed to have consented to the Plan and the restructuring embodied herein for all purposes and deemed to accept the Customer Releases as they pertain to such Participating Customer and the Released Parties and (ii) each Released Party will be deemed to accept the Customer Releases as they pertain to such Released Party and the Participating Customers; provided that, notwithstanding the foregoing, if the Bankruptcy Court does not approve the Customer Releases pursuant to Bankruptcy Rule 9019 through this Plan or otherwise, than each Participating Customer will not have an Allowed Class 5 Claim, the Customer Releases shall not become effective and, solely if such Participating Customer timely and properly filed an unsecured nonpriority proof of claim against the Debtor by the applicable Bar Date in accordance with the applicable Bar Date Order, such Customer Claim shall be classified as an Other General Unsecured Claim and treated for all purposes under this Plan as an Other General Unsecured Claim. For the avoidance of doubt, if the Customer Releases become effective, each Participating Customer releases and waives all Claims against each of the Released Parties, including, any claim sounding in law or equity or asserting a tort, breach of any duty or contract, violations of the common law, any federal or state statute, any federal or state securities laws, fraud or otherwise, demands, debts, rights, causes of action (including without limitation, the Causes of Action) or liabilities (other than the right to enforce the obligations of any party under the Plan and the contracts, instruments, releases, agreements and documents delivered under or in connection with the Plan), including but not limited any Claims for any such loss such Participating Customer may suffer, have suffered or be alleged to suffer as a result of the Debtor selling electricity to such Participating Customer prior to the Petition Date, the Debtor commencing the Chapter 11 Case or as a result of the Plan being consummated, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the pre-Effective Date Debtor, the Liquidating Debtor, the Plan Administrator, the Chapter 11 Case, the Plan or the Disclosure Statement; provided, that, notwithstanding the foregoing, each eligible Participating Customer may assert a Participating Customer Potential Return Claim in a timely and properly filed*

*proof of claim form in accordance with the Former Customers Bar Date Order and, solely to the extent each Participating Customer has an Allowed Participating Customer Potential Return Claim, receive its Pro Rata share of (i) the Texas Storm Causes of Action Net Recovery Proceeds, if any, and (ii) any Available Prepetition Lender Contribution, which shall be shared with holders of Allowed Other General Unsecured Claims on a Pro Rata basis and be distributed (Pro Rata) to holders of (a) Allowed Other General Unsecured Claims and (b) Allowed Participating Customer Potential Return Claims.*

12.12    <u>Termination of Subordination Rights and Settlement of Related Claims</u>.  Except as expressly provided herein, the classification and manner of satisfying all Claims and Interests and the respective distributions, treatments and other provisions under the Plan take into account or conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 510(a) and 510(b) of the Bankruptcy Code or otherwise, and any and all such rights are settled, compromised and released pursuant to the Plan.  The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all Persons and entities from enforcing or attempting to enforce any such contractual, legal and equitable rights satisfied, compromised and settled pursuant to the Plan. Any disagreement with the priorities or distributions set forth in the Plan or any right to assert contractual subordination shall be raised on or prior to the deadline to object to the Plan, and decided at or prior to the Confirmation Hearing, and all issues with respect to contractual subordination not raised or resolved at the Confirmation Hearing shall be governed pursuant to the Plan or, if the decision of the Bankruptcy Court at the Confirmation Hearing differs from the Plan, then such decision shall govern.

12.13    <u>Retention of Causes of Action/Reservation of Rights</u>.  Except with respect to the Released Parties or any other beneficiary of the releases, injunctions, and exculpations contained in this Article XII, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, claims or Causes of Action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Effective Date, on behalf of the Estate or of itself in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law.  The Debtor shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or other legal or equitable defenses which the Debtor had immediately prior to the Petition Date as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and/or equitable rights respecting any Claim may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.  Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Debtor shall have the exclusive right to institute, prosecute, abandon, settle, or compromise all Causes of Action (excluding those Causes of Action released pursuant to this <u>Article XII</u>), in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Case.

12.14    <u>Releases of Liens</u>.  Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, in consideration for the Distributions granted hereunder, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of any of the Estate shall be fully

released and deemed satisfied and all of the right, title and interest of any holder of such mortgages, deeds of trust, liens, pledges or other security interest shall revert to the Debtor. On the Effective Date, the holder of each such mortgage, deed of trust, lien, pledge or other security interest against property of the Estate shall be deemed to have appointed the Debtor as agent to such holder for the purpose of filing and recording all releases with respect to each such mortgage, deed of trust, lien, pledge or other security interest held against property of the Estate.

## ARTICLE XIII

## <u>RETENTION OF JURISDICTION</u>

13.01   <u>Scope of Bankruptcy Court Jurisdiction</u>.  On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, pursuant to 28 U.S.C. § 1334, over all matters arising in, arising under, or related to the Chapter 11 Case for, among other things, the following purposes:

(a)      To hear and determine pending applications for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of Cure Amounts, if any, and Claims resulting therefrom or from the assumption, assumption and assignment or rejection of executory contracts or unexpired leases pursuant to this Plan;

(b)      To hear and determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date and to order appropriate relief in connection therewith (including issuance and/or enforcement of releases);

(c)      To consider and resolve any disputes arising from or relating to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004, or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)      To consider and resolve any Claims or Interests, or the allowance, classification, priority, compromise, estimation, or payment of any Claim or Interest;

(e)      To consider and resolve any matters arising from or related to the Plan Administrator Agreement;

(f)      To ensure that Plan Distributions to holders of Allowed Claims are accomplished as provided herein;

(g)      To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(h)      To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(i)      To consider any amendments to, or modifications of, the Plan and the Plan Supplement, and any dispute or controversy relating to execution, delivery or compliance with

45

any document included in the Plan Supplement, and to cure any defect or omission, or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(j)     To hear and determine all Fee Claims;

(k)     To resolve disputes concerning any reserves, including with respect to Disputed Claims, cure disputes, if any, or the administration thereof;

(l)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(m)     To recover all assets and property of the Debtor, wherever located;

(n)     To hear and determine matters concerning state, local, and federal taxes, including as provided by sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(o)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

(p)     To hear any other matter not inconsistent with the Bankruptcy Code; and

(q)     To a final decree closing the Chapter 11 Case.

## ARTICLE XIV

## MISCELLANEOUS PROVISIONS

14.01   Effectuating Documents and Further Transactions.  The Debtor is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to this Plan.

14.02   Corporate Action.  On the Effective Date, all matters provided for under this Plan that would otherwise require approval of the equity security holders, directors, members, managing members or managers of the Debtor, including (a) the effectiveness of the certificates of incorporation and operating agreement of the Debtor and (b) the election or appointment, as the case may be, of directors, managers and/or officers of the Debtor, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to Section 303 of the Delaware General Corporation Law, without any requirement of further action by the equity holders, directors, members, managing members or managers of the Debtor.  On the Effective Date, or as soon thereafter as is practicable, the Debtor shall, if required, file its certificate of incorporation with the Secretary of State of Delaware, in accordance with the applicable general corporation law of such state.

14.03    Exemption from Transfer Taxes.  To the fullest extent permitted by applicable law, any transfer or encumbrance of assets or any portion(s) of assets pursuant to, or in furtherance of, or in connection with the Plan shall constitute a "transfer under a plan" within the purview of section 1146(a) of the Bankruptcy Code and shall not be subject to transfer, stamp or similar taxes.

14.04    Payment of Statutory Fees; Post Confirmation Reporting.

(a)    Payment of Statutory Fees. On the Effective Date, and thereafter as may be required, the Debtor shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code, together with interest pursuant to section 31 U.S.C. 3717, if any, through the entry of a final decree closing and/or dismissing its Chapter 11 Case, or an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

(b)    Post-Confirmation Reporting.  After the Effective Date, in accordance with the Guidelines established by the United States Trustee, the Debtor will file quarterly operating reports with Bankruptcy Court until entry of a final decree in the Chapter 11 Case.

14.05    Disallowance of Existing Securities Law Claims.  On the Effective Date, any and all Existing Securities Law Claims shall be deemed Disallowed and expunged in their entirety under and pursuant to this Plan without further order of the Bankruptcy Court or any action being required on the part of the Debtor.

14.06    Post-Effective Date Fees and Expenses.  From and after the Effective Date, the Debtor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional Persons thereafter incurred by the Debtor, including those fees and expenses incurred in connection with the implementation and consummation of this Plan and the Plan Administrator Expenses.

14.07    Amendment or Modification of this Plan.  Alterations, amendments, or modifications of or to the Plan (including to provide for treatment different than that set forth herein with respect to any class of Claim or Interest, including establishment of subclasses of Classes of Claims or Interests to the extent required if so elected by the Debtor, the unimpairment of Classes that are impaired hereunder, and the impairment of Classes that are unimpaired hereunder) may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with section 1125 of the Bankruptcy Code.  This Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, provided that this Plan, as altered, amended, or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended, or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments, or modifications.  A holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

14.08    Revocation or Withdrawal of this Plan.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Effective Date in whole or in part.  If the Debtor revokes or withdraws the Plan prior to the Effective Date, then except as set forth in this Section 14.08 of the Plan, the Plan shall be deemed null and void.  In the event of any such waiver or revocation, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

14.09    Termination of Professionals.  On the Effective Date, the engagement of each Professional Person retained by the Debtor or the Committee shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims and the Debtor shall be responsible for the fees, costs and expenses associated with such Fee Claims.  Nothing herein shall preclude the Debtor from engaging a Professional Person on and after the Effective Date in the same capacity as such Professional Person was engaged prior to the Effective Date.

14.10    Dissolution of any Committee.  Subject to the proviso in Section 14.09 of this Plan, the functions of any Committee shall terminate on the later of:  (i) the Effective Date; and (ii) the conclusion of any appeals with respect to the Confirmation Order or an Omnibus Claims Objection that any Committee is a party to (but such functions shall relate solely to services performed related to such appeal), and any Committee shall be deemed dissolved as of such date and shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Case.

14.11    Confirmation Order.  The Confirmation Order shall, and is hereby deemed to, ratify all transactions effected by the Debtor during the period commencing on the Petition Date and ending on the Confirmation Date except for any acts constituting willful misconduct, gross negligence, recklessness or fraud.

14.12    Severability.  If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.13    Inconsistency.  In the event of any inconsistency among or between any of the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.  The Confirmation Order shall govern all of the foregoing.

48

14.14 <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit or schedule hereto or in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to any contrary result otherwise required under applicable choice or conflict of law rules.

14.15 <u>Binding Effect</u>. The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Interests, and their respective successors and assigns.

14.16 <u>Exhibits/Schedules</u>. All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

14.17 <u>Filing of Additional Documents</u>. On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any such agreements or other documents relating specifically to the terms and conditions of the Plan.

14.18 <u>Notices</u>. All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**Griddy Energy LLC**
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602
-and-

**Baker Botts LLP**
Robin Spigel
Chris Newcomb
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 408-2500
Facsimile: (212) 408-2501

*Counsel for the Debtor and Debtor in Possession*

14.19  <u>Reservation of Rights</u>.  Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtor with respect to any Claims or Interests prior to the Effective Date.

Dated:  May 26, 2021

Respectfully submitted,

GRIDDY ENERGY LLC

By:  <u>*/s/  Michael Fallquist*</u>
Name:  Michael Fallquist
Title:   Chief Executive Officer

# APPENDIX II

## Effective Date Notice

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GRIDDY ENERGY LLC,[1] | ) | Case No. 21-30923 (MI) |
|  | ) |  |
| Debtor. | ) | **Relates to Docket No. [__]** |
|  | ) |  |

### NOTICE OF (I) ENTRY OF ORDER CONFIRMING
### MODIFIED THIRD AMENDED PLAN OF LIQUIDATION FOR
### GRIDDY ENERGY LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE;
### (II) OCCURRENCE OF EFFECTIVE DATE; AND (III) DEADLINE FOR FILING
### FEE CLAIMS, ADMINISTRATIVE EXPENSE CLAIMS, AND CLAIMS ARISING
### <u>FROM REJECTION OF EXECUTORY CONTRACTS OR UNEXPIRED LEASES</u>

**PLEASE TAKE NOTICE THAT**:

1. <u>Final Approval of Disclosure Statement; Confirmation of the Plan</u>. On July ___, 2021, the United States Bankruptcy Court for the Southern District of Texas entered an order [Docket No. ___ ] (the "**Confirmation Order**") (a) approving the *Disclosure Statement for Modified Third Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code*, dated May 26, 2021 [Docket No. 312] and (b) confirming the *Modified Third Amended Plan of Liquidation for Griddy Energy LLC Under Chapter 11 of the Bankruptcy Code*, dated May 26, 2021 [Docket No. 311] (as confirmed, the "**Plan**").[2] To obtain a copy of the Confirmation Order or the Plan, you may (a) visit the website of the Debtor's noticing, claims and solicitation agent, Stretto ("**Stretto**") at https://cases.stretto.com/Griddy; (b) email GriddyInquiries@stretto.com; (c) call Stretto's toll-

---

[1]  The last four digits of the Debtor's federal tax identification number are 1396.  The mailing address for the Debtor is PO Box 1288, Greens Farms, CT 06838.

[2]  Capitalized terms used but not defined herein have the meanings given them in the Plan

free information line with respect to the Debtor at (855) 478-2725 (toll free) or (949) 471-0997 (international); and/or (d) visit the website maintained by the Court at http://www.txs.uscourts.gov/bankruptcy (a PACER password is required). In addition, copies of the Plan and Confirmation Order are on file with the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of Texas, 515 Rusk Street, Houston, Texas 77002.

2.      <u>Effective Date</u>. On [_____], 2021, the "Effective Date" occurred with respect to the Plan.

3.      The terms of the Plan, the Plan Supplement and the Confirmation Order are immediately effective and enforceable and deemed binding upon the Debtor and any and all holders of Claims or Interests, all parties that are parties to or are subject to the settlements, compromises, releases and injunctions described in the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

4.      <u>Bar Date for Filing Administrative Expense Claims</u>. Pursuant to Section 2.02 of the Plan and paragraph [25] of the Confirmation Order, requests for payment of Administrative Expense Claims other than: (a) a Fee Claim; (b) an Administrative Expense Claim that has been Allowed on or before the Effective Date; (c) an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtor pursuant to an order of the Bankruptcy Court; (d) an Administrative Expense Claim held by an officer, director, manager, member or employee of the Debtor employed as of the Petition Date for indemnification, contribution, or advancement of expenses pursuant to: (i) the Debtor's operating agreement or similar organizational document, or (ii) any indemnification or contribution agreement approved by the Bankruptcy Court; (e) an

Administrative Expense Claim arising, in the ordinary course of business, out of the employment

by the Debtor of an individual from and after the Petition Date, but only to the extent that such

Administrative Expense Claim is solely for outstanding wages, commissions, accrued benefits,

or reimbursement of business expenses; or (f) an Intercompany Claim, must be filed with the

Bankruptcy Court and served on the Debtor, the Claims Agent and the United States Trustee so

as to be received by **5:00 p.m. (prevailing Central Time) on [_____], 2021, the date that is**

**thirty (30) days from the date of service of notice of the Effective Date**.  Such notice of

Administrative Expense Claim must include at a minimum: (i) the name of the holder of the

Administrative Expense Claim; (ii) the asserted amount of the Administrative Expense Claim;

(iii) the basis of the Administrative Expense Claim; and (iv) supporting documentation for the

Administrative Expense Claim.  **FAILURE TO FILE AND SERVE SUCH PROOF OF**

**ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT**

**IN SUCH ADMINISTRATIVE EXPENSE CLAIM BEING FOREVER BARRED AND**

**RELEASED.**

> 5.    <u>Bar Date for Filing Rejection Damage Claims</u>.  Pursuant to Section 10.03

of the Plan and paragraph [17] of the Confirmation Order, except as provided by order of the

Bankruptcy Court entered prior to the Effective Date, all proofs of claim with respect to Claims

arising out of the rejection of any executory contract or unexpired lease under the Plan (each, a

"**Rejection Claim**") shall be filed with the Bankruptcy Court and served upon counsel for the

Debtor **on or before the date that is thirty (30) days after the later of:  (a) notice of entry of**

**an order approving the rejection of such executory contract or unexpired or**

**(b) [_____], 2021, which is 30 days after the Effective Date.  HOLDERS OF**

**REJECTION CLAIM(S) THAT FAIL TO TIMELY FILE PROOF OF SUCH**

**REJECTION CLAIM(S) IN ACCORDANCE WITH THE FOREGOING ON OR PRIOR TO [_____], 2021 SHALL BE FOREVER BARRED FROM RECEIVING A DISTRIBUTION FROM THE DEBTOR OR ITS ESTATE ON ACCOUNT OF SUCH CLAIMS.**

6.      <u>Bar Date for Filing Fee Claims</u>.  Pursuant to Section 3.04 of the Plan and paragraph [26] of the Confirmation Order, any Professional Person seeking allowance by the Bankruptcy Court of a Fee Claim shall file with the Bankruptcy Court and service notice of same on the Debtor and the United States Trustee its respective final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later **than [_____], 2021, the date that is forty-five (45) calendar days after the Effective Date**, or such other date as may be fixed by the Bankruptcy Court. Objections to Fee Claims, if any, must be filed with the Bankruptcy Court and served on the applicable holder of the Fee Claim, the Debtor, the Committee and the United States Trustee so as to be received by 5:00 p.m. (prevailing Central Time) no later than _____, 2021, the date that is sixty-five (65) days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court.

7.      <u>Ability of Former Customers to Opt-Out of Customer Releases</u>.  In accordance with the settlement between the Debtor and the Official Committee of Unsecured Creditors, former customers that did <u>not</u> elect to opt-out of the Customer Releases in their voting ballots have until [_____], 2021 to elect to opt-out of the Customer Releases and be treated as a Non-Participating Customer under the Plan.  If you choose to elect to <u>opt out</u> of the Customer Releases, you may obtain a form to opt-out of the Customer Releases at Stretto's website: https://cases.stretto.com/Griddy.  If you choose to elect to opt out, any prior vote on the Plan will

not be changed.  Please carefully review the directions on such form for proper submission of such form.  **IF YOU CHOOSE TO OPT OUT OF THE CUSTOMER RELEASES, (1) ANY AMOUNTS YOU OWE THE DEBTOR FOR UNPAID BILLS WILL <u>NOT</u> BE FORGIVEN, (2) YOU MAY BE SUBJECT TO COLLECTION ACTIONS, AND (3) UNPAID BALANCES MAY BE REPORTED TO CREDIT BUREAUS**.

        8.      <u>Ability of Former Customers to Opt Into the Customer Releases</u>.  If you elected to <u>opt-out</u> of the Customer Releases in your voting ballot and would like to (a) withdraw your election to opt-out of the Customer Releases and (b) exchange the Customer Releases with the Debtor and the other Released Parties subject to the terms of paragraph [14] of the Confirmation Order, please contact the Plan Administrator, Russell Nelms by email at [_____] or by phone at [_____].

Dated: New York, New York
          _____, 2021

                     **BAKER BOTTS L.L.P.**
                     **30 Rockefeller Plaza**
                     **New York, NY 10112**

                     ***Counsel to the Debtor and Debtor in Possession***