IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: § § **GRIDDY ENERGY LLC,** § §     Debtor. § § § | | Case No. 21-30923 (Chapter 11) Judge Isgur |
| **RUSSELL F. NELMS, in his capacity as Plan Administrator of the estate of GRIDDY ENERGY LLC,** § § § § §     Plaintiff, § § v. § § **TXU RETAIL ENERGY COMPANY LLC,** § §     Defendant. § § | | Adversary No. _____ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Russell F. Nelms in his capacity as plan administrator of Griddy Energy LLC ("Griddy" or "Plaintiff") files this Original Complaint against TXU Retail Energy Company LLC ("Defendant").  Plaintiff alleges as follows:

## JURISDICTION

1. The Court has jurisdiction over all claims and causes of action herein pursuant to 28 U.S.C. § 1334.

2. In Count 1, Plaintiff asserts a claim against Defendant for fraudulent transfer under 11 U.S.C. § 548. The Court exercises core jurisdiction over this claim pursuant to 28 U.S.C. § 157(b)(2)(H).

## VENUE

3. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

4. Plaintiff is Russell F. Nelms in his capacity as plan administrator of Griddy Energy LLC. On July 7, 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered its order confirming the Modified Third Amended Plan of Liquidation for Griddy Energy LLC under Chapter 11 of the Bankruptcy Code (the "Plan"). Pursuant to the Plan, Plaintiff became the sole member of Griddy and was appointed plan administrator. Under the Plan, Plaintiff is to take all steps reasonably necessary to effectuate and fulfill the provisions of the Plan. That includes pursuing all claims or causes of action held by Griddy or its estate.

5. Defendant is a domestic limited liability company that may be served through its registered agent Capitol Corporate Services, Inc., 206 East 9th Street, Suite 1300, Austin, Texas 78701.

## FACTUAL BACKGROUND

### Griddy and the Texas Power Market

6. Since 2016, Griddy has been the holder of Texas Retail Electric Provider certificate number 10243. As a Retail Electric Provider ("REP"), Griddy sold electricity to customers in Texas at wholesale pass-through rates. Customers accessed those rates by paying Griddy a subscription fee of $9.99 per month.

7. Defendant has also been the holder of a REP certificate and authorized to sell electricity to customers in Texas.

8. The Electric Reliability Council of Texas ("ERCOT") manages and operates the Texas power grid, which is known as the "ERCOT Interconnection." The Public Utility

Commission of Texas (the "PUCT") regulates utilities and monitors market participants, including ERCOT and REPs, such as Griddy and Defendant.

## Winter Storm Uri

9. On February 11, 2021, Winter Storm Uri rolled across North and Central Texas, bringing with it freezing rain that caused up to one-half of an inch of ice to form in extensive portions of the state. On February 12, 2021, Governor Greg Abbott declared a state of disaster in all 254 Texas counties.

10. The storm lingered. Dallas-Fort Worth International Airport experienced 139 consecutive hours of at or below freezing temperatures, while Waco Regional Airport experienced 205 consecutive hours.

11. Texans began to experience power outages after 1:15 a.m. on February 15, 2021. This was because, behind the scenes, ERCOT was trying to avoid a catastrophic meltdown of the Texas grid. In an electric grid, supply and demand are not just economic forces. They must physically be balanced in order to avoid grid collapse. A grid based on alternating current (such as that of Texas) must sustain a frequency within a range of 60 Hz in order to maintain stability. Once a grid falls below 59.4 Hz, it has only 9 minutes before the entire grid collapses.

12. In the early morning hours of February 15, 2021, the Texas grid fell below 59.4 Hz for 4 minutes and 23 seconds. Texas was 4 minutes and 37 seconds from total and catastrophic grid failure. In response to this looming disaster, ERCOT implemented rolling blackouts, which in industry parlance is referred to as "shedding load."

13. Later on February 15, 2021, DeAnn Walker, the chair of the PUCT, examined the load shed that was occurring and was "surprised" that the market was not responding to the crisis in the way she thought it should. Under normal circumstances, the price of electricity ranges from

$20 to $50/MWh.  On February 15, 2021, energy prices had spiked but were at times as low as $1,200/MWh.  In Walker's opinion, the market was failing to account for the scarcity of electricity.  So, Walker and her colleagues decided to correct this perceived "distortion" by setting the price of electricity at $9,000/MWh.

14. On February 17, 2021, temperatures began to warm across Texas.  Accordingly, rolling blackouts ended shortly after midnight on February 18, 2021.  No load shed directive from the PUCT was in place after 1:05 a.m. on February 18, 2021.  As such, there was no reason for the $9,000/MWh price to remain in place.  Nevertheless, ERCOT left the $9,000/MWh price in effect for 32 more hours.  When ERCOT finally lifted the $9,000/MWh set price, the price of electricity fell to $27/MWh.

### The Impact of the $9,000/MWh Price on Griddy

15. The imposition and maintenance of the $9,000/MWh price was devasting to Griddy.  Under Griddy's business model, Griddy billed customers a subscription fee of $9.99 per month to facilitate their access to wholesale market pricing.  This subscription fee did not fluctuate with the price of electricity. When Griddy passed through the $9,000/MWh rate to its customers, most simply could not afford to pay Griddy.

16. From February 16 to 24, 2021, ERCOT demanded that Griddy pay settlement invoices in the amount of approximately $30 million.  It also demanded that Griddy provide additional collateral in the cumulative amount of approximately at $3.2 million. Griddy could not meet these demands.

17. The $9,000/MWh price did not just affect the amount Griddy owed ERCOT and, in turn, Griddy's ability to collect from its customers.  Griddy had a $15 million borrowing base agreement with Macquarie Investment US Inc. ("Macquarie").  In connection with that agreement,

Griddy agreed to purchase energy from Macquarie Energy LLC ("Macquarie Energy") on standard market terms. On February 17, 2021, Macquarie suspended all further lending to Griddy. The next day, Macquarie took control of all of Griddy's bank accounts in order to secure the amounts that Griddy owed Macquarie. On February 23, 2021, Griddy paid Macquarie $11,138,011.87 to satisfy amounts it owed to Macquarie Energy for physical electricity.

### ERCOT Revokes Griddy's Rights as a Market Participant

18. In order to participate as a REP in the Texas grid, Griddy was required to execute ERCOT's Standard Form Market Participant Agreement ("SFA").

19. On February 22, 2021, ERCOT sent Griddy a notice alleging a material breach of the SFA. ERCOT alleged that Griddy had failed to pay outstanding settlement invoices and provide additional collateral. Griddy paid invoices for amounts due from February 17 to February 22, 2021, but was unable to provide the additional collateral demanded by ERCOT.

20. On February 26, 2021, ERCOT terminated the SFA and revoked Griddy's rights as a market participant. From February 26 to March 2, 2021, ERCOT forced the mass transition of 9,926 Griddy customers to providers of last resort ("POLRs"). As a POLR, Defendant received and accepted 2,290 of those customers. All such customers were under a service agreement with Griddy. Griddy received no consideration for the transfer of its customers to Defendant or any other POLR.

### Griddy Files for Bankruptcy

21. Griddy had been thriving in the Texas market as recently as February 14, 2021. By March 2, 2021, Griddy's customers were gone, its bank accounts had been emptied, and its rights to participate in the Texas market had been revoked. ERCOT alone asserted a claim against Griddy for over $29 million.

22. Griddy filed for bankruptcy on March 15, 2021. On July 23, 2021, the Court confirmed Griddy's Plan of liquidation. Pursuant to the order confirming the Plan, Plaintiff was appointed plan administrator. Plaintiff is charged with the responsibility of pursuing claims that will chiefly benefit the thousands of Griddy customers who suffered economic damages as a result of the actions delineated in this Complaint.

## FIRST CAUSE OF ACTION:
## FRAUDULENT TRANSFER UNDER 11 U.S.C. § 548

23. Plaintiff incorporates the above paragraphs as if set forth fully herein.

24. The transition of Griddy's customers to Defendant constitute a "transfer" within the meaning of 11 U.S.C. § 101(54). Griddy was insolvent on the date(s) that its customers were transferred to Defendant. Alternatively, Griddy became insolvent as a result of the transfer of its customers. Griddy received no consideration for the transfer of its customers to Defendants. Griddy's customers had value. As such, the transfer of Griddy's customers for no value represented a transfer for less than reasonably equivalent value. The Court should avoid the transfer of Griddy's customers to Defendant under of 11 U.S.C. § 548(a)(1)(B).

### Recovery of Value Under 11 U.S.C. § 550(a)

25. Upon avoidance of the transfer of the customers pursuant to Section 548, the Court may order that Plaintiff recover the value of the customers from the initial transferee of the transfer under 11 U.S.C. § 550(a). Defendant is the initial transferee of the transfer.

## PRAYER

WHEREFORE, Plaintiff prays that the Court:

a) Avoid the transfers described herein pursuant to 11 U.S.C. § 548;

b) Enter judgment in favor of Plaintiff against Defendant pursuant to 11 U.S.C. § 550(a) in an amount equal to the value of the customers Defendant received;

    c) Award prejudgment and post-judgment interest; and

    d) Grant Plaintiff such other relief to which he may be entitled, in law or in equity.

February 14, 2022

                                                  Respectfully submitted,

                                                  **THE POTTS LAW FIRM, LLP**
*/s/ Derek H. Potts*
Derek H. Potts
Texas Bar No. 24073727
Southern District of Texas No. 2200735
Email: dpotts@potts-law.com
Christopher Lindstrom
Texas Bar No. 24032671
Southern District of Texas No. 33525
Email: clindstrom@potts-law.com
Batami Baskin
Texas Bar No. 24078206
Southern District of Texas No. 1457969
Email: bbaskin@potts-law.com
POTTS LAW FIRM, LLP
3737 Buffalo Speedway, Suite 1900
Houston, Texas 77098
Tel: (713) 963-8881

**ATTORNEYS FOR PLAINTIFF**